Christopher P. Wesierski [Bar No. 086736]
 *cwesierski@wzllp.com*
Michelle R. Prescott [Bar No. 262638]
 *mprescott@wzllp.com*
Brett A. Smith [Bar No. 322707]
 *bsmith@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSA NUNEZ, individually and as successor-in-interest to Decedent, Anthony Nunez; ANTHONY NUNEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nunez; and, ANDREW NUNEZ, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,<br><br>Defendants. | Case No. 5:22-cv-1934-SSS(SPx)<br><br>**DEFENDANTS' COUNTY OF SAN BERNARDINO, CITY OF HESPERIA, DEPUTY MICHAEL MARTINEZ, DEPUTY JEREMY DEBERG, AND DEPUTY SABRINA CERVANTES' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>*[Filed Concurrently with Separate Statement, Declarations of Michelle R. Prescott, Edward Flosi, Corey Lefever, Jeremey Deberg, Michael Martinez, (Proposed) Order]*<br><br>Date:        May 31, 2024<br>Time:        2:00 p.m.<br>Courtroom:   2<br><br>Trial Date:        09/23/2024 |

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975 1000

I2106605-1 SBD-0015

1

2 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

3 **PLEASE TAKE NOTICE** that on May 31, 2024, at 2:00 p.m., or as soon

4 thereafter as counsel may be heard in Courtroom 2 of the United States District Court,

5 Central District, located at 3470 Twelfth Street, Riverside, California 92501,

6 Defendants COUNTY OF SAN BERNARDINO, CITY OF HESPERIA, DEPUTY

7 MICHAEL MARTINEZ, DEPUTY JEREMY DEBERG, and DEPUTY SABRINA

8 CERVANTES ("Defendants") [Defendant JONATHAN CAMPOS is represented by

9 separate counsel and Defendants believe he will be dismissed from this action], will

10 and hereby do move this Court, pursuant to Federal Rules of Civil Procedure, Rule

11 56, for an order granting summary judgment as to Plaintiffs' Second Amended

12 Complaint, or in the alternative, partial judgment as to each cause of action, or any of

13 them, on the following grounds:

14      1.     Plaintiffs' First Claim for Excessive Force against Deputies Martinez,

15 Deberg, and Cervantes fails because they acted in an objectively reasonable manner

16 in using force, including deadly force, under the facts and circumstances and because

17 the deputies are entitled to qualified immunity;

18      2.     Plaintiffs' Second Claim for Denial of Medical Care and Third Claim for

19 Interference with Familial Relations against Deputies Martinez, Deberg, and

20 Cervantes fails because the deputies' conduct did not "shock the conscience" and the

21 deputies did not act with a "purpose to harm" Mr. Nunez;

22      3.     Plaintiffs' Fourth and Fifth Claims for *Monell* Liability Fail because

23 Plaintiffs cannot meet their burden of proof for Unconstitutional Custom or Policy or

24 Failure to Train;

25      4.     Plaintiffs' Sixth Claim for Battery and Seventh Claim for Negligence fail

26 because the deputies acted in an objectively reasonable manner in using force,

27 including deadly force, under the facts and circumstances and because the deputies

28 are entitled to qualified immunity;

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I2106605-1 SBD-0015     DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

5.     Plaintiffs' Eighth Claim for Negligent Infliction of Emotional Distress fails because the Defendants were not negligent and Plaintiff Andrew Nunez did not accurately observe the incident to the level necessary to support this claim

6.     Plaintiffs' Ninth Claim for Violation of the Bane Act (Cal. Civil Code § 52.1) fails because Mr. Nunez did not have a constitutional right to evade arrest and the deputies acted lawfully in arresting him.

This Motion will be made and will be based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Statement of Undisputed Facts and Genuine Disputes; Request for Judicial Notice; all pleadings and records on file with the Court, any evidence of which this Honorable Court may further take judicial notice prior to or at the hearing on this matter, and upon such oral and documentary evidence as may be presented at the hearing of this Motion.

This Motion is made following the conference of counsel for Defendants, Plaintiffs, and Defendant Jonathan Campos pursuant to L.R. 7-3, which took place via a telephone conference on March 22, 2024.

DATED:  April 9, 2024          WESIERSKI & ZUREK LLP

By: _____
CHRISTOPHER P. WESIERSKI
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

1
2

# **TABLE OF CONTENTS**

**Page**

3  I.     INTRODUCTION ........................................................................... 10

4  II.    STATEMENT OF FACTS ............................................................. 12

5       A.    Decedent's Family Requests Police Assistance After Decedent
6             Batters His Brother at Their Shared Home ............................. 12

        B.    Deputies Arrive on Scene and Begin Attempting to De-Escalate
7             With Decedent ........................................................................ 13

8       C.    The Deputies Used Force Against Decedent When Left With No
              Alternative .............................................................................. 14

9  III.   STANDARD ON SUMMARY JUDGMENT .................................. 19

10
11 IV.    PLAINTIFFS' EXCESSIVE FORCE CLAIMS UNDER THE
          FOURTH AMENDMENT CLAIMS ARE WITHOUT MERIT .......... 19

12 V.     PLAINTIFFS § 1983 CLAIMS UNDER THE FOURTEENTH
          AMENDMENT ARE WITHOUT MERIT ........................................ 22

13
14 VI.    PLAINTIFF UNCONSTITUTIONAL CUSTOM OR POLICY AND
          FAILURE TO TRAIN CLAIMS FAIL AS A MATTER OF LAW ......... 24

15       A.    The Department Maintains Lawful Customs and Policies in
              Compliance with POST Guidelines .......................................... 24
16
        B.    The Deputies are Trained Pursuant to POST Standards ............ 25
17
18 VII.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY
          BECAUSE THEIR USE OF DEADLY FORCE WAS OBJECTIVELY
          REASONABLE ............................................................................... 26
19
20       A.    The Deputy Defendants Are Entitled to Qualified Immunity
              Because Their Acts Did Not Violate 'Clearly Established Law' ..... 26

21             1.    The Facts Alleged Do Not Show the Deputy Defendants'
                     Conduct Violated a Constitutional Right .......................... 27
22
23             2.    No Constitutional Right to Not Cooperate with Law
                     Enforcement's Lawful Arrest ........................................... 28

24 VIII.  PLAINTIFFS' CLAIM UNDER THE BANE ACT FAILS BECAUSE
          THE DECEDENT DID NOT HAVE A CONSTITUTIONAL RIGHT
25        TO EVADE ARREST ...................................................................... 29

26 IX.    THE CLAIMS FOR BATTERY, NEGLIGENCE, AND NEGLIGENT
          INFLICTION OF EMOTIONAL DISTRESS LACK MERIT ............ 30
27
28       A.    Plaintiffs Cannot Establish any Negligence or Battery by the
              Officers .................................................................................... 30

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4

1

B.    The NIED Claim also Fails As A Matter Of Law ................................. 31

2

X.    CONCLUSION ............................................................................. 33

3

4

5

6

7

8

9

10

11

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I2106605-1 SBD-0015

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975 1000

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144, 167-68 (1970) ............................................................... 25

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 19

*City of Escondido v. Emmons*,
   139 S. Ct. 500 (2019) .......................................................................... 27

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988) ............................................................................ 25

*Davis v. Scherer*,
   468 U.S. 183 (1984) ............................................................................ 27

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) .............................................................. 24

*Forrett v. Richardson*,
   112 F.3d 416 (9th Cir. 1997) .............................................................. 21

*Foster v. City of Indio*,
   908 F.3d 1204 (9th Cir. 2018) ............................................................ 23

*Gonzalez v. City of Anaheim*,
   747 F.3d 789, 798 (9th Cir. 2014) ...................................................... 23

*Graham v. Connor*,
   490 U.S. 386 (U.S. 1989) .............................................................. 20, 32

*Kisela v. Hughes*,
   138 S. Ct. 1148, 1153, (2018) ............................................................ 27

*M.H. v. Cnty. of Alameda*,
   62 F. Supp. 3d 1049 (N.D. Cal. 2014) ........................................... 26, 27

*Monell. Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) ................................................................ 25

6

*Monell v. Dep't of Soc. Servs. Of City of New York*,
    436 U.S. 658 (1978) ...................................................................................24

*Monzon v. City of Murrieta*,
    978 F.3d 1150 (9th Cir. 2020) ...................................................................27

*Nader v. Blackwell*,
    545 F.3d 459 (6th Cir. 2008) .....................................................................27

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ...................................................................................25

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*,
    130 F.3d 432, 438 (9th Cir. 1997) .............................................................24

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008) ............................................................22, 23

*Reynolds v. County of San Diego*
    84 F.3d 1162 (9th Cir. 1996) .....................................................................21

*Saucier v. Katz*,
    533 U.S. 194 (2000) .............................................................................26, 27

*Tennessee v. Garner*,
    471 U. S. 1 (1985) ...............................................................................20, 21

*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
    594 F.2d 730 (9th Cir. 1979) .....................................................................19

*West v. Atkins*,
    487 U.S. 4242 (1988) .................................................................................19

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010) .....................................................................23

**State Cases**

*Brown v. Ransweiler*
    (2009) 171 Cal.App.4th 516..................................................................30, 31

*City of Simi Valley v. Superior Court*
    (2003) 111 Cal.App.4th 1077 .....................................................................29

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

7

*Edson v. City of Anaheim*
   (2009) 63 Cal.App.4th 1269 .................................................................30, 31

*Golstein v. Superior Court,*
   *223 Cal. App. 3d 1415* (1990) ...................................................................32

*Hayes v. Cnty. of San Diego*
   (2013) 57 Cal. 4th 622 ..........................................................................30, 31

*Jones v. Kmart Corp.*
   (1998) 17 Cal.4th 329 ..................................................................................29

*Martinez v. County of Los Angeles*
   (1996) 47 Cal. App. 4th 334 ........................................................................30

*People v. Curtis*
   (1969) 70 Cal.2d 347 ...................................................................................31

*Ra v. Superior Court,*
   *154 Cal. App. 4th 142* (2007) ....................................................................32

*Thing v. La Chusa,*
   *48 Cal. 3d 644* (1989) .................................................................................32

*Venegas v. County of Los Angeles*
   (2004) 32 Cal.4th 820 ..................................................................................29

*Yount v. City of Sacramento*
   (2008) 43 Cal.4th 885 ..................................................................................30

**State Statutes**

Bane Act ..............................................................................................................29

Cal. Penal Code § 834(a) ...................................................................................31

Cal. Penal Code § 835a ......................................................................................31

Cal. Penal Code § 836.5(b) ................................................................................31

*Civil* Code, § 52.1 ..............................................................................................29

*Gov. Code* § 815.2 .............................................................................................31

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

8

**Rules**

Federal Rules of Civil Procedure Rule 56 ................................................................ 19

FRCP 56(a) ............................................................................................................... 19

**Constitutional Provisions**

Fourth Amendment .............................................................. 20, 26, 30, 32

Fourteenth Amendment .............................................................. 22, 26

U.S. Const. Amendment XIV, § 1 .............................................................. 22

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This matter concerns an officer involved fatal shooting that took place on March 29, 2022. On the date of the incident, Anthony Nunez ("Mr. Nunez" or the "Decedent"), physically assaulted his brother Andrew Nunez while armed with a metal chain which prompted Andrew Nunez's wife, Noelia Benitez, to call 911 and seek help from Defendants. On that same 911 call requesting assistance, Ms. Benitez informed Defendants that Decedent: (1) was armed with a metal chain, (2) under the influence of narcotics later determined to be methamphetamine, and (3) behaving erratically. Ms. Benitez also reported the presence of firearms at the subject premises, but their location was unknown. Based on Ms. Benitez's 911 call, deputies from the San Bernardino County Sheriff's Department ("SBSD" or the "Department") responded to the scene to render assistance.

Defendants Deputy Michael Martinez ("Deputy Martinez" or "Martinez") and Deputy Jonathan Campos ("Deputy Campos" or "Campos") were the first to arrive on scene. When they arrived, they immediately encountered Decedent who had barricaded himself inside the single family home and was still armed with the metal chain. Deputies spent over an hour trying to get Decedent to comply with their lawful commands to drop the chain and exit the home so that the Deputies could detain Decedent on suspicion of battering Andrew Nunez. Decedent repeatedly refused to comply and continued to threaten to kill and/or maim the Deputies.

Shortly after Deputies Martinez and Campos arrived on scene, Defendants Deputy Jeremy Deberg ("Deputy Deberg" or "Deberg"), Deputy Sabrina Cervantes ("Deputy Cervantes" or "Cervantes"), and Sergeant Corey LaFever ("Sergeant LaFever" or "LaFever") arrived on scene after dispatch requested additional units respond to the scene. Cervantes and Deberg armed themselves with less-lethal launchers and endeavored to provide support to Martinez and Campos who were still trying to de-escalate with Decedent.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    After continued efforts by Martinez and Campos, Decedent exited the home

2  and began pacing back and forth on the driveway and exterior yard area of the home

3  while continuing to behave erratically and refusing to comply with commands to drop

4  the chain. Decedent at times also swung the metal chain above and around himself in

5  a whipping motion. Defendants continued to try and de-escalate with Decedent but

6  were unsuccessful.

7    Suddenly, and with no prior warning, Decedent rapidly charged toward the

8  Deputies while holding the metal chain. Decedent continued to refuse to comply with

9  commands to drop the chain, so Cervantes used a less-lethal beanbag shotgun to

10  attempt to compel compliance from Decedent. When her first shot failed to gain

11  compliance and her shotgun jammed, Deberg then used a *40mm Blunt Impact*

12  *Projectile less-lethal ammunition* ("BIP") launching system, in an attempt to

13  apprehend Decedent unharmed. This was also unsuccessful. Campos then attempted

14  to deploy a Taser to gain Decedent's compliance but he was also unsuccessful. Finally,

15  faced with no options in light of Decedent rapidly closing distance while armed with

16  a deadly weapon and having seen Decedent be unaffected by any of the prior less-

17  lethal compliance options, Deputy Martinez fired three shots at Decedent as he was

18  no more than fifteen to twenty feet away, a distance Deputy Martinez believed placed

19  him vulnerable to attack from Decedent. Decedent was declared dead at the scene.

20    Plaintiffs Rosa Nunez individually and as Successor in Interest to Decedent

21  Anthony Nunez; Anthony Nunez Jr. individually and as Successor in Interest to

22  Decedent Anthony Nunez; and Andrew Nunez (hereinafter collectively, "Plaintiffs")

23  are now suing the COUNTY OF SAN BERNARDINO (the "County") the CITY OF

24  HESPERIA (the "City") and four (4) individual sheriff deputies Deputy Martinez,

25  Deputy Campos, Deputy Cervantes and Deputy Deberg ("Deputy Defendants")

26  (hereinafter collectively, "Defendants") for alleged violations of the Decedent's

27  constitutional rights. Because Deputy Campos is separately represented in this action

28  by Mahadi Corzano of Fuji Law Group, LLC, this Motion for Summary Judgment, or

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  in the alternative, Summary Adjudication will only address the remaining named

2  Defendants. Defendants also believe Deputy Campos will be dismissed by Plaintiffs.

3      However, the undisputed material facts show: (1) Defendants had probable

4  cause and/or reasonable suspicion to believe Decedent committed a crime or would

5  commit a crime; (2) Defendants properly assessed the circumstances presented to

6  them immediately prior to the shooting; (3) Deputy Cervantes, Deputy Deberg, and

7  Deputy Campos' use of less-lethal force was objectively reasonable under the

8  circumstances and (4) Deputy Martinez's use of deadly force was objectively

9  reasonable under the circumstances. As such, Defendants are entitled to summary

10  judgment as a matter of law, or alternatively, summary adjudication.

11  **II.    STATEMENT OF FACTS**

12      **A.    Decedent's Family Requests Police Assistance After Decedent**

13          **Batters His Brother at Their Shared Home**

14      On March 29, 2022 San Bernardino County Sheriffs' Deputies arrived at 8990

15  9th Avenue in the City of Hesperia, California after receiving a call from Noelia

16  Benitez ("Benitez") wife of Andrew Nunez. [SUF #1.] Ms. Benitez called 911 of her

17  own accord after seeing Decedent Anthony Nunez ("Decedent") get into a physical

18  altercation with his brother, Plaintiff Andrew Nunez. [SUF #2.] Ms. Benitez called

19  911 because she thought 911 would be the fastest to respond. [SUF #3.] Ms. Benitez

20  believed the confrontation between Andrew Nunez and Decedent was an emergency.

21  [SUF #4.] Decedent was telling Ms. Benitez and Andrew Nunez "that he was God" at

22  the time of his altercation with Andrew Nunez. [SUF #5.]

23      Ms. Benitez reported to 911 dispatchers that Decedent was on drugs because

24  his eyes looked glossy. [SUF #6.] Ms. Benitez told 911 dispatchers that there were

25  firearms in the home when she called regarding Decedent. [SUF #7.] Ms. Benitez told

26  911 dispatchers that Decedent had not slept for several days because of the way he

27  was acting when she made the 911 call. [SUF #8.] Ms. Benitez remained on the line

28  with 911 dispatchers rather than hanging up in case Decedent and Andrew Nunez got

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

12

1  into another altercation. [SUF #9.] Decedent had a hallucination on the date of the

2  incident immediately prior to engaging in a physical altercation with Andrew Nunez.

3  [SUF #10.] During the physical altercation between Andrew Nunez and Decedent,

4  Decedent threatened Andrew Nunez with a metal chain and Decedent was holding the

5  metal chain while he pushed Andrew Nunez. [SUF #11.]

6      **B.**    **Deputies Arrive on Scene and Begin Attempting to De-Escalate**

7             **With Decedent**

8        Prior to arriving on scene, Deputies Michael Martinez, Jeremy Deberg,

9  Jonathan Campos and Sabrina Cervantes (the "Deputies") and Sergeant Corey

10  LaFever ("LaFever") were informed of the presence of firearms at the premises. [SUF

11  #12.] Prior to arriving on scene, Deputy Martinez and Deputy Cervantes were aware

12  that Decedent was possibly under the influence of a controlled substance. [SUF #13.]

13  Deberg believed Decedent was under the influence of a controlled substance at the

14  time of the incident. [SUF #14.]

15        When Deputy Martinez arrived on scene, he began attempting to de-escalate

16  with Decedent. [SUF #15.] Deputies Deberg and Cervantes arrived on scene shortly

17  after Deputy Martinez and Deputy Campos. [SUF #16.] While attempting to de-

18  escalate, the Deputies attempted to get Decedent to exit the home and come outside

19  in order to separate him from the firearms that were on the property. [SUF #17.] The

20  Deputies were unable to confirm that the gun was not accessible until after the

21  incident had concluded. [SUF #18.]

22        Upon arrival, Deputy Cervantes retrieved her less-lethal shotgun from her

23  vehicle and took cover behind a short wall approximately five feet away from

24  Deputies Martinez and Campos in order to allow Martinez and Campos to continue

25  to attempt to de-escalate with Decedent. [SUF #19.] Upon arrival, Deputy Deberg

26  retrieved the 40-millimeter ("40mm") launcher at the direction of Sergeant La Fever

27  from Sergeant La Fever's trunk. [SUF #20.] While on scene, Deputy Deberg

28  broadcast a statement to the deputies that Decedent told Deputies Martinez and

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

13

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   Campos that they would need to kill Decedent so everyone on scene was aware of

2   Decedent's possible intentions. [SUF #21.]

3       Shortly after arriving, Sergeant LaFever encountered Andrew Nunez and

4   Noelia Benitez and made initial contact with them. [SUF #22.] During this contact,

5   Andrew Nunez informed LaFever that Decedent was likely under the influence of

6   narcotics. [SUF #23.]

7       While Decedent was speaking with Deputy Martinez he made repeated threats

8   to harm Deputy Martinez and told Martinez he wanted to commit "suicide by cop".

9   [SUF #24.] After over an hour of communication with Decedent, Deputy Martinez

10  was able to get Decedent to leave the home. [SUF #25.] The Deputies continued

11  attempting to de-escalate with Decedent prior to the incident, including making

12  multiple requests that Decedent drop the chain he was holding. [SUF #26.] Decedent

13  remained aggressive the entire time the Deputies were trying to verbally de-escalate

14  with him. [SUF #27.]

15  **C.    The Deputies Used Force Against Decedent When Left With No**

16  **Alternative**

17      In the ten seconds prior to firing at Decedent, Deputy Martinez and the other

18  deputies continued to order Decedent to drop the chain. [SUF #28.]

19      Immediately prior to the lethal force encounter Deputy Cervantes fired two less

20  lethal rounds from her less lethal shotgun at the direction of Deputy Martinez. [SUF

21  #29.] Prior to firing the first less-lethal shotgun round, Deputy Cervantes called out

22  "less-lethal, less-lethal" as required by Department policy. [SUF #30.] One less lethal

23  shotgun round struck Decedent in the chest area. [SUF #31.] At the time Deputy

24  Cervantes fired her first less-lethal round Decedent was standing five or six feet away

25  from her. [SUF #32.] Deputy Cervantes observed Decedent swing the metal chain and

26  striking with the chain in her direction approximately five or six feet away from her.

27  [SUF #33.] After firing her first less-lethal round, Cervantes' shotgun had a

28  malfunction and she was required to clear the malfunction. [SUF #34.] The second

14

1  less lethal shotgun round fired by Cervantes struck Decedent in the torso area. [SUF
2  #35.] Cervantes was in essentially the same position when she fired both less lethal
3  rounds. [SUF #36.] At the time Deputy Cervantes fired her second less-lethal round
4  Decedent was still five to six feet from her. [SUF #37.] At the time Deputy Cervantes
5  fired her first less-lethal round, she believed Decedent was close enough to strike her
6  or the other deputies with the chain and cause death or serious bodily harm. [SUF
7  #38.] At the time Deputy Cervantes fired her second less-lethal round she believed
8  Decedent was posing an immediate threat of death or serious bodily harm because he
9  was still swinging the chain and was close enough to strike her. [SUF #39.]

10      After Cervantes fired her first less-lethal round, Deberg used the 40mm
11  launcher because Cervantes shotgun had malfunctioned and Decedent was still within
12  five to six feet of her. [SUF # 34, 40.] Prior to firing the 40mm launcher Deberg
13  verbally called "40, 40" to indicate to Decedent and the Deputies that the 40mm
14  launcher was being deployed as required by Department policy. [SUF #41.] When
15  Deputy Deberg fired his first 40mm round, Decedent was swinging the chain over his
16  head. [SUF #42.] Decedent did not react to the first 40mm round striking him. [SUF
17  #43.] Decedent did not stop swinging the chain while being shot with the four 40mm
18  rounds and he did not react to any of the shots hitting him. [SUF #44.] Within
19  moments of being struck with the fourth 40mm round, Decedent sprinted north along
20  the front of the house and in between that area between the dark sedan and the red
21  sedan parked on the driveway while swinging the chain over his head. [SUF #45.]

22      After Deputy Deberg was unable to gain compliance with the 40mm launcher,
23  Deputy Jonathan Campos deployed his Taser against Decedent. Decedent was
24  charging toward Deputy Campos when he deployed the Taser and Decedent was
25  about 15 feet away from Campos when he deployed the Taser. The Taser did not
26  deploy successfully and was unable to stop Decedent from continuing to advance
27  toward the deputies.

28      Deputy Martinez then used lethal force on Decedent after less-lethal force was

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I2106605-1 SBD-0015

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

1   ineffective to stop the threat of Decedent who was still armed with the chain and could

2   have possibly harmed Deputy Martinez or the other Deputies. [SUF #46.] Deputy

3   Martinez believed the chain was approximately ten (10) feet in length at the time of

4   the lethal force encounter.[SUF #47.] Deputy Martinez fired three shots at Decedent

5   during the lethal force encounter. [SUF #48.] Decedent was proceeding toward

6   Deputy Martinez at the time all three shots were fired. [SUF #49.] Deputy Martinez

7   did not believe he could take cover behind the vehicles on the driveway because of

8   the length of chain in Decedent's hands and Decedent previously swinging the chains

9   at the vehicles. [SUF #50.]

10        Because Decedent was rapidly approaching Deputy Martinez while armed with

11   a chain at the time of the lethal force encounter Deputy Martinez was unable to

12   measure the exact distance between himself and Decedent at the time of the lethal

13   force encounter. [SUF #51.] At the time of the lethal force encounter, Deputy

14   Martinez believed the distance between himself and Decedent was no more than 15-

15   20 feet and that Decedent closed to within 5-6 feet of him before Decedent fell to the

16   ground. [SUF #52.] At the time of Deputy Martinez's first shot, Decedent was holding

17   the chain wrapped around his right hand and at approximately ear level with the

18   remainder of the chain dangling [SUF #53.] Deputy Martinez believed Decedent was

19   going to try and strike him with the chain at the time of his first shot. [SUF #54.] At

20   the time of Deputy Martinez's second shot Decedent was holding the chain in the same

21   manner as during the first shot. [SUF #55.] At the time of Deputy Martinez's third

22   shot Decedent was holding the chain in the same manner as during the prior shots.

23   [SUF #56.] Deputy Martinez was concerned that Decedent could use the chain to

24   inflict great bodily injury to himself or his partners at the time of the lethal force

25   encounter. [SUF #57.] After Deputy Martinez finished firing, Decedent then took a

26   few more steps forward before falling to the ground. [SUF #58.]

27        After Decedent fell to the ground, the deputies on scene began rendering aid to

28   Decedent. [SUF #59.] Shortly after the deputies began rendering aid, San Bernardino

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

16

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

Fire medical personnel already staged near the incident scene responded and continued to render aid to Decedent. [SUF #60.] Medical Personnel had been staged outside the danger zone at the scene at the direction of LaFever prior to the lethal force encounter in light of the presence of civilians inside the home and Decedent's refusal to vacate the home or drop the chain. [SUF #61.] Special Enforcement Division ("SED") officers were staged just outside the danger zone at the scene at the direction of LaFever prior to the lethal force encounter in light of the presence of civilians inside the home and Decedent's refusal to vacate the home or drop the chain. [SUF #62.]

At the time of the lethal force encounter, Andrew Nunez was three houses away from the incident area. [SUF # 63.] The houses are on large properties that are estimated to be acres in size. [SUF # 64.] In his expert report, Plaintiff's expert Scott DeFoe admits "The belt recording of the incident makes clear that immediately after Cervantes fired the beanbag round, Martinez fired 3 shots at Anthony from his handgun over a span of approximately 2 seconds." [SUF # 65.]

The deputies on scene had a legitimate law enforcement purpose and reasonable suspicion to contact and detain Decedent. [SUF #66.] The deputies on scene used pre-force tactics that were appropriate and consistent with current law enforcement training and practices. [SUF #67.] The deputies on scene did not have independent or object evidence to support a belief that Decedent's actions were caused by a mental health issue. [SUF #68.] The deputies on scene had a legitimate law enforcement purpose to arrest Decedent. [SUF #69.] The deputies on scene properly attempted to de-escalate the incident prior to responding with deadly force. [SUF #70.] The deputies on scene used non-deadly intermediate force responses that were reasonable to overcome the resistance of Nunez, to effect the arrest of Nunez, and to prevent an immediate and credible threat. [SUF #71.] The deputies on scene used an appropriate deadly force to prevent a perceived imminent and credible threat of serious bodily injury or death when non-deadly intermediate force responses were not

17

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

successful. [SUF #72.] The deadly force response by Deputy Martinez was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. [SUF #73.] The deadly force response was appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to Deputy Martinez at the moment force was used. [SUF #74.]

The San Bernardino Sheriff's Department is a POST certified law enforcement agency. [SUF # 75.] The Department's training records are audited by POST to ensure that minimum training standards are met. [SUF # 76.] The training programs of the San Bernardino County Sheriff's Department are appropriate and consistent with POST training. [SUF # 77.] Deputy Martinez was trained that lethal force may be used if there are no other options to gain compliance of an armed suspect who presents a threat of harming the deputies or civilians that may be in the area. [SUF # 78.] Deputy Martinez was trained that he can use deadly force only if the subject presents an immediate threat of death or serious bodily injury. [SUF # 79.] Deputy Martinez believed Decedent posed an imminent threat of severe bodily injury or death when he was within 20 feet of Deputy Martinez and began advancing toward Deputy Martinez [SUF # 80.] Deputy Martinez based his belief on prior training he received regarding armed suspects closing distance with officers known as the *Tueller* drill. [SUF # 81.] Deputy Martinez participated in the *Tueller* drill over 100 times. [SUF # 82.] Deputy Cervantes was trained that deadly force should only be used to defend against an imminent threat or immediate threat of death or serious bodily injury. [SUF # 83.] Deputy Cervantes was trained on the use of the less-lethal shotgun and understood that its effect was to stop threats faced by the deputies. [SUF # 84.] Deputy Deberg was trained that deadly force can only be used to defend against an imminent threat or immediate threat of death or serious bodily injury. [SUF # 85.] Deputy Deberg was trained on the use of less-lethal force including the 40mm launcher and was trained that it is appropriate to deploy it when there is a threat of bodily injury or active

18

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   resistance [SUF # 88.] As such, Defendants are entitled to summary judgment as a

2   matter of law, or alternatively, summary adjudication.

3   **III.   STANDARD ON SUMMARY JUDGMENT**

4       Federal Rules of Civil Procedure Rule 56 provides, in pertinent part, the

5   following:

6       (a) A party may move for summary judgment, identifying each claim or
        defense – or the part of each claim or defense – on which summary
7       judgment is sought. The court shall grant summary judgment if the
        movant shows that there is no genuine dispute as to any material fact and
8       the movant is entitled to judgment as a matter of law…

9       The moving party bears the initial burden of demonstrating the absence of any

10  genuine issues of material fact. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).)

11  The moving party can satisfy this burden by demonstrating that the nonmoving party

12  failed to make a showing sufficient to establish an element of his or her claim on

13  which that party will bear the burden of proof at trial. (*Id*. at 322-23.) Once the moving

14  party has met its initial burden, the nonmoving party must "go beyond the pleadings

15  and by her own affidavits, or by the 'depositions, answers to interrogatories, and

16  admissions on file' designate 'specific facts showing that there is a genuine issue for

17  trial.'" (*Id.* at 324.) If the non-moving party fails to make a sufficient showing, the

18  moving party is entitled to judgment. (*Id.* at 325.) Conclusory, speculative testimony

19  in affidavits is insufficient to raise genuine issues of fact. (*Thornhill Publ'g Co., Inc.

20  v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).) FRCP 56(a) provides that "[a] party

21  may move for summary judgment, identifying each claim or defense — ***or the part

22  of each claim or defense*** — on which summary judgment is sought" (emph. added).

23  **IV.   PLAINTIFFS' EXCESSIVE FORCE CLAIMS UNDER THE FOURTH**

24  **AMENDMENT CLAIMS ARE WITHOUT MERIT**

25      To succeed on a Section 1983 claim, a plaintiff must prove that her

26  constitutional rights were violated, and that the violation was caused by a person

27  acting under color of law. (*West v. Atkins*, 487 U.S. 4242 (1988).) In this case,

28  Plaintiffs assert that the officers used excessive force during the encounter with Mr.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

19

Nunez and deprived Mr. Nunez of his right to be free of unreasonable searches and seizures under the Fourth Amendment. This claim fails because there Plaintiffs cannot establish a violation of a constitutional right held by Mr. Nunez.

In *Graham v. Connor*, the United States Supreme Court held that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (*Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).) "[A]ll claims that law enforcement have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard..." (*Id.* at 395.)

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to **the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.**" (*Id.* at 396 (citation omitted); emphasis added.)

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (*Id.* at 396.) "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (*Id.* at 396-97.)

Under the fleeing felon doctrine set forth in *Tennessee v. Garner*, 471 U. S. 1, (1985), the Supreme Court explained that if a law enforcement officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

20

deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." (*Garner*, *supra*, 471 U.S. at 11-12; see also *Forrett v. Richardson*, 112 F.3d 416, 418-421 (9th Cir. 1997) (affirming directed verdict for officers under Garner's "fleeing felon" rule where armed burglar had fled through residential area after shooting victims, evaded pursuit for one hour, and failed to comply with commands before officers fired to stop him).)

In *Reynolds v. County of San Diego* 84 F.3d 1162 (9th Cir. 1996), a deputy was advised that Reynolds was at a gas station armed with a knife and acting strangely. The deputy saw Reynolds with a knife and ordered him to get on the ground and put his hands in the air. Reynolds got down on the ground and put the knife down next to his body. The deputy moved towards Reynolds while repeatedly telling him not to move. Reynolds suddenly sat up and grabbed the knife. The deputy moved behind Reynolds, put his knee in his back and ordered him to drop the knife. Reynolds twisted and swung the knife towards the deputy, and the deputy fired his weapon, killing Reynolds. The court found the deputy's use of force was objectively reasonable.

Based on the totality of the circumstances, Deputy Martinez acted objectively reasonable in using deadly force against Mr. Nunez. As provided above, Deputies responded to the scene because Ms. Benitez made a 911 call and informed dispatch that Mr. Nunez: (1) had physically assaulted Andrew Nunez, [SUF # 2] (2) was under the influence of narcotics [SUF # 6], and (3) there were firearms in the home whose location was unknown until after the lethal force encounter [SUF # 7, 18]. Once the deputies arrived on scene, they then made repeated attempts to de-escalate with Mr. Nunez [SUF # 15, 17] who continued to refuse lawful commands to drop the chain he was wielding [SUF # 26] and continued to threaten the deputies and remain aggressive despite their efforts to de-escalate [SUF # 24, 27]. The officers tried to use less-lethal

21

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  force in an attempt to apprehend Mr. Nunez unharmed, but Mr. Nunez would not

2  comply and **continued to advance toward the officers while armed with the chain.**

3  [SUF #28-45.]

4      At the time of the shooting, Mr. Nunez was armed with the metal chain and

5  was no further than twenty feet from Deputy Martinez [SUF # 51-53.] Deputy

6  Martinez was unable to safely take cover or seek concealment because of the length

7  of the chain and Mr. Nunez's prior use of the chain to strike the vehicles near the

8  shooting area. [SUF # 50.] Deputy Martinez believed that Mr. Nunez was going to try

9  and strike him at the time of the lethal force encounter or that he would use the chain

10 to inflict great bodily injuries to himself or the other officers on scene. [SUF # 54,

11 57.] The deadly force response by Deputy Martinez was appropriate and reasonable

12 to prevent a perceived imminent and credible threat of serious bodily injury or death.

13 [SUF # 73.] Based on these circumstances, it is clear that the officers acted in an

14 objectively reasonable manner when using force against Mr. Nunez.

15 **V.  PLAINTIFFS § 1983 CLAIMS UNDER THE FOURTEENTH**

16 **AMENDMENT ARE WITHOUT MERIT**

17     Here, Plaintiffs make claims for Denial of Medical Care and Interference with

18 Familial Relations pursuant to the Fourteenth Amendment. The Amendment states

19 in relevant part that "[n]o State shall ... deprive any person of life, liberty, or

20 property, without due process of law." U.S. Const. amend. XIV, § 1. A claimant

21 asserting that police officers violated this Fourteenth Amendment right during a

22 police shooting must show that the officers' conduct "shocks the conscience." *Porter*

23 *v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). There are two tests used to decide

24 whether officers' conduct "shocks the conscience"; which test applies turns on

25 whether the officers had time to deliberate their conduct.

26     The deliberate-indifference test applies if the situation at issue "evolve[d] in a

27 time frame that permits the officer to deliberate before acting." *Porter*, 546 F.3d at

28 1137. Deliberation is not possible if the officers "encounter[ed] fast paced

22

circumstances presenting competing public safety obligations." *Id.* at 1139. Deliberation in this context "should not be interpreted in the narrow, technical sense." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Here, the deputies did not have sufficient time to deliberate before acting. The deputies had already been attempting unsuccessfully to de-escalate with Decedent prior to the less-lethal and lethal force encounters, and then Decedent suddenly rushed the deputies with no warning after the less-lethal force failed to stop him. [SUF # 15, 17, 26-45.]

On the other hand, in scenarios such as the one faced by the Deputies on March 29, 2022, the purpose-to-harm test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Porter,* 46 F.3d at 1137. This test requires "a more demanding showing that [the officers] acted with a purpose to harm [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives can include "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Illegitimate objectives include "when the officer `had any ulterior motives for using force against' the suspect, such as `to bully a suspect or "get even,"' or when an officer uses force against a clearly harmless or subdued suspect." *Id*. (citations omitted) (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson*, 610 F.3d at 554).

Here, the deputies had the legitimate objective of attempting to arrest Mr. Nunez in connection with the battery reported by Ms. Benitez and Andrew Nunez. [SUF # 1, 2, 11.] The deputies attempted to accomplish their legitimate objective by making repeated attempts to de-escalate with Mr. Nunez [SUF # 15, 17] who continued to refuse lawful commands to drop the chain he was wielding [SUF # 26] and continued to threaten the deputies and remain aggressive despite their efforts to de-escalate [SUF # 24, 27]. The officers then tried to use less-lethal weapons in an attempt to apprehend Mr. Nunez unharmed, but Mr. Nunez would not comply and continued to advance toward the officers while still armed with the metal chain.

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  [SUF #28-45.] Finally, Deputy Martinez was left with no choice but to make a snap
2  judgment and use lethal force in light of less-lethal force not being successful and
3  Mr. Nunez posing a threat to Deputy Martinez and the other officers when he
4  charged at Deputy Martinez. [SUF # 46, 47, 57.] Thereafter, the deputies
5  immediately began rendering aid [SUF # 59] and once there was no imminent
6  danger to medical personnel, San Bernardino Fire medical personnel already staged
7  near the incident scene responded and continued to render additional aid. [SUF #
8  60]. Accordingly, the actions of Defendants do not rise to the level necessary to
9  "shock the conscience" and Defendants are entitled to Summary Judgment of these
10 claims.

11 **VI.   PLAINTIFF UNCONSTITUTIONAL CUSTOM OR POLICY AND**
12 **FAILURE TO TRAIN CLAIMS FAIL AS A MATTER OF LAW**
13 **A.   The Department Maintains Lawful Customs and Policies in**
14 **Compliance with POST Guidelines**

15 Local governments may be directly liable for unconstitutional policies or
16 widespread practices if they are the moving force behind a constitutional violation.
17 *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978). To
18 impose municipal liability under Section 1983 based on a policy or custom, Plaintiff
19 must show that: (1) he possessed a constitutional right of which he was deprived; (2)
20 the municipality had a policy; (3) the policy amounted to deliberate indifference to
21 his constitutional rights; and (4) the policy was the moving force behind the
22 constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.
23 2011) (citing *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th
24 Cir. 1997) ). Municipal liability under § 1983 may be based on (1) an express
25 municipal policy, such as an ordinance, regulation, or policy statement; (2) a
26 "widespread practice that, although not authorized by written law or express
27 municipal policy, is 'so permanent and well settled as to constitute a custom or
28 usage' with the force of law"; or (3) the decision of a person with "final

24

policymaking authority." See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–68 (1970) ); see also *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986).

A single instance of mistreatment does not plausibly allege a practice of any duration, frequency, or consistency as required under *Monell*. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct had become a traditional method of carrying out policy.").

It is alleged that the County and its policy makers have a custom and practice of approving unconstitutional use of excessive force, including the use of unlawful deadly force. Plaintiffs cannot meet their burden of pointing to any such policy or pervasive practices.  Plaintiffs have not produced a single piece of evidence of any such custom or practice. The County has no such policy. The facts are that the County is in compliance with California regulations applicable to law enforcement agencies. The San Bernardino Sheriff's Department is a POST certified law enforcement agency. [SUF # 75.] The Department's training records are audited by POST to ensure minimum training standards are met. [SUF # 76.] The training programs of the San Bernardino County Sheriff's Department are appropriate and consistent with POST training. [SUF 77.] Accordingly, Plaintiffs will be unable to establish their claim of unconstitutional custom or policy and summary judgment should be granted.

**B.      The Deputies are Trained Pursuant to POST Standards**

Plaintiff's failure to train claims fail for largely similar reasons.

Deputy Martinez testified that he was trained that the use of deadly force should only be used if there is an objectively reasonable, immediate or imminent threat of death or serious bodily injury to himself or others. [SUF # 78.] He was also trained that lethal force may be used if there are no other options to gain compliance

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1 of an armed suspect who presents a threat of harming the officers or civilians that

2 may be in the area. [SUF # 79.] Deputy Martinez believed Mr. Nunez posed an

3 imminent threat of severe bodily injury or death at the time of the lethal force

4 encounter based on his training which included practicing the *Tueller* drill over 100

5 times. [SUF # 80-82.] Deputies Cervantes and Deberg received similar training, and

6 were also trained in the use of the less-lethal force weapons they deployed prior to

7 Deputy Martinez being forced to use lethal force against Decedent. [SUF # 83-86.]

8 Deputies Cervantes and Deberg deployed their less-lethal weapon systems in

9 compliance with their training, but the less lethal systems failed to stop Mr. Nunez

10 who then charged at Deputy Martinez. [SUF # 30, 41, 46.]

11       Plaintiffs have no evidence that any policy or practice – or lack thereof –

12 caused Deputies to shoot armed suspects when there was no immediate threat to the

13 safety of the officers or others. Therefore, summary judgment should be granted.

14 **VII.** **THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY**

15 **BECAUSE THEIR USE OF DEADLY FORCE WAS OBJECTIVELY**

16 **REASONABLE**

17       **A.**    **The Deputy Defendants Are Entitled to Qualified Immunity Because**

18             **Their Acts Did Not Violate 'Clearly Established Law'**

19       Even if Plaintiffs could prove a Fourth Amendment or Fourteenth Amendment

20 violation with respect to the shooting, the Deputy Defendants are entitled to qualified

21 immunity.

22       Qualified immunity presents a two-part inquiry. First, the court must ask,

23 "[t]aken in the light most favorable to the party asserting the injury, do the facts

24 alleged show the [official's] conduct violated a constitutional right?" (*Saucier v. Katz*,

25 533 U.S. 194, 201 (2000).) If the answer is yes, then the court must determine whether

26 the right was clearly established at the time of the alleged violation. (*Id*.) "Plaintiffs

27 'bear[ ] the burden of proving that the right allegedly violated was clearly established

28 at the time of the official's allegedly impermissible conduct.'"*M.H. v. Cnty. of*

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

26

*Alameda*, 62 F. Supp. 3d 1049, 1093–94 (N.D. Cal. 2014) (internal citation omitted)

As to the second prong of the analysis, the Supreme Court has emphasized that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." (*Saucier*, 533 U.S. at 202; *see also Nader v. Blackwell*, 545 F.3d 459, 473 (6th Cir. 2008).) " 'An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, (2018))." (*Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020). In this way, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Davis v. Scherer*, 468 U.S. 183, 196 (1984).)

### 1. The Facts Alleged Do Not Show the Deputy Defendants' Conduct Violated a Constitutional Right

As provided above, the Deputies arrived on scene as a result of a 911 call placed by Ms. Benitez after Mr. Nunez assaulted his brother Andrew Nunez while holding a metal chain. [SUF #1, 2, 11.] The responding officers were also informed that Mr. Nunez had not slept in several days, he appeared to be under the influence of narcotics, and that there were firearms on the premises whose exact locations were unknown. [SUF # 6, 7, 8, 12, 13, 17, 18] On the day of the shooting, the responding officers spent over one hour trying to de-escalate with Decedent and responding officers issued numerous lawful orders to drop the chain Mr. Nunez was holding. [SUF # 15, 25, 26, 27.] Mr. Nunez refused to comply with officers and ignored requests to drop the chain. [Id.] Mr. Nunez also ignored further orders and charged the deputies immediately prior to the use of less-lethal and lethal force against him. [SUF 28-45.]

In light of this refusal, the less-lethal intermediate force responses used were reasonable to overcome the resistance of Mr. Nunez, to effect the arrest of Mr. Nunez,

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

27

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1   and to prevent the immediate and credible threat posed by Mr. Nunez. [SUF # 71.]

2   Similarly, the deadly force response by Deputy Martinez was appropriate and

3   reasonable to prevent a perceived imminent and credible threat of serious bodily

4   injury or death. [SUF #72-73.] The deadly force response was appropriate and

5   consistent with current law enforcement training standards in consideration of the

6   "totality of circumstances" presented to Deputy Martinez at the moments force was

7   used. [SUF #74.]

8          Therefore, the practices used by the Deputy Defendants were proper and no

9   reasonable law enforcement officer would believe the use of deadly force would

10  violate a citizens constitutional rights when the citizen is armed with a metal chain

11  while under the influence of narcotics and charging directly at the officers after

12  making repeated threats to harm them.

13         **2.    No Constitutional Right to Not Cooperate with Law**

14                 **Enforcement's Lawful Arrest**

15         As provided above, the Deputy Defendants' use of deadly force was proper and

16  reasonable. Deputies were on scene responding to a call for assistance placed after

17  Mr. Nunez assaulted his brother Andrew Nunez while armed with the metal chain.

18  [SUF # 1, 2, 11.] The responding officers were also informed that Mr. Nunez had not

19  slept in several days, he appeared to be under the influence of narcotics, and that there

20  were firearms on the premises whose exact locations were unknown. [SUF # 6, 7, 8,

21  12, 13, 17, 18]. [SUF #16.] On the day of the shooting, the officers tried to use less-

22  lethal weapons in an attempt to apprehend Mr. Nunez unharmed, but Mr. Nunez

23  would not comply. [SUF #29, 30, 42, 43, 44, 45, 46.] Officers also gave numerous

24  lawful orders to drop the chain both before and during the less-lethal and lethal force

25  encounters. [SUF #26, 28]. The Deputy Defendants acted in an objectively reasonable

26  manner when using deadly force in light of these circumstances and a reasonably

27  competent official would have concluded that the actions taken were lawful. As such,

28  Deputy Defendants are entitled to qualified immunity.

## VIII. <u>PLAINTIFFS' CLAIM UNDER THE BANE ACT FAILS BECAUSE THE DECEDENT DID NOT HAVE A CONSTITUTIONAL RIGHT TO EVADE ARREST</u>

The elements of a cause of action for violation of civil rights under *Civil* Code, section 52.1 are: (1) **the defendant officers interfered with or attempted to interfere with the plaintiffs' constitutional rights**; (2) the plaintiff reasonably believed that if he exercised his constitutional rights, the officers would commit violence against him *or* that the officers injured the plaintiff to prevent him from exercising his constitutional rights; (3) that plaintiff was harmed; and (4) the officers' conduct was a substantial factor in causing the plaintiff's harm. (See CACI 3025.)

As stated by the California Supreme Court, "[t]he Legislature enacted [Civil Code] section 52.1 to stem a tide of hate crimes." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 338.) *Civil Code*, section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *(Id.* at 334.)

To obtain relief under *Civil Code*, section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiffs' constitutional rights by the requisite threats, intimidation, or coercion. (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841-843.) The word "interferes" as used in the Bane Act means "violates." (*See Jones, supra,* 17 Cal.4th at 338 [California Supreme Court equates interfere" with "violate"]; *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077 [same].)

As provided above, there is no Constitutional right to not cooperate with law enforcement's lawful arrest. The officers on scene had probable cause to arrest Mr. Nunez in light of his prior physical assault of Andrew Nunez and the 911 call placed by Ms. Benitez. [SUF # 1, 2, 11.] On the day of the shooting, the officers tried to use less-lethal weapons in an attempt to apprehend Mr. Nunez unharmed, but Mr. Nunez would not comply. [SUF #28-45.] Mr. Nunez also refused to drop the metal chain he was wielding and he was at most twenty (20) feet away from Deputy Martinez at the

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  time he was shot. [SUF # 51-52.] Deputy Martinez only used deadly force when Mr.

2  Nunez refused to cooperate and posed a further threat to himself, the public, and the

3  officers on scene. [SUF # 54, 57.] As such, the Deputy Defendants did not violate Mr.

4  Nunez's Constitutional rights by using lethal or less-lethal force and summary

5  judgment should be granted.

6  **IX.   THE CLAIMS FOR BATTERY, NEGLIGENCE, AND NEGLIGENT**

7  **INFLICTION OF EMOTIONAL DISTRESS LACK MERIT**

8     **A.    Plaintiffs Cannot Establish any Negligence or Battery by the**

9          **Officers**

10       The state claims for battery and negligence fail as a matter of law because the

11  deadly force used by the Deputy Defendants was reasonable under the circumstances.

12  For the same reasons that no constitutional violations were committed, no state torts

13  were committed, so the negligence and battery claims fail as a matter of law. (See

14  *Martinez v. County of Los Angeles* (1996) 47 Cal. App. 4th 334, 349-50.)

15       Although the scope of the circumstances that may be considered under a

16  negligence claim arising from a peace officer's use of force is broader than some

17  federal courts use when evaluating Fourth Amendment excessive force claims -

18  regardless of whether the California law claim is for battery, assault, negligence, or

19  wrongful death - to evaluate the reasonableness of the officer's conduct, courts must

20  apply the Graham reasonableness standard. (See *Hayes v. Cnty. of San Diego* (2013)

21  57 Cal. 4th 622, 632 (citing Graham in the pre-shooting negligence claim context, "as

22  the nation's high court has observed, "[t]he 'reasonableness' of a particular use of force

23  must be judged from the perspective of a reasonable officer on the scene, rather than

24  with the 20/20 vision of hindsight.");  *Yount v. City of Sacramento* (2008) 43 Cal.4th

25  885, 902 (holding that the same reasonableness standards for Fourth Amendment

26  claims apply to battery); accord *Martinez*, 47 Cal.App.4th at 349-350 (applying

27  Graham to police battery and/or wrongful death claims); *Edson v. City of Anaheim*

28  (2009) 63 Cal.App.4th 1269, 1272-1273 (same); *Brown v. Ransweiler* (2009) 171

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    Cal.App.4th 516, 525 (same).

2        To the extent Plaintiffs base the negligence claim on pre-shooting tactics,

3    liability can only arise if the tactical conduct and decisions leading up to the use of

4    deadly force show, as part of the totality of the circumstances, that the use of deadly

5    force was unreasonable. (*Hayes*, *supra*, 57 Cal. 4th at 626.)

6        Additionally, California law holds that a peace officer who has reasonable

7    cause to believe that the person to be arrested has committed a public offense may use

8    reasonable force to effect the arrest, to prevent escape, or to overcome resistance. (See

9    Cal. Penal Code § 835a; *Edson*, *supra*, 63 Cal.App.4th at 1272-1273.) Furthermore,

10   in California, a person who should know that they are being seized by a police officer

11   is duty bound to refrain from resisting such seizure, even if the seizure itself is

12   unlawful. (See Cal. Penal Code § 834(a); Cal. Penal Code § 836.5(b); *People v. Curtis*

13   (1969) 70 Cal.2d 347, 357.)

14       Here, as provided above, on the day of the shooting, Mr. Nunez refused to

15   comply with officers and ignored repeated requests to drop the chain. [SUF # 26, 28.]

16   Furthermore, Mr. Nunez knew he was being seized by police officers. The officers on

17   scene spent over an hour trying to de-escalate with Mr. Nunez before he charged the

18   officers and forced them to respond with less lethal and lethal force. [SUF #15, 17,

19   25, 26, 27, 28-58.] Because the Deputy Defendants' conduct was objectively

20   reasonable, they cannot be liable on the state claims for negligence and battery.

21   Accordingly, there also can be no basis for respondeat superior liability against the

22   County (*Gov. Code* § 815.2.) for these claims.

23       **B.    The NIED Claim also Fails As A Matter Of Law**

24   "[A] plaintiff may recover damages for emotional distress caused by

25   observing the ***negligently inflicted injury of a third person*** if, but only if, said

26   plaintiff: (1) is closely related to the injury victim; (2) is present at the scene

27   of the injury producing event at the time it occurs and is then aware that it is

28   causing injury to the victim; and (3) as a result suffers serious emotional

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

31

distress" (*Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989))(emphasis added).

California courts have described the second *Thing* requirement as mandating that the plaintiff be "a percipient witness to the traumatic incident and was contemporaneously aware the event was causing injury to the victim." *Ra v. Superior Court*, 154 Cal. App. 4th 142, 148-49 (2007); *Golstein v. Superior Court, 223 Cal. App. 3d 1415, 1427* (1990) (recovery for emotional distress "should be limited by [the] more stringent definition of the requirement of contemporaneous observance of event and injury.").

Preliminarily, Andrew Nunez's claim for NIED should be barred because there was no negligence on the part of the officers during the encounter with Mr. Nunez as discussed at length above. Negligence in the context of officers conduct during lethal force incidents is evaluated under the same *Graham* factors used to analyze reasonableness of police activity under the Fourth Amendment. That analysis as set forth above has already established the officers conduct did not exceed the boundaries of "reasonable" conduct as outlined in *Graham* meaning their conduct was not negligent. Because Plaintiffs cannot establish any negligence on the part of any officer involved in this action, the claim is facially defective.

Even if Plaintiffs were able to establish negligence on the part of the officers (they cannot), Plaintiffs have already essentially admitted that Andrew Nunez was unable to hear the actual lethal shots fired at Mr. Nunez with the requisite specificity necessary to support a claim for NIED. Andrew Nunez testified at his deposition that at the time of the lethal force incident, he was not present at the scene but was "three houses up" [SUF # 63.] meaning that Andrew Nunez was not near the incident scene at the time of the lethal force incident. Additionally, the properties on 9th Avenue are all located on large lots estimated to be acres in size by Ms. Benitez during her deposition, [SUF # 64] meaning that Andrew Nunez would have been well outside the incident area at the time of the lethal force incident.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DEFENDANTS MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

1  Finally, due to the rapidly escalating nature of the encounter between Mr.

2  Nunez and Defendants, Andrew Nunez would not have been able to determine

3  whether the gunshots he allegedly heard were from Deputy Martinez discharging his

4  service weapon or from Deputies Deberg and Cervantes deploying less-lethal force

5  against Mr. Nunez immediately prior to the lethal force encounter. This ambiguity

6  means Andrew Nunez cannot identify the shots with sufficient particularity

7  necessary to support his claim for NIED. Plaintiffs' own expert, Scott DeFoe,

8  confirms in his expert report that the shots from Deputy Martinez service weapon

9  and the shots from the less-lethal weapons occurred immediately in succession and

10  happened over a span of approximately 2-3 seconds. [SUF # 65.] Accordingly,

11  Defendants respectfully request the Court grant summary judgment against Andrew

12  Nunez's NIED claim.

13  **X.  CONCLUSION**

14  Defendants respectfully request that this Court grant the instant motion for

15  summary judgment or, in the alternative, Defendants seek partial summary judgment

16  as to each claim.

17  DATED: April 9, 2024          WESIERSKI & ZUREK LLP

18

19

20  By: _____

21  CHRISTOPHER P. WESIERSKI
    MICHELLE R. PRESCOTT

22  Attorneys for Defendants, COUNTY OF SAN
    BERNARDINO, CITY OF HESPERIA

23  MICHAEL MARTINEZ, SABRINA
    CERVANTES and JEREMY DEBERG

24

25

26

27

28

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

I2106605-1 SBD-0015