Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Michelle R. Prescott [Bar No. 262638]
  *mprescott@wzllp.com*
Brett A. Smith [Bar No. 322707]
  *bsmith@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSA NUNEZ, individually and as successor-in-interest to Decedent, Anthony Nunez; ANTHONY NUNEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nunez; and, ANDREW NUNEZ, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive, <br><br> Defendants. | Case No. 5:22-cv-1934-SSS(SPx) <br><br> **DECLARATION OF EDWARD T. FLOSI IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> *[Filed Concurrently with Motion for Summary Judgment; Separate Statement; Declarations of Michelle R. Prescott, Corey Lefever, Jeremey Deberg, Michael Martinez, Jonathon Campos; (Proposed) Order]* <br><br> Date:      May 31, 2024 <br> Time:      2:00 p.m. <br> Courtroom: 2 <br><br> Trial Date:      09/23/2024 |

1

I, Edward T. Flosi, declare as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I am a retired police sergeant from San Jose, California. I have worked several assignments including field training program, training unit, narcotics, special operations - K9 handler, research and development, and custody facility supervisor. I have a Master of Science degree from California State University Long Beach, A Bachelor of Science from San Jose State University. I am also a Certified Force Analyst through the Force Science Research Center.

3. During my career in law enforcement, I participated in numerous: (1) fugitive apprehensions; (2) arrests; (3) de-escalation tactic plans; and (4) vehicle containments.

4. During my career in law enforcement, participated in over twenty (20) fugitive apprehensions as a police officer at the San Jose Police Department. I also participated in over one hundred (100) warrant arrests as a police officer at the San Jose Police Department.

5. I have qualified as an expert witness in state and federal courts in police practices/force options, including in the area of search and seizure, and I am the president of Justitia Consulting and the principal instructor for PROELIA Defense and Arrest Tactics. A true and correct of my C.V. is attached as **Exhibit A**.

6. I was a defensive tactics instructor (California POST Learning Domain 33) at the South Bay Regional Training Consortium and/or the San Jose Police Department Academy for approximately twelve years. In my capacity as a defensive tactics instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to arrest and control techniques and defensive tactics, including in the area deadly force. I have

attended an 80-hour California POST approved Defensive Tactics Instructor course to become a POST certified Defensive Tactics Instructor. For a period of approximately seven years, I acted as a lead instructor for Defensive Tactics for both organizations. In my capacity as a lead instructor, I have assisted in the instruction of two Defensive Tactics Instructor courses and had been the primary lead instructor in four other Defensive Tactics Instructor courses.

7. I was a lead instructor for Use of Force — cognitive (California POST Learning Domain 20) at the South Bay Regional Training Consortium and/or the San Jose Police Department Academy for approximately nine years. In my capacity as a Use of Force — cognitive instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to use of force. I have been directly involved as a California POST committee member in two prior revisions of the Learning Domain 20 Workbook and participated remotely in the 2015 revision.

8. I have been a California POST approved Force Options Simulator (FOS) instructor since January 2000. In order to become a FOS instructor, I attended the 40-hour California POST approved FOS Instructor Course. I was a Force Options Simulator (FOS) Instructor for the San Jose Police Department starting in the year 2000 when I was designated as the lead instructor for the San Jose Police Department FOS program. Shortly after becoming the lead instructor, I was asked by California POST to become the lead instructor for the FOS Instructor course for the Northern California Regional Skills Centers. In my capacity as a FOS instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to use of force. I retained this title until my promotion in September 2001. I continued to teach the FOS program for South Bay Regional Training Center for several years after my promotion.

9. I was an active member of the California POST FOS committee from 2000 up until my retirement. This committee met approximately every six months to

discuss training trends and use of force issues within the curriculum. I have been directly involved in developing the past and present curriculum for the California POST FOS program. I was the supervisor for the San Jose Police Department FOS program from March 2009 to December 2011.

10. The San Bernardino Sheriff's Department is a POST certified law enforcement agency.

11. The training records of the San Bernardino Sheriff's Department are audited by POST to ensure that minimum training standards are met.

12. I have reviewed the training programs of the San Bernardino County Sheriff's Department, including those use of force and lethal force encounters.

13. The training programs of the San Bernardino County Sheriff's Department are appropriate and consistent with POST training.

14. I have been retained by defense counsel as an expert witness in the civil action of *Rosa Nunez et al. v. County of San Bernardino et al*. On March 8, 2024 I submitted my Initial Report in this matter. The following information and opinion was part of my Initial Report.

15. I have reviewed documents and evidence produced in this case and have found no evidence to substantiate a claim involving or surrounding this incident that the San Bernardino County Sherriff's Department maintains any Unconstitutional Custom, Policies, or Practice. San Bernardino County Sherriff's Department and its deputies, officers, and/or detectives: (1) had a legitimate law enforcement purpose to contact and detain Anthony Nunez; (2) used pre-force tactics that were appropriate and consistent with current law enforcement training and practices; (3) did not have independent or objective evidence to support a belief by the deputies that Nunez's actions were caused by a mental health issue; (4) had a legitimate law enforcement purpose to arrest Anthony Nunez; (5) properly attempted to de-escalate the incident prior to responding with deadly force; (6) used less-lethal intermediate force responses that were reasonable to overcome the resistance of Nunez, to effect the

arrest of Nunez, and to prevent an immediate and credible threat; and (7) used an appropriate deadly force to prevent a perceived imminent and credible threat of serious bodily injury or death when non-deadly intermediate force responses were not successful.

16. Mr. Nunez was barricaded inside the home with civilians and deputies were aware of the presence of firearms on the premises when they responded. Preventing an armed subject from escaping into the community or harming hostages are high priority to law enforcement. De-escalation is a goal. It is a desired end. A preferred result. It is not a series of words or an algorithmic formula which simply needs to be plugged into any irrational interaction. There is no one correct way to the end goal of de-escalation. The non-deadly force responses (40mm launcher, less-lethal shotgun, and Taser) by the deputies were appropriate and reasonable to; (1) overcome the resistance of Mr. Nunez, and (2) to effect the arrest of Mr. Nunez.

17. It must be clearly noted that the situation was primarily being driven by the actions and behaviors of Mr. Nunez and the officers were reacting to such actions and behaviors. The officers' repeated attempts to control and de-escalate the situation were not successful as Mr. Nunez appeared unwilling to participate in the de-escalation process and maintained his resistant and eventually aggressive posture. Deputies spent over an hour attempting to de-escalate with Mr. Nunez verbally and he refused to obey lawful commands to drop his weapon. The less-lethal force responses used were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moment force was used.

18. Police officers are trained that they need not use lesser intrusive force options that may be ineffective or not feasible before using a reasonable force option for the facts and circumstances. Considering all possible options may be difficult and even impossible in high-risk environments due to the time pressure, task complexity, and environmental uncertainty. In these types of situations officers often must rely on

intuitive decision making during potential use of force encounters.

19. Reverence for all life is the foundation on which the use of deadly force rests. This reverence is not solely directed at the subject, it includes the life of the officer him/herself and of others. One of the primary objectives in using deadly force is to immediately stop the subject from continuing their actions. Officers are trained that they may reasonably use deadly force when confronted by a perceived armed suspect in close proximity whose actions indicate an intent to attack. An officer is not required to wait in order to find out if the suspect will, in fact, injure or kill the officer.

20. At the time of the lethal force encounter Mr. Nunez had a long metal chain with him and was rapidly closing distance toward multiple deputies while still holding the chain. The deadly force response by Deputy Martinez was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. The deadly force response was appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments force was used.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 8, 2024, at Fullerton, California.

Edward T. Flosi