# EXHIBIT B

ROSA NUNEZ, ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.
Corey LaFever on 02/12/2024

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ROSA NUNEZ, individually, ANTHONY   )
     NUNEZ, JR., individually and as     )
 5   successor-in-interest to Decedent,  )
     Anthony Nunez and ANDREW NUNEZ,     )
 6   individually,                       )
                                         )
 7                Plaintiffs,            )
                                         )
 8          vs.                          ) Case No.
                                         ) 5:22-CV-01934-SSS-SPx
 9   COUNTY OF SAN BERNARDINO, CITY OF   )
     HESPERIA, MICHAEL MARTINEZ, SABRINA )
10   CERVANTES, JEREMY DEBERG, JONATHAN  )
     CAMPOS, and DOES 5-15, inclusive,   )
11                                       )
                  Defendants.            )
12   _____)

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                    COREY LA FEVER

16               MONDAY, FEBRUARY 12, 2024

17

18

19

20

21

22   Reported Stenographically By:

23   Jinna Grace Kim, CSR No. 14151

24   Job No.:  47724

25
```

ROSA NUNEZ, ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.
Corey LaFever on 02/12/2024

Page 2

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ROSA NUNEZ, individually, ANTHONY    )
     NUNEZ, JR., individually and as      )
 5   successor-in-interest to Decedent,   )
     Anthony Nunez and ANDREW NUNEZ,      )
 6   individually,                        )
                                          )
 7                  Plaintiffs,           )
                                          )
 8             vs.                        ) Case No.
                                          ) 5:22-CV-01934-SSS-SPx
 9   COUNTY OF SAN BERNARDINO, CITY OF    )
     HESPERIA, MICHAEL MARTINEZ, SABRINA  )
10   CERVANTES, JEREMY DEBERG, JONATHAN   )
     CAMPOS, and DOES 5-15, inclusive,    )
11                                        )
                    Defendants.           )
12   _____)

13

14         The remote videoconference deposition of COREY LA

15   FEVER, taken on behalf of the Plaintiffs, beginning at 2:07

16   p.m., and ending at 4:01 p.m., on Monday, February 12, 2024,

17   before Jinna Grace Kim, Certified Stenographic Shorthand

18   Reporter No. 14151.

19

20

21

22

23

24

25
```

ROSA NUNEZ, ET AL. vs COUNTY OF SAN BERNARDINO, ET AL.
Corey LaFever on 02/12/2024

Page 3

```
 1   APPEARANCES OF COUNSEL:

 2
     For the Plaintiffs:
 3
               LAW OFFICES OF DALE K. GALIPO
 4             BY:  DALE K. GALIPO, ESQ.
               BY:  MARCEL F. SINCICH, ESQ.
 5             BY:  BENJAMIN S. LEVINE, ESQ.
               21800 Burbank Boulevard, Suite 310
 6             Woodland Hills, California 91367
               Tel:  818-347-3333
 7             Fax:  818-347-4118
               E-mail:  dalekgalipo@yahoo.com
 8             E-mail:  msincich@galipolaw.com
               E-mail:  blevine@galipolaw.com
 9

10             CARRILLO LAW FIRM, LLP
               BY:  PEREZ, ESQ.
11             1499 Huntington Drive, Suite 402
               South Pasadena, California 91030
12             Tel:  626-799-9375
               Fax:  626-799-9380
13             E-mail:  mc@carrillofirm.com

14
     For the Defendants:
15
               WESIERSKI & ZUREK, LLP
16             BY:  BRETT SMITH, ESQ.
               29 Orchard Road
17             Lake Forest, California 92630
               Tel:  949-756-0517
18             Fax:  949-756-0517
               E-mail:  bsmith@wzllp.com
19

20   Also Present:  Mahadhi Corzano, Esq., Fujii Law Firm

21

22

23

24

25
```

1  were on route?
2     A.   It was a few minutes.  I don't recall how much time,
3  but I do recall them being on-scene and getting us some
4  updates over the radio before I went in route.
5     Q.   So your recollection is that there -- in the few
6  minutes between the time that Martinez and Campos had advised
7  that they were on route to the scene and you headed to the
8  scene, Martinez and Campos had arrived and had begun to
9  provide updates?
10    A.   Yes.
11    Q.   What additional information did you receive via the
12 radio between the time you heard that Martinez and Campos
13 were on route to the scene and the time that you yourself
14 departed to head to the scene?
15    A.   Could you rephrase that or repeat the question?
16    Q.   Sure.  Between when you heard over the radio that
17 the first two deputies were on their way and the time that
18 you yourself headed on your way to the scene, what new
19 information did you receive?
20    A.   There was information that a handgun was at the
21 incident location, and that the subject possibly had access
22 to it.  But it was unclear how he might have access.
23         It was just that the there was a handgun at the
24 scene, and I believe there was an update by the deputies
25 before I went that he was refusing to come out, and he had a

1  possible chain in his hand.
2  Q.  Did you at any point until you left to head to the
3  scene receive any information regarding who the suspect
4  was?
5  A.  I don't recall if they provided that information
6  over the radio.  I definitely learned of that information
7  when I got on-scene, but I don't recall whether that happened
8  beforehand or not.
9      I would say common practice is yes, that information
10 was already available from the deputies on-scene or the
11 reporting party when called into dispatch.
12 Q.  Approximately how long did it take you from the time
13 you left to head to the scene to arrive there?
14 A.  Just a few minutes.  I would guess between three and
15 five minutes.  It's not that far away from where I was.
16 Q.  Did you receive any additional information that you
17 haven't told me about prior to your arrival on the scene?
18 A.  Not that I recall.
19 Q.  Where did you park your vehicle when you arrived if
20 you parked your vehicle?
21 A.  I parked my vehicle behind the units that were
22 already on-scene.  They were probably -- and where I parked
23 was probably just northeast of the incident location.
24 Q.  Was --
25 A.  Along the street.  Sorry.

Page 24

```
 1   look at my report to refresh your memory, but I don't believe
 2   those steps specific was in there, that specific detail was
 3   in there.
 4       Q.   Approximately how long did you speak with Anthony
 5   for at that moment?
 6       A.   It was probably also approximately five minutes.
 7            We went back and forth.  Some of the times he got
 8   frustrated with me.  He was not willing to listen or
 9   cooperate with our commands, our requests, and the dialogue
10   between he and I also got kind of bumped around between also
11   Deputy Campos and Deputy Martinez during about four minutes,
12   four or five.
13       Q.   What commands or requests did you make to or of
14   Anthony during the approximately five minutes that you were
15   standing there at the doorway?
16       A.   To come outside.  I know that it was to get him away
17   from his current situation, get him away from the chain, have
18   him come out so we can talk to him, away from -- to separate
19   him from the victims and away from the residence which we
20   believed at the time that there was a handgun in the
21   residence that he had access to.
22            So we were trying to get him away from those things.
23       Q.   And at some point after about that five minutes or
24   so, did you leave the doorway area?
25       A.   Yes.
```

```
 1   of the firearm relayed in some manner to the deputies who
 2   were at the property?
 3        A.   I believe so.  I believe I advised dispatch over the
 4   radio of the information.  Whether it was me or somebody
 5   else, but I believe that was -- that information was
 6   provided.
 7        Q.   So your understanding is that at around that time
 8   Deputies Campos and Martinez would have been updated to the
 9   fact that there was not a gun inside the house; is that
10   correct?
11        A.   They were updated that the -- about the information
12   that the gun was possibly moved, but there was no
13   confirmation that that gun was, in fact, not accessible at,
14   you know, we were able -- unable to confirm that specific
15   detail.
16             MR. SMITH:  And I'll interpose my objection that the
17   form of the question, and it's been answered.
18             So go ahead --
19             THE WITNESS:  Sorry about that.
20             MR. SMITH:  That's okay.
21   BY MR. LEVINE:
22        Q.   Did you at some point -- sorry.
23             Hang on.  Scratch that.
24             At the time that you formulated a plan to evacuate
25   the other residents of the household besides Anthony, did you
```