# EXHIBIT F

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

```
ROSA NUNEZ, individually and      )
as successor-in-interest to       )
Decedent, Anthony Nunez;          )
ANTHONY NUNEZ, JR.,               )
individually and as               ) Case No.
successor-in-interest to          ) 5:22-cv-1934-SSS(
Decedent, Anthony Nunez; and,     ) SPx)
ANDREW NUNEZ, individually,,      )
                                  )
              Plaintiffs,         )
                                  )
V.                                )
                                  )
                                  )
COUNTY OF SAN BERNARDINO; CITY    )
OF HESPERIA; MICHAEL MARTINEZ;    )
SABRINA CERVANTES; JEREMY         )
DEBERG; JONATHAN CAMPOS; and      )
DOES 5 through 15, inclusive,     )
                                  )
              Defendants.         )
_____)
```

REMOTE VIDEO DEPOSITION OF:

NOELIA BENITEZ

Monday, February 26, 2024


STENOGRAPHICALLY REPORTED BY:

SUSAN KIM, CSR No. 14494

JOB NO.: 95716-A

**NOELIA BENITEZ**

**February 26, 2024**

```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4   ROSA NUNEZ, individually and    )
     as successor-in-interest to     )
 5   Decedent, Anthony Nunez;        )
     ANTHONY NUNEZ, JR.,             )
 6   individually and as             )   Case No.
     successor-in-interest to        )   5:22-cv-1934-SSS(
 7   Decedent, Anthony Nunez; and,   )   SPx)
     ANDREW NUNEZ, individually,,    )
 8                                   )
              Plaintiffs.            )
 9                                   )
     V.                              )
10                                   )
                                     )
11   COUNTY OF SAN BERNARDINO; CITY  )
     OF HESPERIA; MICHAEL MARTINEZ;  )
12   SABRINA CERVANTES; JEREMY       )
     DEBERG; JONATHAN CAMPOS; and    )
13   DOES 5 through 15, inclusive,   )
                                     )
14            Defendants.            )
     _____)
15

16

17

18        VIDEO DEPOSITION of NOELIA BENITEZ, taken

19   remotely via Zoom, commencing at 10:31 a.m., and

20   ending at 2:38 p.m. on Monday, February 26, 2024,

21   before Susan Kim, Certified Shorthand Reporter

22   No. 14494.

23

24

25
```

```
 1   APPEARANCES:

 2

 3     FOR THE PLAINTIFFS:

 4         CARRILLO LAW FIRM, LLP
           BY: DOMINIQUE BOUBION, ESQ.
 5         1499 Huntington Drive
           Suite 402
 6         South Pasadena, California 91030
           (626) 799-9375
 7         Db@carrillofirm.com

 8

 9     FOR THE DEFENDANTS COUNTY OF SAN BERNARDINO, CITY
       OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES AND
10     JEREMY DEBERG

11         WESIERSKI & ZUREK LLP
           BY: BRETT SMITH, ESQ.
12         29 Orchard Road
           Lake Forest, California 92630
13         (949) 975-1000
           Bsmith@wzllp.com
14

15
       FOR THE DEFENDANT JONATHAN CAMPOS:
16
           FUJII LAW GROUP, LLP
17         BY: MAHADHI CORZANO, ESQ.
           2 Park Plaza
18         Suite 450
           Irvine, California 92614
19         (949) 392-5501
           Mcorzano@fujiilawgroup.com
20

21

22     ALSO PRESENT:

23         SAMANTHA DE LA TORRE, Videographer
           ANDREW HOLMES, Videographer
24

25
```

```
 1  BY MR. SMITH:
 2       Q.  Had you ever seen Andrew or -- strike that.
 3           Had you ever seen Anthony lay hands on or shove
 4  your husband like that before?
 5       A.  No.
 6       Q.  Okay.  To your recollection, did Andrew push
 7  Anthony back?
 8       A.  No.
 9       Q.  Okay.  Do you recall Anthony -- do you recall
10  if Anthony was still holding the chain while he pushed
11  your husband?
12       A.  Yes.
13       Q.  Okay.  And was he -- you mentioned it was
14  wrapped around his hand.
15           Was the entire length of the chain wrapped
16  around his hand that you could see?
17           MS. BOUBION:  Calls for speculation.  Lacks
18  foundation.
19           Go ahead.
20           THE WITNESS:  Yes.
21  BY MR. SMITH:
22       Q.  Okay.  Were you concerned that Anthony might
23  use the chain he was holding against you or your husband
24  at that time?
25           MS. BOUBION:  Objection.  Vague.  And
```

```
 1          You can answer, Noelia.  Go ahead.
 2          THE WITNESS:  He just pushed him like that,
 3  with his hands.
 4  BY MR. SMITH:
 5      Q.  Okay.  And were you in between them at that
 6  time?
 7      A.  No.
 8      Q.  Okay.
 9          Did -- so my understanding is is that at some
10  point soon after that, you'd called 911; is that right?
11      A.  Yes.
12      Q.  Okay.  Did Andrew instruct you to call law
13  enforcement, or did you do that on your own?
14      A.  I did that on my own.
15      Q.  Okay.  Do you recall -- did you call while you
16  were in that hallway you identified, or was that after
17  you entered your room?
18          MS. BOUBION:  Vague and ambiguous.
19          Go ahead.
20          THE WITNESS:  When I was walking towards my
21  room.
22  BY MR. SMITH:
23      Q.  Okay.  And did you call 911 specifically, or
24  did you call a police hotline or some other number?
25      A.  911.
```

```
 1      Q.  Okay.  Noelia, how come you didn't call a
 2  mental health or mental crisis hotline?
 3          MS. BOUBION:  Objection.  Argumentative.
 4          Go ahead.
 5          THE WITNESS:  I don't know why I didn't.  I
 6  wasn't thinking.  I just thought 911 was the fastest.
 7  BY MR. SMITH:
 8      Q.  And now, was there anybody other than law
 9  enforcement that you could have called that morning to
10  calm Anthony down?
11          MS. BOUBION:  Objection.  Vague and ambiguous.
12  Lacks foundation.
13          If you understand, Noelia, you can answer.
14          THE WITNESS:  Just the police department.
15  BY MR. SMITH:
16      Q.  Okay.  Now, did this -- did this confrontation
17  with your brother-in-law -- between your brother-in-law
18  and your husband -- seem like an emergency to you?
19          MS. BOUBION:  I'm going to object.
20  Argumentative.
21          Go ahead, Noelia, if you can understand.
22          THE WITNESS:  Yes.
23  BY MR. SMITH:
24      Q.  Do you recall what kinds of things that Anthony
25  was saying to you and Andrew at that time?
```

```
 1            MS. BOUBION:  Overbroad.
 2            THE WITNESS:  He just said that he was God, and
 3     he wanted to talk to Andrew, and --
 4     BY MR. SMITH:
 5         Q.  And this is Anthony saying this; correct?
 6         A.  Yes.
 7         Q.  Okay.  Now, did -- was he saying this -- the
 8     things you mentioned, was he saying that to you, or was
 9     he saying that to Anthony -- I'm sorry, Andrew?
10         A.  To Andrew.
11         Q.  Okay.  Did -- had you ever heard Anthony speak
12     to Andrew like this before?
13            (Overlapping speakers.)
14     BY MR. SMITH:
15         Q.  Was the answer "No," ma'am?
16         A.  No.
17         Q.  Okay.  What did you think that Anthony meant to
18     communicate to you when he said that he was God?
19            MS. BOUBION:  Calls for speculation.
20            THE WITNESS:  I don't know.
21     BY MR. SMITH:
22         Q.  So, you know, following this kind of
23     confrontation in the hall with Anthony, you entered your
24     room next; is that correct?
25         A.  Yes.
```

```
 1  BY MR. SMITH:
 2      Q.  And when you say "him," are you referring to
 3  Anthony; is that correct?
 4      A.  Yes.
 5      Q.  Okay.  And you also reported that "because he
 6  is on drugs."  And we can agree that "he" in this
 7  scenario is Anthony.
 8          What made you believe that Anthony was on drugs
 9  that morning?
10      A.  Because of the way his eyes were looking so
11  glossy.
12      Q.  Okay.  You also mentioned that there were --
13  were weapons -- specifically firearms -- in the home.
14          Do you remember that portion of the call?
15          MS. BOUBION:  I'm going to object to the extent
16  that it misstates the record.
17          THE WITNESS:  Yes.
18  BY MR. SMITH:
19      Q.  Okay.  And what you said specifically was that
20  your husband owns a firearm and that it's under your
21  mother-in-law's name; is that accurate?
22          MS. BOUBION:  I'm going to object that it -- it
23  misstates the record.  And vague and overbroad.
24          You can answer, Noelia.
25          THE WITNESS:  No.
```

NOELIA BENITEZ

February 26, 2024

```
 1  BY MR. SMITH:
 2      Q. And when you say "No," you mean "No, that's not
 3  accurate"?
 4      A. Yes.  That's not accurate.
 5      Q. Okay.  What made you say that to the 911
 6  operator?
 7      A. What I meant to say at that point is that it
 8  was -- it's ours because -- I consider ours because we
 9  are as a family.
10      Q. Okay.  And now, you also mentioned that nobody
11  in the home needed paramedics.
12          Do you remember that portion of the audio?
13      A. Yes.
14      Q. Okay.  Why didn't you think that medical
15  intervention might have helped Anthony deal with his
16  episode he was having on that morning?
17          MS. BOUBION:  I'm going to object to the extent
18  that it lacks foundation.  It's vague, ambiguous, and
19  overbroad.
20          If you understand, you can answer, Noelia.
21          THE WITNESS:  I just called the police to take
22  him out and get him some help.
23  BY MR. SMITH:
24      Q. You also mentioned that you felt that Anthony
25  hadn't slept for days to the 911 operator.
```

```
 1          Do you remember that portion of the audio?
 2     A.  Yes.
 3     Q.  Okay.  And what made you feel that Anthony
 4  hadn't slept for days at that time?
 5          MS. BOUBION:  I'm going to object to the extent
 6  that it assumes facts not in evidence and lacks
 7  foundation.
 8          Go ahead, Noelia.
 9          THE WITNESS:  Because the way he was acting
10  that way.
11          MS. BOUBION:  I see you're getting a little
12  emotional, Noelia.  Do you need to take a minute?
13          THE WITNESS:  Yes.
14          MS. BOUBION:  Okay.  Go ahead.
15          And is it okay with you, Mr. Smith?
16          MR. SMITH:  Of course, ma'am.
17          Okay, let's take maybe a five-minute -- 1:20.
18          THE VIDEOGRAPHER:  Off the video record at
19  1:16.
20          (Recess.)
21          THE VIDEOGRAPHER:  We are back on video record
22  at 1:21 p.m.
23  BY MR. SMITH:
24      Q.  Sorry for jumping my place in line there.
25          Okay.  So only a couple more questions about
```

```
 1   the 911 recording, Noelia.
 2           The first being, why didn't you or Andrew offer
 3   to take Anthony to a hospital or to receive medical
 4   treatment yourselves?
 5           MS. BOUBION:  I'm going to object.  It's
 6   argumentative.  Compound.
 7           Go ahead, Noelia.
 8           THE WITNESS:  I don't know why.
 9   BY MR. SMITH:
10       Q.  Okay.  And finally, what made you want to stay
11   on the line with the operator instead of hanging up?
12       A.  Because I don't -- just in case they start
13   raising their voices again or to prevent anything
14   further.  I just wanted her to be there to maybe rush
15   the police to get to our -- at our house.
16       Q.  Okay.  And just to clarify, you said "just in
17   case they began raising their voices again."
18           "They," you mean your brother-in-law and your
19   husband?
20       A.  My brother-in-law.  Correct.
21       Q.  And then the second part of your previous
22   answer involved the police rushing over to the house.
23   And I'm -- I'd like some clarification.  I'm sorry if I
24   missed what you said.
25       A.  Yes.
```

```
 1      Q.  Okay.  And it was just that the police were
 2   rushing over to the house, and you wanted to remain on
 3   the line --
 4      A.  Yes.
 5      Q.  -- until they arrived?
 6      A.  Yes.
 7      Q.  Okay.  Now, so we listened to the 911
 8   recording.
 9          Have you listened to a recording of Anthony
10   speaking to the deputies after they'd arrived?
11      A.  No.
12      Q.  Okay.  Do you have any idea why Anthony would
13   say that Andrew had betrayed him, to the deputies?
14          MS. BOUBION:  Objection to the extent that it
15   misstates the record.  Lacks foundation.  Calls for
16   speculation.  Vague, ambiguous, overbroad.
17          You can answer, Noelia.
18          THE WITNESS:  I don't know.
19   BY MR. SMITH:
20      Q.  Okay.  Now, on the 911 recording, you know, I
21   believe you could hear Andrew speaking with the deputies
22   through the window; is that right?
23      A.  Yes.
24      Q.  Okay.  Now, were you able to hear -- okay.
25          Were you able to hear Anthony and -- speaking
```