Christopher P. Wesierski [Bar No. 086736]
cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
mprescott@wzllp.com
Brett A. Smith [Bar No. 322707]
bsmith@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSA NUNEZ, individually and as successor-in-interest to Decedent, Anthony Nunez; ANTHONY NUNEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nunez; and, ANDREW NUNEZ, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,<br><br>Defendants. | Case No. 5:22-cv-1934-SSS(SPx)<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Reply to Plaintiff's Separate Statement]*<br><br>Date:       May 31, 2024<br>Time:       2:00 p.m.<br>Courtroom:  2<br><br><br>Trial Date:  09/23/2024 |

Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA, MICHAEL MARTINEZ, SABRINA CERVANTES, AND JEREMY DEBERG ("Defendants") (Defendant Campos has been dismissed by Plaintiff as a result of an

1

agreement between Plaintiff and Mr. Campos) hereby submit their Reply to Plaintiffs ROSA NUNEZ, ANTHONY NUNEZ, JR. and ANDREW NUNEZ ("Plaintiffs") Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication.

DATED: May 3, 2024　　　　WESIERSKI & ZUREK LLP

By: *[signature: Michelle Prescott]*
MICHELLE R. PRESCOTT
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

2
REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................... 6

II. CLAIM FOR EXCESSIVE FORCE AGAINST DEFENDANTS ................... 7

   A. The Use of Force was Objectively Reasonable and Defendants Are Entitled to Qualified Immunity ....................................................... 7

   B. Defendants are Entitled to Qualified Immunity Even if Disputed Facts Exist .................................................................................... 10

   C. The Deputies Actions Do Not Shock the Conscience. ........................ 12

III. THE DEPOSITION TESTIMONY OF LUCY RAMOS IS UNRELIABLE ................................................................................ 12

   1. Plaintiffs' Allegations that Deputy Martinez Was Not in Reasonable Imminent Fear are Countered by the *Tueller* Drill Training Received by the Deputies Including Martinez and Martinez's Own Observed Experiences. .............. 13

   2. Deputy Martinez Did Not Have the Ability to Maneuver Around a Vehicle During the LFE ............................................. 13

IV. CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES
Page(s)
**Federal Cases**

*Estate of Aguirre v. County of Riverside*
29 F.4th 626 (9th Cir. 2022) ............................................................................... 9

*Estate of Aguirre v. County of Riverside*
(9th Cir. 2022) 29 F.4th 624, 626, *cert. denied sub nom.* ...................................... 9

*Anderson v. Creighton*,
483 U.S. 635 (1987) ............................................................................................ 8

*County of Riverside, California v. Estate of Clemente Najera-Aguirre*
(2022) 143 S.Ct. 426 [214 L.Ed.2d 234] ............................................................... 9

*Glenn v. Washington County*,
673 F.3d 864 (9th Cir. 2011) ................................................................................ 8

*Harlow v. Fitzgerald*,
457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ...................... 7, 10

*Lassiter v. Alabama A&M Univ., Bd. Of Trustees*,
28 F.3d 1146 (11th Cir. 1994) ......................................................................... 7, 8

*M.H. v. Cnty. of Alameda*,
62 F. Supp. 3d 1049 (N.D. Cal. 2014) .................................................................. 8

*Malley v. Briggs*,
475 U.S. 335 (1986) ............................................................................................. 7

*Nicholson v. Georgia Dept. of Human Resources*,
918 F.2d 145 (11th Cir. 1991) ............................................................................. 7

*Saucier v. Katz*,
533 U.S. 194 (2000) ..................................................................................... 8, 10

*Siegert v. Gilley*,
500 U.S. 226 (1991) ............................................................................................. 7

*White v. Pierce County*,
797 F.2d 812 (9th Cir. 1986) ............................................................................. 10

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**State Cases**

*Martinez v. County of L.A.*,
   47 Cal.App.4th 334 (1996)...............................................................................................11

*Wood v. Emmerson*,
   155 Cal.App.4th 1506 (2007).............................................................................................10

**Federal Statutes**

42 U.S.C. 1983.......................................................................................................................6

**State Statutes**

Bane Act ................................................................................................................................7

Bane Act (Cal. Civil Code § 52.1.)........................................................................................6

**Constitutional Provisions**

Fourteenth Amendment .........................................................................................................6

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This matter concerns an officer involved fatal shooting that took place on March 29, 2022. On the date of the incident, Anthony Nunez ("Mr. Nunez" or the "Decedent"), physically assaulted his brother Andrew Nunez while armed with a metal chain which prompted Andrew Nunez's wife, Noelia Benitez, to call 911 and seek help from Defendants. On that same 911 call requesting assistance, Ms. Benitez informed Defendants that Decedent: (1) was armed with a metal chain, (2) under the influence of narcotics later determined to be methamphetamine, and (3) behaving erratically. Ms. Benitez also reported the presence of firearms at the subject premises, but their location was unknown. Based on Ms. Benitez's 911 call, deputies from the San Bernardino County Sheriff's Department ("SBSD" or the "Department") responded to the scene to render assistance. After expending substantial time and resources attempting to de-escalate the situation the deputies were unable to de-escalate and a lethal force encounter occurred after Decedent Andrew Nunez ("Mr. Nunez" or "Decedent") charged toward the deputies while still armed with the metal chain.

Plaintiffs' operative complaint asserted claims against Deputies Martinez, Deberg and Cervantes as well as the County and City for (1) Excessive Force (42 U.S.C. 1983), (2) Denial of Medical Care (42 U.S.C. 1983), (3) Interference with Familial Relations (42 U.S.C. 1983), (4) Municipal Liability Unconstitutional Custom or Policy (42 U.S.C. 1983), (5) Municipal Liability Failure to Train (42 U.S.C. 1983), (6) Battery, (7) Negligence, (8) Negligent Infliction of Emotional Distress (Bystander), and (9) Violation of the Bane Act (Cal. Civil Code § 52.1.)

Plaintiff has opposed the Motion for Summary Judgment on the grounds that: (1) the deputies are not entitled to qualified immunity (Opposition ("Opp.") at 8:6-7), (2) the deputies uses of force were excessive and unreasonable (Opp. at 8:8) (3) the deputies violated Rosa Nunez's Fourteenth Amendment rights because their

actions "shock the conscience" (Opp. at 17:21-23), (4) the deputies violated the Bane Act (Opp. at 19:3), (5) the deputies committed battery (Opp. at 19:22), and (6) the deputies were negligent (Opp. at 20:6.).

Plaintiffs' Opposition fails because it mischaracterizes the incident and improperly attempts to apply 20/20 hindsight to the actions of the deputies on the date of the incident (which is not the standard for conduct pursuant to California and Federal law) and it relies on the disputed testimony of purported eyewitness Lucy Ramos. For the foregoing reasons, Defendants respectfully request this Court grant Defendants' Motion for Summary Judgment, or in the alternative Summary Adjudication.

## II. CLAIM FOR EXCESSIVE FORCE AGAINST DEFENDANTS

### A. The Use of Force was Objectively Reasonable and Defendants Are Entitled to Qualified Immunity

Peace officers are generally entitled to qualified immunity so that they are protected from suit as well as monetary liability. *Siegert v. Gilley,* 500 U.S. 226, 233 (1991) (holding that qualified immunity "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long, drawn out lawsuit"). Qualified immunity shields police officers "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 919 (1982). In evaluating a police officer's conduct, the court should "conduct its review through the eyes of an objective, reasonable government official." *Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145, 147 (11th Cir. 1991). Consequently, the qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A&M Univ., Bd. Of*

*Trustees,* 28 F.3d 1146, 1159 (11th Cir. 1994).

Qualified immunity presents a two-part inquiry. First, the court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" (*Saucier v. Katz*, 533 U.S. 194, 201 (2000).) If the answer is yes, then the court must determine whether the right was clearly established at the time of the alleged violation. (*Id.*) "Plaintiffs 'bear[ ] the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct.'"*M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1093–94 (N.D. Cal. 2014) (internal citation omitted)

In order for the law to be "clearly established" to the point that qualified immunity would not apply, "the law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place, that 'what he is doing' violates federal law." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases." *Lassiter, supra,* 28 F.3d at 1149-50

For that reason, the litany of cases that Plaintiffs cite to argue that the Deputies are not entitled to qualified immunity are neither controlling nor persuasive. Opp. at pgs. 9-12. Rather, this Court must make a highly specific and fact-intensive inquiry, and apply a "careful balancing" of the intrusion against the countervailing government interest. *Glenn v. Washington County,* 673 F.3d 864, 871 (9th Cir. 2011).

That balancing test establishes that the Deputies conduct was objectively reasonable. This incident involved a highly charged suspect, who was armed with a chain of indeterminate length at the time of the incident, who had already directly told the deputies that he wanted to kill them. (SUF #21, 33, 42, 46, 47) The Decedent then failed to comply with lawful commands for over an hour, and disregarded multiple commands to drop the chain. (SUF #26, 28.) At the time of the

less-lethal and eventual LFE, the deputies had no way of knowing the length of the chain because Decedent had refused to drop the chain. All the deputies knew was that Plaintiff was armed and capable of quickly closing distance, coupled with the ability to strike them or others from range with the chain. Therefore, when less-lethal force was ineffective to gain compliance from Decedent, and in light of Decedent closing (or in the light most favorable to Plaintiffs' appearing to close) the distance between himself and Deputy Martinez while armed with a chain of unknown length, Deputy Martinez was in imminent fear of severe bodily injury or death. (SUF # 80.) The other deputies on scene were also in fear for the safety of Deputy Martinez and the other persons on scene. (SUF # 38, 39.)

Plaintiffs rely extensively on *Estate of Aguirre v. County of Riverside* 29 F.4th 626 (9th Cir. 2022) in support of their contention the use of force against Decedent was unreasonable. While Plaintiffs go to great lengths to try and conflate *Aguirre* and this matter, there are several key differences. Chief among them was the fact that the decedent in Aguirre was armed with a "a bat-like object" *Estate of Aguirre v. County of Riverside* (9th Cir. 2022) 29 F.4th 624, 626, *cert. denied sub nom. County of Riverside, California v. Estate of Clemente Najera-Aguirre* (2022) 143 S.Ct. 426 [214 L.Ed.2d 234] of a relatively easy to determine length. Unlike the decedent in Aguirre, here Decedent was armed with a chain of unknown length which made it impossible for the deputies, including Deputy Martinez, from determining the exact distance or even a probable distance from which Decedent could strike them.

Defendants were aware (as discussed more fully below) that armed suspects can quickly close distance and attack deputies with weapons even if the weapons are not capable of striking them at range. (SUF #81-82.) Here, the Defendants were faced with a suspect who refused to drop the chain and disarm himself and because of this failure to disarm himself coupled with the unknown length of the chain, once Decedent began proceeding toward Deputy Martinez he felt he had no choice but to

use lethal force to protect himself. (SUF #80.)

B. **Defendants are Entitled to Qualified Immunity Even if Disputed Facts Exist**

Contrary to Plaintiffs' argument, the existence of disputed facts, including disputed facts about the direction Decedent was facing at the time of the incident which has been characterized differently by numerous witnesses on scene, does not necessarily negate the qualified immunity defense on summary judgment. Rather, "[t]he issue of whether qualified immunity exists is ultimately one of law for the trial court." *Wood v. Emmerson,* 155 Cal.App.4th 1506, 1515 (2007). "[T]he trial court, and this court on appeal, must decide this issue on summary judgment where qualified immunity is at issue." *White v. Pierce County,* 797 F.2d 812, 816 (9th Cir. 1986).

In *Saucier v. Katz,* 533 U.S. 194 (2002), the Supreme Court ruled that qualified immunity should have been granted on summary judgment in an excessive force case, even though the trial court had determined that "a dispute on a material fact existed concerning whether excessive force was used[.]" *Saucier, supra,* 533 U.S. at 198. There, as here, the plaintiff-respondent and the defendant-petitioner disagreed as to how their encounter unfurled, with conflicting evidence presented by both parties.

Notwithstanding this disputed evidence, the *Saucier* court reversed the denial of qualified immunity by the lower court, based on the following reasoning:

> The approach the Court of Appeals adopted—to deny summary judgment any time a material issue of fact remains on the excessive force claim—could undermine the goal of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.
> *Ibid.*

A similar holding was reached by the court in *Martinez v. County of L.A.,* 47 Cal.App.4th 334, 343 (1996). In that wrongful death/excessive force case, plaintiffs sought to defeat summary judgment based on qualified immunity by raising several triable issues of material fact. There, officers were responding to a call that a person high on drugs was brandishing a knife. *Id.* at 340. They encountered the suspect, Martinez, and repeatedly told him to drop the knife. Like the Decedent in this case, Martinez refused. He "kept walking toward the deputies, holding the knife in a variety of positions ranging from waist high with the blade pointed skyward to by his head above his shoulders." *Ibid.*

Again like the Decedent in this case, Martinez refused to stop when told to do so by the officers. *Id.* at 340. When Martinez came within 10-15 feet of the officers and some juveniles they had detained, and had refused to drop the knife after 14 instructions to do so, the officers fired. *Ibid.* Martinez later died from his injuries.

In opposing summary judgment, plaintiffs presented evidence of disputed facts, including eyewitness testimony that stated the knife was not held out at the deputies in "attack" mode, and Martinez presented no threat to them. *Martinez, supra,* 47 Cal.App.4th at 343. The court found that such disputed facts did not preclude summary judgment because qualified immunity and excessive force are analyzed under an objective reasonableness" standard. The *Martinez* court emphasized that "[t]he United States Supreme Court's definition of reasonableness has . . . been comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present. [Citation]." *Id.* at 343-44. It therefore granted summary judgment in favor of the officers.

The same analysis leads to the same conclusion here. This Court may make a determination that Defendants are entitled to qualified immunity and grant summary judgment, because the Defendants' conduct was objectively reasonable in view of the exigent circumstances presented and the facts that were not known to the deputies, such as the length of the chain. Based on those facts which are undisputed,

11

and even resolving those facts which Plaintiffs dispute in Plaintiffs' favor, the court could, and should, resolve the qualified immunity issue in favor of the Defendants.

### C. The Deputies Actions Do Not Shock the Conscience.

As discussed above, the actions of the deputies were "objectively reasonable" for the purposes of determining a constitutional violation as to the rights of Plaintiffs. As discussed, the Deputies had a legitimate law enforcement purpose to arrest and detain Decedent, and it was the Decedents' actions that forced the Deputies to make a snap decision. (SUF #66, 69.) The Deputies did not act with the "purpose to harm" Decedent and therefore Rosa Nunez's claims fail as a matter of law.

## III. THE DEPOSITION TESTIMONY OF LUCY RAMOS IS UNRELIABLE

Defendants have already produced substantial amounts of evidencing the officers, including Deputy Martinez, were faced with an imminent fear of and threat of severe bodily injury or death. (SUF # 45, 54, 57, 80.) Defendants also outlined that they made substantial efforts to de-escalate with Decedent prior to the lethal force encounter ("LFE") (SUF #15.) Despite their best efforts, including the use of less-lethal force prior to the LFE, the deputies were unable to stop Decedent from advancing toward them. Deputy Martinez, as informed by his substantial training and experience, believed that his sole remaining avenue for stopping Decedent from hurting him or the other deputies,. (SUF # 46.)

In an effort to try and discredit the Deputies lawful and extensive attempts to de-escalate and detain Decedent, Plaintiffs rely on out of context snippets of the deposition transcripts of the Deputies and the testimony of "eyewitness" Lucy Ramos.

What Plaintiffs conveniently fail to mention when treating Ms. Ramos' "eyewitness" testimony as being the sole authoritative view of the incident is the facts that: (1) Ms. Ramos was sitting inside of her vehicle, (2) behind a fence that

was obscuring her view, (3) on a portion of her property that was a substantial distance from the incident area, (4) the incident as observed by Deputy Martinez (i.e. the relevant inquiry to determine if Deputy Martinez's use of force was reasonable) was not observable by Ms. Ramos, and (5) the incident took place between a series of vehicles which only further obscured the view of Ms. Ramos. Accordingly, the testimony of Ms. Ramos that is used to support an alternative "view" of the incident should be afforded minimal weight.

### 1. Plaintiffs' Allegations that Deputy Martinez Was Not in Reasonable Imminent Fear are Countered by the *Tueller* Drill Training Received by the Deputies Including Martinez and Martinez's Own Observed Experiences.

In connection with their training as officers, the deputies including Deputy Martinez, underwent training concerning armed suspects approaching officers known as the *Tueller* drill. (SUF #81-82.) While the *Tueller* drill does not specifically deal with suspects armed with chains, it does reinforce that armed suspects can quickly run and close distance while armed even a Deputy is aware of their presence. Here, Deputy Martinez was aware that Decedent was armed and that suspects that are armed can quickly close distance based on his prior experience with the *Tueller* drill. Accordingly, this knowledge, coupled with the prior interactions Deputy Martinez had been having with Decedent, supported a belief by Deputy Martinez that he was in imminent fear of severe bodily injury or death as Decedent began closing the distance and advancing toward him while armed with chain of indeterminate length.

### 2. Deputy Martinez Did Not Have the Ability to Maneuver Around a Vehicle During the LFE

Plaintiffs assert that Deputy Martinez had the ability to maneuver around the vehicles located on the driveway at the time of the LFE. Deputy Martinez addressed this claim during his deposition, where he testified he was unable to take cover

behind the vehicles because of the length of the chain in Decedent's hands (which was unknown until after the LFE) and because Decedent had previously swung the chain at the vehicles. (SUF #50.) As repeated throughout this Reply, the observed experience of Deputy Martinez, including his decision based on his training and experience that he could not safely take cover, is the controlling decision for the purposes of conducting an "objectively reasonable use of force analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court grant Defendants' Motion for Summary Judgment, or in the alternative grant Defendants' Motion for Summary Adjudication as to each cause of action.

DATED: May 3, 2024        WESIERSKI & ZUREK LLP

By: /s/ Michelle Prescott
MICHELLE R. PRESCOTT
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)**

The undersigned, counsel of records for Defendants certifies that this brief contains 2,730 words, which complies with the word limits of 11-6.1.

DATED: May 3, 2024        WESIERSKI & ZUREK LLP

By: _/s/ Michelle Prescott_
MICHELLE R. PRESCOTT
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG