# EXHIBIT 1

## Michelle R. Prescott

| | |
|---|---|
| **From:** | Michelle R. Prescott |
| **Sent:** | Wednesday, July 24, 2024 12:07 PM |
| **To:** | Benjamin Levine; Joshua A. Nuzzo; Brett Smith |
| **Cc:** | Christopher Wesierski; Sierra Frazier; Nicole L. Burke; Kelly Atherton; Dale K. Galipo; Santiago Laurel; Dominique Boubion; Luis Carrillo; Michael Carrillo; Carrillo Law Firm; Brendan Johnson |
| **Subject:** | RE: Nuñez v. COSB - MILs & 16-2 Conference |
| **Follow Up Flag:** | Copied to Worldox (OC DOCS\SBD\0015\EMAIL\I2167688.MSG) |

Thanks Ben my responses to your responses are in green.

Plaintiffs' anticipated MIL to exclude information unknown to deputies:
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's criminal history, including any prior arrests, incarcerations, police contacts, etc., because the deputies were unaware of these details at the time of the use of force.
    - My recollection is Defendants' position was that testimony regarding a prior incident wherein police came to the house after Anthony allegedly locked his brother Marty outside (and Anthony was subsequently jailed and beaten up in jail) is admissible to show (1) Anthony was afraid of police on the date of the incident, which Defendants contend explains his conduct, and (2) contributory negligence by Andrew Nuñez on the theory that Andrew was using the 911 call to intimidate Anthony, but Andrew did not disclose Anthony's fear of police to 911.
        - Yes, that is a correct summary.
        - Regarding (1), we do not believe this alleged explanation for Anthony's conduct is a sufficient basis to overcome the rule against consideration of information unknown to the officers. It is speculative, and the prejudice of this evidence significantly outweighs the minimal probative value under FRE 403. This will be part of our anticipated MIL(s) unless Defendants' position changes.
        - Regarding (2), it is not clear how this would constitute negligence by Andrew, given that Andrew was not the 911 caller. Do Defendants contend Andrew had a duty to intervene during Noelia's call to 911 to supply this information to the operator? To instruct Noelia, before she called 911, to advise the operator of this information?
        - We do not think it matters who called 9-1-1. Andrew was using the threat of calling the police to control his brother's conduct and he was present when Noelia made the call. Andrew also had contact with law enforcement officers during the incident and did not alert them to Anthony's fear. Further, his pre-incident threats contributed to the fear that Andrew had about police.
    - Besides that incident, there was also testimony from Rosa Nuñez regarding a prior incident in which, according to Rosa, Anthony was arrested many years earlier for driving a car he had just purchased but had not yet registered in his name; will Defendants seek to introduce evidence regarding this incident? (I am wondering whether the criminal history information Defendants will seek to introduce at trial is limited to the incident involving Marty, so that the MIL need only address that issue, and whether we can stipulate to exclude other evidence regarding Decedent's criminal history.)
        - We do not intend to use this evidence at trial unless Plaintiffs open the door.
        - Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.

1

- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's drug use that was unknown to the deputies at the time they used force.
    - o  For the most part we were unable to agree on this topic, but you advised we could likely agree to exclude testimony from Melissa Carpenter regarding long past drug use, but that you would let us know to confirm.
        - We would agree to exclude this evidence, subject to the Plaintiffs opening the door.
        - Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.
    - o  Per our discussion on this topic and on Defendants' anticipated MILs #1 and 2, the attached draft also includes proposed language for a stipulation limiting testimony regarding mental health issues, precluding testimony that the Decedent was in fact mentally ill (as distinct from testimony that the officers should have considered that he might be mentally ill, based on their training).
        - I do not think this is acceptable. It will confuse the jury about the issues. The Decedent was not mentally ill so we do not see the relevance of what an officer should have done if he was mentally ill.
        - We can remove the paragraph on this topic from the draft stipulation. Plaintiffs intend to oppose any MIL(s) regarding these issues for the reasons that we have discussed and that were articulated in the proposed stipulation.
    - o  If we can agree on a stipulation on this issue, perhaps we can further discuss whether this affects Defendants' position on the other drug-related evidence, since Defendants' position was that this evidence is admissible to corroborate the deputies' belief that the Decedent was on drugs and to rebut the suggestion that the deputies should have considered he might be mentally ill. Also, the relevant Ninth Circuit jury instruction I mentioned on our call is this one (see factor #13 and explanatory notes): https://www.ce9.uscourts.gov/jury-instructions/node/163
        - We still see no relevance to the issue of the decedent's mental health since there is no evidence of any mental health illness. There was, however, evidence that the Decedent was under the influence of drugs beginning with the initial 9-1-1 call, his behavior observed, and corroborating evidence of the items in his possession and the toxicology report. The defendants should not have to "rebut" speculation about a mental illness that does not exist. Further, DeFoe's opinions rely heavily upon his opinion that a reasonable officer would have determined that the decedent was mentally ill or suffering a mental health crisis and what should have been done in response (e.g. calling in the mental health crisis team).
        - Since it appears we cannot agree on the mental health issue, I am not sure there is more to discuss regarding the drug evidence of which the deputies were unaware. Unless Defendants' position changes, our anticipated MIL(s) will seek to exclude any drug-related evidence of which the deputies were unaware at the time force was used, for the reasons we have discussed.
- We discussed Andrew's testimony that the Decedent experienced a "hallucination" prior to the incident, and you advised you would let us know whether Defendants would agree to exclude that.
    - We believe the evidence is relevant. This is what Andrew said about the Decedent's conduct in the hours before 9-1-1 was called. Andrew described the Decedent's behavior while he was under the influence of meth. (See page 97.) He also believed the Decedent was having hallucinations the day of the incident. (See page 99.)
    - It is not clear what this evidence is relevant to, unless Defendants contend it corroborates the deputies' claimed belief that the Decedent was under the influence during the incident. Is that Defendants' position? Plaintiffs' anticipated MIL(s) will seek to exclude this evidence, of which the deputies were unaware during the incident and which we believe is not relevant.
    - It does corroborate the deputies belief that the Decedent was under the influence.
- We discussed Brenda Lopez's testimony that she believed the Decedent had a romantic interest in her. You advised that it may be admissible to explain the Decedent's agitation when Brenda was removed from the house and/or when the deputies went near her window, but that you would consider and let us know.

- o  I just reviewed Brenda's deposition testimony and this came up as her explanation of how the Decedent acted while under the influence of meth. This was what she told deputies after the incident. During her deposition she could not recall what she told the deputies or denied having made certain statements. I have to think about this, but I think it is also relevant to how the Decedent was acting in the hours before the incident. There are inconsistencies in the plaintiffs and witness testimony with what they reported to policy and what they said in deposition.
- o  Brenda did not testify that her belief that Anthony had a romantic interest in her was related to meth use. Rather, she testified that she did not believe that. (See page 47:13-19.) She also testified that her belief that Anthony had a romantic interest in her was solely based on a single occasion five years earlier when "he called [her] cute," and further testified that she "didn't know if it was like in a crush way or in an uncle way." (See page 20:21-21:6.) So, the basis for this claimed connection to drug use is at best very tenuous, and any probative value is significantly outweighed by the potential prejudice under FRE 403. As with the evidence about the "hallucination," it is also unclear what information about how the Decedent was acting in the hours before the incident, which the deputies never observed and of which they were otherwise unaware, is relevant to. Is Defendants' view of relevance that this also corroborates the deputies' claimed belief that the Decedent was under the influence during the incident? I will await your decision on whether we can reach a stipulation on this issue; if not, this will be part of Plaintiffs' anticipated MIL(s).
- o  I am referring to Brenda's statement to police. She did not recall or recanted those statements in her deposition.

Plaintiffs' anticipated MIL to limit testimony of Edward Flosi
- We discussed the possibility of a reciprocal stipulation to preclude each side's expert from offering legal opinions or making credibility determinations, which would avoid the need for this MIL. Proposed language for the stipulation is included in the attached draft.
- We would agree to this – I will look at the proposed language in the stipulation. Thank you.

Anticipated stipulation to exclude evidence regarding tattoos
- We discussed that the parties are in agreement to exclude evidence regarding the Decedent's tattoos. That is correct. Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.
- We also discussed whether the stipulation would exclude evidence regarding Andrew Nuñez's tattoos, and I said I would follow up. We would like to include this in the stipulation, subject to the caveat we discussed, i.e. that the photos of Andrew at the police station may be used if the door is opened by Andrew testifying he never went to the police station or testifies he was physically injured. (For what it's worth, we don't anticipate Andrew so testifying.) See attached draft. I'll look at the language in the stipulation but I think that is agreeable. Thank you.

Anticipated stipulation to exclude agency findings
- We discussed that the parties are in agreement to exclude this evidence (see attached draft). In thinking about this I can foresee an argument in the Monell claims where plaintiffs may argue that the County did not reprimand or fire the officers and then claim no investigation was conducted. Because the Monell claims are still at issue I think this will be relevant.
- It does not appear that any agency findings were ever produced by Defendants in discovery, despite Plaintiffs' request for these materials, so they are likely not admissible for any purpose. (See County Response to Rosa Nuñez RFP, Set One, No. 2.) If you believe agency findings were timely produced by Defendants, could you please identify where?
- As you know, we objected and part of the grounds was the inability to retrieve documents lost in the data breach. We could still have testimony on the subject.

Also, we discussed that the parties believe we can reach an agreement regarding Defendants' anticipated MIL #3 to exclude evidence regarding Jonathan Campos's charges and termination. Could you please add proposed language to the draft for our review? I will do so. Thank you.

Michelle R. Prescott
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email mprescott@wzllp.com



Follow us on:

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

From: Benjamin Levine <blevine@galipolaw.com>
Sent: Wednesday, July 24, 2024 11:02 AM
To: Michelle R. Prescott <mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@WZLLP.COM>; Brett Smith <BSmith@WZLLP.COM>
Cc: Christopher Wesierski <CWesierski@WZLLP.COM>; Sierra Frazier <SFrazier@WZLLP.COM>; Nicole L. Burke <nburke@WZLLP.COM>; Kelly Atherton <KAtherton@WZLLP.COM>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Dominique Boubion <db@carrillofirm.com>; Luis Carrillo <lac4justice@gmail.com>; Michael Carrillo <mc@carrillofirm.com>; Carrillo Law Firm <team@carrillofirm.com>; Brendan Johnson <Bjohnson@galipolaw.com>
Subject: RE: Nuñez v. COSB - MILs & 16-2 Conference

**CAUTION: This email originated from outside of the organization.**

Thank you, Michelle. I have included responses to your comments below (in blue):

4

Plaintiffs' anticipated MIL to exclude information unknown to deputies:
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's criminal history, including any prior arrests, incarcerations, police contacts, etc., because the deputies were unaware of these details at the time of the use of force.
    - My recollection is Defendants' position was that testimony regarding a prior incident wherein police came to the house after Anthony allegedly locked his brother Marty outside (and Anthony was subsequently jailed and beaten up in jail) is admissible to show (1) Anthony was afraid of police on the date of the incident, which Defendants contend explains his conduct, and (2) contributory negligence by Andrew Nuñez on the theory that Andrew was using the 911 call to intimidate Anthony, but Andrew did not disclose Anthony's fear of police to 911.
        - Yes, that is a correct summary.
        - Regarding (1), we do not believe this alleged explanation for Anthony's conduct is a sufficient basis to overcome the rule against consideration of information unknown to the officers. It is speculative, and the prejudice of this evidence significantly outweighs the minimal probative value under FRE 403. This will be part of our anticipated MIL(s) unless Defendants' position changes.
        - Regarding (2), it is not clear how this would constitute negligence by Andrew, given that Andrew was not the 911 caller. Do Defendants contend Andrew had a duty to intervene during Noelia's call to 911 to supply this information to the operator? To instruct Noelia, before she called 911, to advise the operator of this information?
    - Besides that incident, there was also testimony from Rosa Nuñez regarding a prior incident in which, according to Rosa, Anthony was arrested many years earlier for driving a car he had just purchased but had not yet registered in his name; will Defendants seek to introduce evidence regarding this incident? (I am wondering whether the criminal history information Defendants will seek to introduce at trial is limited to the incident involving Marty, so that the MIL need only address that issue, and whether we can stipulate to exclude other evidence regarding Decedent's criminal history.)
        - We do not intend to use this evidence at trial unless Plaintiffs open the door.
        - Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's drug use that was unknown to the deputies at the time they used force.
    - For the most part we were unable to agree on this topic, but you advised we could likely agree to exclude testimony from Melissa Carpenter regarding long past drug use, but that you would let us know to confirm.
        - We would agree to exclude this evidence, subject to the Plaintiffs opening the door.
        - Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.
    - Per our discussion on this topic and on Defendants' anticipated MILs #1 and 2, the attached draft also includes proposed language for a stipulation limiting testimony regarding mental health issues, precluding testimony that the Decedent was in fact mentally ill (as distinct from testimony that the officers should have considered that he might be mentally ill, based on their training).
        - I do not think this is acceptable. It will confuse the jury about the issues. The Decedent was not mentally ill so we do not see the relevance of what an officer should have done if he was mentally ill.
        - We can remove the paragraph on this topic from the draft stipulation. Plaintiffs intend to oppose any MIL(s) regarding these issues for the reasons that we have discussed and that were articulated in the proposed stipulation.
    - If we can agree on a stipulation on this issue, perhaps we can further discuss whether this affects Defendants' position on the other drug-related evidence, since Defendants' position was that this evidence is admissible to corroborate the deputies' belief that the Decedent was on drugs and to rebut the suggestion that the deputies should have considered he might be mentally ill. Also, the relevant Ninth Circuit jury instruction I mentioned on our call is this one (see factor #13 and explanatory notes): https://www.ce9.uscourts.gov/jury-instructions/node/163

5

- We still see no relevance to the issue of the decedent's mental health since there is no evidence of any mental health illness. There was, however, evidence that the Decedent was under the influence of drugs beginning with the initial 9-1-1 call, his behavior observed, and corroborating evidence of the items in his possession and the toxicology report. The defendants should not have to "rebut" speculation about a mental illness that does not exist. Further, DeFoe's opinions rely heavily upon his opinion that a reasonable officer would have determined that the decedent was mentally ill or suffering a mental health crisis and what should have been done in response (e.g. calling in the mental health crisis team).
- Since it appears we cannot agree on the mental health issue, I am not sure there is more to discuss regarding the drug evidence of which the deputies were unaware. Unless Defendants' position changes, our anticipated MIL(s) will seek to exclude any drug-related evidence of which the deputies were unaware at the time force was used, for the reasons we have discussed.

- We discussed Andrew's testimony that the Decedent experienced a "hallucination" prior to the incident, and you advised you would let us know whether Defendants would agree to exclude that.
  - We believe the evidence is relevant. This is what Andrew said about the Decedent's conduct in the hours before 9-1-1 was called. Andrew described the Decedent's behavior while he was under the influence of meth. (See page 97.) He also believed the Decedent was having hallucinations the day of the incident. (See page 99.)
  - It is not clear what this evidence is relevant to, unless Defendants contend it corroborates the deputies' claimed belief that the Decedent was under the influence during the incident. Is that Defendants' position? Plaintiffs' anticipated MIL(s) will seek to exclude this evidence, of which the deputies were unaware during the incident and which we believe is not relevant.

- We discussed Brenda Lopez's testimony that she believed the Decedent had a romantic interest in her. You advised that it may be admissible to explain the Decedent's agitation when Brenda was removed from the house and/or when the deputies went near her window, but that you would consider and let us know.
  o I just reviewed Brenda's deposition testimony and this came up as her explanation of how the Decedent acted while under the influence of meth. This was what she told deputies after the incident. During her deposition she could not recall what she told the deputies or denied having made certain statements. I have to think about this, but I think it is also relevant to how the Decedent was acting in the hours before the incident. There are inconsistencies in the plaintiffs and witness testimony with what they reported to policy and what they said in deposition.
  o Brenda did not testify that her belief that Anthony had a romantic interest in her was related to meth use. Rather, she testified that she did not believe that. (See page 47:13-19.) She also testified that her belief that Anthony had a romantic interest in her was solely based on a single occasion five years earlier when "he called [her] cute," and further testified that she "didn't know if it was like in a crush way or in an uncle way." (See page 20:21-21:6.) So, the basis for this claimed connection to drug use is at best very tenuous, and any probative value is significantly outweighed by the potential prejudice under FRE 403. As with the evidence about the "hallucination," it is also unclear what information about how the Decedent was acting in the hours before the incident, which the deputies never observed and of which they were otherwise unaware, is relevant to. Is Defendants' view of relevance that this also corroborates the deputies' claimed belief that the Decedent was under the influence during the incident? I will await your decision on whether we can reach a stipulation on this issue; if not, this will be part of Plaintiffs' anticipated MIL(s).

<u>Plaintiffs' anticipated MIL to limit testimony of Edward Flosi</u>
- We discussed the possibility of a reciprocal stipulation to preclude each side's expert from offering legal opinions or making credibility determinations, which would avoid the need for this MIL. Proposed language for the stipulation is included in the attached draft.
- We would agree to this – I will look at the proposed language in the stipulation. Thank you.

Anticipated stipulation to exclude evidence regarding tattoos
- We discussed that the parties are in agreement to exclude evidence regarding the Decedent's tattoos. That is correct. Thank you. There is a provision on this point in the draft stipulation I shared, so let's see if we can agree on the language.
- We also discussed whether the stipulation would exclude evidence regarding Andrew Nuñez's tattoos, and I said I would follow up. We would like to include this in the stipulation, subject to the caveat we discussed, i.e. that the photos of Andrew at the police station may be used if the door is opened by Andrew testifying he never went to the police station or testifies he was physically injured. (For what it's worth, we don't anticipate Andrew so testifying.) See attached draft. I'll look at the language in the stipulation but I think that is agreeable. Thank you.

Anticipated stipulation to exclude agency findings
- We discussed that the parties are in agreement to exclude this evidence (see attached draft). In thinking about this I can foresee an argument in the Monell claims where plaintiffs may argue that the County did not reprimand or fire the officers and then claim no investigation was conducted. Because the Monell claims are still at issue I think this will be relevant.
- It does not appear that any agency findings were ever produced by Defendants in discovery, despite Plaintiffs' request for these materials, so they are likely not admissible for any purpose. (See County Response to Rosa Nuñez RFP, Set One, No. 2.) If you believe agency findings were timely produced by Defendants, could you please identify where?

Also, we discussed that the parties believe we can reach an agreement regarding Defendants' anticipated MIL #3 to exclude evidence regarding Jonathan Campos's charges and termination. Could you please add proposed language to the draft for our review? I will do so. Thank you.

Benjamin S. Levine, Associate Attorney | The Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: blevine@galipolaw.com www.GalipoLaw.com

CONFIDENTIALITY NOTICE:
This e-mail may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply e-mail or telephone, and delete all copies of this message.

From: Michelle R. Prescott <mprescott@WZLLP.COM>
Sent: Tuesday, July 23, 2024 7:26 PM
To: Benjamin Levine <blevine@galipolaw.com>; Joshua A. Nuzzo <JNuzzo@WZLLP.COM>; Brett Smith <BSmith@WZLLP.COM>
Cc: Christopher Wesierski <CWesierski@WZLLP.COM>; Sierra Frazier <SFrazier@WZLLP.COM>; Nicole L. Burke <nburke@WZLLP.COM>; Kelly Atherton <KAtherton@WZLLP.COM>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Dominique Boubion <db@carrillofirm.com>; Luis Carrillo <lac4justice@gmail.com>; Michael Carrillo <mc@carrillofirm.com>; Carrillo Law Firm <team@carrillofirm.com>; Brendan Johnson <Bjohnson@galipolaw.com>
Subject: RE: Nuñez v. COSB - MILs & 16-2 Conference

Thanks Ben,

7

I will look over the stipulation and make my changes. In the meantime, I can answer a few of the proposed questions (in red below your text):

Plaintiffs' anticipated MIL to exclude information unknown to deputies:
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's criminal history, including any prior arrests, incarcerations, police contacts, etc., because the deputies were unaware of these details at the time of the use of force.
    - My recollection is Defendants' position was that testimony regarding a prior incident wherein police came to the house after Anthony allegedly locked his brother Marty outside (and Anthony was subsequently jailed and beaten up in jail) is admissible to show (1) Anthony was afraid of police on the date of the incident, which Defendants contend explains his conduct, and (2) contributory negligence by Andrew Nuñez on the theory that Andrew was using the 911 call to intimidate Anthony, but Andrew did not disclose Anthony's fear of police to 911.
        - Yes, that is a correct summary.
    - Besides that incident, there was also testimony from Rosa Nuñez regarding a prior incident in which, according to Rosa, Anthony was arrested many years earlier for driving a car he had just purchased but had not yet registered in his name; will Defendants seek to introduce evidence regarding this incident? (I am wondering whether the criminal history information Defendants will seek to introduce at trial is limited to the incident involving Marty, so that the MIL need only address that issue, and whether we can stipulate to exclude other evidence regarding Decedent's criminal history.)
        - We do not intend to use this evidence at trial unless Plaintiffs open the door.
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's drug use that was unknown to the deputies at the time they used force.
    - For the most part we were unable to agree on this topic, but you advised we could likely agree to exclude testimony from Melissa Carpenter regarding long past drug use, but that you would let us know to confirm.
        - We would agree to exclude this evidence, subject to the Plaintiffs opening the door.
    - Per our discussion on this topic and on Defendants' anticipated MILs #1 and 2, the attached draft also includes proposed language for a stipulation limiting testimony regarding mental health issues, precluding testimony that the Decedent was in fact mentally ill (as distinct from testimony that the officers should have considered that he might be mentally ill, based on their training).
        - I do not think this is acceptable. It will confuse the jury about the issues. The Decedent was not mentally ill so we do not see the relevance of what an officer should have done if he was mentally ill.
    - If we can agree on a stipulation on this issue, perhaps we can further discuss whether this affects Defendants' position on the other drug-related evidence, since Defendants' position was that this evidence is admissible to corroborate the deputies' belief that the Decedent was on drugs and to rebut the suggestion that the deputies should have considered he might be mentally ill. Also, the relevant Ninth Circuit jury instruction I mentioned on our call is this one (see factor #13 and explanatory notes): https://www.ce9.uscourts.gov/jury-instructions/node/163
        - We still see no relevance to the issue of the decedent's mental health since there is no evidence of any mental health illness. There was, however, evidence that the Decedent was under the influence of drugs beginning with the initial 9-1-1 call, his behavior observed, and corroborating evidence of the items in his possession and the toxicology report. The defendants should not have to "rebut" speculation about a mental illness that does not exist. Further, DeFoe's opinions rely heavily upon his opinion that a reasonable officer would have determined that the decedent was mentally ill or suffering a mental health crisis and what should have been done in response (e.g. calling in the mental health crisis team).
- We discussed Andrew's testimony that the Decedent experienced a "hallucination" prior to the incident, and you advised you would let us know whether Defendants would agree to exclude that.

8

- We believe the evidence is relevant. This is what Andrew said about the Decedent's conduct in the hours before 9-1-1 was called. Andrew described the Decedent's behavior while he was under the influence of meth. (See page 97.) He also believed the Decedent was having hallucinations the day of the incident. (See page 99.)
- We discussed Brenda Lopez's testimony that she believed the Decedent had a romantic interest in her. You advised that it may be admissible to explain the Decedent's agitation when Brenda was removed from the house and/or when the deputies went near her window, but that you would consider and let us know.
    - I just reviewed Brenda's deposition testimony and this came up as her explanation of how the Decedent acted while under the influence of meth. This was what she told deputies after the incident. During her deposition she could not recall what she told the deputies or denied having made certain statements. I have to think about this, but I think it is also relevant to how the Decedent was acting in the hours before the incident. There are inconsistencies in the plaintiffs and witness testimony with what they reported to policy and what they said in deposition.

Plaintiffs' anticipated MIL to limit testimony of Edward Flosi
- We discussed the possibility of a reciprocal stipulation to preclude each side's expert from offering legal opinions or making credibility determinations, which would avoid the need for this MIL. Proposed language for the stipulation is included in the attached draft.
- We would agree to this – I will look at the proposed language in the stipulation.

Anticipated stipulation to exclude evidence regarding tattoos
- We discussed that the parties are in agreement to exclude evidence regarding the Decedent's tattoos. That is correct.
- We also discussed whether the stipulation would exclude evidence regarding Andrew Nuñez's tattoos, and I said I would follow up. We would like to include this in the stipulation, subject to the caveat we discussed, i.e. that the photos of Andrew at the police station may be used if the door is opened by Andrew testifying he never went to the police station or testifies he was physically injured. (For what it's worth, we don't anticipate Andrew so testifying.) See attached draft. I'll look at the language in the stipulation but I think that is agreeable.

Anticipated stipulation to exclude agency findings
- We discussed that the parties are in agreement to exclude this evidence (see attached draft). In thinking about this I can foresee an argument in the Monell claims where plaintiffs may argue that the County did not reprimand or fire the officers and then claim no investigation was conducted. Because the Monell claims are still at issue I think this will be relevant.

Also, we discussed that the parties believe we can reach an agreement regarding Defendants' anticipated MIL #3 to exclude evidence regarding Jonathan Campos's charges and termination. Could you please add proposed language to the draft for our review? I will do so.

Michelle R. Prescott
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email mprescott@wzllp.com

9



**WESIERSKI & ZUREK LLP**
Experience Excellence

Follow us on:

Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

**From:** Benjamin Levine <blevine@galipolaw.com>
**Sent:** Tuesday, July 23, 2024 5:31 PM
**To:** Michelle R. Prescott <mprescott@WZLLP.COM>; Joshua A. Nuzzo <JNuzzo@WZLLP.COM>; Brett Smith <BSmith@WZLLP.COM>
**Cc:** Christopher Wesierski <CWesierski@WZLLP.COM>; Sierra Frazier <SFrazier@WZLLP.COM>; Nicole L. Burke <nburke@WZLLP.COM>; Kelly Atherton <KAtherton@WZLLP.COM>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Dominique Boubion <db@carrillofirm.com>; Luis Carrillo <lac4justice@gmail.com>; Michael Carrillo <mc@carrillofirm.com>; Carrillo Law Firm <team@carrillofirm.com>; Brendan Johnson <Bjohnson@galipolaw.com>
**Subject:** RE: Nuñez v. COSB - MILs & 16-2 Conference

**\*\*CAUTION: This email originated from outside of the organization.\*\***

Good afternoon Michelle,

I am following up on our conference from Friday to further meet and confer on some of the potential MIL issues we discussed, and to share a working draft for the proposed stipulations we discussed. (Please see attached; the points for potential stipulation that I believe you advised you would further consider and get back to us on appear in brackets.)

<u>Plaintiffs' anticipated MIL to exclude information unknown to deputies:</u>
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's criminal history, including any prior arrests, incarcerations, police contacts, etc., because the deputies were unaware of these details at the time of the use of force.
    - My recollection is Defendants' position was that testimony regarding a prior incident wherein police came to the house after Anthony allegedly locked his brother Marty outside (and Anthony was subsequently jailed and beaten up in jail) is admissible to show (1) Anthony was afraid of police on the date of the incident, which Defendants contend explains his conduct, and (2) contributory negligence by Andrew Nuñez on the theory that Andrew was using the 911 call to intimidate Anthony, but Andrew did not disclose Anthony's fear of police to 911.

10

- o Besides that incident, there was also testimony from Rosa Nuñez regarding a prior incident in which, according to Rosa, Anthony was arrested many years earlier for driving a car he had just purchased but had not yet registered in his name; will Defendants seek to introduce evidence regarding this incident? (I am wondering whether the criminal history information Defendants will seek to introduce at trial is limited to the incident involving Marty, so that the MIL need only address that issue, and whether we can stipulate to exclude other evidence regarding Decedent's criminal history.)
- We discussed Plaintiffs' intention to seek to exclude information about the Decedent's drug use that was unknown to the deputies at the time they used force.
  - o For the most part we were unable to agree on this topic, but you advised we could likely agree to exclude testimony from Melissa Carpenter regarding long past drug use, but that you would let us know to confirm.
  - o Per our discussion on this topic and on Defendants' anticipated MILs #1 and 2, the attached draft also includes proposed language for a stipulation limiting testimony regarding mental health issues, precluding testimony that the Decedent was in fact mentally ill (as distinct from testimony that the officers should have considered that he might be mentally ill, based on their training). If we can agree on a stipulation on this issue, perhaps we can further discuss whether this affects Defendants' position on the other drug-related evidence, since Defendants' position was that this evidence is admissible to corroborate the deputies' belief that the Decedent was on drugs and to rebut the suggestion that the deputies should have considered he might be mentally ill. Also, the relevant Ninth Circuit jury instruction I mentioned on our call is this one (see factor #13 and explanatory notes): https://www.ce9.uscourts.gov/jury-instructions/node/163
- We discussed Andrew's testimony that the Decedent experienced a "hallucination" prior to the incident, and you advised you would let us know whether Defendants would agree to exclude that.
- We discussed Brenda Lopez's testimony that she believed the Decedent had a romantic interest in her. You advised that it may be admissible to explain the Decedent's agitation when Brenda was removed from the house and/or when the deputies went near her window, but that you would consider and let us know.

Plaintiffs' anticipated MIL to limit testimony of Edward Flosi
- We discussed the possibility of a reciprocal stipulation to preclude each side's expert from offering legal opinions or making credibility determinations, which would avoid the need for this MIL. Proposed language for the stipulation is included in the attached draft.

Anticipated stipulation to exclude evidence regarding tattoos
- We discussed that the parties are in agreement to exclude evidence regarding the Decedent's tattoos.
- We also discussed whether the stipulation would exclude evidence regarding Andrew Nuñez's tattoos, and I said I would follow up. We would like to include this in the stipulation, subject to the caveat we discussed, i.e. that the photos of Andrew at the police station may be used if the door is opened by Andrew testifying he never went to the police station or testifies he was physically injured. (For what it's worth, we don't anticipate Andrew so testifying.) See attached draft.

Anticipated stipulation to exclude agency findings
- We discussed that the parties are in agreement to exclude this evidence (see attached draft).

Also, we discussed that the parties believe we can reach an agreement regarding Defendants' anticipated MIL #3 to exclude evidence regarding Jonathan Campos's charges and termination. Could you please add proposed language to the draft for our review?

11

Best,
Ben

Benjamin S. Levine, Associate Attorney | The Law Offices of Dale K. Galipo | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118 | Email: blevine@galipolaw.com  www.GalipoLaw.com

CONFIDENTIALITY NOTICE:
This e-mail may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply e-mail or telephone, and delete all copies of this message.

**From:** Michelle R. Prescott <mprescott@WZLLP.COM>
**Sent:** Friday, July 19, 2024 3:42 PM
**To:** Benjamin Levine <blevine@galipolaw.com>; Joshua A. Nuzzo <JNuzzo@WZLLP.COM>; Brett Smith <BSmith@WZLLP.COM>
**Cc:** Christopher Wesierski <CWesierski@WZLLP.COM>; Sierra Frazier <SFrazier@WZLLP.COM>; Nicole L. Burke <nburke@WZLLP.COM>; Kelly Atherton <KAtherton@WZLLP.COM>; Dale K. Galipo <dalekgalipo@yahoo.com>; Santiago Laurel <slaurel@galipolaw.com>; Dominique Boubion <db@carrillofirm.com>; Luis Carrillo <lac4justice@gmail.com>; Michael Carrillo <mc@carrillofirm.com>; Carrillo Law Firm <team@carrillofirm.com>
**Subject:** RE: Nuñez v. COSB - MILs & 16-2 Conference

Ben,
I created a Zoom link for the 4:30 meeting.


Michelle R. Prescott
**Wesierski & Zurek LLP**
29 Orchard Road, Lake Forest, CA 92630
Tel. No. (949) 975-1000
Fax. No. (949) 756-0517
Email mprescott@wzllp.com



Follow us on:
Confidential Communication: Emails from this firm normally contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited and may be a violation of law. This communication and all attachments are confidential, in anticipation of litigation or in furtherance of litigation. The attorney client privilege, work product doctrine and privacy rights of the sender, recipients and third parties are specifically asserted as to this communication and all attachments, in addition to all other protections afforded by law, including without limitation, HIPAA, physician/patient privilege, trade secret, tax privacy, copyright and trademark laws. If you believe that you received this email in error, please do not read this email or any attached items. Please delete the email and all attachments, including any copies thereof, and inform the sender that you have deleted the email, all attachments and any copies thereof. Thank you.

12