EXHIBIT 4

DEPOSITION OF SCOTT DEFOE

**Certified Copy**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSA NUNEZ, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO DECEDENT ANTHONY NUNEZ; ANTHONY NUNEZ, JR., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO DECEDENT, ANTHONY NUNEZ; AND ANDREW NUNEZ, INDIVIDUALLY, <br><br> PLAINTIFFS, <br><br> VS. <br><br> COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; AND DOES 5 THROUGH 15, INCLUSIVE, <br><br> DEFENDANTS. | CASE NO.: 5:22-cv-1934-SSS(SPx) <br><br> VENUE: SBC |

DEPOSITION OF Scott DeFoe

TAKEN ON Friday, April 5, 2024

REPORTED BY:  ALICE J. WILBUR, COURT REPORTER

CSR NO. 9538



**PLATINUM REPORTERS & INTERPRETERS**
Certified Shorthand Reporters
Post Office Box 6070 - San Pedro, California 90734-6070 - (310) 241-1450

1

DEPOSITION OF SCOTT DEFOE

```
 1                UNITED STATES DISTRICT COURT
 2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4   ROSA NUNEZ, INDIVIDUALLY AND AS   )  CASE NO.:
     SUCCESSOR IN INTEREST TO DECEDENT)  5:22-cv-1934-SSS(SPx)
 5   ANTHONY NUNEZ; ANTHONY NUNEZ,     )
     JR., INDIVIDUALLY AND AS          )
 6   SUCCESSOR IN INTEREST TO          )
     DECEDENT, ANTHONY NUNEZ; AND      )
 7   ANDREW NUNEZ, INDIVIDUALLY,       )
                                       )
 8                   PLAINTIFFS,       )
                                       )
 9              VS.                    )
                                       )
10   COUNTY OF SAN BERNARDINO; CITY OF )
     HESPERIA; MICHAEL MARTINEZ;       )
11   SABRINA CERVANTES; JEREMY DEBERG; )
     JONATHAN CAMPOS; AND DOES 5       )
12   THROUGH 15,                       )
     INCLUSIVE,                        )
13                                     )
                     DEFENDANTS.       )
14   _____)
15
16
17        DEPOSITION OF Scott DeFoe, taking place
18   via Internet, taken on behalf of the Defendants, at
19   Huntington Beach, California 92648 at 4:01 P.M. on
20   FRIDAY, APRIL 5, 2024, before Alice Wilbur, CSR #9538,
21   a Certified Shorthand Reporter within and for the
22   State of California, pursuant to Notice.
23                       -oOo-
24
25
```



DEPOSITION OF SCOTT DEFOE

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:

 4        CARRILLO LAW FIRM
          BY:  DOMINIQUE L. BOUBION
 5             MICHAEL S. CARRILLO
               ATTORNEYS AT LAW
 6        1499 HUNTINGTON DRIVE
          SUITE 402
 7        SOUTH PASADENA, CALIFORNIA  91030

 8        LAW OFFICES OF DALE K. GALIPO
          BY:  BEN LEVINE
 9             ATTORNEY AT LAW
          21800 BURBANK BOULEVARD
10        SUITE 310
          WOODLAND HILLS, CALIFORNIA  91367
11
     FOR THE DEFENDANTS:
12
          LAW OFFICES OF WESIERSKI & ZUREK
13        BY:  MICHELLE R. PRESCOTT
               ATTORNEY AT LAW
14        29 ORCHARD ROAD
          LAKE FOREST, CALIFORNIA  92630
15
     FOR THE DEFENDANT: (JONATHAN CAMPOS)
16
          FUJII LAW GROUP
17        BY:  MAHADHI CORZANO
               ATTORNEY AT LAW
18        2 PARK PLACE
          SUITE 450
19        IRVINE, CALIFORNIA  92614-2573

20

21   Also Present:

22        (None)

23

24

25
```



Platinum Reporters (310) 241-1450

3

DEPOSITION OF SCOTT DEFOE

```
 1                    I N D E X
 2
 3   WITNESS                                    PAGE
 4   Scott DeFoe
 5         Examination by Ms. Prescott            5
 6         Examination by Mr. Corzano           125
 7
 8                  E X H I B I T S
 9                            REFERRED TO    MARKED
10   1 - Notice of Deposition                    6
11   2 - curriculum vitae                        7
12   3 - 2024 fee schedule                      59
13   4 - rule 26 disclosure                     60
14   5 - report                                 62
15   6 - report                                 63
16   8 - LA Times article                       47
17
18   REQUESTED INFORMATION                     PAGE
19   (None)
20
21         QUESTIONS INSTRUCTED NOT TO ANSWER
22                    Page    Line
23                    (None)
24
25
```



DEPOSITION OF SCOTT DEFOE

```
 1      HUNTINGTON BEACH, CALIFORNIA - FRIDAY, APRIL 5, 2024
 2                    4:01 P.M. - 7:10 P.M.
 3                            -oOo-
 4
 5                         Scott DeFoe,
 6    called as a witness on behalf of the Defendants, having
 7    been first duly sworn, was examined and testified as
 8    follows:
 9
10                          EXAMINATION
11    BY MS. PRESCOTT:
12        Q   Good morning, Mr. DeFoe, how are you?
13        A   Good afternoon, ma'am.  I'm well.  How are you?
14        Q   Good.  Can we get you to state and spell your
15    name for the record please?
16        A   Scott, S-c-o-t-t, Allen, A-l-l-e-n and DeFoe is
17    D-e capital F-o-e.
18        Q   Okay.  And where are you located today?
19        A   I'm in Huntington Beach, California.
20        Q   Okay.  And is there anyone else there with you
21    today?
22        A   In the room, no.
23        Q   Okay.  I am going to start off with our very
24    first exhibit.  Let's see how it goes.  See if I can
25    share my screen.  This will be Exhibit 1.  Exhibit 1 will
```



DEPOSITION OF SCOTT DEFOE

```
 1   be a notice of taking deposition of expert witness and
 2   production of documents.  And the deposition is dated for
 3   April 5th, 2024 at 4:00 p.m. which should be today.  And
 4   the deponent is Scott A. DeFoe.  I'm going to direct your
 5   attention to page 3 of this deposition notice and there
 6   was a request for some production of documents, so let me
 7   ask a couple of questions first.
 8              Did you get a copy of this deposition notice?
 9              (Exhibit 1 marked.)
10       A    I did.
11       Q    Okay.  And did you, were you able to find and
12   give us copies of any of the documents that we had
13   requested?
14       A    My understanding was plaintiffs counsel was going
15   to send my case file which is everything that they
16   provided to me in preparation for my initial rule 26
17   report and my supplemental rule 26 report.  I've not
18   provided any billing to them because I've not billed the
19   matter yet.  And I did provide an updated copy of my C.V.
20   and list of trial testimony excluding anything, I had a
21   deposition yesterday.
22       Q    Okay.  Thank you.  Okay.  So why don't we go
23   straight on to Exhibit 2 which should be a copy of your
24   C.V.  I'm not sure I have the correct one.  Okay.  You
25   should see a copy of a C.V.  It's 7 pages long.  Is there
```



```
 1   a way for you to determine whether or not this is your
 2   most recent copy of your C.V.?
 3                  (Exhibit 2 marked.)
 4       A    It appears to be, ma'am.
 5       Q    Okay.  Do you date them or anything like that?
 6       A    I don't.
 7       Q    Okay.  All right.  I'll go ahead and stop sharing
 8   for right now.  I'd like to ask a little bit about your
 9   education.  I saw that you have a masters in legal
10   studies from Pepperdine; is that correct?
11       A    I do.
12       Q    And you completed that in 2020?
13       A    Yes, ma'am.
14       Q    Okay.  And is that an online program?
15       A    Both online and we do courses at the university
16   in Malibu.
17       Q    Okay.  And did you have to take a GRE GMAT or
18   LSAT for admission to that program?
19       A    No, because I had another graduate degree and my
20   grade point average was high enough as well as taking any
21   GMAT is my understanding.
22       Q    Okay.  And do you know if they require a GRE GMAT
23   or LSAT for any of those for that masters legal studies
24   program?
25       A    You know, I don't.  I think probably half of the
```



DEPOSITION OF SCOTT DEFOE

```
 1      Q   Didn't the deputies make the determination that
 2   Anthony was under the influence of a controlled
 3   substance?
 4      A   Well, I didn't see where in the record, ma'am,
 5   that they conducted a 12 step drug recognition evaluation
 6   of Mr. Nunez.  That would be the only way to make the
 7   actual determination.  They might say he might be, you
 8   know, obviously he demonstrating some type of behavior or
 9   there might be some sort of some characteristics that he
10   might be exhibiting that deputies could opine on, but
11   there's no way to make the determination unless they
12   conduct the drug recognition evaluation.
13          They also had a failure to make the being
14   mentally ill that was exhibited by the recording by
15   Mr. Martinez of the comments that were made by Mr. Nunez
16   involving the officer involved shooting.
17      Q   Okay.  And what's the 12 step evaluation?
18      A   Well, it's a drug recognition evaluation that you
19   can do in the field.  And it's a number of tests that you
20   can do.  You do an eye Nystagmus test.  You may be doing
21   some field sobriety testing.  You're going to either take
22   blood or urine to make that determination.  You're going
23   to conduct a battery of questions to find out what that
24   person has eaten or under the influence or under the care
25   of a doctor or psychiatrist, if they take psychotropic
```



DEPOSITION OF SCOTT DEFOE

1  they're bipolar or suffering from some type of delusional
2  disorder or something or some compilation of all of
3  those. Just that the person appears just like the
4  evaluation as it relates to under the influence of a
5  controlled substance. That based on their mannerisms,
6  discussion, statements it appears that they may be
7  mentally ill and are experiencing a mental crisis based
8  on the totality of the circumstances.
9     Q  And if you know someone who's under the influence
10 of methamphetamine do they also, do they also exhibit
11 signs that could be confused with mental illness?
12        MR. LEVINE: Object that it's vague. Calls for
13 speculation. Go ahead.
14        THE WITNESS: Well, they could because many of
15 our, obviously many of our transient populations those
16 without insurance will self medicate in lieu of taking
17 psychotropic medications, so they may self medicate or in
18 compilation with a psychotropic drug due to the side
19 effects of taking a psychotropic medication sometimes
20 there are similar responses. Sometimes some of them
21 mentally ill and then self medicating with the CNS
22 stimulant such as methamphetamine.
23 BY MS. PRESCOTT:
24    Q  Okay. And people use methamphetamine that aren't
25 unhoused as well; right?



Platinum Reporters (310) 241-1450

76

DEPOSITION OF SCOTT DEFOE

1    A   Yes, ma'am.

2    Q   In other words, perhaps someone who's living with

3 their parents may still be using methamphetamine?

4    A   I mean they could be.  I mean hopefully, I got

5 three kids, two kids still at home, hopefully that's not

6 the precursor to using methamphetamine, but yeah.  I'm

7 sure there might be some people who are living at home

8 still using some methamphetamine, but I don't think that

9 would be the reason behind it, just happens they're

10 living at home still and have an addiction to

11 methamphetamine.

12    Q   And in this case Anthony Nunez was living at home

13 and his while living -- take back a step.  Is your

14 understanding that Mr. Anthony Nunez was living in his

15 mother's home?

16    A   Yes.

17    Q   Okay.  And is it your understanding his family

18 had communicated to law enforcement that he was under the

19 influence of drugs?

20    A   Yes.

21    Q   Okay.  Going down a little bit in this section

22 here, the underlying principals reverence for life, these

23 correct and reasonable methods are recognizing cues I

24 think.  Wait a second.  I think I'm reading the wrong

25 section.  Okay.  Here we go.  Recognizing cues and other



DEPOSITION OF SCOTT DEFOE

```
 1   to do if, in fact, he is going to come outside or was
 2   going to submit to arrest.  In fact, they told him he
 3   wasn't going to be arrested and that he wasn't going to
 4   see a psychiatrist.  And based on the comments at a
 5   minimum he would have been under the influence, if they
 6   deemed him under the influence for a 11550 of the health
 7   & safety code which is a misdemeanor.
 8        He clearly seemed like there was no suicidal
 9   ideations displayed during the course of the discussion
10   or negotiations that would I believe would necessitate at
11   a minimum of a 72 hour hold to see if he's potentially a
12   danger to himself at that time.  So I think none of that
13   was planned and it was just a bunch of deputies talking
14   to an individual who potentially is under the influence
15   of a CNS stimulant potentially under crisis and
16   potentially resisting to arrest.
17     Q   Okay.  Now going back being to the deputies lying
18   to him about being arrested and seeing a psychiatrist
19   wasn't, Mr. Nunez didn't want those outcomes; is that
20   your understanding of what you heard?
21     A   Well --
22        MR. LEVINE:  Objection.  Again it calls for
23   speculation.  Go ahead.
24        THE WITNESS:  That doesn't really matter.  What,
25   I mean what you do is you have to let him know that what
```



```
 1   you know, for once again you can always say I mean I need
 2   to talk to my supervisor, talk to someone about that, but
 3   you have to let them know.  You know, like they made
 4   promises ultimately that they can't keep.
 5         And the problem with that is if in fact it
 6   transitions to a SWAT negotiation component is now
 7   they've already said certain things that now they're not
 8   going to be able to retract.  Oh, by the way Martinez
 9   said I'm not going to jail and I'm not going to see a
10   psychiatrist or psychiatrists are for psychos.
11         ==So you're telling an a guy that apparently making==
12   ==statements that a reasonable officer would believe may be==
13   ==mentally ill== and now you've said there's some negative
14   connotation with seeing a mental health individual versus
15   saying I understand that, but we're not going to leave
16   and we're concerned about your safety and welfare, so
17   we're going to need you to at least be cleared by a
18   licensed clinician to make sure you're okay.
19         You can change the dynamics of the conversation,
20   but you never lie to someone, because the minute you do
21   that you're going to set back potential negotiations for
22   the entire event where no one, you know, will be able to
23   successfully negotiate and come out of the house.
24   Q    Now Mr. Nunez since he had those fears would
25   telling him he's going to ultimately end up being
```



Platinum Reporters (310) 241-1450

82

DEPOSITION OF SCOTT DEFOE

```
 1        I think in a case like this, this particular case
 2   would be an ideal time for CIT to respond, because it's
 3   apparent.  And I don't say this in a disrespectful way,
 4   but it's apparently apparent that Campos and Martinez
 5   didn't have the primary requisite skill set to
 6   effectively negotiate Mr. Nunez to come out of the house
 7   safely.
 8        Q   Okay.  Those two bullet points here whatever
 9   whenever possible uniformed CIT officers should respond
10   to any call involving a mentally ill individual that pose
11   a danger to self or others and then the one below it,
12   where did you get this information?
13        A   I don't know if it's from the directive of the
14   actual mental health crisis intervention team or not or
15   if it's something I just typed up myself based on my
16   training and experience of supervising a negotiation of
17   24 hostage negotiators that might have been my
18   recommendation, but that's typically similar.
19            And it's not, it's looking directly at verbatim
20   at the bottom of page 9 of 31.  It's very consistent with
21   that.
22        Q   Okay.  And in terms of an officers training about
23   how to respond wouldn't the policy need to be in writing
24   or be part of the training materials in order for them to
25   know it?
```

96



Platinum Reporters (310) 241-1450

DEPOSITION OF SCOTT DEFOE

```
 1      A    Well, it is.  I mean that's, it is a policy.
 2   It's 3.180 so it's the policy under the department, so
 3   with that it's not an option.  It's not a procedure or a
 4   tactic.  It's a policy so --
 5      Q    But --
 6      A    Policies are the -- I'm sorry, ma'am.
 7      Q    Oh, I was going to say I'm specifically asking
 8   about the two bullet points, those aren't from procedure
 9   3.180 though, are they?
10      A    No.
11      Q    Okay.  Do you have anything else to tell me about
12   opinion number 2?
13      A    No, ma'am.
14      Q    Okay.  And so let's go now on to opinion number
15   3.  Opinion number 3 it is my opinion based on my review
16   of the videos, facts and testimony the defendants failed
17   to formulate a safe tactical plan and failed to discuss
18   and implement reasonable tactical contingencies to
19   include tactically retreating to create time and distance
20   until the arrival of San Bernardino county Sheriffs
21   department mental health crisis intervention team.
22           This sounds a little kind of similar to opinion
23   number 2.  Is there something, some other, did we discuss
24   about the basis of this already?
25      A    Well, this is more towards the tactical plan and
```



State of California )
County of Los Angeles )

    The undersigned Certified Shorthand Reporter CSR 9538, a court reporter in and for the State of California, does hereby certify:

    That any witness(s) named in the foregoing proceeding was(were), before and/or during the commencement of proceeding, duly sworn or affirmed to testify the truth, the whole truth, and nothing but the truth;

    That said proceeding was stenographically (or otherwise) reported by me and thereafter transcribed into typewriting under my direction.

    The undersigned Certified Shorthand Reporter further certifies to be neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

    IN WITNESS WHEREOF, I have hereunto subscribed my name April 17, 2024.

*Alice Joanne Wilbur*
_____
Certified Shorthand Reporter