**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**CARRILLO LAW FIRM, LLP**
Luis A. Carrillo (SBN 70398)
Michael S. Carrillo (SBN 258878)
Dominique L. Boubion (SBN 336915)
1499 Huntington Drive, Suite 402
South Pasadena, California 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA NUÑEZ, individually; ANTHONY NUÑEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nuñez; and, ANDREW NUÑEZ, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,<br><br>Defendants. | Case No.: 5:22-cv-1934-SSS-SP<br><br>*Hon. Judge Sunshine S. Sykes*<br>*Hon. Mag. Judge Sheri Pym*<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE NO. 1 & 2**<br><br>Hearing:   August 30, 2024<br>Time:   2:00 p.m.<br>Dept.:   Courtroom 2<br><br>FPTC:   September 6, 2024<br>Trial:   September 23, 2024 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This civil rights and state tort case arises from the use of less-lethal and deadly force by San Bernardino County Sheriff's Department ("SBCSD") deputies Michael Martinez, Sabrina Cervantes, and Jeremy Deberg against Plaintiffs' decedent, Anthony Nuñez ("Mr. Nuñez"), on March 29, 2022. Prior to their uses of force, the deputies had an extended encounter and conversation with Mr. Nuñez, during which Mr. Nuñez exhibited multiple signs and symptoms indicative of a possible mental health crisis, mental illness, and/or emotional crisis. He spoke at length in a highly disordered manner, frequently referencing religious subjects (including angels and devils) and conspiracy theories (including regarding the international spread of pollutants and diseases, and references to the "Illuminati"), and at times addressing individuals or entities that were not present at the scene. Two of the deputies present at the scene testified in deposition that, based on Mr. Nuñez's conduct and statements, they considered or believed it was a possibility that Mr. Nuñez was experiencing a mental health crisis and/or was mentally ill.

Despite the foregoing, Defendants now seek to exclude any evidence or reference at trial that Mr. Nuñez "was mentally ill or experiencing a mental health crisis." (Defendants' Mot. *in Limine* No. 1 ("Defs.' MIL No. 1") at 4.) Relatedly, Defendants also seek to exclude testimony from Plaintiffs' police practices expert regarding the same subject and regarding how law enforcement officers are trained and expected to respond to mentally ill individuals. (Defendants' Mot. *in Limine* No. 2 ("Defs.' MIL No. 2").)

Plaintiffs' primary claim at trial will be for excessive force, which is evaluated under the Fourth Amendment's "reasonableness" standard. The Ninth Circuit has repeatedly recognized that whether the subject of a use of force has exhibited signs of mental illness, a mental health crisis, and/or an emotional crisis is

a factor for courts and juries to consider in determining whether the force used was reasonable. Accordingly, at trial Plaintiffs are entitled to present argument and evidence showing that, based on information known to and observed by the defendant deputies during the incident, it would have been apparent to a reasonable deputy in these Defendants' position that Mr. Nuñez was exhibiting signs and indications of a possible mental illness or mental health crisis. Such evidence is relevant under Ninth Circuit precedent and is not unduly prejudicial to Defendants, and Defendants identify no legal authority that is to the contrary. By the same token, Plaintiffs are entitled to elicit testimony from their police practices expert regarding standard law enforcement training on recognizing indications of potential mental illness, standard training on interacting with individuals who may be mentally ill, and how the deputies' determinations and conduct did or did not conform with their training. For these reasons, and as discussed further below, both of Defendants' motions should be denied.

## II.  COURTS AND JURIES IN THE NINTH CIRCUIT CONSIDER WHETHER IT WOULD HAVE BEEN APPARENT TO A REASONABLE DEPUTY THAT THE PERSON THEY USED FORCE AGAINST WAS MENTALLY ILL OR EMOTIONALLY DISTURBED

Fourth Amendment claims for excessive force—as with claims for battery and negligent wrongful death under California law—depend on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2004) (battery); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (negligence). Courts "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotations omitted).

In the Ninth Circuit, one such factor is whether an individual against whom force was used exhibited "indications of mental illness." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (citation omitted); *see* Ninth Circuit Model Jury Instruction 9.25 (2017 Edition, Dec. 2023 update) (listing, as factor indicating reasonableness of force, "whether it should have been apparent to the officer[s] that the person [he] [she] [they] used force against was emotionally disturbed"); *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) ("[W]hether the suspect has exhibited signs of mental illness is one of the factors the court will consider in assessing the reasonableness of the force used."); *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) ("[R]elevant factors include . . . whether it should have been apparent to officers that the person they used force against was emotionally disturbed."); *see also* CACI 1305B (2024) (listing, as factor for jury's consideration in evaluation of battery claim, "whether [name of defendant] knew or had reason to know that the person against whom [he/she/nonbinary pronoun] used force was suffering from a physical, mental, health, developmental, or intellectual disability"). Where an individual exhibits "indications of mental illness," "the government's interest in using deadly force [i]s diminished." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (addressing issue in context of individual who "was mentally unstable, acting out, and at times invited officers to use deadly force on him"); *see Glenn*, 673 F.3d at 875-76; *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

Significantly here, this factor examines whether officers "*should have suspected* [the individual] could have mental health issues," *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1127 (9th Cir. 2021) (emphasis added)—not whether the individual had ever been diagnosed with a specific mental illness, or was provably mentally ill as a factual matter, as Defendants suggest. (*See* Defs.' MIL No. 1 at 5-6.) This is consistent with the general rule limiting information

considered in the reasonableness analysis to that which was known by the officers at the time force was used. *Glenn*, 673 F.3d at 873 n.8 ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.") (quoting *Graham*, 490 U.S. at 396); (*see* Plaintiffs' Motion in Limine No. 1 [Dkt. 93]).[1]

## III.   CONSIDERABLE EVIDENCE SHOWS THAT A REASONABLE OFFICER WOULD HAVE BELIEVED THAT MR. NUÑEZ COULD HAVE BEEN MENTALLY ILL, EXPERIENCING A MENTAL HEALTH CRISIS, OR EMOTIONALLY DISTURBED

Defendants argue that there is "not a single piece of evidence" that Mr. Nuñez "was mentally ill or suffering a mental health crisis." (Defs.' MIL No. 1 at 5.) As the foregoing authority makes clear, however, the issue is whether there is evidence that Mr. Nuñez exhibited signs and symptoms that would have led a reasonable deputy to believe or suspect that Mr. Nuñez may have been mentally ill, experiencing a mental health crisis, or emotionally disturbed. Here, there is plenty of such evidence.

During the incident, Deputies Martinez and Jonathan Campos[2] had an approximately hour-long conversation with Mr. Nuñez at his front door, and Deberg and Cervantes stood nearby and listened. (Decl. of Benjamin Levine ("Levine Decl."), Ex. A, Depo. of Jonathan Campos at 39:6-9, 44:15-23; Ex. B, Depo. of Jeremy Deberg at 38:10-21, 42:13-22, 45:18-46:4; Ex. C, Depo. of Sabrina Cervantes at 33:11-34:11.) Over the course of that conversation, Mr. Nuñez's speech and manner varied significantly. (Levine Decl., Ex. A, Campos Depo. at 126:5-16, 129:24-130:3.) Among other things, Mr. Nuñez said that he was scared,

---

[1] Accordingly, whether Plaintiffs personally believed that Mr. Nuñez suffered from a mental illness or were aware of any diagnosis, as addressed in Defendants' motion, is immaterial, given that Defendants have not argued (and cannot show) that these beliefs or awareness were ever communicated to the deputies prior to the uses of force.

[2] Jonathan Campos has been dismissed as a defendant in this action, [Dkt. 71], but is expected to testify as a witness at trial.

that he loved the deputies, and that he wanted the deputies to love him; spoke about the devil, hell, angels, sinners, the end of the world, Joe Biden, Congress, the FBI, chemicals, pollution, the "Illuminati," capitalism, technology, national borders, and diseases; and said he was or would become president or king, was God, and was crazy. (Levine Decl., Ex. D, Transcript of Audio from Michael Martinez Belt Recorder, 6:1-2, 6:11, 7:5, 7:24, 10:25-11:7, 12:2-5, 12:27-13:2, 14:5, 16:1, 16:8-9, 20:3-4, 22:4, 23:2-11, 26:11-13, 27:5-8, 29:4-30:4, 30:19-32:21, 34:6-34:27, 36:17-37:4, 37:8-12, 39:12-13, 41:2-43:27, 45:27, 47:7-26, 50:8; Ex. A, Campos Depo. at 45:12-46:3.)

SBCSD deputies are trained to identify symptoms indicating an individual may be suffering from a mental illness or mental health crisis and, when encountering such individuals, to attempt to de-escalate by reassuring the individual that the deputies are there to help, requesting additional resources, slowing down (in part to allow the requested resources to arrive), and assisting in calming the individual. (Levine Decl., Ex. A, Campos Depo. at 46:15-22, 129:24-130:8; Ex. B, Deberg Depo. at 107:18-108:11; Ex. E, Depo. of Michael Martinez at 87:21-88:10, 92:4-18.) Plaintiffs' police practices expert, Scott DeFoe, has opined that based on Mr. Nuñez's conduct and statements, the deputies should have considered that Mr. Nuñez may have been mentally ill. (*See* Decl. of Michelle Prescott re Defendants Motion *in Limine* No. 2, Ex. 4, Depo. of Scott DeFoe 82:11-13.) Indeed, based on their training and Mr. Nuñez's conduct and statements, Deberg did consider that Mr. Nuñez may have been mentally ill during the incident, and Campos recognized the same during his deposition. (Levine Decl., Ex. A, Campos Depo. at 129:24-130:8; Ex. B, Deberg Depo at 107:18-108:11.)

Plaintiffs do not intend to elicit testimony at trial from Mr. DeFoe that Mr. Nuñez was in fact or provably mentally ill, notwithstanding certain statements from Mr. DeFoe's report and deposition that could be viewed as ambiguous as to whether

1   they address whether Mr. Nuñez was in fact mentally ill versus whether a reasonable
2   officer in the deputies' position would have considered that he might be. (*See* Defs.'
3   MIL No. 2 at 4-7.) Plaintiffs agree that Mr. DeFoe is not a doctor. (*See id.* at 8-9.)
4   However, as a qualified police practices expert, Mr. DeFoe is entitled to testify
5   (1) regarding standard California police training (including training the deputies
6   received) on recognizing signs of possible mental illness and on responding
7   to/engaging with individuals who may be mentally ill, and (2) regarding how what
8   the deputies observed, and the deputies' actions or failures to act, aligns with or
9   differs from that training. *See, e.g., Tabares*, 988 F.3d at 1127-28 (considering and
10  relying upon similar testimony from police practices expert). Mr. DeFoe's opinion
11  that the deputies should have considered that Mr. Nuñez may have been mentally ill
12  is based on evidence regarding what the deputies observed, California's Peace
13  Officer Standards and Training ("POST"), and the SBCSD's own training materials.
14  (Decl. of Michelle Prescott re Defs.' MIL No. 1, Ex. 3, Rule 26 Supplemental
15  Report of Scott DeFoe at 1-3, 7-13; *see Smith v. City of Hemet*, 394 F.3d 689, 703
16  (9th Cir. 2005) (noting that POST standards and training "are applicable to all state
17  police officers"); California Commission on Peace Officer Standards and Training,
18  Learning Domain 37, People with Disabilities, Version 6.0, Chapter 4: Persons with
19  Mental Illness (*available at* https://post.ca.gov/portals/0/post_docs/basic_course_
20  resources/workbooks/LD_37_V-6.0.pdf) (detailing standards and training for
21  California law enforcement officials regarding recognizing signs and symptoms of
22  potential mental illness, appropriate police responses to and methods of
23  communication with potentially mentally ill individuals, and other related issues).)
24  Accordingly, his opinion is also "properly grounded, well-reasoned and not
25  speculative," contrary to Defendants' suggestion otherwise. (*See* Defs.' MIL No. 1
26  at 5-6 (quoting Fed. R. Evid. 702, Adv. Comm. Notes, 2000 Amend.).)
27          Such an opinion is consistent with Mr. DeFoe's qualifications and scope as a
28

police practices expert and is consistent with Ninth Circuit precedent. For example, in *Tabares*, in concluding that evidence supported a finding "that [the defendant officer] should have suspected [the decedent] could have mental health issues," the Ninth Circuit relied principally on the opinion of the plaintiff's police practices expert. 988 F.3d at 1127. That expert opined that "'a reasonable officer in [the defendant's] position acting with consistent standard police practices would have known or should have known that [the decedent] was mentally ill,' because 'officers are trained to recognize indicators of mental illness, such as: fearful or inappropriate behavior, excitability, and disorganized speech and thought patterns.'" 988 F.3d at 1127 (cleaned up). That opinion is functionally identical to opinions Mr. DeFoe has offered in his expert report and deposition testimony, and with his approximately 29 years of experience as a law enforcement official (including over a decade as a sergeant) and extensive education and training—including regarding interacting with potentially mentally ill individuals—he is undeniably qualified to offer them. (*See* Levine Decl., Ex. F, Curriculum Vitae of Scott DeFoe.)

In addition, Defendants' own police practices expert, Edward Flosi, contradicts Defendants' argument that Plaintiffs should be precluded from arguing the deputies should have considered Mr. Nuñez may have been mentally ill. Like Mr. DeFoe, Mr. Flosi prepared a report based on his review of the evidence in this matter, including the depositions of the defendant deputies and SBCSD training materials. (*See* Levine Decl., Ex. G, Initial Report of Edward Flosi at 1, 7-10.) In his report, Mr. Flosi states, "In this incident, another officer with similar training and experience *would likely conclude* that Nuñez was; (1) experiencing the effects of being under the influence of a central nervous system stimulant, *and/or (2) suffering from a mental illness*." (*Id.* at 22 (emphasis added).)

In sum, whether or not Mr. Nuñez was provably mentally ill or had a known diagnosis is not at issue in this case. Rather, the issue here—and one the jury is

entitled to consider at trial—is whether a reasonable deputy would have, under these circumstances, considered that Mr. Nuñez may have been mentally ill, been experiencing a mental health crisis, and/or been emotionally disturbed. There is ample evidence that Mr. Nuñez exhibited signs and symptoms that would have led a reasonable deputy to consider that this was the case, and Plaintiffs should not be precluded from presenting evidence and argument on this point at trial, including through testimony from their police practices expert.

## IV.    EVIDENCE AND ARGUMENT THAT MR. NUÑEZ WAS EXHIBITING SIGNS AND SYMPTOMS OF A MENTAL HEALTH CRISIS IS NOT UNFAIRLY PREJUDICIAL

Defendants further argue that even if this evidence is relevant, it is nevertheless unfairly prejudicial, irrelevant, and will mislead the jury and waste time. (*See* Defs.' MIL No. 1 at 6-7; Defs.' MIL No. 2 at 9.) As addressed above, this evidence is plainly relevant under Ninth Circuit precedent.

It also is not unfairly prejudicial. "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (citing Fed. R. Evid. 403, Adv. Comm. Notes). Consideration of evidence and argument that the defendant deputies should have considered that Mr. Nuñez may have been experiencing a mental health crisis, would not, as Defendants claim, encourage the jury to make a decision on a basis that is not "based in law." (Defs.' MIL No. 1 at 7.) Rather, it would be a "[ ]proper basis" upon which to assess the reasonableness of the force the deputies used. *Hankey*, 203 F.3d at 1172. As explained at length above, per Ninth Circuit precedent, whether the defendant deputies "should have suspected [Mr. Nuñez] could have mental health issues," *Tabares*, 988 F.3d at 1127, is a factor to be considered in determining the reasonableness of the deputies' uses of force, which is further reflected in the Ninth

Circuit's model jury instructions. *See* Ninth Circuit Model Jury Instruction 9.25 (2017 Edition, Dec. 2023 update).

Defendants' argument that this evidence is likely to confuse the jury fails for the same reason. Although Defendants claim, without legal support, that such evidence "could connote that it has some legal relevance to the issues to be decided by the jury when in reality it has no bearing on the current action" (Defs.' MIL No. 1 at 6-7), it is in fact relevant, as explained. The same is true as to Mr. DeFoe's opinions and anticipated testimony. Because Mr. DeFoe's anticipated testimony at trial regarding the deputies' training on recognizing and engaging with individuals who may be mentally ill, and the deputies' failure to follow that training with Mr. Nuñez, concerns a legally relevant issue in this case, it is not likely to confuse or mislead the jury. (*See* Defs.' MIL No. 2 at 9.)

Nor would introduction of such evidence necessitate—or even allow for—"a mini-trial . . . as to the mental health of [Mr. Nuñez]," as Defendants argue. (Defs.' MIL No. 1 at 7; *see* Defs.' MIL No. 2 at 8-9.) As noted above, and as addressed at length in Plaintiffs' Motion *in Limine* No. 1, only information of which the deputies were aware at the time they used force is relevant in determining whether the force was excessive. *Glenn*, 673 F.3d at 873 n.8. Accordingly, information about whether or not Mr. Nuñez had been diagnosed with a particular mental illness, or about whether or not he was believed to be mentally ill by his family members, would only be relevant if such information was communicated to the deputies prior to their uses of force. Because Defendants cannot show that any such information was communicated to the deputies prior to their uses of force (as it was not), such information is irrelevant to the issues that will be tried in this case, and thus has no potential to create a mini-trial.

/ / /

/ / /

1  **V.    CONCLUSION**

2        For the foregoing reasons, Plaintiffs respectfully request that this Court deny

3  Defendant's Motion *in Limine* No. 1 and Motion *in Limine* No. 2.

4

5

6        Respectfully submitted,

7

8  DATED: August 9, 2024          LAW OFFICES OF DALE K. GALIPO

9

10                     By_____*/s/ Benjamin S. Levine*_____

11                        Dale K. Galipo
                         Benjamin S. Levine
12                        Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28