# Exhibit G

**Edward T. Flosi, M.S.**
Law Enforcement Practices Expert
Law Enforcement Trainer
Justitia Consulting, Inc.
1519 E Chapman Ave #34
Fullerton, CA 92831
Cell: (408) 315-0520
Email: ed.flosi@gmail.com

1  I have been retained by Michelle Prescott (Wesierski & Zurek LLP) and Mahadhi Corzano (Fujii
2  Law Group) as an expert witness in the civil action of Nunez v County of San Bernardino, et al.  I am
3  therefore submitting the following information and report as required by Rule 26 of the Federal Rules of
4  Civil Procedure.

5  The findings and opinions in this report are based upon my review of the documents as
6  presented to me by counsel and other evidence related to this incident.  These findings are an overview
7  analysis based on the information currently available.

8  My findings and opinions are formed from: (1) the materials I have reviewed to date thus far
9  which provides me with information concerning the facts and circumstances as perceived by the officers
10  about what occurred during this incident, and (2) how a reasonable officer would have acted when
11  presented with similar circumstances, based upon his or her law enforcement and other related
12  professional training and experience.

13  As is my custom and practice, I reserve the right to amend, alter, enhance or delete findings and
14  opinions based upon my receipt and review of any subsequent new information pertaining to this case.

15  I have been retained by the Santa Clara County District Attorney's Office on thirteen occasions.
16  In each of these cases I was consulted on the officer's use of force regarding a case where a defendant
17  had resisted, delayed or obstructed the officer's arrest process.  In each of these cases, I was not
18  consulted until after the Santa Clara County District Attorney's Office had already made the decision to
19  prosecute the case believing the elements had been satisfied.  I had not been consulted on any cases
20  prior to the filing of the case.

21  A more detailed list of my consultations/retentions and testimony history can be found in the
22  attached Curriculum Vitae.

23  In 2007, I was contacted by the San Mateo County District Attorney's Office to provide
24  testimony in a case where a police officer was being prosecuted.  I had agreed to provide testimony to
25  assist in the prosecution of the officer but was prohibited from doing so by the San Jose Police
26  Department Assistant Chief of Police.

27  I have been retained as the "person most knowledgeable" witness in civil proceedings by the
28  San Jose City Attorney's Office on six occasions and have given depositions in three of the cases.  These
29  cases involved my testimony regarding the San Jose Police Department Use of Force Policy and Training.
30  In one case, I provided consultation that the officers had acted outside of policy and training.

**Edward T. Flosi, M.S.**
Justitia Consulting, Inc.

I am currently the President of Justitia Consulting, Inc. My duties in this capacity include case consultation and expert witness testimony. I am currently the Principal Instructor for PROELIA Defense and Arrest Tactics. My duties in this capacity include use of force and defensive tactics instruction, curriculum development and course coordination.

A more detailed list of my education, publications, training and experience can be found in the attached Curriculum Vitae.

I am an impartial investigator and expert.

I am being compensated for my services at the following rates:
- $200/hour* – Report review/report writing
- $300/hour* – Live or telephonic conferencing/consulting
- $300/hour – Deposition and/or testimony (minimum 4 hours billing)
- $2000/day – Daily rate for consultation/trial or site visit
- $100/hour* – Travel rate (not including travel expenses)
- $100/hour** – Trial or testimony stand-by time
- $150 – Filing, billing, administrative and office supply fee (one-time fee per case)
- Travel expenses will be billed at actual costs, including but not limited to; (1) airfare, (2) ground transportation, (3) lodging, and (4) meals at GSA rate, and (5) reasonable incidentals
- *billed per half hour
- **billed per quarter hour

**DOCUMENTS REVIEWED FOR THIS ANALYSIS**

Commencing in January 2024, the defense counsel began presenting me with a compilation of evidentiary documents for my review in preparation for opining on this case.

As is usually the practice in cases such as this, I am aware that there will be additional documents or other evidence that might subsequently become available during the discovery process that I will want to review which may assist me in developing more detailed findings and opinions. Therefore, I reserve the right to amend my findings and opinions at some later date based upon my ability to review any additional records and/or items of evidence I might subsequently receive.

The documents, evidence and research I have reviewed and performed to date are listed below:

1. Complaint, November 1, 2022
2. Second Amended Complaint, September 14, 2023
3. Plaintiff's Rule 26(a) Initial Disclosures, July 14, 2023
4. Joint Rule 26(f) Report, July 19, 2023
5. Plaintiff Andrew Nunez's Responses to Defendant County's Request for Admissions, Set One, December 6, 2023
6. Plaintiff Anthony Nunez Jr's Responses to Defendant County's Request for Admissions, Set One, December 6, 2023

**Edward T. Flosi, M.S.**
Justitia Consulting, Inc.

7. Plaintiff Rosa Nunez's Responses to Defendant County's Request for Admissions, Set One, December 6, 2023
8. Plaintiff Andrew Nunez's Reponses to Defendant County's Demand for Inspection and Production of Documents, Set One, December 6, 2023
9. Plaintiff Anthony Nunez Jr's Reponses to Defendant County's Demand for Inspection and Production of Documents, Set One, December 6, 2023
10. Plaintiff Rosa Nunez's Reponses to Defendant County's Demand for Inspection and Production of Documents, Set One, December 6, 2023
11. Plaintiff Andrew Nunez's Responses to County's Interrogatories, Set One, December 6, 2023
12. Plaintiff Anthony Nunez Jr's Responses to County's Interrogatories, Set One, December 6, 2023
13. Plaintiff Rosa Nunez's Responses to County's Interrogatories, Set One, December 6, 2023
14. Defendant's Initial Disclosures, July 14, 2023
15. Defendant Hesperia Responses to Plaintiff Rosa Nunez's Requests for Admissions, Set One, December 11, 2023
16. Defendant County's Responses to Plaintiff Rosa Nunez's Requests for Admissions, Set One, December 11, 2023
17. Defendant County's Responses to Plaintiff Rosa Nunez's Requests for Production of Documents, Set One, December 11, 2023
18. San Bernardino County Sheriff's Department (SBCSD) Coroner Division Autopsy Protocol, Autopsy Number: A-0803-22
19. San Bernardino County Sheriff - Coroner Division, Coroner Investigation, Case# 702203317
20. PLT 000001 – PLT 000150
    a. San Bernardino County Sheriff's Department (SBCSD) Coroner Division Autopsy Protocol, Autopsy Number: A-0803-22
    b. San Bernardino County Sheriff - Coroner Division, Coroner Investigation, Case# 702203317
    c. Certificate of Death
    d. Hand written notes
    e. San Bernardino County Fire Department Reports
    f. Claim of Money Damages
    g. San Bernardino County Risk Management letter to Carrillo Law Firm
    h. Perma rejection letter
    i. Photos
    j. Medical Records
21. SBCSD Specialized Investigations Division Report [NUNEZ/SBD-000001 – NUNEZ/SBD-001658]
22. Training PowerPoint Slides NUNEZ/SBD-001853 – NUNEZ/SBD-002036
23. SBCSD Policies NUNEZ/SBD-002038 – NUNEZ/SBD-002091
24. Depositions
    a. Andrew Nunez
    b. Antony Nunez Jr
    c. Brenda Lopez
    d. Cory LaFever
    e. Michael Martinez
    f. Rosa Nunez

**Edward T. Flosi, M.S.**
Justitia Consulting, Inc.

   g. Jeremy Deberg
   h. Noelia Benitez
   i. Sabrina Cervantes
   j. Luz Elena Ramos
   k. Melissa Elaine Carpenter
25. Photos
   a. NUNEZ/SBD0001750 – NUNEZ/SBD-001852
   b. NUNEZ-SBD-001704
26. Audio Files (45 files)
   a. NUNEZ-SBD-001659 - NUNEZ-SBD-001703
27. Transcripts of Audio Files
   a. Transcript of Audio File of Deputy Sims   Ruben Carlos Fire Fighter Paramedic (I2066221xC2BA8)
   b. Transcript of Audio File of San Bernadino Dispatch Operator   Noelia Benitez (I2052534xC2BA8)
   c. Transcript of Audio of Deputy Jared Sims   Captain Gregory Breiner of San Bernardino Co. Fire District (I2063928xC2BA8)
   d. Transcript of Audio of Deputy Sims   Alejangra Guzman (I2058835xC2BA8)
   e. Transcript of Audio of Deputy Sims   Mary Zamuzio With Unknown Woman (I2061029xC2BA8)
   f. Transcript of Audio of Deputy Sims   Neighbor Christine Silva (I2060752xC2BA8)
   g. Transcript of Audio of Detectives Ramstad-Page-Moon   Family of Decedent (I2052901xC2BA8)
   h. Transcript of Audio of Sheriff   Andrew Nunez (I2069219xC2BA8)
   i. Transcript of Audio of Sheriff   Noelia Benitez (I2053364xC2BA8)
   j. Transcript of Audio Tape of Conversation Between Officer   Family Member of Decedent (I2052561xC2BA8)
   k. Transcript of Beginning of Audio of Sheriff Nali Finch   Noelia Benitez (I2063728xC2BA8)
   l. Transcript of Deputy Sims   Neighbor Fernando Guzman (I2058826xC2BA8)
   m. Transcript of Events of 3-29-22 Incident (I2052537xC2BA8)
   n. Transcript of Phone Interview of Deputy Sims   Mario Marroquin, Ambulance Operator-EMT (I2068999xC2BA8)
   o. Transcript of Sheriff   Neighbor Julio Romero (I2058812xC2BA8)
   p. Transcript of Audio File of Deputy Jared Sims   Corporal Cole Raynolds [SBD-001687] (I2077085xC2BA8)
   q. Transcript of Audio of Deputy Jared Sims   Detective Jason Schroeder [SBD-001686] (I2077243xC2BA8)
   r. Transcript of Audio of Deputy Jared Sims   Battalion Chief Joshua Pullen, Battalion 8 Div. 5, San Bernardino Co. Fire Dept. [SBD-01688] (I2075679xC2BA8)
   s. Transcript of Audio of Detective Justin Carty   Derek Zane [SBD-001690] (I2078386xC2BA8)
28. Video Files
   a. PLT 000151 (produced 12.11.23)
   b. PLT 000152 (produced 12.11.23)

9

Edward T. Flosi, M.S.
Justitia Consulting, Inc.

29. California POST Basic Academy Workbook Learning Domain 15 – Laws of Arrest
30. California POST Basic Academy Workbook Learning Domain 16 – Search and Seizure
31. California POST Basic Academy Workbook Learning Domain 20 – Use of Force/De-escalation
32. California POST Basic Academy Workbook Learning Domain 23 – Crimes in Progress
33. California POST Basic Academy Workbook Learning Domain 25 – Domestic Violence
34. California POST Basic Academy Workbook Learning Domain 33 – Arrest and Control
35. California POST Basic Academy Workbook Learning Domain 39 – Crimes Against the Justice System
36. California POST Basic Academy Workbook Learning Domain 40 – Weapons Violations
37. California Peace Officer's Legal Sourcebook

**DETAILS OF THE INCIDENT**

On Tuesday, March 29, 2022, at approximately 11:25 hours, deputies from the San Bernardino County Sheriff's Department (SBCSD), Hesperia Station, responded to a family disturbance located at 8990 9th Avenue, in Hesperia. The reporting party, Noelia Benitez told dispatch her brother-in-law, Anthony Nunez (Nunez), was hitting her husband, Andrew Nunez.

At approximately 11:27 hours, SBCSD Deputy Michael Martinez and SBCSD Deputy Jonathan Campos were assigned the call and responded to the incident location. Benitez told dispatch there was a firearm registered to her mother-in-law; however, it was unknown where the firearm was. Benitez told dispatch that Nunez was under the influence of narcotics and had not slept in several days.

At approximately 11:32 hours, Martinez and Campos arrived at the incident location and contacted Andrew Nunez. Andrew told Martinez that Nunez had shoved him and that Nunez was still at the home. Andrew said, "He's been, he's been crazy all night."[1]

Martinez and Campos eventually contacted Nunez, who was armed with a metal chain, at the front door. Nunez was directed to drop the chain but refused at first.[2]

At approximately 11:39 hours, SBCSD Deputy Jeremy Deberg and SBCSD Sergeant Corey LaFever arrived at the incident location to assist with the call. Deberg retrieved the 40mm launcher from LaFever's patrol vehicle.

Other SBCSD deputies that responded to the event included:
- Deputy Sabrina Cervantes
- Corporal Cole Raynolds
- Deputy Derek Zane
- Detective Jason Schroeder

The deputies were able to negotiate with Nunez to get him to drop the chain if Campos put the TASER device away.

---

[1] NUNEZ/SBD-000204
[2] Nunez was armed with a metal chain that was approximately 7' long consisting of metal links and a cylinder plastic handle affixed to one end.

10

**Edward T. Flosi, M.S.**
Justitia Consulting, Inc.

When Martinez and Campos first contacted Nunez, Campos drew his TASER device once the deputies saw Nunez with the chain. The deputies negotiated with Nunez to drop the chain if Campos put the TASER device away. This was successful in getting Nunez to drop the chain; however, Nunez did not move away from the chain or agree to come outside to the deputies.

It is my professional opinion that the pre-force tactics used by the deputies were appropriate and consistent with current law enforcement training and practices.

**3. It is my understanding that the plaintiffs allege that the deputies should have requested assistance from a mental health team. There is no independent or objective evidence in the record to support a claim that the deputies were under the belief that Nunez's actions and behaviors were caused by a mental health issue.**

Officers are trained that they must deal with the actions and behaviors of a subject prior to attempting to determine if that person is suffering from a mental illness crisis or is under the influence of an illicit drug. Nunez's actions and behaviors did not allow the opportunity to make such an evaluation.

Officers are trained that in order to conduct a proper evaluation of a subject's mental health status, they must first be able to control the scene and mitigate any dangers to themselves, the subject and others. Clearly in this incident, Nunez did not allow the opportunity to conduct any such evaluation.

Officers are trained that it is improper to jump to an unsupported conclusion that a subject is suffering from a mental health crisis if that subject is also exhibiting behavioral cues that the subject is under the influence of a controlled substance. In order to make this determination, an officer must be provided that opportunity by the subject to assess the subject to be able to differentiate between; (1) a subject in a mental health crisis that is subject to a Welfare and Institutions Code § 5150(a) hold, or (2) a subject that is under the influence of a controlled substance in violation of Health and Safety Code § 11550(a).

As officers, we see hundreds of subjects like this that are acting out of rage and/or because he/she is under the influence of a controlled substance/alcohol. It is not until the officer is allowed the opportunity and time to conduct an evaluation of that subject that the officer can start to form an opinion.

As officers, we see hundreds of subjects that are under the influence of a central nervous system stimulant that behave in the same way that Nunez was behaving. In this incident, another officer with similar training and experience would likely conclude that Nunez was; (1) experiencing the effects of being under the influence of a central nervous system stimulant, and/or (2) suffering from a mental illness.

In my review of the evidence, I cannot locate any evidence that that deputies were under the belief that Nunez's actions and behaviors were caused by a mental health issue. Therefore, it would not be consistent with current law enforcement training and practices to request a mental health team to respond to the incident.

Indeed, the deputies had a belief that Nunez's actions and behaviors were being caused by being under the influence of a controlled substance.