**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**CARRILLO LAW FIRM, LLP**
Luis A. Carrillo (SBN 70398)
Michael S. Carrillo (SBN 258878)
Dominique L. Boubion (SBN 336915)
1499 Huntington Drive, Suite 402
South Pasadena, California 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

*Attorneys for Plaintiffs*

Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Michelle R. Prescott [Bar No. 262638]
  *mprescott@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

ROSA NUÑEZ, individually; ANTHONY NUÑEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nuñez; and, ANDREW NUÑEZ, individually,

Plaintiffs,

v.

COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,

Defendants.

Case No.: 5:22-cv-01934-SSS-SP

*Honorable Sunshine S. Sykes*
*Hon. Mag. Judge Sheri Pym*

**DISPUTED JURY INSTRUCTIONS (REDLINE)**

FPTC:  September 6, 2024
Trial:    September 23, 2024

**1**

**PLEASE TAKE NOTICE** that the Parties hereby submit their Disputed [Proposed] Jury Instructions for the Trial of this matter.

Respectfully submitted,

DATED:  August 23, 2024          LAW OFFICES OF DALE K. GALIPO

By:      */s/ Benjamin S. Levine*
         Dale K. Galipo
         Benjamin S. Levine[1]
         Attorneys for Plaintiffs

DATED:  August 23, 2024          WESIERSKI & ZUREK LLP

By          */s/ Michelle R. Prescott*
            CHRISTOPHER P. WESIERSKI
            MICHELLE R. PRESCOTT
            Attorneys for Defendants, COUNTY OF SAN
            BERNARDINO, CITY OF HESPERIA,
            MICHAEL MARTINEZ, SABRINA
            CERVANTES and JEREMY DEBERG

---

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

**2**

| NUMBER | TITLE | SOURCE | PAGE |
|--------|-------|--------|------|
| **Claims** | | | |
| 1. | Section 1983 Claim Against Defendant in Individual Capacity—Elements and Burden of Proof | 9th Cir. 9.3 | 5 |
| 2. | Fourth Amendment—Unreasonable Seizure of Person—Generally | 9th Cir. 9.20 | 11 |
| 3. | Fourth Amendment—Unreasonable Seizure of Person—Excessive Force | 9th Cir. 9.25 | 18 |
| 4. | Fourteenth Amendment—Substantive Due Process—Interference with Parent-Child Relationship | 9th Cir. 9.32; *Wilkinson v. Torres*, 601 F.3d 546, 554 (9th Cir. 2010); *Porter v. Osborne*, 546 F.3d 1131, 1136-1137 (9th Cir. 2008); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372-72 (9th Cir. 1998 | 30 |
| 5. | Battery by Peace Officer (Deadly Force)—Essential Elements | CACI 1305B | 36 |
| 6. | Battery by Peace Office (Non-Deadly Force)—Essential Factual Elements | CACI 1305A | 47 |
| 7. | Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements | CACI 441 | 56 |
| 8. | Negligent Use of Non-Deadly Force by Law Enforcement Officer in Arrest or Seizure—Essential Factual Elements | CACI 440 | 67 |
| 9. | Comparative Fault of Plaintiff | CACI 405 | 76 |
| 10. | Apportionment of Responsibility | CACI 406 | 80 |

DISPUTED JURY INSTRUCTIONS (REDLINE)

| 11. | Bane Act | *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801-802 (2017)). | 84 |
|---|---|---|---|

**INSTRUCTION NO. 1**

**SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL
CAPACITY – ELEMENTS AND BURDEN OF PROOF
(PLAINTIFFS' PROPOSED VERSION)**

In order to prevail on ~~a~~their § 1983 claim~~s~~ against the ~~d~~Defendant~~s~~ [Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes], the ~~p~~Plaintiff~~s~~ must prove each of the following elements by a preponderance of the evidence:

    1. ~~t~~The ~~d~~Defendant acted under color of state law; and

    2. ~~t~~The acts of the ~~d~~Defendant deprived ~~the plaintiff of particular~~ Anthony Nuñez, the Decedent, of his rights and/or deprived the Plaintiffs of their rights under the United States Constitution as explained in later instructions~~; and~~

    ~~3. The defendant's conduct was an actual cause of the claimed injury~~.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. ~~[~~[The parties have stipulated] that ~~the defendant~~ Michael Martinez, Jeremy Deberg, and Sabrina Cervantes ~~acted~~ were acting under color of state law.~~]~~

If you find that the ~~p~~Plaintiff~~s~~ ha~~ve~~s proved each of these elements against Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes, and if you find that the ~~p~~Plaintiff~~s~~ ha~~ve~~s proved all the elements ~~the plaintiff is~~ they are required to prove under Instructions ___, your verdict should be for the ~~p~~Plaintiff~~s~~ on that claim. If, on the other hand, you find that the ~~p~~Plaintiff~~s~~ ha~~ve~~s failed to prove any one or more of these elements, your verdict should be for ~~the defendant~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes on that claim.

<u>Authority:</u> Manual of Model Jury Instructions for the Ninth Circuit (2017, revised Dec. 2023), 9.3.

**INSTRUCTION NO. 1**

**SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL
CAPACITY – ELEMENTS AND BURDEN OF PROOF
(DEFENDANTS' PROPOSED VERSION)**

In order to prevail on a~~their~~ § 1983 claim~~s~~ against the d~~D~~efendant~~s~~ [Michael
Martinez, Jeremy Deberg, and/or Sabrina Cervantes], the p~~P~~laintiff~~s~~ must prove each
of the following elements by a preponderance of the evidence:

1. t~~T~~he d~~D~~efendant acted under color of state law; ~~and~~

2. t~~T~~he acts of the d~~D~~efendant deprived ~~the plaintiff of particular~~ Anthony
Nuñez, the Decedent, of his rights and/or deprived the Plaintiffs of their rights under
the United States Constitution as explained in later instructions; and

3. The d~~D~~efendant~~'~~s' conduct was ~~an~~the actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act
in the performance of official duties under any state, county, or municipal law,
ordinance or regulation. [[~~T~~he parties have stipulated] that ~~the defendant~~ Michael
Martinez, Jeremy Deberg, and Sabrina Cervantes ~~acted~~ were acting under color of
state law.]

If you find that the p~~P~~laintiff~~s~~ ha~~ve~~s proved each of these elements against
Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes, and if you find that the
p~~P~~laintiff~~s~~ ha~~ve~~s proved all the elements ~~the plaintiff is~~ they are required to prove
under Instructions ___, your verdict should be for the p~~P~~laintiff~~s~~ on that claim. If, on
the other hand, you find that the p~~P~~laintiff~~s~~ ha~~ve~~s failed to prove any one or more of
these elements, your verdict should be for ~~the defendant~~ Michael Martinez, Jeremy
Deberg, and/or Sabrina Cervantes on that claim.


<u>Authority:</u> Manual of Model Jury Instructions for the Ninth Circuit (2017, revised
Dec. 2023), 9.3.

**6**

1
2
3
4

**INSTRUCTION NO. 1**

**SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL**
**CAPACITY – ELEMENTS AND BURDEN OF PROOF**
**(BASIS FOR DISPUTE)**

5  *Joint summary of disputed issue(s):*

6       The parties dispute whether the third element in this instruction (whether "The
7  Defendants' conduct was the actual cause of the claimed injury") should be included.

8

9  *Plaintiffs' position:*

10      Initially, Plaintiffs object to Defendants' proposed version of this instruction on
11  the grounds that Defendants did not timely exchange proposed jury instructions or
12  objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial
13  Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange
14  proposed instructions, and an August 9, 2024, deadline to exchange objections to the
15  proposed instructions. [*See id.* (imposing requirement to exchange proposed
16  instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to
17  exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6,
18  2024).] Although Plaintiffs provided their proposed instructions to Defendants on
19  August 2, 2024, Defendants only provided proposed alternative and additional
20  instructions for the first time on August 13, 2024, after the Court's deadlines had
21  passed. By failing to comply with the Court's deadlines to exchange proposed jury
22  instructions and objections, Defendants waived their right to challenge Plaintiffs'
23  proposed instructions or to propose their own.

24      Plaintiffs object to the inclusion of the element regarding whether the
25  Defendants' "conduct was an actual cause" of the violations of Plaintiffs' (and
26  decedent Anthony Nuñez's ("Mr. Nuñez")) constitutional rights because there is no
27  actual dispute about causation in this case. Defendants do not appear to dispute (and
28  have identified no evidence that would support a dispute as to) the following facts:

(1) Defendant Michael Martinez fired multiple live rounds from a handgun, which struck Mr. Nuñez; (2) Defendant Jeremy Deberg fired multiple rounds from a 40 millimeter round launcher, which struck Mr. Nuñez; and (3) Defendant Sabrina Cervantes fired at least one round from a beanbag shotgun, which struck Mr. Nuñez. (Each defendant deputy testified in deposition that their respective gunshots/less-lethal rounds appeared to strike Mr. Nuñez.)

Accordingly, although Defendants dispute whether these deputies' uses of force were unconstitutional, there can be no question as to whether, assuming these uses of force violated applicable constitutional standards (*i.e.*, under the Fourth and/or Fourteenth Amendments), it was these deputies' conduct that the caused the constitutional violation(s). (For example, if a jury finds that Defendant Martinez's gunshots to Mr. Nuñez were unreasonable or excessive under the Fourth Amendment, there is nothing further that need be proved to show that Martinez violated Mr. Nuñez's right to be free from excessive force. The same goes for the other defendant deputies and their respective uses of force.) Because causation is therefore not at issue here, the third element in this instruction is superfluous in the context of this case and thereby would waste time and risks unnecessarily confusing the jury as to issues the jury need not decide. Any remaining issues that do need to be decided by the jury are addressed in the substantive instructions regarding Plaintiffs' constitutional claims ("Fourth Amendment—Unreasonable Seizure of Person—Excessive Force" and "Fourteenth Amendment—Substantive Due Process—Interference with Parent-Child Relationship"), which are provided below.

The Comment to the standard Ninth Circuit instruction, which addresses the requirement of personal participation—or integral participation, as an alternative to direct personal participation—is not to the contrary. As the above makes clear, there is no question that each defendant deputy personally participated in using force against Mr. Nuñez. Plaintiffs allege, and plan to argue to the jury, that each defendant deputy violated Mr. Nuñez's Fourth Amendment rights (and Plaintiff Rosa Nuñez's

Fourteenth Amendment rights) by using his or her respective form of force against Mr. Nuñez. This is cut-and-dry personal participation that is not in dispute and, accordingly, should not have to be proven at trial.

_Defendants' position:_

The Comment for JI 9.3 in the Ninth Circuit Manual of Model Civil Jury Instructions ("Manual") indicates that the causation language is intended to directly address the situation here; that is, one in which some officers use non-lethal force, while another uses lethal force. The Comment indicates:

> The elements of a § 1983 claim are (1) the action the action
> was committed by a person acting "under color of state law"
> and (2) the action resulted in the deprivation of a
> constitutional right or federal statutory right. _Ochoa v. Pub._
> _Consulting Grp., Inc_., 48 F.4th 1102, 1107 (9th Cir. 2022)
> (quoting _West v. Atkins_, 487 U.S. 42, 48 (1988)).  In order to
> be individually liable under § 1983, an individual must
> personally participate in an alleged rights deprivation.
> _Avalos v. Baca_, 596 F.3d 583, 587 (9th Cir. 2010).

Causation is an essential element of the "deprivation of rights" analysis. "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." _Bearchild v. Cobban_, 947 F.3d 1130, 1150 (9th Cir. 2020) (quoting _Harper v. City of Los Angeles_, 533 F.3d 1010, 1026 (9th Cir. 2008).)  "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  _Id_.; see also _Chaudhry v. Aragon_, 68 F.4th 1161, 1169, n.11-12 (9th Cir. 2023) (defining causation-in-fact and proximate causation).

In _Reynaga Hernandez v. Skinner_, 969 F.3d 930, 941-42 (9th Cir. 2020), the Ninth Circuit discussed the minimum level of involvement needed for § 1983 liability

under the integral-participant doctrine.  An actor may be deemed to have caused a constitutional violation under the "integral-participant doctrine," "only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022) (holding that when non-shooting officers did not form plan with shooting officers to shoot suspect, did not set in motion acts by shooting officers, and did not know or should have known constitutional violation would occur, non-shooting officers were not integral participants in constitutional violation).

Here, there were multiple persons directly involved in the events of March 29, 2022, including several deputies, decedent and Andrew Nunez. The jury will be called upon to decide the individual liability of each deputy, and causation is critical to that analysis. In addition, one of the affirmative defenses that defendants intend to present is comparative fault. Decedent's contribution to causation of his damages, and Andrew Nunez's contribution to causation of his emotional distress damages, will also require the jury's parsing of causation and liability. For these reasons, the facts of this case fall squarely within the rule of *Reynaga Hernandez v. Skinner* and *Peck v. Montoya*, and causation is a necessary part of this instruction.

# JURY INSTRUCTION NO. 2

## PARTICULAR RIGHTS—FOURTH AMENDMENT—
## UNREASONABLE SEIZURE OF PERSON—GENERALLY
## (DEFENDANTS' PROPOSED INSTRUCTION)

As previously explained, ~~the p~~Plaintiff~~s~~ ha~~ve~~s the burden of proving that the act~~[s]~~ of the defendants [Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes] deprived ~~the plaintiff~~ Anthony Nunez of particular rights under the United States Constitution.  In this case, the ~~p~~Plaintiff~~s~~ allege~~s the defendant~~ that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived [him] of [his] rights under the Fourth Amendment to the Constitution when [they detained, arrested and used non-lethal and lethal force on him].

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of [his] person.  In order to prove ~~the defendant[s]~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived ~~the plaintiff~~ Anthony Nunez of this Fourth Amendment right, ~~the p~~Plaintiff~~s~~ must prove the following additional elements by a preponderance of the evidence:

1.    [Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes] seized ~~the plaintiff's~~ Anthony Nunez's person;

2.    ~~i~~In seizing ~~the plaintiff's~~ Anthony Nunez's person, [Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes] acted intentionally; and

3.    ~~t~~The seizure was unreasonable.


A defendant "seizes" the ~~plaintiff's~~ person when [he] restrains the ~~plaintiff's~~ person's liberty through coercion, physical force or a show of authority.  A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about [his] business.

In determining whether a reasonable person in ~~the plaintiff's~~ Anthony Nunez's position would have felt free to leave, consider all of the circumstances, including:

1.    ~~t~~The number of officers present;

2.    ~~w~~Whether weapons were displayed;

3.    ~~w~~Whether the encounter occurred in a public or nonpublic setting;

4.    ~~w~~Whether the officer's manner would imply that compliance would be compelled; and

5.    ~~w~~Whether the officers advised ~~the plaintiff~~ Anthony Nunez that ~~[he]~~ was free to leave.

[A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct.  Therefore, ~~the p~~Plaintiff~~s~~ must prove that ~~the defendant~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes intended to [detain, arrest and use non-lethal and lethal force on Anthony Nunez]. It is not enough to prove that ~~the defendant~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes negligently or accidentally engaged in that action.  But while ~~the p~~Plaintiff~~s~~ must prove that ~~the defendant~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes intended to act; they~~, plaintiff~~ need not prove that the ~~defendant~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes intended to violate ~~the plaintiff's~~ Anthony Nunez's Fourth Amendment rights.]

Authority: Manual of Model Jury Instructions for the Ninth Circuit, 9.20.

# JURY INSTRUCTION NO. 2

## PARTICULAR RIGHTS—FOURTH AMENDMENT—
## UNREASONABLE SEIZURE OF PERSON—GENERALLY
## (BASIS FOR DISPUTE)

*Joint summary of disputed issue(s):*

The parties dispute whether any part of this instruction should be given.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to the use of this instruction, which primarily concerns whether a "seizure" occurred within the meaning of the Fourth Amendment, because there can be no genuine dispute in this case as to whether Mr. Nuñez was "seized" by each defendant deputy's use of force against him. There is extensive evidence in this case to show (and Defendants do not appear to dispute) that Defendant Michael Martinez fired lethal rounds at Mr. Nuñez, Defendant Jeremy Deberg fired rounds from a 40

1  millimeter launcher at Mr. Nuñez, and Defendant Sabrina Cervantes fired at least one

2  round from a beanbag shotgun at Mr. Nuñez. As noted above, these defendant

3  deputies each testified that their respective shots appeared to strike Mr. Nuñez, and

4  Defendants have never argued or identified evidence that is to the contrary. The U.S.

5  Supreme Court has definitively held "that the application of physical force to the body

6  of a person with intent to restrain is a seizure," and that this is so "even if the person

7  does not submit and is not subdued." *Torres v. Madrid*, 592 U.S. 306, 325 (2021).

8  Throughout this litigation, Defendants have maintained that each defendant deputy

9  used the above-noted force against Mr. Nuñez in an effort to restrain or subdue him in

10 order to take him into custody. With no dispute as to whether the deputies "appli[ed]

11 [ ] physical force to [Mr. Nuñez's] body" or that they did so "with the intent to

12 restrain" Mr. Nuñez, each deputy indisputably seized Mr. Nuñez within the meaning

13 of the Fourth Amendment, and the only issue to be tried is whether those seizures

14 were reasonable. Because that issue is separately and appropriately addressed in

15 Plaintiffs' proposed instruction "Fourth Amendment—Unreasonable Seizure of

16 Person—Excessive Force" below, provision of the proposed instruction regarding

17 Fourth Amendment seizures is unnecessary, would waste time, and risks needlessly

18 confusing the jury regarding the issues it will be required to decide.

19     Notably, the Ninth Circuit model instruction on which Defendants' proposed

20 instruction is based does not appear to have been updated to reflect the Supreme

21 Court's decision in *Torres*, and thus it may no longer be an accurate statement of law,

22 even though the incident in this case occurred after *Torres* was decided. This proposed

23 instruction conditions the occurrence of a "seizure" on whether someone "in [Mr.

24 Nuñez's] position would have felt free to leave." But *Torres* did not address the

25 concept of whether an individual "would have felt free to leave" at all, and instead

26 held that an individual is "seized" within the meaning of the Fourth Amendment so

27 long as force is used against him "with intent to restrain." *See id.* at 317, 325. Thus, in

28

1    addition to being inapplicable to the facts of this case, it appears this proposed

2    instruction is not an accurate or complete statement of law.

3         Plaintiffs further object to this proposed instruction on the basis that it

4    erroneously states, in the first paragraph, that "Plaintiffs allege that [the defendant

5    deputies] deprived [Mr. Nuñez] of his rights under the Fourth Amendment to the

6    Constitution when they *detained, arrested* and used non-lethal and lethal force on

7    him." (Emphasis added.) Plaintiffs have no Fourth Amendment claim alleging

8    wrongful/unreasonable detention or arrest. (*See* Second Amended Complaint [Dkt.

9    45].) Although Plaintiffs do allege that the defendant deputies' use of less-lethal and

10   lethal force against Mr. Nuñez violated Mr. Nuñez's Fourth Amendment rights, they

11   have not alleged that any detention and/or arrest of Mr. Nuñez itself violated the

12   Fourth Amendment. This proposed instruction thus misstates Plaintiffs' claims and

13   significantly risks confusing the jury on the issues to be decided at trial by suggesting

14   that the jury will decide whether any detention and/or arrest was reasonable, and

15   would also waste time.

16        Plaintiffs further object to the use of the term "negligently" in the final

17   paragraph of the proposed instruction. In this proposed instruction, "negligently"

18   appears to be used as a point of contrast in addressing whether the deputies' respective

19   uses of force were intentional. This is a different sense of the term than the legal one

20   that applies to Plaintiffs' legal claims for negligence under California law, to which a

21   different legal standard applies than the Fourth Amendment standard. Using

22   "negligently" in an alternative sense here risks confusing the jury about the meaning

23   of Plaintiffs' legal claims for negligence, which the jury will also decide at trial, and

24   further would waste time. (As with the remainder of this proposed instruction, the

25   paragraph regarding whether the deputies' uses of force were intentional is also

26   unnecessary because Defendants have never argued the deputies used any force

27   accidentally, so this issue is also not in dispute.)

28

1  *Defendants' position:*

2      *Torres v. Madrid*, 592 U.S. 306, 325 (2021), did not hold that the application of

3  physical force to a suspect  is the only way to effect a seizure. Rather, that court held

4  that the seizure of a person under the Fourth Amendment can take the form of

5  physical force **or** a show of authority that in some way restrains the liberty of the

6  person. Moreover, that case actually supports defendants' position, because it held that

7  even when the attempted application of force is "unsuccessful," it is still a seizure. So

8  too here; defendants' attempted arrest and restraint of decedent was unsuccessful, but

9  still qualified as a seizure.

10      Defendants' attempts to de-escalate the encounter, and to arrest and restrain

11  decedent before lethal force was applied, are critical because this was the type of

12  rapidly escalating encounter that required defendants to make quick decisions.

13   *Porter,  supra,* 546 F.3d at 1137 (concluding that actual deliberation was not practical

14  in a "rapidly escalating... confrontation"). Just because plaintiffs' counsel has

15  concluded the decedent was seized when non-lethal and lethal force was used does not

16  mean there is no need to have the factual determination of when decedent was seized

17  and by whom made by the jury. This instruction is necessary because it sets forth the

18  elements the jury needs to consider in making that determination.

19      Plaintiffs next contend that the word "negligence" in the language of the

20  instruction stating that, "It is not enough to prove that the defendant negligently or

21  accidentally engaged in that action," will confuse the jury. To the contrary, the

22  instruction articulates the standard the jury must apply in evaluating the deputies'

23  intentions and actions. The point of this instruction is to clarify that a finding of a

24  Fourth Amendment violation requires an "*unreasonable* seizure." *Ames v. King Cnty.,*

25  *Washington*, 846 F.3d 340, 348 (9th Cir. 2017) ("Use of force is a seizure that is

26  subject to the Fourth Amendment's reasonableness requirement.")

27      The jury needs to understand that this determination is made "from the

28  perspective of a reasonable officer on the scene" and not "with the 20/20 vision of

hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This instruction explains the rule "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (internal quotation marks and citation omitted).

In fact, plaintiffs' cited authority supports issuing this instruction. This is because it explains to the jury that a seizure by force "requires the use of force *with intent to restrain*. Accidental force will not qualify. Nor will force intentionally applied for some other purpose." *Torres, supra*, 592 U.S. at 317, 141 S.Ct. 989. (Emphasis added; citations omitted).

Here, plaintiffs contend that defendants did not give Anthony Nunez "sufficient time to comprehend the presence of deputies or police officers at the family home"; did not "speak to decedent in a sensitive and non-threatening manner"; and did not give him "the opportunity to cooperate with the instructions of sheriff's deputies or police officers." SAC, ¶ 34. In order to properly evaluate whether defendants' actions in these respects were reasonable or unreasonable, the jury needs to be instructed as to what factors to consider in making those determinations. Defendants' proposed instruction accomplishes this goal.

**INSTRUCTION NO. 3**

**FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON— EXCESSIVE FORCE**

**(PLAINTIFFS' PROPOSED VERSION)**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a ~~police officer~~ sheriff's deputy uses excessive force ~~[in making a lawful arrest]~~ ~~[and]~~ [or] [in defending [himself and/or others]] ~~[and] [or] [in attempting to stop a fleeing or escaping suspect]~~. Therefore, to establish an unreasonable seizure in this case, the ~~p~~Plaintiff~~s~~ must prove by a preponderance of the evidence that ~~the officer[s]~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force against the decedent, Anthony Nuñez.

Under the Fourth Amendment, a ~~police officer~~ deputy may only use such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable deputy on the scene and not with the 20/20 vision of hindsight. Although the facts known to ~~the officers~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes are relevant to your inquiry, ~~an officer's~~ Michael Martinez's, Jeremy Deberg's, and/or Sabrina Cervantes's subjective intent~~s~~ or motive~~s is~~are not relevant to your inquiry.

In determining whether ~~the officer~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force in this case, consider all of the circumstances known to the~~m officer on the scene~~, including:

1. ~~t~~The nature of the ~~crime or other~~ circumstances ~~known~~ to ~~the officer[s]~~ which Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes ~~at the time force was used~~ were responding;

2. In determining whether Michael Martinez used excessive force, whether ~~the [plaintiff] [decedent]~~ Anthony Nuñez posed an immediate threat of death or serious bodily injury to ~~the safety of the officer[s]~~ to Michael Martinez or ~~to~~ others;

3. In determining whether Jeremy Deberg and/or Sabrina Cervantes used excessive force, whether the [plaintiff] [decedent] Anthony Nuñez posed an immediate threat of harm to the safety of the officer[s] Jeremy Deberg, Sabrina Cervantes, or to others;

4. [wW]hether the plaintiffAnthony Nuñez was actively resisting arrest or attempting to evade arrest by flight;]

5. tThe amount of time the officer Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

6. tThe relationship between the need for the use of force and the amount of force used;

7. tThe extent of the [plaintiff's] [decedent's] Anthony Nuñez's injury;

8. aAny effort made by the officer Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to temper or to limit the amount of force;

9. tThe severity of the security problem at issue;

10. [tThe availability of alternative methods [to take the plaintiff Anthony Nuñez into custody] [to subdue the plaintiff];]

11. [tThe number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;]

12. [wW]hether it was practical for the officer[s] Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to give warning of the imminent use of force, and whether such warning was given;]

13. [wW]hether it should have been apparent to the officer[s] Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes that the person [they] used force against Anthony Nuñez was emotionally disturbed;] and

14.   [wWhether a reasonable ~~officer~~ deputy would have or should have
         accurately perceived a mistaken fact~~;~~].

~~15.   [whether there was probable cause for a reasonable officer to believe that~~
~~the suspect had committed a crime involving the infliction or threatened~~
~~infliction of serious physical harm; and]~~

~~["Probable cause" exists when, under all of the circumstances known to the~~
~~officer[s] at the time, an objectively reasonable police officer would conclude~~
~~there is a fair probability that the plaintiff has committed or was committing a~~
~~crime.] [and]~~

~~16.   [insert other factors particular to the case.]~~

~~"Probable cause" exists when, under all of the circumstances known to the~~
~~officer[s] at the time, an objectively reasonable police officer would conclude there is~~
~~a fair probability that the plaintiff has committed or was committing a crime.~~

<u>Authority</u>: Ninth Circuit Manual of Model Jury Civil Instructions (2017, revised Dec.
2023), 9.25.

**INSTRUCTION NO. 3**

**FOURTH AMENDMENT— UNREASONABLE SEIZURE OF PERSON— EXCESSIVE FORCE**

**(DEFENDANTS' PROPOSED VERSION)**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a ~~police officer~~ sheriff's deputy uses excessive force ~~[in making a lawful arrest]~~ ~~[and]~~ [or] [in defending [himself and/or others]], ~~[and]~~ [or] [in attempting to stop a fleeing or escaping suspect]. Therefore, to establish an unreasonable seizure in this case, the ~~p~~Plaintiff~~s~~ must prove by a preponderance of the evidence that ~~the officer[s]~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force against the decedent, Anthony Nuñez.

Under the Fourth Amendment, a ~~police officer~~ deputy may only use such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable deputy on the scene and not with the 20/20 vision of hindsight. Although the facts known to ~~the officers~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes are relevant to your inquiry, ~~an officer's~~ Michael Martinez's, Jeremy Deberg's, and/or Sabrina Cervantes's subjective intent~~s~~ or motive~~s~~ ~~is~~are not relevant to your inquiry.

In determining whether ~~the officer~~ Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force in this case, consider all of the circumstances known to the~~m~~ ~~officer on the scene~~, including:

    1.    ~~t~~The nature of the ~~crime or other~~ circumstances ~~known~~ to ~~the officer[s]~~ which Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes ~~at the time force was used~~ were responding;

    2.    In determining whether Michael Martinez used excessive force, whether ~~the [plaintiff] [decedent]~~ Anthony Nuñez posed an immediate threat of death or serious bodily injury to ~~the safety of the officer[s]~~ to Michael Martinez or ~~to~~ others;

3.   In determining whether Jeremy Deberg and/or Sabrina Cervantes used excessive force, whether the [plaintiff] [decedent] Anthony Nuñez posed an immediate threat of harm to the safety of the officer[s] Jeremy Deberg, Sabrina Cervantes, or to others;

4.   [wW]hether the plaintiff Anthony Nuñez was actively resisting arrest or attempting to evade arrest by flight;]

5.   tThe amount of time the officer Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

6.   tThe relationship between the need for the use of force and the amount of force used;

7.   tThe extent of the [plaintiff's] [decedent's] Anthony Nuñez's injury;

8.   aAny effort made by the officer Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to temper or to limit the amount of force;

9.   tThe severity of the security problem at issue;

10.  [tThe availability of alternative methods [to take the plaintiff Anthony Nuñez into custody] [to subdue the plaintiff];]

11.  [tThe number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;]

12.  [wW]hether it was practical for the officer[s] Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to give warning of the imminent use of force, and whether such warning was given;]

13.  [wW]hether it should have been apparent to the officer[s] Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes that the person [they] used force against Anthony Nuñez was emotionally disturbed;]

14.    [wWhether a reasonable officer deputy would have or should have accurately perceived a mistaken fact;] and

15.    [wWhether there was probable cause for a reasonable officer to believe that the suspect Anthony Nunez had committed a crime involving the infliction or threatened infliction of serious physical harm; and].

[''Probable cause'' exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.] [and]

16.    [insert other factors particular to the case.]

''Probable cause'' exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Authority: Ninth Circuit Manual of Model Jury Civil Instructions (2017, revised Dec. 2023), 9.25.

**INSTRUCTION NO. 3**

**FOURTH AMENDMENT— UNREASONABLE SEIZURE OF PERSON— EXCESSIVE FORCE**

**(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties dispute whether the phrase "attempting to stop a fleeing or escaping suspect" or the fifteenth factor on Defendants' proposed list should be included in this instruction.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs further object that Defendants' proposed references to "stop[ping] a fleeing or escaping suspect" and to whether a reasonable officer would have had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime involving the infliction or threatened infliction of serious physical harm" are inapplicable in the

1   context of this case. Although not directly addressed in the Comment to the Ninth

2   Circuit model instruction, these two phrases/provisions are clearly in reference to the

3   so-called "fleeing felon" rule identified in *Tennessee v. Garner*, 471 U.S. 1 (1985).

4   There, the Supreme Court held:

> Where [an] officer has probable cause to believe that [a] suspect poses a threat
> of serious physical harm, either to the officer or to others, it is not
> constitutionally unreasonable to prevent escape by using deadly force. Thus, if
> the suspect threatens the officer with a weapon *or there is probable cause to
> believe that he has committed a crime involving the infliction or threatened
> infliction of serious physical harm*, deadly force may be used *if necessary to
> prevent escape*, and if, where feasible, some warning has been given.

10  *Id.* at 11-12 (emphasis added). The concepts addressed in the disputed portions of

11  Defendants' proposed instruction come directly from this portion of *Garner*: The

12  factor regarding probable cause is taken verbatim from *Garner*, and the language

13  "stop[ping] a fleeing or escaping suspect" clearly reflects *Garner's* reference to

14  "prevent[ing] escape" of an individual believed to have committed a violent or

15  dangerous crime. *See id.* That the instruction's reference to "a crime involving the

16  infliction or threatened infliction of serious physical harm" pertains solely to *Garner*'s

17  "fleeing felon" rule is made clear by the fact that the model instruction separately lists,

18  as the first factor, "the nature of the crime or other circumstances known to the

19  officer[s] at the time force was applied." *See* Ninth Circuit Model Instruction 9.25; *see

20  also* Comment to Ninth Circuit Model Instruction 9.25 (citing *Graham v. Connor*, 490

21  U.S. 386, 396 (1989), for this factor).

22          There is no legitimate argument, however, that these concepts apply in this

23  case, because there is no evidence Mr. Nuñez was attempting to flee at the time any

24  force was used. Most tellingly, Defendants' own police practices expert, Edward

25  Flosi, wrote in his expert report—in the specific context of addressing whether

26  Defendant Michael Martinez's use of deadly force against Mr. Nuñez was reasonable,

27  in a section titled "Force Analysis – Deadly Force" and a subsection titled "The nature

28  of the escape attempt"—that "[a]t the moments leading into the deadly force response,

[Anthony] Nu[ñ]ez was not perceived to have been attempting escape." This is reflected in the deposition testimony of each defendant deputy, in which each claimed Mr. Nuñez was approaching him or her, and further in Defendant Jeremy Deberg's deposition testimony, in which Deberg testified as follows:

> Q: Did you believe that the fleeing felon rule applied in this case at the time that Deputy Martinez fired his weapon?
> A: No.

Rather, each defendant deputy has testified that he or she used force against Mr. Nuñez due to the alleged threat of harm he or she believed Mr. Nuñez posed to themselves or others.

Because these portions of Defendants' proposed instruction refer to *Garner*'s "fleeing felon" rule, which is inapplicable in this case, they should not be included. Inclusion of these portions also risks wasting time by creating an unnecessary mini-trial on whether a reasonable officer would have believed probable cause existed, as to what alleged crime(s) probable cause existed, and whether that/those alleged crime(s) qualified as "involving the infliction or threatened infliction of serious physical harm."

*Defendants' position:*

When decedent exited the house for the last time, he still held the metal chain in his hand and began moving south, away from the officers, in direct defiance of their instructions to him to put the chain down and get on the ground. Deputy Jonathan Campos testified that when decedent exited the house, he took off running away from deputies and towards an opening in the fence:

> Q:    When Anthony came outside, did he remain standing in front of the house or did he move in some other direction after exiting?
>
> A:    He stayed there for a matter of maybe ten seconds kind of looked at all of us, you know, one at a time.  And he

1
2
3
      saw, I believe, an opening to his right and he just took off
running toward his right, which is like an open little area on
the front south end of his front yard.

4 (Campos Depo., p. 56:14-22.) These actions constitute flight, resisting arrest and a

5 violation of Penal Code § 148.

6       "[A] suspect who ignores an officer's order to stop and walks away can

7 'reasonably' be considered to flee, even where the suspect does not run." *United States*

8 *v. Stittiams*, 417 Fed.Appx. 530, 535 (6th Cir. 2011); see also *United States v. Davis*,

9 331 Fed.Appx. 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee,

10 even though he did not run, because he "pick[ed] up the pace" and ignored police

11 commands); *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017) ("So

12 even though Thomas's actions may not look like flight in the ordinary sense of the

13 word, they constitute 'flight' under the law".) The law does not require that an officer

14 simply "shrug his shoulders and allow the suspected criminal to walk away." *United*

15 *States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976).

16       The Comment for JI 9.25 in the Manual states: "In assessing a claim of

17 excessive force, the jury should consider the three non-exclusive factors set forth by

18 the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23

19 F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This

20 instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime

21 at issue; (2) whether the individual posed an immediate threat to the safety of the

22 officers or others; and (3) whether the individual was actively resisting arrest or

23 attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39

24 F.4th 591, 599 (9th Cir. 2022); see also *Estate of Aguirre*, 29 F.4th at 628 (describing

25 second *Graham* factor as "the level of immediate threat [the individual] posed to the

26 officer or others"). The Ninth Circuit has repeatedly emphasized that "the most

27 important *Graham* factor" is whether the individual posed an immediate threat to the

28 safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)

1  (en banc) (internal quotation marks omitted); see, e.g., *Hyde v. City of Wilcox*, 23

2  F.4th 863, 870 (9th Cir. 2022); *Williamson v. City of National City*, 23 F.4th 1146,

3  1153 (9th Cir. 2022).

4        After decedent had disregarded the deputies' instructions and moved south

5  towards an opening in the fence, he then turned around and began to rapidly swing the

6  full measure of the chain in a circular motion above his head. Decedent was "pacing

7  back and forth," "moving back, moving forward" and then "started striking in [the

8  deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes

9  Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings

10  confirm, decedent was also threatening the officers verbally as he struck out with the

11  chain.  For example, Sergeant Corey LaFever testified that decedent stated,

12  "something to the effect of wanting to beat me up or because he told me to some

13  degree like put your guns and badges away and let's fight this, let's fight, or something

14  to that effect." (LaFever Depo, p. 26:7-13.)

15        Thus, there is sufficient factual support for all three of the *Graham* factors. The

16  statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is

17  limited to "the moments leading up to the deadly force response," not the entire

18  encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses

19  by Martinez were appropriate and consistent with current law enforcement training

20  standards in consideration of the 'totality of circumstances' presented to Martinez at

21  the moments deadly force was used." The totality of circumstances includes Anthony

22  Nunez's threats, moving in a southbound direction away from the officers, refusal to

23  follow the officers' instructions to de-escalate the situation, verbal threats, and acts of

24  physical aggression in swinging the chain in a threatening manner.

25        The totality of the circumstances also includes the fact that the defendant

26  deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime

27  involving the infliction or threatened infliction of serious physical harm."  Andrew

28  Nunez's wife, Noelia Benitez,  placed a 9-1-1 call and informed dispatch that decedent

had threatened Andrew Nunez with a metal chain, shoved him against the wall, was probably on drugs, and that there was a firearm in the house, location unknown. (Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she remained on the line with dispatch until deputies arrived instead of hanging up, in case decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene, Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in an argument, and Anthony choked Andrew out or choked him and grabbed a chain of some sort and whipped it towards Andrew, and told that he was -- that he was going to use it against him." (LaFever Depo, p. 19:18-24.)

In summary, there is ample factual evidence supporting an argument that decedent was not following deputies' instructions, was moving southbound and away from deputies, and then began striking towards them with a metal chain, all in an effort to avoid arrest. The language added to this instruction came directly from the Manual, and is well-supported by case law, and by the underlying facts of this case. vvv

**INSTRUCTION NO. 4**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS –**

**INTERFERENCE WITH PARENT/CHILD RELATIONSHIP**

**(PLAINTIFFS' PROPOSED VERSION)**

Plaintiffs Rosa Nuñez and Anthony Nuñez, Jr. claim that Defendants Michael Martinez, Jeremy Deberg, and Sabrina Cervantes deprived them of their right under the Fourteenth Amendment to be free from unlawful state interference with their familial relationship with Rosa Nuñez's son, and Anthony Nuñez, Jr.'s father, Anthony Nuñez.

In order to prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived these Plaintiffs of their Fourteenth Amendment right to be free from unreasonable state interference with their relationship with the decedent, Plaintiffs must prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with deliberate indifference when they shot and/or used less-lethal force against Anthony Nuñez. Deliberate indifference is reflected by a conscious disregard of a risk to Anthony Nuñez's health or safety. However, if you find that it was impracticable for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to deliberate before they shot and/or used less-lethal force against Anthony Nuñez, then Plaintiff must instead prove that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with a purpose to harm Anthony Nuñez that was unrelated to a legitimate law enforcement objective.

Source: Ninth Circuit Manual of Model Jury Civil Instructions (2017, revised Mar. 2024), No. 9.32; *Wilkinson v. Torres*, 601 F.3d 546, 554 (9th Cir. 2010); *Porter v. Osborne*, 546 F.3d 1131, 1136-1137 (9th Cir. 2008); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372-72 (9th Cir. 1998).

**INSTRUCTION NO. 4**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS –**
**INTERFERENCE WITH PARENT/CHILD RELATIONSHIP**
**(DEFENDANTS' PROPOSED VERSION)**

Plaintiffs Rosa Nuñez and Anthony Nuñez, Jr. claim that Defendants Michael Martinez, Jeremy Deberg, and Sabrina Cervantes deprived them of their right under the Fourteenth Amendment to be free from unlawful state interference with their familial relationship with Rosa Nuñez's son, and Anthony Nuñez, Jr.'s father, Anthony Nuñez.

In order to prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived these Plaintiffs of their Fourteenth Amendment right to be free from unreasonable state interference with their relationship with the decedent, Plaintiffs must prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with deliberate indifference when they shot and/or used less-lethal force against Anthony Nuñez. Deliberate indifference is reflected by a conscious disregard of a risk to Anthony Nuñez's health or safety. However, if you find that it was impracticable for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to actually deliberate before they shot and/or used less-lethal force against Anthony Nuñez, then Plaintiff must instead prove that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with a purpose to harm Anthony Nuñez that was unrelated to a legitimate law enforcement objective.

Source: Ninth Circuit Manual of Model Jury Civil Instructions (2017, revised Mar. 2024), No. 9.32; *Wilkinson v. Torres*, 601 F.3d 546, 554 (9th Cir. 2010); *Porter v. Osborne*, 546 F.3d 1131, 1136-1137 (9th Cir. 2008); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372-72 (9th Cir. 1998).

**INSTRUCTION NO. 4**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS –
INTERFERENCE WITH PARENT/CHILD RELATIONSHIP
(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties' dispute is limited to whether the word "actually" should be included in the final sentence of this instruction.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to use of the word "actually" in this instruction because it is likely to confuse the jury by suggesting that the jury should consider a distinction between "deliberat[ion]" and "actual[ ] deliberat[ion]"—implying varying degrees of deliberation, only some of which are sufficient for purposes of establishing this claim. Adequate guidance on the meaning of "deliberate" as it is used in this proposed

1  instruction is already provided in the same sentence of the instruction, which requires

2  the jury to determine whether "it was [ ]practicable for [the defendant deputies] to

3  deliberate" before using force. In this context, "actual" is redundant of the plain

4  meaning of "[ ]practicable." Although Defendants note that courts have referenced

5  "actual" deliberation in the context of distinguishing the term "deliberation" as it is

6  used in the Fourteenth Amendment context from how "'deliberation' . . . is used in

7  homicide law," *see County of Sacramento v. Lewis*, 523 U.S. 833, 851 & n.11 (1998),

8  this distinction only further highlights how "actual" is not useful for the jury. The jury

9  will not consist of legal experts parsing the distinctions between the legal meanings of

10  "deliberation" as it is used in different areas of the law. Although the term "actual"

11  may be helpful to appeals courts in articulating the precise legal standards governing

12  Fourteenth Amendment Substantive Due Process claims, it is unlikely to be helpful to

13  a jury, and instead unnecessarily risks confusing it and would waste time.

14

15  *Defendants' position:*

16      Plaintiffs' challenge to the phrase "actual deliberation," which is taken from the

17  language of the model instruction, would alter the standard to be applied to

18  defendants' conduct in an unfairly prejudicial manner. The Comment for JI 9.32 in the

19  Manual explains why the words "actually deliberate" are key to the determination of

20  "deliberate indifference." It states: "The deliberate indifference standard applies in

21  situations where the officers who caused the harm to the parent or child acted (or

22  failed to act) in a situation when actual deliberation is practical.'" *County of*

23  *Sacramento v. Lewis*, 523 U.S. 833, 851 (1998).  When officials have "time to make

24  unhurried judgments," and "extended opportunities to do better," but unreasonably

25  allow harm to occur, then their "protracted failure even to care" can shock the

26  conscience, thus giving rise to a substantive due process claim.  *Id*.  "Actual

27  deliberation" requires a longer period of time than "deliberation" as that term is used

28  in homicide law.  See *id*. at 851 n.11 ("By 'actual deliberation,' we do not mean

1  'deliberation' in the narrow, technical sense in which it has sometimes been used in

2  traditional homicide law.").

3       The "actual deliberation" standard affects the deliberate indifference test by

4  requiring a higher showing to prove a constitutional violation. As explained by the

5  court in *McGowan v. Cnty. of Kern*, No. 115CV01365DADSKO, 2018 WL 2734970,

6  at *6 (E.D. Cal. June 7, 2018):

> In some instances, actions done with "deliberate
> indifference" will be sufficiently egregious to offend due
> process. *Lewis*, 523 US at 849–50 (noting that deliberate
> indifference to the medical needs of pretrial detainees
> violates due process). However, the "deliberate
> indifference" standard "is sensibly employed only when
> actual deliberation is practical," and when deliberation is not
> practical, a higher level of culpability must be present. *Id*. at
> 851. Therefore, where a police officer confronts "an
> occasion calling for fast action" which presents "obligations
> that tend to tug against each other," a higher standard is
> needed to impose constitutional liability. *Id*. at 853–54.
> Because of this, the Supreme Court has held that "high-
> speed chases with no intent to harm suspects physically or to
> worsen their legal plight do not give rise to liability under
> the Fourteenth Amendment, redressible by an action under §
> 1983." *Id.*

17  The *McGowan* court further noted that, "While *Lewis* concerned the rights of the

18  decedent herself, see *id*. at 837, the Ninth Circuit has applied the same standard to

19  Fourteenth Amendment due process claims brought directly by the decedent's family

20  members. See *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (noting the

21  claims in this lawsuit were "limited to [the plaintiffs'] Fourteenth Amendment rights

22  as [the decedent's] parents")."

23       Moreover, plaintiffs raise no valid ground for objection -- the addition of a

24  single word is not a "waste of time" and it is difficult to see how the common word

25  "actually," would somehow confuse the jury. Because the "critical consideration [is]

26  whether the circumstances are such that 'actual deliberation is practical," it would be

27  unfairly prejudicial to the defendants to simply use the generic word "deliberate"

**34**

instead of the phrase "actually deliberate," which is the correct standard.  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998).

**INSTRUCTION NO. 5**

**BATTERY BY PEACE OFFICER (DEADLY FORCE)—ESSENTIAL ELEMENTS**

**(PLAINTIFFS' PROPOSED VERSION)**

A ~~peace officer~~ sheriff's deputy may use deadly force only when necessary in defense of human life. [Plaintiffs] claim that [Defendant Michael Martinez] unnecessarily used deadly force ~~on~~against [Anthony Nuñez]. To establish this claim, [Plaintiffs] must prove all of the following:

1.  That [Michael Martinez] intentionally ~~touched~~shot [Anthony Nuñez] ~~[or caused [*name of plaintiff/decedent*] to be touched]~~;

2.  That [Michael Martinez] used deadly force ~~on~~ against [Anthony Nuñez];

3.  That [Michael Martinez]'s use of deadly force was not necessary to defend human life;

4.  That [Anthony Nuñez] was [killed]; and

5.  That the use of deadly force by [Michael Martinez]~~'s use of deadly force~~ was a substantial factor in causing [Anthony Nuñez]'s [death].

[Michael Martinez]'s use of deadly force was necessary to defend human life only if a reasonable ~~officer~~ deputy in the same situation would have believed, based on the totality of the circumstances known to or perceived by [Michael Martinez] at the time, that deadly force was necessary ~~[insert one or both of the following:]~~

[to defend against an imminent threat of death or serious bodily harm to [Michael Martinez] [or] [to another person]~~[; or/.]]~~

~~[to apprehend a fleeing person for a felony, when all of the following conditions are present:~~

~~i.    The felony threatened or resulted in death or serious bodily injury to another;~~

ii.    [*Name of defendant*] reasonably believed that the person fleeing would
cause death or serious bodily injury to another unless immediately
apprehended; and

iii.    If practical under the circumstances, [name of defendant] made
reasonable efforts to identify [himself/herself/*nonbinary pronoun*] as a
peace officer and to warn that deadly force would be used, unless the
officer had objectively reasonable grounds to believe the person is aware
of those facts.]

[A peace officer must not use deadly force against persons based only on the
danger those persons pose to themselves, if an objectively reasonable officer would
believe the person does not pose an imminent threat of death or serious bodily injury
to the peace officer or to another person.]

[A person being [arrested/detained] has a duty not to use force to resist the
peace officerdeputy unless the peace officerdeputy is using unreasonable force.]

"Deadly force" means any use of force that creates a substantial risk of causing
death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the
totality of the circumstances, a reasonable officer in the same situation would believe
that a person has the present ability, opportunity, and apparent intent to immediately
cause death or serious bodily injury to the peace officer or another person. An
imminent harm is not merely a fear of future harm, no matter how great the fear and
no matter how great the likelihood of the harm, but is one that, from appearances,
must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the
time, including the conduct of [Michael Martinez] and [Anthony Nuñez] leading up to
the use of deadly force. In determining whether [Michael Martinez]'s use of deadly
force was necessary in defense of human life, you must consider [Michael Martinez]'s
tactical conduct and decisions before using deadly force on [Anthony Nuñez] and

whether [Michael Martinez] used other available resources and techniques as [an] alternative[s] to deadly force, if it was reasonably safe and feasible to do so. [You must also consider whether [Michael Martinez] knew or had reason to know that the person against whom [he/she/*nonbinary pronoun*] used force Anthony Nuñez was suffering from a physical, mental health, developmental, or intellectual disability [that may have affected the person's Anthony Nuñez's ability to understand or comply with commands from the officer[s]]deputies.]

[A peace officer deputy who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer deputy does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer deputy does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.]

Source: CACI 1305B (2024 edition).

**INSTRUCTION NO. 5**

**BATTERY BY PEACE OFFICER (DEADLY FORCE)—ESSENTIAL ELEMENTS**

**(DEFENDANTS' PROPOSED VERSION)**

A ~~peace officer~~ sheriff's deputy may use deadly force only when necessary in defense of human life. [Plaintiffs] claim that [Defendant Michael Martinez] unnecessarily used deadly force ~~on~~ against [Anthony Nuñez]. To establish this claim, [Plaintiffs] must prove all of the following:

    1.    That [Michael Martinez] intentionally ~~touched~~ shot [Anthony Nuñez] ~~[or caused [*name of plaintiff/decedent*] to be touched]~~;

    2.    That [Michael Martinez] used deadly force ~~on~~ against [Anthony Nuñez];

    3.    That [Michael Martinez]'s use of deadly force was not necessary to defend human life;

    4.    That [Anthony Nuñez] was [killed]; and

    5.    That the use of deadly force by [Michael Martinez] ~~'s use of deadly force~~ was a substantial factor in causing [Anthony Nuñez]'s [death].

[Michael Martinez]'s use of deadly force was necessary to defend human life only if a reasonable ~~officer~~ deputy in the same situation would have believed, based on the totality of the circumstances known to or perceived by [Michael Martinez] at the time, that deadly force was necessary [*insert one or both of the following:*]

[to defend against an imminent threat of death or serious bodily harm to [Michael Martinez] [or] [to another person][~~; or~~.]]

[Michael Martinez]'s use of deadly force was necessary to defend human life only if a reasonable ~~officer~~ deputy in the same situation would have believed, based on the totality of the circumstances known to or perceived by [Michael Martinez] at the time, that deadly force was necessary [to apprehend a fleeing person for a felony, when all of the following conditions are present:

**39**

1    iv.i.    The felony threatened or resulted in death or serious bodily injury to

2          another.;

3    v.ii.    [Deputy Martinez] reasonably believed that the person fleeing would

4          cause death or serious bodily injury to another unless immediately

5          apprehended; and

6    vi.iii.  If practical under the circumstances, [Deputy Martinez] made reasonable

7          efforts to identify [himself] as a peace officer and to warn that deadly

8          force would be used, unless the officer had objectively reasonable

9          grounds to believe the person is aware of those facts.]

10        [A peace officer must not use deadly force against persons based only on the

11    danger those persons pose to themselves, if an objectively reasonable officer would

12    believe the person does not pose an imminent threat of death or serious bodily injury

13    to the peace officer or to another person.]

14        [A person being [arrested/detained] has a duty not to use force to resist the

15    peace officerdeputy unless the peace officerdeputy is using unreasonable force.]

16        "Deadly force" means any use of force that creates a substantial risk of causing

17    death or serious bodily injury, including, but not limited to, the discharge of a firearm.

18        A threat of death or serious bodily injury is "imminent" when, based on the

19    totality of the circumstances, a reasonable officer in the same situation would believe

20    that a person has the present ability, opportunity, and apparent intent to immediately

21    cause death or serious bodily injury to the peace officer or another person. An

22    imminent harm is not merely a fear of future harm, no matter how great the fear and

23    no matter how great the likelihood of the harm, but is one that, from appearances,

24    must be instantly confronted and addressed.

25        "Totality of the circumstances" means all facts known to the peace officer at the

26    time, including the conduct of [Michael Martinez] and [Anthony Nuñez] leading up to

27    the use of deadly force. In determining whether [Michael Martinez]'s use of deadly

28    force was necessary in defense of human life, you must consider [Michael Martinez]'s

tactical conduct and decisions before using deadly force on [Anthony Nuñez] and whether [Michael Martinez] used other available resources and techniques as [an] alternative[s] to deadly force, if it was reasonably safe and feasible to do so. [You must also consider whether [Michael Martinez] knew or had reason to know that the person against whom [he/she/*nonbinary pronoun*] used force Anthony Nuñez was suffering from a physical, mental health, developmental, or intellectual disability [that may have affected the person's Anthony Nuñez's ability to understand or comply with commands from the officer[s]]deputies.]

[A peace officer deputy who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer deputy does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer deputy does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.]

Source: CACI 1305B (2024 edition).

## INSTRUCTION NO. 5

## BATTERY BY PEACE OFFICER (DEADLY FORCE)—ESSENTIAL ELEMENTS

## (BASIS FOR DISPUTE)

*Joint summary of disputed issue(s):*

The parties' dispute concerns Defendants' proposed inclusion of (1) the paragraph regarding whether "deadly force was necessary to apprehend a fleeing person for a felony; and (2) the factors listed immediately after that paragraph, bearing on fleeing persons and felonies.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to Defendants' proposed references to fleeing persons and dangerous felonies for the same reasons as addressed above, in the context of the disputed "Fourth Amendment—Unreasonable Seizure of Person—Excessive Force"

1    instruction. As explained there, there is no "fleeing felon" issue in this case, as

2    Defendants' own police practices expert has acknowledged, and there is therefore no

3    basis for including these proposed portions of this instruction either. With no basis for

4    inclusion of these proposed portions of the instruction, they would waste time and risk

5    needlessly confusing the jury about the issues to be decided in this case.

6

7    _Defendants' position:_

8         When decedent exited the house for the last time, he still held the metal chain in

9    his hand and began moving south, away from the officers, in direct defiance of their

10   instructions to him to put the chain down and get on the ground. Deputy Jonathan

11   Campos testified that when decedent exited the house, he took off running away from

12   deputies and towards an opening in the fence:

13

14            Q:    When Anthony came outside, did he remain standing
15         in front of the house or did he move in some other direction
              after exiting?

16            A:    He stayed there for a matter of maybe ten seconds
17         kind of looked at all of us, you know, one at a time.  And he
              saw, I believe, an opening to his right and he just took off
18         running toward his right, which is like an open little area on
19            the front south end of his front yard.

20   (Campos Depo., p. 56:14-22.) These actions constitute flight, resisting arrest and a

21   violation of Penal Code § 148.

22         "[A] suspect who ignores an officer's order to stop and walks away can

23   'reasonably' be considered to flee, even where the suspect does not run." _United States_

24   _v. Stittiams_, 417 Fed.Appx. 530, 535 (6th Cir. 2011); see also _United States v. Davis_,

25   331 Fed.Appx. 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee,

26   even though he did not run, because he "pick[ed] up the pace" and ignored police

27   commands); _Thomas v. City of Eastpointe_, 715 F. App'x 458, 461 (6th Cir. 2017) ("So

28   even though Thomas's actions may not look like flight in the ordinary sense of the

1  word, they constitute 'flight' under the law".) The law does not require that an officer

2  simply "shrug his shoulders and allow the suspected criminal to walk away." *United*

3  *States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976).

4        The Comment for JI 9.25 in the Manual states: "In assessing a claim of

5  excessive force, the jury should consider the three non-exclusive factors set forth by

6  the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23

7  F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This

8  instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime

9  at issue; (2) whether the individual posed an immediate threat to the safety of the

10  officers or others; and (3) whether the individual was actively resisting arrest or

11  attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39

12  F.4th 591, 599 (9th Cir. 2022); see also *Estate  of Aguirre*, 29 F.4th at 628 (describing

13  second *Graham* factor as "the level of immediate threat [the individual] posed to the

14  officer or others"). The Ninth Circuit has repeatedly emphasized that "the most

15  important *Graham* factor" is whether the individual posed an immediate threat to the

16  safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)

17  (en banc) (internal quotation marks omitted); see, e.g., *Hyde*, 23 F.4th at 870;

18  *Williamson*, 23 F.4th at 1153.

19        After decedent had disregarded the deputies' instructions and moved south

20  towards an opening in the fence, he then turned around and began to rapidly swing the

21  full measure of the chain in a circular motion above his head. Decedent was "pacing

22  back and forth," "moving back, moving forward" and then "started striking in [the

23  deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes

24  Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings

25  confirm, decedent was also threatening the officers verbally as he struck out with the

26  chain.  For example, Sergeant Corey LaFever testified that decedent stated,

27  "something to the effect of wanting to beat me up or because he told me to some

28

1   degree like put your guns and badges away and let's fight this, let's fight, or something
2   to that effect." (LaFever Depo, p. 26:7-13.)

3          Thus, there is sufficient factual support for all three of the *Graham* factors. The
4   statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is
5   limited to "the moments leading up to the deadly force response," not the entire
6   encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses
7   by Martinez were appropriate and consistent with current law enforcement training
8   standards in consideration of the 'totality of circumstances' presented to Martinez at
9   the moments deadly force was used." The totality of circumstances includes Anthony
10  Nunez's threats, moving in a southbound direction away from the officers, refusal to
11  follow the officers' instructions to de-escalate the situation, verbal threats, and acts of
12  physical aggression in swinging the chain in a threatening manner.

13         The totality of the circumstances also includes the fact that the defendant
14  deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime
15  involving the infliction or threatened infliction of serious physical harm."  Andrew
16  Nunez's wife, Noelia Benitez,  placed a 9-1-1 call and informed dispatch that decedent
17  had threatened Andrew Nunez with a metal chain, shoved him against the wall, was
18  probably on drugs, and that there was a firearm in the house, location unknown.
19  (Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she
20  remained on the line with dispatch until deputies arrived instead of hanging up, in case
21  decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene,
22  Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in
23  an argument, and Anthony choked Andrew out or choked him and grabbed a chain of
24  some sort and whipped it towards Andrew, and told that he was -- that he was going to
25  use it against him." (LaFever Depo, p. 19:18-24.)

26         In summary, there is ample factual evidence supporting an argument that
27  decedent was not following deputies' instructions, was moving southbound and away
28  from deputies, and then began striking towards them with a metal chain, all in an

1    effort to avoid arrest. The language added to this instruction came directly from the

2    Manual, and is well-supported by case law, and by the underlying facts of this case.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 6**

**BATTERY BY PEACE OFFICER (NONDEADLY FORCE)—ESSENTIAL**

**FACTUAL ELEMENTS**

**(PLAINTIFFS' PROPOSED VERSION)**

[Plaintiffs] claims that [Defendants Jeremy Deberg and Sabrina Cervantes] harmed [Anthony Nuñez] by using unreasonable force to [arrest/detain [him]/ [,/or] prevent [his/her/nonbinary pronoun] escape/ [,/or] overcome [his] resistance]. To establish this claim, [Plaintiffs] must prove all of the following:

1.     That [Jeremy Deberg and/or Sabrina Cervantes] intentionally touched [name of plaintiff] [or caused [Anthony Nuñez] to be touched]struck by a weapon;

2.     That [Jeremy Deberg and/or Sabrina Cervantes] used unreasonable force on against [Anthony Nuñez];

3.     That [Anthony Nuñez] did not consent to the use of that force;

4.     That [Anthony Nuñez] was harmed; and

5.     That [Jeremy Deberg's and/or Sabrina Cervantes]'s use of unreasonable force was a substantial factor in causing [Anthony Nuñez]'s harm.

[A] [sheriff's deputy] may use reasonable force to [arrest/detain/[,/or] prevent the escape of [,/or] overcome the resistance of] a person when the officer deputy has reasonable cause to believe that the person has committed a crime. [Even if the officer is mistaken, aA person being arrested or detained has a duty not to use force to resist the officer deputy unless the officer deputy is using unreasonable force.]

In deciding whether [Jeremy Deberg and/or Sabrina Cervantes] used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable [sheriff's deputy] in [Jeremy Deberg's and/or Sabrina Cervantes]'s position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer deputy at the time, including the conduct of [Jeremy Deberg, Sabrina Cervantes,] and

**47**

[Anthony Nuñez] leading up to the use of force. You should consider, among other factors, the following:

    a.    Whether [Anthony Nuñez] reasonably appeared to pose an immediate threat to the safety of [Jeremy Deberg, Sabrina Cervantes,] or others;

    b.    The seriousness of the crime at issue; and

    c.    Whether [Anthony Nuñez] was actively resisting [arrest/detention] or attempting to evade [arrest/detention].

[An officer deputy who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested resists or threatens to resist. Tactical repositioning or other de-escalation tactics are not retreat. An officerdeputy does not lose the right to self-defense by using objectively reasonable force to [arrest/detain/ [,/or] prevent escape/ [,/or] overcome resistance.] A deputy does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

<u>Source</u>: CACI 1305A (2024 edition).

**INSTRUCTION NO. 6**

**BATTERY BY PEACE OFFICER (NONDEADLY FORCE)—ESSENTIAL**

**FACTUAL ELEMENTS**

**(DEFENDANTS' PROPOSED VERSION)**

[~~Plaintiffs~~] claim~~s~~ that [~~Defendants~~ Jeremy Deberg and Sabrina Cervantes] harmed [Anthony Nuñez] by using unreasonable force to [arrest~~/detain~~ [him]~~/~~ [~~,~~/or] prevent [his~~/her/nonbinary pronoun~~] escape~~/~~ [~~,~~/or] overcome [his] resistance]. To establish this claim, [~~Plaintiffs~~] must prove all of the following:

    1.    That [Jeremy Deberg and/or Sabrina Cervantes] intentionally ~~touched [name of plaintiff]~~ [~~or~~ caused [Anthony Nuñez] to be ~~touched~~]struck by a weapon;

    2.    That [Jeremy Deberg and/or Sabrina Cervantes] used unreasonable force ~~on~~ against [Anthony Nuñez];

    3.    That [Anthony Nuñez] did not consent to the use of that force;

    4.    That [Anthony Nuñez] was harmed; and

    5.    That [Jeremy Deberg's and/or Sabrina Cervantes]'s use of unreasonable force was a substantial factor in causing [Anthony Nuñez]'s harm.

[A] [sheriff's deputy] may use reasonable force to [arrest~~/detain/~~[~~,~~/ or] prevent the escape of [~~,~~/or] overcome the resistance of] a person when the ~~officer~~ deputy has reasonable cause to believe that the person has committed a crime. [Even if the officer is mistaken, a person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.]

In deciding whether [Jeremy Deberg and/or Sabrina Cervantes] used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable [sheriff's deputy] in [Jeremy Deberg's and/or Sabrina Cervantes]'s position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the ~~officer~~ deputy at the time, including the conduct of [Jeremy Deberg, Sabrina Cervantes,] and

1  [Anthony Nuñez] leading up to the use of force. You should consider, among other

2  factors, the following:

3      a.    Whether [Anthony Nuñez] reasonably appeared to pose an immediate

4  threat to the safety of [Jeremy Deberg, Sabrina Cervantes,] or others;

5      b.    The seriousness of the crime at issue; and

6      c.    Whether [Anthony Nuñez] was actively resisting [arrest/detention] or

7  attempting to evade [arrest/detention] or flee.

8  [An officer deputy who makes or attempts to make an arrest does not have to

9  retreat or stop because the person being arrested resists or threatens to resist. Tactical

10 repositioning or other de-escalation tactics are not retreat. An officerdeputy does not

11 lose the right to self-defense by using objectively reasonable force to [arrest/detain/

12 [,/or] prevent escape/ [,/or] overcome resistance.] A deputy does, however, have a

13 duty to use reasonable tactical repositioning or other de-escalation tactics.

14

15 <u>Source:</u> CACI 1305A (2024 edition).

16

17

18

19

20

21

22

23

24

25

26

27

28

**50**

**INSTRUCTION NO. 6**

**BATTERY BY PEACE OFFICER (NONDEADLY FORCE)—ESSENTIAL**

**FACTUAL ELEMENTS**

**(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties' dispute concerns Defendants' proposed inclusion of three references to whether Mr. Nuñez attempted to "escape" "or flee" (in the first full paragraph, the second full paragraph, and the final "Totality of the circumstances" factor on the second page).

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to Defendants' proposed references to "escape" or attempts to "flee" for the same reasons as addressed above, in the context of the disputed "Fourth Amendment—Unreasonable Seizure of Person—Excessive Force" and "Battery by

Peace Officer (Deadly Force)—Essential Elements" instructions. As explained there, there is no evidence Mr. Nuñez was attempting to "escape" or "flee" at the time the challenged force was used, as Defendants' own police practices expert has acknowledged, and there is therefore no basis for including these proposed portions of this instruction either. With no basis for inclusion of these proposed portions of the instruction, they would waste time and risk needlessly confusing the jury about the issues to be decided in this case.

*Defendants' position:*

When decedent exited the house for the last time, he still held the metal chain in his hand and began moving south, away from the officers, in direct defiance of their instructions to him to put the chain down and get on the ground. Deputy Jonathan Campos testified that when decedent exited the house, he took off running away from deputies and towards an opening in the fence:

> Q:    When Anthony came outside, did he remain standing in front of the house or did he move in some other direction after exiting?
>
> A:    He stayed there for a matter of maybe ten seconds kind of looked at all of us, you know, one at a time.  And he saw, I believe, an opening to his right and he just took off running toward his right, which is like an open little area on the front south end of his front yard.

(Campos Depo., p. 56:14-22.) These actions constitute flight, resisting arrest and a violation of Penal Code § 148.

"[A] suspect who ignores an officer's order to stop and walks away can 'reasonably' be considered to flee, even where the suspect does not run." *United States v. Stittiams*, 417 Fed.Appx. 530, 535 (6th Cir. 2011); see also *United States v. Davis*, 331 Fed.Appx. 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee, even though he did not run, because he "pick[ed] up the pace" and ignored police

1    commands); *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017) ("So

2    even though Thomas's actions may not look like flight in the ordinary sense of the

3    word, they constitute 'flight' under the law".) The law does not require that an officer

4    simply "shrug his shoulders and allow the suspected criminal to walk away." *United*

5    *States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976).

6         The Comment for JI 9.25 in the Manual states: "In assessing a claim of

7    excessive force, the jury should consider the three non-exclusive factors set forth by

8    the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23

9    F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This

10   instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime

11   at issue; (2) whether the individual posed an immediate threat to the safety of the

12   officers or others; and (3) whether the individual was actively resisting arrest or

13   attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39

14   F.4th 591, 599 (9th Cir. 2022); see also *Estate of Aguirre*, 29 F.4th at 628 (describing

15   second *Graham* factor as "the level of immediate threat [the individual] posed to the

16   officer or others"). The Ninth Circuit has repeatedly emphasized that "the most

17   important *Graham* factor" is whether the individual posed an immediate threat to the

18   safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)

19   (en banc) (internal quotation marks omitted); see, e.g., *Hyde*, 23 F.4th at 870;

20   *Williamson*, 23 F.4th at 1153.

21        After decedent had disregarded the deputies' instructions and moved south

22   towards an opening in the fence, he then turned around and began to rapidly swing the

23   full measure of the chain in a circular motion above his head. Decedent was "pacing

24   back and forth," "moving back, moving forward" and then "started striking in [the

25   deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes

26   Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings

27   confirm, decedent was also threatening the officers verbally as he struck out with the

28   chain. For example, Sergeant Corey LaFever testified that decedent stated,

1  "something to the effect of wanting to beat me up or because he told me to some

2  degree like put your guns and badges away and let's fight this, let's fight, or something

3  to that effect." (LaFever Depo, p. 26:7-13.)

4         Thus, there is sufficient factual support for all three of the *Graham* factors. The

5  statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is

6  limited to "the moments leading up to the deadly force response," not the entire

7  encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses

8  by Martinez were appropriate and consistent with current law enforcement training

9  standards in consideration of the 'totality of circumstances' presented to Martinez at

10  the moments deadly force was used." The totality of circumstances includes Anthony

11  Nunez's threats, moving in a southbound direction away from the officers, refusal to

12  follow the officers' instructions to de-escalate the situation, verbal threats, and acts of

13  physical aggression in swinging the chain in a threatening manner.

14         The totality of the circumstances also includes the fact that the defendant

15  deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime

16  involving the infliction or threatened infliction of serious physical harm."  Andrew

17  Nunez's wife, Noelia Benitez,  placed a 9-1-1 call and informed dispatch that decedent

18  had threatened Andrew Nunez with a metal chain, shoved him against the wall, was

19  probably on drugs, and that there was a firearm in the house, location unknown.

20  (Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she

21  remained on the line with dispatch until deputies arrived instead of hanging up, in case

22  decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene,

23  Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in

24  an argument, and Anthony choked Andrew out or choked him and grabbed a chain of

25  some sort and whipped it towards Andrew, and told that he was -- that he was going to

26  use it against him." (LaFever Depo, p. 19:18-24.)

27         In summary, there is ample factual evidence supporting an argument that

28  decedent was not following deputies' instructions, was moving southbound and away

54

1  from deputies, and then began striking towards them with a metal chain, all in an

2  effort to avoid arrest. The language added to this instruction came directly from the

3  Manual, and is well-supported by case law, and by the underlying facts of this case.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Disputed Jury Instructions (Redline)

**INSTRUCTION NO. 7**

**NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER—**

**ESSENTIAL FACTUAL ELEMENTS**

**(PLAINTIFFS' PROPOSED VERSION)**

A peace officer may use deadly force only when necessary in immediate defense of human life. [Plaintiffs] claim that [Defendant Michael Martinez] was negligent in using deadly force ~~to~~ against [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance to] [Anthony Nuñez]. To establish this claim, [Plaintiffs] must prove all of the following:

1. That [Michael Martinez] was a peace officer;

2. That [Michael Martinez] used deadly force ~~on~~ against [Anthony Nuñez];

3. That [Michael Martinez]'s use~~s~~ of deadly force ~~was~~ were not necessary to defend human life;

4. That [Anthony Nuñez] was [killed]; and

5. That [Michael Martinez]'s ~~use of deadly force~~ shooting of Anthony Nuñez was a substantial factor in causing [Anthony Nuñez]'s [death].

[Michael Martinez]'s use of deadly force was necessary to defend human life only if a reasonable ~~officer~~ deputy in the same situation would have believed, based on the totality of the circumstances known to or perceived by [Michael Martinez] at the time of the shooting, that deadly force was necessary [either]:

[to defend against an imminent threat of death or serious bodily injury to [Michael Martinez] [and/or] [any an other person]][; or/.]]

~~[to apprehend a fleeing person for a felony, when all of the following conditions are present:~~

~~i.    The felony threatened or resulted in death or serious bodily injury to another;~~

1    ii.    [*Name of defendant*] reasonably believed that the person fleeing would

2            cause death or serious bodily injury to another unless immediately

3            apprehended; and

4    iii.    [*Name of defendant*] made reasonable efforts to identify

5    [himself/herself/*nonbinary pronoun*] as a peace officer and to warn that deadly force

6    may be used, unless the officer had objectively reasonable grounds to believe the

7    person is aware of those facts.]

8    [A peace officer must not use deadly force against persons based only on the danger

9    those persons pose to themselves, if an objectively reasonable officer would believe

10   the person does not pose an imminent threat of death or serious bodily injury to the

11   peace officer or to another person.]

12       [A person being [arrested/detained] has a duty not to use force to resist a peace

13   officer deputy unless the peace officer deputy is using unreasonable force.]

14       ["Deadly force" is force that creates a substantial risk of causing death or

15   serious bodily injury. It is not limited to the discharge of a firearm.]

16       A threat of death or serious bodily injury is "imminent" if, based on the totality

17   of the circumstances, a reasonable officer deputy in the same situation would believe

18   that a person has the present ability, opportunity, and apparent intent to immediately

19   cause death or serious bodily injury to the peace officer deputy or to another person.

20   An imminent harm is not merely a fear of future harm, no matter how great the fear

21   and no matter how great the likelihood of the harm, but is one that, from appearances,

22   must be instantly confronted and addressed.

23       "Totality of the circumstances" means all facts known to or perceived by the

24   peace officer Michael Martinez at the time of the shooting, including the conduct of

25   [Michael Martinez] and [Anthony Nuñez] leading up to the use of deadly force. In

26   determining whether [Michael Martinez]'s use of deadly force was necessary in

27   defense of human life, you must consider [Michael Martinez]'s tactical conduct and

28   decisions before using deadly force against [Anthony Nuñez] and whether [Michael

1   Martinez] used other available resources and techniques as [an] alternative[s] to

2   deadly force, if it was reasonably safe and feasible to an objectively reasonable ~~officer~~

3   deputy.

4          [A ~~peace officer~~ deputy who makes or attempts to make an arrest does not have

5   to retreat or stop because the person being arrested is resisting or threatening to resist.

6   Tactical repositioning or other de-escalation tactics are not retreat. A ~~peace officer~~

7   deputy does not lose the right to self-defense by using objectively reasonable force to

8   effect the [arrest ~~/detain/~~ ~~[,/or]~~ ~~prevent escape/[,/~~or] overcome resistance~~].]~~ A deputy

9   does, however, have a duty to use reasonable tactical repositioning or other de-

10  escalation tactics.

11

12  <u>Source</u>: CACI 441 (2024 edition).

13

---

**58**

**INSTRUCTION NO. 7**

**NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER—**

**ESSENTIAL FACTUAL ELEMENTS**

**(DEFENDANTS' PROPOSED VERSION)**

A peace officer may use deadly force only when necessary in immediate defense of human life. [Plaintiffs] claim that [Defendant Michael Martinez] was negligent in using deadly force to against [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance to] [Anthony Nuñez]. To establish this claim, [Plaintiffs] must prove all of the following:

1.  That [Michael Martinez] was a peace officer;

2.  That [Michael Martinez] used deadly force on against [Anthony Nuñez];

3.  That [Michael Martinez]'s uses of deadly force was were not necessary to defend human life;

4.  That [Anthony Nuñez] was [killed]; and

5.  That [Michael Martinez]'s use of deadly force shooting of Anthony Nuñez was a substantial factor in causing [Anthony Nuñez]'s [death].

[Michael Martinez]'s use of deadly force was necessary to defend human life only if a reasonable officer deputy in the same situation would have believed, based on the totality of the circumstances known to or perceived by [Michael Martinez] at the time of the shooting, that deadly force was necessary [either]:

[to defend against an imminent threat of death or serious bodily injury to [Michael Martinez] [and/or] [any another person]][; or /.]]

[to apprehend a fleeing person for a felony, when all of the following conditions are present:

iv.i.   The felony threatened or resulted in death or serious bodily injury to another;

**59**

1    ~~v.~~ii.    [Deputy Martinez] reasonably believed that the person fleeing would

2         cause death or serious bodily injury to another unless immediately

3         apprehended; ~~and~~

4    ~~vi.~~iii.  If practical under the circumstances [Deputy Martinez] made reasonable

5         efforts to identify [himself] as a peace officer and to warn that deadly

6         force ~~may~~ would be used, unless the officer had objectively reasonable

7         grounds to believe the person is aware of those facts.]

8    [A peace officer must not use deadly force against persons based only on the

9    danger those persons pose to themselves, if an objectively reasonable officer would

10   believe the person does not pose an imminent threat of death or serious bodily injury

11   to the peace officer or to another person.]

12   [A person being [arrested~~/detained~~] has a duty not to use force to resist a ~~peace~~

13   ~~officer~~deputy unless the ~~peace officer~~deputy is using unreasonable force.]

14   ~~["Deadly force" is force that creates a substantial risk of causing death or~~

15   ~~serious bodily injury. It is not limited to the discharge of a firearm.]~~

16   A threat of death or serious bodily injury is "imminent" if, based on the totality

17   of the circumstances, a reasonable ~~officer~~ deputy in the same situation would believe

18   that a person has the present ability, opportunity, and apparent intent to immediately

19   cause death or serious bodily injury to the ~~peace officer~~ deputy or to another person.

20   An imminent harm is not merely a fear of future harm, no matter how great the fear

21   and no matter how great the likelihood of the harm, but is one that, from appearances,

22   must be instantly confronted and addressed.

23   "Totality of the circumstances" means all facts known to or perceived by ~~the~~

24   ~~peace officer~~ Michael Martinez at the time of the shooting, including the conduct of

25   [Michael Martinez] and [Anthony Nuñez] leading up to the use of deadly force. In

26   determining whether [Michael Martinez]'s use of deadly force was necessary in

27   defense of human life, you must consider [Michael Martinez]'s tactical conduct and

28   decisions before using deadly force against [Anthony Nuñez] and whether [Michael

1  Martinez] used other available resources and techniques as [an] alternative[s] to

2  deadly force, if it was reasonably safe and feasible to an objectively reasonable officer

3  deputy.

4  [A peace officer deputy who makes or attempts to make an arrest does not have

5  to retreat or stop because the person being arrested is resisting or threatening to resist.

6  Tactical repositioning or other de-escalation tactics are not retreat. A peace officer

7  deputy does not lose the right to self-defense by using objectively reasonable force to

8  effect the [arrest/detain/ [,/or] prevent escape/[,/or] overcome resistance].] A deputy

9  does, however, have a duty to use reasonable tactical repositioning or other de-

10  escalation tactics.

11

12  Source: CACI 441 (2024 edition).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**61**

**INSTRUCTION NO. 7**

**NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER—**

**ESSENTIAL FACTUAL ELEMENTS**

**(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties' dispute concerns Defendants' proposed inclusion of (1) the paragraph regarding whether "deadly force was necessary . . . to apprehend a fleeing person for a felony"; (2) the factors listed immediately after that paragraph, bearing on fleeing persons and felonies; and (3) the sentence immediately following those factors, regarding the prohibition on officers using deadly force against individuals "based only on the danger those persons pose to themselves."

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to Defendants' proposed references to fleeing persons and dangerous felonies for the same reasons as addressed above, in the context of the disputed "Fourth Amendment—Unreasonable Seizure of Person—Excessive Force," "Battery by Peace Officer (Deadly Force)—Essential Elements," and "Battery by Peace Officer (Nondeadly Force)—Essential Elements" instructions. As explained there, there is no "fleeing felon" issue in this case, and there is no evidence Mr. Nuñez was attempting to "escape" or "flee" at the time the challenged force was used, as Defendants' own police practices expert has acknowledged, and there is therefore no basis for including these proposed portions of this instruction either. With no basis for inclusion of these proposed portions of the instruction, they would waste time and risk needlessly confusing the jury about the issues to be decided in this case.

Plaintiffs further object to Defendants' proposed language regarding the prohibition on officers using deadly force against individuals "based only on the danger those persons pose to themselves" on the basis that it is inapplicable in this case. There is no evidence that any deputy believed Mr. Nuñez posed a danger to himself or that any deputy used force against him on that basis. Accordingly, this proposed language would waste time and risks needlessly confusing the jury about the issues to be decided in this case.

*Defendants' position:*

When decedent exited the house for the last time, he still held the metal chain in his hand and began moving south, away from the officers, in direct defiance of their instructions to him to put the chain down and get on the ground. Deputy Jonathan Campos testified that when decedent exited the house, he took off running away from deputies and towards an opening in the fence:

> Q:    When Anthony came outside, did he remain standing in front of the house or did he move in some other direction after exiting?

1
2
3
4

> A:    He stayed there for a matter of maybe ten seconds kind of looked at all of us, you know, one at a time.  And he saw, I believe, an opening to his right and he just took off running toward his right, which is like an open little area on the front south end of his front yard.

5
6

(Campos Depo., p. 56:14-22.) These actions constitute flight, resisting arrest and a violation of Penal Code § 148.

7
8
9
10
11
12
13
14
15
16

"[A] suspect who ignores an officer's order to stop and walks away can 'reasonably' be considered to flee, even where the suspect does not run." *United States v. Stittiams*, 417 Fed.Appx. 530, 535 (6th Cir. 2011); see also *United States v. Davis*, 331 Fed.Appx. 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee, even though he did not run, because he "pick[ed] up the pace" and ignored police commands); *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017) ("So even though Thomas's actions may not look like flight in the ordinary sense of the word, they constitute 'flight' under the law".) The law does not require that an officer simply "shrug his shoulders and allow the suspected criminal to walk away." *United States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976).

17
18
19
20
21
22
23
24
25
26
27
28

The Comment for JI 9.25 in the Manual states: "In assessing a claim of excessive force, the jury should consider the three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23 F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39 F.4th 591, 599 (9th Cir. 2022); see also *Estate  of Aguirre*, 29 F.4th at 628 (describing second *Graham* factor as "the level of immediate threat [the individual] posed to the officer or others"). The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the

1    safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)

2    (en banc) (internal quotation marks omitted); see, e.g., *Hyde*, 23 F.4th at 870;

3    *Williamson*, 23 F.4th at 1153.

4         After decedent had disregarded the deputies' instructions and moved south

5    towards an opening in the fence, he then turned around and began to rapidly swing the

6    full measure of the chain in a circular motion above his head. Decedent was "pacing

7    back and forth," "moving back, moving forward" and then "started striking in [the

8    deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes

9    Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings

10   confirm, decedent was also threatening the officers verbally as he struck out with the

11   chain.  For example, Sergeant Corey LaFever testified that decedent stated,

12   "something to the effect of wanting to beat me up or because he told me to some

13   degree like put your guns and badges away and let's fight this, let's fight, or something

14   to that effect." (LaFever Depo, p. 26:7-13.)

15        Thus, there is sufficient factual support for all three of the *Graham* factors. The

16   statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is

17   limited to "the moments leading up to the deadly force response," not the entire

18   encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses

19   by Martinez were appropriate and consistent with current law enforcement training

20   standards in consideration of the 'totality of circumstances' presented to Martinez at

21   the moments deadly force was used." The totality of circumstances includes Anthony

22   Nunez's threats, moving in a southbound direction away from the officers, refusal to

23   follow the officers' instructions to de-escalate the situation, verbal threats, and acts of

24   physical aggression in swinging the chain in a threatening manner.

25        The totality of the circumstances also includes the fact that the defendant

26   deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime

27   involving the infliction or threatened infliction of serious physical harm."  Andrew

28   Nunez's wife, Noelia Benitez,  placed a 9-1-1 call and informed dispatch that decedent

had threatened Andrew Nunez with a metal chain, shoved him against the wall, was
probably on drugs, and that there was a firearm in the house, location unknown.
(Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she
remained on the line with dispatch until deputies arrived instead of hanging up, in case
decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene,
Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in
an argument, and Anthony choked Andrew out or choked him and grabbed a chain of
some sort and whipped it towards Andrew, and told that he was -- that he was going to
use it against him." (LaFever Depo, p. 19:18-24.)

Thus, there is ample factual evidence supporting an argument that decedent was
not following deputies' instructions, was moving southbound and away from deputies,
and then began striking towards them with a metal chain, all in an effort to avoid
arrest. The language added to this instruction came directly from the Manual, and is
well-supported by case law, and by the underlying facts of this case.    With respect to
whether there is evidence to support the language regarding the deputies' belief that
decedent posed a danger to himself, plaintiffs are incorrect in stating that there is no
evidence indicating that Mr. Nunez posed a danger to himself. In fact, decedent's rant
of more than an hour while he refused to come out of the house included his shouting
"I see you, I want you to kill me, I'll be f*cked."

Decedent also prayed repeatedly, spoke of "Jesus in heaven," and said he did
not want to "go down as a sinner." He shouted that the "world is coming to an end,"
and said "God will let me die." Decedent confirmed that the deputies had "guns and
bullets," and shouted: "I'm not going to jail," "You're not going to arrest me," "I'm not
going to go in," and "I'm not going to prison." The deputy defendants had valid
concerns that decedent was going to attempt "suicide by cop"; e.g., "acting erratically,
taunting police and goading them to shoot him instead of following police
commands." *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir.
2009).

1

**INSTRUCTION NO. 8**

2

**NEGLIGENT USE OF NONDEADLY FORCE BY LAW ENFORCEMENT**

3

**OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL**

4

**ELEMENTS**

5

**(PLAINTIFFS' PROPOSED VERSION)**

6
7
A law enforcement officer may use reasonable force to [arrest~~/detain/ [,/or]~~
~~prevent escape of/ [,/or] overcome resistance by]~~ a person when the officer has

8
reasonable cause to believe that that person has committed or is committing a crime.

9
10
However, the officer may use only that degree of force necessary to [arrest~~/detain/~~
~~[,/or] prevent escape of/ [,/or] overcome resistance by]~~ the person. ~~[Even if the officer~~

11
~~is mistaken, a~~A person being arrested ~~or detained~~ has a duty not to use force to resist

12
the ~~officer~~ deputy unless the ~~officer~~ deputy is using unreasonable force.~~].~~

13
14
[Plaintiffs] claim~~s~~ that [Defendants Jeremy Deberg and Sabrina Cervantes] ~~was~~
were negligent in using unreasonable force to [arrest~~/detain/ [,/or] prevent escape of/~~

15
~~overcome resistance by]~~ [Anthony Nuñez]. To establish this claim, [Plaintiffs] must

16
prove all of the following:

17
18
1. That [Jeremy Deberg and/or Sabrina Cervantes] used force to [arrest~~/detain/~~
~~[,/or] prevent escape of/ [,/or] overcome resistance by]~~ [Anthony Nuñez];

19
20
2. That the amount of force used by [Jeremy Deberg and/or Sabrina Cervantes]
was unreasonable;

21
3. That [Anthony Nuñez] was harmed; and

22
23
4. That [Jeremy Deberg's and/or Sabrina Cervantes]'s use of unreasonable force
was a substantial factor in causing [Anthony Nuñez]'s harm.

24
In deciding whether [Jeremy Deberg and/or Sabrina Cervantes] used

25
unreasonable force, you must consider the totality of the circumstances to determine

26
what amount of force a reasonable [sheriff's deputy] in [Jeremy Deberg's and Sabrina

27
Cervantes]'s position would have used under the same or similar circumstances.

28
"Totality of the circumstances" means all facts known to the ~~officer~~ deputy at the

1    time, including the conduct of [Jeremy Deberg, Sabrina Cervantes,] and [Anthony

2    Nuñez] leading up to the use of force. Among the factors to be considered are the

3    following:

4       a) Whether [Anthony Nuñez] reasonably appeared to pose an immediate threat

5          to the safety of [Jeremy Deberg, Sabrina Cervantes,] or others;

6       b) The seriousness of the crime at issue; [and]

7       c) Whether [Anthony Nuñez] was actively resisting [arrest/detention] or

8          attempting to avoid [arrest/detention] by flight[; and/.]

9       [d) [Jeremy Deberg's and Sabrina Cervantes]'s tactical conduct before using

10         force on [Anthony Nuñez].]

11      [An officer deputy who makes or attempts to make an arrest does not have to

12   retreat or stop because the person being arrested is resisting or threatening to resist.

13   Tactical repositioning or other de-escalation tactics are not retreat. An officer deputy

14   does not lose the right to self-defense by using objectively reasonable force to

15   [arrest/detain/ [,/or prevent escape of/[,/or] overcome resistance by] the person.] A

16   deputy does, however, have a duty to use reasonable tactical repositioning or other de-

17   escalation tactics.

18

19   <u>Source</u>: CACI 440 (2024 edition).

20

21

22

23

24

25

26

27

28

**68**

**INSTRUCTION NO. 8**

**NEGLIGENT USE OF NONDEADLY FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL ELEMENTS**

**(DEFENDANTS' PROPOSED VERSION)**

A law enforcement officer may use reasonable force to [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance by] a person when the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force necessary to [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance by] the person. [Even if the officer is mistaken, a person being arrested or detained has a duty not to use force to resist the officer or attempt to flee unless the officer is using unreasonable force.].

[Plaintiffs] claims that [Defendants Jeremy Deberg and Sabrina Cervantes] was were negligent in using unreasonable force to [arrest/detain/ [,/or] prevent escape of/ overcome resistance by] [Anthony Nuñez]. To establish this claim, [Plaintiffs] must prove all of the following:

1. That [Jeremy Deberg and/or Sabrina Cervantes] used force to [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance by] [Anthony Nuñez];

2. That the amount of force used by [Jeremy Deberg and/or Sabrina Cervantes] was unreasonable;

3. That [Anthony Nuñez] was harmed; and

4. That [Jeremy Deberg's and/or Sabrina Cervantes]'s use of unreasonable force was a substantial factor in causing [Anthony Nuñez]'s harm.

In deciding whether [Jeremy Deberg and/or Sabrina Cervantes] used unreasonable force, you must consider the totality of the circumstances to determine what amount of force a reasonable [sheriff's deputy] in [Jeremy Deberg's and Sabrina Cervantes]'s position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer deputy at the

1    time, including the conduct of [Jeremy Deberg, Sabrina Cervantes,] and [Anthony

2    Nuñez] leading up to the use of force. Among the factors to be considered are the

3    following:

4          a) Whether [Anthony Nuñez] reasonably appeared to pose an immediate threat

5          to the safety of [Jeremy Deberg, Sabrina Cervantes,] or others;

6          b) The seriousness of the crime at issue; [and]

7          c) Whether [Anthony Nuñez] was actively resisting [arrest/detention] or

8          attempting to avoid [arrest/detention] by flight[; and/.]

9          [d) [Jeremy Deberg's and Sabrina Cervantes]'s tactical conduct before using

10         force on [Anthony Nuñez].]

11         [An officer deputy who makes or attempts to make an arrest does not have to

12   retreat or stop because the person being arrested is resisting or threatening to resist.

13   Tactical repositioning or other de-escalation tactics are not retreat. An officer deputy

14   does not lose the right to self-defense by using objectively reasonable force to [arrest,

15   /detain/ [,/or] prevent escape of /[,/or] overcome resistance by] the person.] A deputy

16   does, however, have a duty to use reasonable tactical repositioning or other de-

17   escalation tactics.

18

19   Source: CACI 440 (2024 edition).

20

21

22

23

24

25

26

27

28

**70**

**INSTRUCTION NO. 8**

**NEGLIGENT USE OF NONDEADLY FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL ELEMENTS**

**(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties' dispute concerns Defendants' proposed inclusion of three references to whether Mr. Nuñez attempted to "escape" (two in the first paragraph, and another in the first factor following the second paragraph).

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to Defendants' proposed references to "escape" or attempts to "flee" for the same reasons as addressed above, in the context of the disputed "Fourth Amendment—Unreasonable Seizure of Person—Excessive Force," "Battery by Peace

Officer (Deadly Force)—Essential Elements," "Battery by Peace Officer (Nondeadly
Force)—Essential Elements," and "Negligent Use of Deadly Force by Peace
Officer—Essential Factual Elements" instructions. As explained there, there is no
evidence Mr. Nuñez was attempting to "escape" or "flee" at the time the challenged
force was used, as Defendants' own police practices expert has acknowledged, and
there is therefore no basis for including these proposed portions of this instruction
either. With no basis for inclusion of these proposed portions of the instruction, they
would waste time and risk needlessly confusing the jury about the issues to be decided
in this case.

*Defendants' position:*

When decedent exited the house for the last time, he still held the metal chain in
his hand and began moving south, away from the officers, in direct defiance of their
instructions to him to put the chain down and get on the ground. Deputy Jonathan
Campos testified that when decedent exited the house, he took off running away from
deputies and towards an opening in the fence:

> Q:    When Anthony came outside, did he remain standing
> in front of the house or did he move in some other direction
> after exiting?
>
> A:    He stayed there for a matter of maybe ten seconds
> kind of looked at all of us, you know, one at a time.  And he
> saw, I believe, an opening to his right and he just took off
> running toward his right, which is like an open little area on
> the front south end of his front yard.

(Campos Depo., p. 56:14-22.) These actions constitute flight, resisting arrest and a
violation of Penal Code § 148.

"[A] suspect who ignores an officer's order to stop and walks away can
'reasonably' be considered to flee, even where the suspect does not run." *United States
v. Stittiams*, 417 Fed.Appx. 530, 535 (6th Cir. 2011); see also *United States v. Davis*,

331 Fed.Appx. 356, 360 (6th Cir. 2009) (concluding that a suspect attempted to flee, even though he did not run, because he "pick[ed] up the pace" and ignored police commands); *Thomas v. City of Eastpointe*, 715 F. App'x 458, 461 (6th Cir. 2017) ("So even though Thomas's actions may not look like flight in the ordinary sense of the word, they constitute 'flight' under the law".) The law does not require that an officer simply "shrug his shoulders and allow the suspected criminal to walk away." *United States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976).

The Comment for JI 9.25 in the Manual states: "In assessing a claim of excessive force, the jury should consider the three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23 F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39 F.4th 591, 599 (9th Cir. 2022); see also *Estate of Aguirre*, 29 F.4th at 628 (describing second *Graham* factor as "the level of immediate threat [the individual] posed to the officer or others"). The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (internal quotation marks omitted); see, e.g., *Hyde*, 23 F.4th at 870; *Williamson*, 23 F.4th at 1153.

After decedent had disregarded the deputies' instructions and moved south towards an opening in the fence, he then turned around and began to rapidly swing the full measure of the chain in a circular motion above his head. Decedent was "pacing back and forth," "moving back, moving forward" and then "started striking in [the deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings

1   confirm, decedent was also threatening the officers verbally as he struck out with the

2   chain.  For example, Sergeant Corey LaFever testified that decedent stated,

3   "something to the effect of wanting to beat me up or because he told me to some

4   degree like put your guns and badges away and let's fight this, let's fight, or something

5   to that effect." (LaFever Depo, p. 26:7-13.)

6       Thus, there is sufficient factual support for all three of the *Graham* factors. The

7   statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is

8   limited to "the moments leading up to the deadly force response," not the entire

9   encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses

10  by Martinez were appropriate and consistent with current law enforcement training

11  standards in consideration of the 'totality of circumstances' presented to Martinez at

12  the moments deadly force was used." The totality of circumstances includes Anthony

13  Nunez's threats, moving in a southbound direction away from the officers, refusal to

14  follow the officers' instructions to de-escalate the situation, verbal threats, and acts of

15  physical aggression in swinging the chain in a threatening manner.

16      The totality of the circumstances also includes the fact that the defendant

17  deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime

18  involving the infliction or threatened infliction of serious physical harm."  Andrew

19  Nunez's wife, Noelia Benitez,  placed a 9-1-1 call and informed dispatch that decedent

20  had threatened Andrew Nunez with a metal chain, shoved him against the wall, was

21  probably on drugs, and that there was a firearm in the house, location unknown.

22  (Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she

23  remained on the line with dispatch until deputies arrived instead of hanging up, in case

24  decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene,

25  Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in

26  an argument, and Anthony choked Andrew out or choked him and grabbed a chain of

27  some sort and whipped it towards Andrew, and told that he was -- that he was going to

28  use it against him." (LaFever Depo, p. 19:18-24.)

In summary, there is ample factual evidence supporting an argument that decedent was not following deputies' instructions, was moving southbound and away from deputies, and then began striking towards them with a metal chain, all in an effort to avoid arrest. The language added to this instruction came directly from the Manual, and is well-supported by case law, and by the underlying facts of this case.

**INSTRUCTION NO. 9**

**COMPARATIVE FAULT OF PLAINTIFF**

**(DEFENDANTS' PROPOSED INSTRUCTION)**

[Defendants] claims that [Andrew Nunez]'s own negligence contributed to [the Decedent Anthony Nunez's] harm. To succeed on this claim, [Defendants] must prove both of the following:

      1.     That [Andrew Nunez] was negligent; and

      2.     That [Andrew Nunez]'s negligence was a substantial factor in causing [the Decedent's harm and/or Andrew Nunez's] alleged harm.

If [Defendants] proves the above, [Plaintiffs]'s damages are reduced by your determination of the percentage of [Andrew Nunez]'s responsibility. I will calculate the actual reduction.

<u>Source</u>: CACI 405 (2024 edition).

## INSTRUCTION NO. 9

## COMPARATIVE FAULT OF PLAINTIFF

## (BASIS FOR DISPUTE)

*Joint summary of disputed issue(s):*

The parties dispute whether any part of this instruction should be given.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object that there is no indication Plaintiff Andrew Nuñez was in any way negligent, and that it is therefore inappropriate to give any instruction regarding his alleged negligence. Most importantly here, Defendants have not identified any legal duty Andrew Nuñez had toward Anthony Nuñez or toward any defendant as it relates to the incident underlying this case. The existence of a legal duty is a necessary element of any claim for negligence, *see Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021) ("To state a cause of action for negligence, a [party] must establish the

1  [adverse party] owed a legal duty of care."); *Ladd v. County of San Mateo*, 12 Cal. 4th

2  913, 917 (1996), and is a question of law the court must decide before tasking the jury

3  with related factual determinations. *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986)

4  ("The question of 'duty' is decided by the court, not the jury.") (quoting 4 Witkin,

5  Summary of Cal. Law (8th ed. 1974) Torts, § 493, p. 2756).

6      Unless an applicable legal duty by Andrew Nuñez is identified, it is improper

7  for the jury to be asked to consider whether he was negligent. Plaintiffs anticipate that

8  no legal duty can be identified here. Whether a legal duty exists generally turns on

9  whether the harm resulting from the allegedly negligent conduct was foreseeable. *See*

10 *id.* ("[A] court's task—in determining "duty"—is . . . to evaluate . . . whether the

11 category of negligent conduct at issue is sufficiently likely to result in the kind of

12 harm experienced that liability may appropriately be imposed on the negligent

13 party."). Here, as Plaintiffs understand it, Defendants' theory of Andrew Nuñez's

14 alleged negligence is that: (1) Andrew Nuñez voiced his approval of his wife, Noelia

15 Benitez, calling 911 due to Anthony Nuñez's conduct at home; (2) Andrew Nuñez

16 believed Anthony Nuñez was scared of police officers as a result of a prior, unrelated

17 incident; (3) Andrew Nuñez failed to advise the deputies of this suspected fear when

18 the deputies came to the Nuñez home; (4) Anthony Nuñez was scared of the deputies

19 when they were at the home (which influenced his conduct in some way Defendants

20 have not identified).

21      This theory of negligence is extremely attenuated to the point that it clearly

22 cannot support the existence of a legal duty based on foreseeability. It is not at all

23 apparent, even assuming Andrew Nuñez correctly believed Anthony Nuñez was afraid

24 of police, what response the arrival of the deputies would foreseeably cause in

25 Anthony. If anything, logically, fear of police would be more likely to cause an

26 individual to *comply* with deputies' orders or requests—out of fear of the

27 consequences of noncompliance—than to act in a manner that could risk the

28 individual being arrested or subjected to use of force. Further, it is wholly unclear

how, if Andrew Nuñez had told the deputies he believed Anthony Nuñez was afraid of police, that would have prompted the deputies to do anything differently that would have reduced the harm they ultimately inflicted on Anthony. Accordingly, even assuming that there was a particular foreseeable response by Anthony Nuñez to the arrival of the deputies, any alleged omission by Andrew Nuñez is far too attenuated from the deputies' ultimate conduct to support the existence of any duty.

Further, CACI's directions for use of the model instruction state, "This instruction should not be given absent substantial evidence that plaintiff was negligent." (Citing *Drust v. Drust*, 113 Cal. App. 3d 1, 6 (1980).) Here, for the reasons noted above, there is no evidence Andrew Nuñez was negligent, let alone substantial evidence. Andrew Nuñez was not required to identify for the deputies each and every detail he knew or believed about Anthony Nuñez that could conceivably cause Anthony to respond in a negative or positive way. He engaged in no negligence, and the proposed instruction should not be given.

*Defendants' position:*

Andrew Nunez testified in deposition that he used to threaten Anthony Nunez that Andrew would call the police, and even pretended to call the police, in order to try to control Anthony's behavior. In other words, he weaponized law enforcement and aggravated Anthony's fear of police, which was a contributing factor to how events unfolded on the day of the incident. He also failed to advise the deputy defendants of decedent's fear of law enforcement. California law requires "joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses." *DaFonte v. Up-Right, Inc.,* 2 Cal. 4th 593, 600 (1992). Andrew Nunez should therefore be included in the universe of tortfeasors whose liability is determined by the jury.

# INSTRUCTION NO. 10

# APPORTIONMENT OF RESPONSIBILITY

# (PLAINTIFFS' PROPOSED VERSION)

[[*Name of defendant*] claims that the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [also] contributed to [*name of plaintiff*]'s harm. To succeed on this claim, [*name of defendant*] must prove both of the following:

1. That [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [was/were] [negligent/at fault]; and

2. That the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] was a substantial factor in causing [name of plaintiff]'s harm.]

If you find that the [negligence/fault] of more than one person, including [Michael Martinez, Jeremy Deberg, Sabrina Cervantes,] [and] [Anthony Nuñez] [and] [*name(s) or description(s) of nonparty tortfeasor(s)*]], was a substantial factor in causing [Anthony Nuñez]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of [Plaintiffs]'s total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

["Person" can mean an individual or a business entity.]

Source: CACI 406 (2024 edition).

**INSTRUCTION NO. 10**

**APPORTIONMENT OF RESPONSIBILITY**

**(DEFENDANTS' PROPOSED VERSION)**

[[*Name of defendant*] claims that the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [also] contributed to [*name of plaintiff*]'s harm. To succeed on this claim, [*name of defendant*] must prove both of the following:

1. That [*insert name(s) or description(s) of nonparty tortfeasor(s)*] [was/were] [negligent/at fault]; and

2. That the [negligence/fault] of [*insert name(s) or description(s) of nonparty tortfeasor(s)*] was a substantial factor in causing [name of plaintiff]'s harm.]

If you find that the [negligence/fault] of more than one person, including [Michael Martinez, Jeremy Deberg, Sabrina Cervantes,] Andrew Nunez [and] [Anthony Nuñez] [and] [*name(s) or description(s) of nonparty tortfeasor(s)*]], was a substantial factor in causing [Anthony Nuñez]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of [Plaintiffs]'s total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

["Person" can mean an individual or a business entity.]

<u>Source</u>: CACI 406 (2024 edition).

# INSTRUCTION NO. 10

# APPORTIONMENT OF RESPONSIBILITY

# (BASIS FOR DISPUTE)

*Joint summary of disputed issue(s):*

The parties dispute whether Andrew Nuñez should be listed in this instruction.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to the inclusion of Andrew Nuñez in this proposed instruction for the same reasons as addressed above, in the context of the disputed "Comparative Fault of Plaintiff" instruction. Plaintiff Andrew Nuñez had no legal duty as relates to the underlying incident in this case, and there is not substantial evidence he was negligent as required to give any instruction regarding him being potentially negligent.

_Defendants' position:_

Andrew Nunez testified in deposition that he used to threaten Anthony Nunez that Andrew would call the police, and even pretended to call the police, in order to try to control Anthony's behavior. In other words, he weaponized law enforcement and aggravated Anthony's fear of police, which was a contributing factor to how events unfolded on the day of the incident. He also failed to advise the deputy defendants of decedent's fear of law enforcement. Andrew Nunez should therefore be included in the universe of tortfeasors whose liability for his damages is determined by the jury.  California law requires "joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses." _DaFonte v. Up-Right, Inc.,_ 2 Cal. 4th 593, 600 (1992).

# INSTRUCTION NO. 11

# BANE ACT

# (PLAINTIFFS' PROPOSED VERSION)

Plaintiffs claim that Michael Martinez, Jeremy Deberg, and Sabrina Cervantes intentionally interfered with Anthony Nuñez's constitutional right to be free from excessive force under state law by using excessive force against him.

To establish this claim, Plaintiffs must prove:

1) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force;

2) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes intended to violate Anthony Nuñez's constitutional rights, demonstrated by a reckless disregard for Anthony Nuñez's constitutional right to be free from excessive force; and

3) That the conduct of Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes was a substantial factor in causing harm, injury, and/or death to Anthony Nuñez.

Source: *Chinaryan v. City of Los Angeles*, — F.4th —, 2024 WL 3803301, at *14-15 (9th Cir. 2024); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801-802 (2017)).

**INSTRUCTION NO. 11**

**BANE ACT**

**(DEFENDANTS' PROPOSED VERSION)**

Plaintiffs claim that Michael Martinez, Jeremy Deberg, and Sabrina Cervantes intentionally interfered with Anthony Nuñez's constitutional rights under state law by using threats, intimidation, coercion or violence.

To establish this claim, Plaintiffs must prove:

1) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted violently or coercively against Anthony Nunez to prevent him from exercising some constitutional right or retaliated against him for having exercised some constitutional right;

2) That Anthony Nunez was harmed; and

3) That the conduct of Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes  was a substantial factor in causing the harm.

Source: Cal. Code §52.1; *Bender v. County of LA*, 217 Cal.App.4th 968 (2013).

**85**

# INSTRUCTION NO. 11

## BANE ACT

## (BASIS FOR DISPUTE)

_Joint summary of disputed issue(s):_

The parties dispute the bulk of this instruction. The parties do not dispute the requirement of "intentional[ ] interfere[nce]" with Anthony Nuñez's constitutional rights, but dispute the required framing of those rights. The parties do not dispute the requirement in the third factor that the defendant deputies' conduct was a substantial factor in causing the alleged harm to Anthony Nuñez.

_Plaintiffs' position:_

Initially, Plaintiffs object to Defendants' proposed instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [_See id._ (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); _id._ at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

"The California Bane Act creates a cause of action against a person if that person "interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or

laws of the United States." *Sandoval v. County of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018) (quoting Cal. Civ. Code § 52.1). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)). "An officer acts with the requisite specific intent if 'the right at issue is clearly delineated and plainly applicable under the circumstances of the case,' and the officer 'commits the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right.'" *Chinaryan v. City of Los Angeles*, — F.4th —, 2024 WL 3803301, at *14 (9th Cir. 2024) (quoting *Sandoval*, 912 F.3d at 520) (alterations adopted). "Specific intent" may be shown by demonstrating that the officer "acted in 'reckless disregard' of the constitutional right." *Id.*; *see Reese*, 888 F.3d at 1045 ("[I]t is not necessary for the defendants to have been 'thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'") (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)) (emphasis omitted).

Plaintiffs' proposed instruction accurately reflects the Ninth Circuit's distillation of the Bane Act's requirements. As the Ninth Circuit has explained, the Bane Act requires the same showing as a federal § 1983 claim, with the additional requirement of showing "specific intent." Thus, to find the defendant deputies liable under the Bane Act based on a theory of excessive force, the jury must find that (1) the deputies violated Anthony Nuñez's constitutional right to be free from excessive force and (2) the deputies violated this right intentionally. And as explained, whether the deputies intended to violate Anthony Nuñez's right may be shown by demonstrating that the deputies acted with "reckless disregard" for that right. Plaintiffs' proposed instruction accurately captures these requirements and is clear.

Defendants' proposed instruction uses the statutory language, which is confusingly written and is not likely to be readily understood by a lay juror, resulting in confusion about what is required to prove Plaintiffs' Bane Act claim. Plaintiffs' proposed version is clearer and is less likely to needlessly confuse the jury.

Plaintiffs note that other district judges in this Court have given substantially similar instructions for Bane Act claims in other cases. For example, in *V.R., et al. v. County of San Bernardino, et al.*, No. 5:19-cv-1023-JGB-SP (C.D. Cal.), District Judge Jesus G. Bernal provided the following instruction in the spring of 2024:

> Plaintiffs claim that [Deputy 1] and/or [Deputy 2] intentionally interfered with [Decedent]'s constitutional right to be free from excessive force under state law by using excessive force against him in violation of California Civil Code § 52.1.
>
> To establish this claim, Plaintiffs must prove that [Deputy 1] and/or [Deputy 2] intended to violate [Decedent]'s constitutional rights, which can be shown by a reckless disregard for [Decedent]'s constitutional rights, and that the violation resulted in harm, injury, or death to [Decedent].

(No. 5:19-cv-1023-JGB-SP, Dkt. 164 at 30.) That a substantially similar instruction was given in another case just a few months ago—in the same courthouse in which this case will be tried—further confirms that Plaintiffs' proposed instruction here is a fair and accurate representation of the law governing Bane Act claims.

*Defendants' position:*

Plaintiffs' proposed instruction omits the essential elements of a Bane Act claim; e.g., a threat, intimidation, coercion or violence designed to prevent Anthony Nunez from exercising his constitutional rights, or in retaliation for exercising his constitutional rights. *Cabesuela v. Browning-Ferris Industries of California, Inc*., 68 Cal.App.4th 101, 111 (1998) ("It is clear that to state a cause of action under § 52.1 there must first be violence or intimidation by threat of violence.") *Chinaryan v. City of Los Angeles,* No. 21-56237, 2024 WL 3803301, at *14 (9th Cir. Aug. 14, 2024), does not support Plaintiffs' version of this jury instruction, which omits the key elements of a Bane Act claim. *Austin B. v. Escondido Union Sch. Dist.,* 149

1  Cal.App.4th 860, 883 (2007) ("The essence of a Bane Act claim is that the defendant,

2  by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or

3  did prevent the plaintiff from doing something he or she had the right to do under the

4  law or to force the plaintiff to do something that he or she was not required to do

5  under the law.")

6         The way in which plaintiffs have cast this instruction, it is essentially a

7  duplicate of the Section 1983 excessive force instruction. This is unnecessary, and has

8  great potential to confuse or mislead the jury by causing them to believe since these

9  similarly-phrased instructions are twice repeated, they must carry greater weight.

10 Defendants' version tracks CACI 3066, which is the tried and true instruction for Bane

11 Act claims under Civil Code § 52.1.