**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**CARRILLO LAW FIRM, LLP**
Luis A. Carrillo (SBN 70398)
Michael S. Carrillo (SBN 258878)
Dominique L. Boubion (SBN 336915)
1499 Huntington Drive, Suite 402
South Pasadena, California 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

*Attorneys for Plaintiffs*

Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Abe G. Salen [Bar No. 182366]
  *asalen@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

ROSA NUÑEZ, individually; ANTHONY NUÑEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nuñez; and, ANDREW NUÑEZ, individually,

Plaintiffs,

v.

COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,

Defendants.

Case No.: 5:22-cv-01934-SSS-SP

*Honorable Sunshine S. Sykes*
*Hon. Mag. Judge Sheri Pym*

**AMENDED DISPUTED JURY INSTRUCTIONS**

FPTC:  April 4, 2025
Trial:   April 21, 2025

**PLEASE TAKE NOTICE** that the Parties hereby submit their Amended Disputed [Proposed] Jury Instructions for the Trial of this matter.

Respectfully submitted,

DATED:  April 16, 2025        LAW OFFICES OF DALE K. GALIPO


By:    /s/ Benjamin S. Levine
       Dale K. Galipo
       Benjamin S. Levine[1]
       Attorneys for Plaintiffs


DATED:  April 16, 2025        WESIERSKI & ZUREK LLP


By _____ /s/ Abe G. Salen _____
       CHRISTOPHER P. WESIERSKI
       ABE G. SALEN
       Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CITY OF HESPERIA, MICHAEL MARTINEZ, SABRINA CERVANTES and JEREMY DEBERG

---

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

| NUMBER | TITLE | SOURCE | PAGE |
|--------|-------|--------|------|
| **Claims** | | | |
| 1. | Fourth Amendment—Unreasonable Seizure of Person—Excessive Force | 9th Cir. 9.25 | 4 |
| 2. | Fourteenth Amendment—Substantive Due Process—Interference with Parent-Child Relationship | 9th Cir. 9.32; *Wilkinson v. Torres*, 601 F.3d 546, 554 (9th Cir. 2010); *Porter v. Osborne*, 546 F.3d 1131, 1136-1137 (9th Cir. 2008); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372-72 (9th Cir. 1998 | 15 |
| 3. | Bane Act | *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 801-802 (2017)). | 20 |

**INSTRUCTION NO. 1**

**FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE FORCE**

**(PLAINTIFFS' PROPOSED VERSION)**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a sheriff's deputy uses excessive force in making a lawful arrest or in defending himself and/or others. Therefore, to establish an unreasonable seizure in this case, the Plaintiffs must prove by a preponderance of the evidence that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force against the decedent, Anthony Nuñez.

Under the Fourth Amendment, a deputy may only use such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable deputy on the scene and not with the 20/20 vision of hindsight. Although the facts known to Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes are relevant to your inquiry, Michael Martinez's, Jeremy Deberg's, and/or Sabrina Cervantes's subjective intents or motives are not relevant to your inquiry.

In determining whether Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force in this case, consider all of the circumstances known to them, including:

1.    The nature of the circumstances to which Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes were responding;

2.    In determining whether Michael Martinez used excessive force, whether Anthony Nuñez posed an immediate threat of death or serious bodily injury to to Michael Martinez or others;

3.    In determining whether Jeremy Deberg and/or Sabrina Cervantes used excessive force, whether Anthony Nuñez posed an immediate threat of harm to Jeremy Deberg, Sabrina Cervantes, or others;

4.   Whether Anthony Nuñez was actively resisting arrest or attempting to evade arrest by flight;

5.   The amount of time Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

6.   The relationship between the need for the use of force and the amount of force used;

7.   The extent of Anthony Nuñez's injury;

8.   Any effort made by Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to temper or to limit the amount of force;

9.   The severity of the security problem at issue;

10.  The availability of alternative methods to take Anthony Nuñez into custody;

11.  The number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

12.  Whether it was practical for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to give warning of the imminent use of force, and whether such warning was given;

13.  Whether it should have been apparent to Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes that Anthony Nuñez was emotionally disturbed; and

14.  Whether a reasonable deputy would have or should have accurately perceived a mistaken fact.

**INSTRUCTION NO. 1**

**FOURTH AMENDMENT— UNREASONABLE SEIZURE OF PERSON— EXCESSIVE FORCE**

**(DEFENDANTS' PROPOSED VERSION)**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a sheriff's deputy uses excessive force in making a lawful arrest or in defending himself and/or others. Therefore, to establish an unreasonable seizure in this case, the Plaintiffs must prove by a preponderance of the evidence that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force against the decedent, Anthony Nuñez.

Under the Fourth Amendment, a deputy may only use such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable deputy on the scene and not with the 20/20 vision of hindsight. Although the facts known to Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes are relevant to your inquiry, Michael Martinez's, Jeremy Deberg's, and/or Sabrina Cervantes's subjective intents or motives are not relevant to your inquiry.

In determining whether Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force in this case, consider all of the circumstances known to them, including:

1.    The nature of the circumstances to which Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes were responding;

2.    In determining whether Michael Martinez used excessive force, whether Anthony Nuñez posed an immediate threat of death or serious bodily injury to to Michael Martinez or others;

3.    In determining whether Jeremy Deberg and/or Sabrina Cervantes used excessive force, whether Anthony Nuñez posed an immediate threat of harm to Jeremy Deberg, Sabrina Cervantes, or others;

4.      Whether Anthony Nuñez was actively resisting arrest or attempting to evade arrest by flight;

5.      The amount of time Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

6.      The relationship between the need for the use of force and the amount of force used;

7.      The extent of Anthony Nuñez's injury;

8.      Any effort made by Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to temper or to limit the amount of force;

9.      The severity of the security problem at issue;

10.     The availability of alternative methods to take Anthony Nuñez into custody;

11.     The number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

12.     Whether it was practical for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to give warning of the imminent use of force, and whether such warning was given;

13.     Whether it should have been apparent to Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes that Anthony Nuñez was emotionally disturbed;

14.     Whether a reasonable deputy would have or should have accurately perceived a mistaken fact; and

15.     Whether there was probable cause for a reasonable officer to believe that Anthony Nunez had committed a crime involving the infliction or threatened infliction of serious physical harm.

## INSTRUCTION NO. 1

## FOURTH AMENDMENT— UNREASONABLE SEIZURE OF PERSON—
## EXCESSIVE FORCE
## (BASIS FOR DISPUTE)

*Joint summary of disputed issue(s):*

The parties dispute whether the fifteenth factor on Defendants' proposed list should be included in this instruction.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs further object that Defendants' proposed reference to whether a reasonable officer would have had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime involving the infliction or threatened infliction of serious physical harm" is inapplicable in the context of this case. Although not directly addressed in the Comment to the Ninth Circuit model instruction, this provision is

clearly in reference to the so-called "fleeing felon" rule identified in *Tennessee v. Garner*, 471 U.S. 1 (1985). There, the Supreme Court held:

> Where [an] officer has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon *or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm*, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12 (emphasis added). The concepts addressed in the disputed portion of Defendants' proposed instruction come directly from this portion of *Garner*: The factor regarding probable cause is taken verbatim from *Garner*. *See id.* That the instruction's reference to "a crime involving the infliction or threatened infliction of serious physical harm" pertains solely to *Garner*'s "fleeing felon" rule is made clear by the fact that the model instruction separately lists, as the first factor, "the nature of the crime or other circumstances known to the officer[s] at the time force was applied." *See* Ninth Circuit Model Instruction 9.25; *see also* Comment to Ninth Circuit Model Instruction 9.25 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989), for this factor).

There is no legitimate argument, however, that this concept applies in this case, because there is no evidence Mr. Nuñez was attempting to flee at the time any force was used. Most tellingly, Defendants' own police practices expert, Edward Flosi, wrote in his expert report—in the specific context of addressing whether Defendant Michael Martinez's use of deadly force against Mr. Nuñez was reasonable, in a section titled "Force Analysis – Deadly Force" and a subsection titled "The nature of the escape attempt"—that "[a]t the moments leading into the deadly force response, [Anthony] Nu[ñ]ez was not perceived to have been attempting escape." This is reflected in the deposition testimony of each defendant deputy, in which each claimed Mr. Nuñez was approaching him or her, and further in Defendant Jeremy Deberg's deposition testimony, in which Deberg testified as follows:

Q: Did you believe that the fleeing felon rule applied in this case at the time that Deputy Martinez fired his weapon?

A: No.

Rather, each defendant deputy has testified that he or she used force against Mr. Nuñez due to the alleged threat of harm he or she believed Mr. Nuñez posed to themselves or others.

Because this portion of Defendants' proposed instruction refers to *Garner*'s "fleeing felon" rule, which is inapplicable in this case, it should not be included. Inclusion of this portion also risks wasting time by creating an unnecessary mini-trial on whether a reasonable officer would have believed probable cause existed, as to what alleged crime(s) probable cause existed, and whether that/those alleged crime(s) qualified as "involving the infliction or threatened infliction of serious physical harm."

## *Defendants' position:*

When decedent exited the house, he still held the metal chain in his hand and refused commands to drop the chain. He began moving south, away from the officers, in direct defiance of their instructions to him to put the chain down and get on the ground. Testimony and evidence clearly indicate that while outside the house, he continued to pose a serious risk of injuring the deputies and, potentially others.

The Comment for JI 9.25 in the Manual states: "In assessing a claim of excessive force, the jury should consider the three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor*." See *Williamson v. City of Nat'l City,* 23 F.4th 1146, 1153 (2012); *Rice v. Morehouse*, 989 F.3d 1112, 1121 (2012). This instruction sets forth the three *Graham* factors, which are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries,* 39 F.4th 591, 599 (9th Cir. 2022); see also *Estate of Aguirre*, 29 F.4th at 628 (describing

second *Graham* factor as "the level of immediate threat [the individual] posed to the officer or others"). The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (internal quotation marks omitted); see, e.g., *Hyde v. City of Wilcox*, 23 F.4th 863, 870 (9th Cir. 2022); *Williamson v. City of National City*, 23 F.4th 1146, 1153 (9th Cir. 2022).

After decedent had disregarded the deputies' instructions and moved south towards an opening in the fence, he then turned around and began to rapidly swing the full measure of the chain in a circular motion above his head. Decedent was "pacing back and forth," "moving back, moving forward" and then "started striking in [the deputies'] direction . . . basically like trying to hit [them] with the chain." (Cervantes Depo., p. 59:10-22.) As the deputies testified in deposition, and belt recordings confirm, decedent was also threatening the deputies verbally as he struck out with the chain.  For example, Sergeant Corey LaFever testified that decedent stated, "something to the effect of wanting to beat me up or because he told me to some degree like put your guns and badges away and let's fight this, let's fight, or something to that effect." (LaFever Depo, p. 26:7-13.)

Thus, there is sufficient factual support for all three of the *Graham* factors. The statement plaintiffs have quoted from Mr. Flosi's report is taken out of context, and is limited to "the moments leading up to the deadly force response," not the entire encounter with decedent. Mr. Flosi actually opined that, "The deadly force responses by Martinez were appropriate and consistent with current law enforcement training standards in consideration of the 'totality of circumstances' presented to Martinez at the moments deadly force was used." The totality of circumstances includes Anthony Nunez's threats, moving in a southbound direction away from the deputies, refusal to follow the deputies' instructions to de-escalate the situation, verbal threats, and acts of

physical aggression in swinging the chain in a threatening manner near and eventually at the deputies.

The totality of the circumstances also includes the fact that the defendant deputies had "probable cause . . . to believe that [Mr. Nuñez] had committed a crime involving the infliction or threatened infliction of serious physical harm." Andrew Nunez's wife, Noelia Benitez, placed a 9-1-1 call and informed dispatch that decedent had threatened Andrew Nunez with a metal chain, shoved him against the wall, was probably on drugs, and that there was a firearm in the house, location unknown. (Benitez Depo., p. 82:1-6, 82:16-22, 90:5-17.) Ms. Benitez was so concerned that she remained on the line with dispatch until deputies arrived instead of hanging up, in case decedent again attacked Andrew Nunez. (Benitez Depo., p. 93:10-94:6.) At the scene, Andrew Nunez told Deputy LaFever that "he and his brother Anthony Nunez were in an argument, and Anthony choked Andrew out or choked him and grabbed a chain of some sort and whipped it towards Andrew, and told that he was -- that he was going to use it against him." (LaFever Depo, p. 19:18-24.)

In summary, there is ample factual evidence supporting an argument that decedent was not following deputies' instructions, was moving southbound and away from deputies, and then began striking towards them with a metal chain, all in an effort to avoid arrest. The language added to this instruction came directly from the Manual, and is well-supported by case law, and by the underlying facts of this case.

**INSTRUCTION NO. 2**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS –**

**INTERFERENCE WITH PARENT/CHILD RELATIONSHIP**

**(PLAINTIFFS' PROPOSED VERSION)**

Plaintiffs Rosa Nuñez and Anthony Nuñez, Jr. claim that Defendants Michael Martinez, Jeremy Deberg, and Sabrina Cervantes deprived them of their right under the Fourteenth Amendment to be free from unlawful state interference with their familial relationship with Rosa Nuñez's son, and Anthony Nuñez, Jr.'s father, Anthony Nuñez.

In order to prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived these Plaintiffs of their Fourteenth Amendment right to be free from unreasonable state interference with their relationship with the decedent, Plaintiffs must prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with deliberate indifference when they shot and/or used less-lethal force against Anthony Nuñez. Deliberate indifference is reflected by a conscious disregard of a risk to Anthony Nuñez's health or safety. However, if you find that it was impracticable for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to deliberate before they shot and/or used less-lethal force against Anthony Nuñez, then Plaintiff must instead prove that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with a purpose to harm Anthony Nuñez that was unrelated to a legitimate law enforcement objective.

**INSTRUCTION NO. 2**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS – INTERFERENCE WITH PARENT/CHILD RELATIONSHIP (DEFENDANTS' PROPOSED VERSION)**

Plaintiffs Rosa Nuñez and Anthony Nuñez, Jr. claim that Defendants Michael Martinez, Jeremy Deberg, and Sabrina Cervantes deprived them of their right under the Fourteenth Amendment to be free from unlawful state interference with their familial relationship with Rosa Nuñez's son, and Anthony Nuñez, Jr.'s father, Anthony Nuñez.

In order to prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes deprived these Plaintiffs of their Fourteenth Amendment right to be free from unreasonable state interference with their relationship with the decedent, Plaintiffs must prove that Defendants Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with deliberate indifference when they shot and/or used less-lethal force against Anthony Nuñez. Deliberate indifference is reflected by a conscious disregard of a risk to Anthony Nuñez's health or safety. However, if you find that it was impracticable for Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes to actually deliberate before they shot and/or used less-lethal force against Anthony Nuñez, then Plaintiff must instead prove that Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted with a purpose to harm Anthony Nuñez that was unrelated to a legitimate law enforcement objective.

**INSTRUCTION NO. 2**

**FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS –**

**INTERFERENCE WITH PARENT/CHILD RELATIONSHIP**

**(BASIS FOR DISPUTE)**

*Joint summary of disputed issue(s):*

The parties' dispute is limited to whether the word "actually" should be included in the final sentence of this instruction.

*Plaintiffs' position:*

Initially, Plaintiffs object to Defendants' proposed version of this instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [*See id.* (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); *id.* at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

Plaintiffs object to use of the word "actually" in this instruction because it is likely to confuse the jury by suggesting that the jury should consider a distinction between "deliberat[ion]" and "actual[ ] deliberat[ion]"—implying varying degrees of deliberation, only some of which are sufficient for purposes of establishing this claim. Adequate guidance on the meaning of "deliberate" as it is used in this proposed

instruction is already provided in the same sentence of the instruction, which requires the jury to determine whether "it was [ ]practicable for [the defendant deputies] to deliberate" before using force. In this context, "actual" is redundant of the plain meaning of "[ ]practicable." Although Defendants note that courts have referenced "actual" deliberation in the context of distinguishing the term "deliberation" as it is used in the Fourteenth Amendment context from how "'deliberation' . . . is used in homicide law," *see County of Sacramento v. Lewis*, 523 U.S. 833, 851 & n.11 (1998), this distinction only further highlights how "actual" is not useful for the jury. The jury will not consist of legal experts parsing the distinctions between the legal meanings of "deliberation" as it is used in different areas of the law. Although the term "actual" may be helpful to appeals courts in articulating the precise legal standards governing Fourteenth Amendment Substantive Due Process claims, it is unlikely to be helpful to a jury, and instead unnecessarily risks confusing it and would waste time.

*Defendants' position:*

Plaintiffs' challenge to the phrase "actual deliberation," which is taken directly from the language of the model instruction, would alter the standard to be applied to defendants' conduct in an unfairly prejudicial manner. The Comment for JI 9.32 in the Manual explains why the words "actually deliberate" are key to the determination of "deliberate indifference." It states: "The deliberate indifference standard applies in situations where the officers who caused the harm to the parent or child acted (or failed to act) in a situation when actual deliberation is practical.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). When officials have "time to make unhurried judgments," and "extended opportunities to do better," but unreasonably allow harm to occur, then their "protracted failure even to care" can shock the conscience, thus giving rise to a substantive due process claim. *Id*. "Actual deliberation" requires a longer period of time than "deliberation" as that term is used in homicide law. See *id*. at 851 n.11 ("By 'actual deliberation,' we do not mean

'deliberation' in the narrow, technical sense in which it has sometimes been used in traditional homicide law.").

The "actual deliberation" standard affects the deliberate indifference test by requiring a higher showing to prove a constitutional violation. As explained by the court in *McGowan v. Cnty. of Kern*, No. 115CV01365DADSKO, 2018 WL 2734970, at *6 (E.D. Cal. June 7, 2018):

> In some instances, actions done with "deliberate indifference" will be sufficiently egregious to offend due process. *Lewis*, 523 US at 849–50 (noting that deliberate indifference to the medical needs of pretrial detainees violates due process). However, the "deliberate indifference" standard "is sensibly employed only when actual deliberation is practical," and when deliberation is not practical, a higher level of culpability must be present. *Id.* at 851. Therefore, where a police officer confronts "an occasion calling for fast action" which presents "obligations that tend to tug against each other," a higher standard is needed to impose constitutional liability. *Id.* at 853–54. Because of this, the Supreme Court has held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.*

The *McGowan* court further noted that, "While *Lewis* concerned the rights of the decedent herself, see *id.* at 837, the Ninth Circuit has applied the same standard to Fourteenth Amendment due process claims brought directly by the decedent's family members. See *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (noting the claims in this lawsuit were "limited to [the plaintiffs'] Fourteenth Amendment rights as [the decedent's] parents")."

Moreover, plaintiffs raise no valid ground for objection -- the addition of a single word is not a "waste of time" and it is difficult to see how the common word "actually," would somehow confuse the jury. Because the "critical consideration [is] whether the circumstances are such that 'actual deliberation is practical,'" it would be unfairly prejudicial to the defendants to simply use the generic word "deliberate"

instead of the phrase "actually deliberate," which is the correct standard.  *Moreland v.*
*Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998).

# INSTRUCTION NO. 3

## BANE ACT

## (PLAINTIFFS' PROPOSED VERSION)

Plaintiffs claim that Michael Martinez, Jeremy Deberg, and Sabrina Cervantes intentionally interfered with Anthony Nuñez's constitutional right to be free from excessive force under state law by using excessive force against him.

To establish this claim, Plaintiffs must prove:

1) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes used excessive force;

2) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes intended to violate Anthony Nuñez's constitutional rights, demonstrated by a reckless disregard for Anthony Nuñez's constitutional right to be free from excessive force; and

3) That the conduct of Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes was a substantial factor in causing harm, injury, and/or death to Anthony Nuñez.

# INSTRUCTION NO. 3

## BANE ACT

## (DEFENDANTS' PROPOSED VERSION)

Plaintiffs claim that Michael Martinez, Jeremy Deberg, and Sabrina Cervantes intentionally interfered with Anthony Nuñez's constitutional rights under state law by using threats, intimidation, coercion or violence.

To establish this claim, Plaintiffs must prove:

1) That Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes acted violently or coercively against Anthony Nunez to prevent him from exercising some constitutional right or retaliated against him for having exercised some constitutional right;

2) That Anthony Nunez was harmed; and

3) That the conduct of Michael Martinez, Jeremy Deberg, and/or Sabrina Cervantes  was a substantial factor in causing the harm.

**INSTRUCTION NO. 3**

**BANE ACT**

**(BASIS FOR DISPUTE)**

_Joint summary of disputed issue(s):_

The parties dispute the bulk of this instruction. The parties do not dispute the requirement of "intentional[ ] interfere[nce]" with Anthony Nuñez's constitutional rights, but dispute the required framing of those rights. The parties do not dispute the requirement in the third factor that the defendant deputies' conduct was a substantial factor in causing the alleged harm to Anthony Nuñez.

_Plaintiffs' position:_

Initially, Plaintiffs object to Defendants' proposed instruction on the grounds that Defendants did not timely exchange proposed jury instructions or objections to Plaintiffs' proposed instructions as required by the Court's Civil Trial Order. [Dkt. 39 at 8.] That Order imposed an August 2, 2024, deadline to exchange proposed instructions, and an August 9, 2024, deadline to exchange objections to the proposed instructions. [_See id._ (imposing requirement to exchange proposed instructions at 5 weeks before Final Pretrial Conference ("FPTC") and requirement to exchange objections at 4 weeks before FPTC); _id._ at 4 (setting FPTC for September 6, 2024).] Although Plaintiffs provided their proposed instructions to Defendants on August 2, 2024, Defendants only provided proposed alternative and additional instructions for the first time on August 13, 2024, after the Court's deadlines had passed. By failing to comply with the Court's deadlines to exchange proposed jury instructions and objections, Defendants waived their right to challenge Plaintiffs' proposed instructions or to propose their own.

"The California Bane Act creates a cause of action against a person if that person "interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or

1    laws of the United States." *Sandoval v. County of Sonoma*, 912 F.3d 509, 519 (9th Cir.

2    2018) (quoting Cal. Civ. Code § 52.1). "The elements of a Bane Act claim are

3    essentially identical to the elements of a § 1983 claim, with the added requirement that

4    the government official had a 'specific intent to violate' a constitutional right."

5    *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. County of*

6    *Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)). "An officer acts with the requisite

7    specific intent if 'the right at issue is clearly delineated and plainly applicable under

8    the circumstances of the case,' and the officer 'commits the act in question with the

9    particular purpose of depriving the citizen victim of his enjoyment of the interests

10    protected by that right.'" *Chinaryan v. City of Los Angeles*, — F.4th —, 2024 WL

11    3803301, at *14 (9th Cir. 2024) (quoting *Sandoval*, 912 F.3d at 520) (alterations

12    adopted). "Specific intent" may be shown by demonstrating that the officer "acted in

13    'reckless disregard' of the constitutional right." *Id.*; *see Reese*, 888 F.3d at 1045 ("[I]t

14    is not necessary for the defendants to have been 'thinking in constitutional or legal

15    terms at the time of the incidents, because a reckless disregard for a person's

16    constitutional rights is evidence of a specific intent to deprive that person of those

17    rights.'") (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)) (emphasis

18    omitted).

19    　　　　Plaintiffs' proposed instruction accurately reflects the Ninth Circuit's

20    distillation of the Bane Act's requirements. As the Ninth Circuit has explained, the

21    Bane Act requires the same showing as a federal § 1983 claim, with the additional

22    requirement of showing "specific intent." Thus, to find the defendant deputies liable

23    under the Bane Act based on a theory of excessive force, the jury must find that

24    (1) the deputies violated Anthony Nuñez's constitutional right to be free from

25    excessive force and (2) the deputies violated this right intentionally. And as explained,

26    whether the deputies intended to violate Anthony Nuñez's right may be shown by

27    demonstrating that the deputies acted with "reckless disregard" for that right.

28    Plaintiffs' proposed instruction accurately captures these requirements and is clear.

Defendants' proposed instruction uses the statutory language, which is confusingly written and is not likely to be readily understood by a lay juror, resulting in confusion about what is required to prove Plaintiffs' Bane Act claim. Plaintiffs' proposed version is clearer and is less likely to needlessly confuse the jury.

Plaintiffs note that other district judges in this Court have given substantially similar instructions for Bane Act claims in other cases. For example, in *V.R., et al. v. County of San Bernardino, et al.*, No. 5:19-cv-1023-JGB-SP (C.D. Cal.), District Judge Jesus G. Bernal provided the following instruction in the spring of 2024:

> Plaintiffs claim that [Deputy 1] and/or [Deputy 2] intentionally interfered with [Decedent]'s constitutional right to be free from excessive force under state law by using excessive force against him in violation of California Civil Code § 52.1.
> To establish this claim, Plaintiffs must prove that [Deputy 1] and/or [Deputy 2] intended to violate [Decedent]'s constitutional rights, which can be shown by a reckless disregard for [Decedent]'s constitutional rights, and that the violation resulted in harm, injury, or death to [Decedent].

(No. 5:19-cv-1023-JGB-SP, Dkt. 164 at 30.) That a substantially similar instruction was given in another case just a few months ago—in the same courthouse in which this case will be tried—further confirms that Plaintiffs' proposed instruction here is a fair and accurate representation of the law governing Bane Act claims.

*Defendants' position:*

Plaintiffs' proposed instruction omits the essential elements of a Bane Act claim; e.g., a threat, intimidation, coercion or violence designed to prevent Anthony Nunez from exercising his constitutional rights, or in retaliation for exercising his constitutional rights. *Cabesuela v. Browning-Ferris Industries of California, Inc*., 68 Cal.App.4th 101, 111 (1998) ("It is clear that to state a cause of action under § 52.1 there must first be violence or intimidation by threat of violence.") *Chinaryan v. City of Los Angeles,* No. 21-56237, 2024 WL 3803301, at *14 (9th Cir. Aug. 14, 2024), does not support Plaintiffs' version of this jury instruction, which omits the key elements of a Bane Act claim. *Austin B. v. Escondido Union Sch. Dist.,* 149

Cal.App.4th 860, 883 (2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.")

The way in which plaintiffs have cast this instruction, it is essentially a duplicate of the Section 1983 excessive force instruction. This is unnecessary, and has great potential to confuse or mislead the jury by causing them to believe since these similarly-phrased instructions are twice repeated, they must carry greater weight. Defendants' version tracks CACI 3066, which is the tried and true instruction for Bane Act claims under Civil Code § 52.1.