# Exhibit 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE

ROSA NUÑEZ, et al.,              )
                                 )
            Plaintiffs,          )
                                 )
    v.                           )    Case No.
                                 )    ED CV 22-1934 SSS (SPx)
COUNTY OF SAN BERNARDINO, et al.,)
                                 )
            Defendants.          )
_____)

REPORTER'S PARTIAL TRANSCRIPT OF TRIAL PROCEEDINGS
REDIRECT EXAMINATION OF MICHAEL MARTINEZ
TUESDAY, APRIL 22, 2025
2:23 PM
RIVERSIDE, CALIFORNIA

_____

**MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
(213) 894-2305

UNITED STATES DISTRICT COURT

```
               1   would have -- no matter who it was, you would have shot and
               2   killed them?
               3           MR. WESIERSKI:  Well, vague and ambiguous.  Overly
               4   broad.  Calls for speculation.
    02:24PM    5           THE COURT:  Sustain the objection.
               6      Q.   (BY MR. GALIPO:)  Let's talk about the brother,
               7   Andrew.
               8           I think you already told us you saw no physical
               9   injury on him; correct?
    02:24PM   10      A.   He was -- through the screen, but I couldn't
              11   visually see the -- his whole body.
              12      Q.   Did he tell you he was injured?
              13      A.   No, sir.
              14      Q.   Did he tell you he needed medical attention?
    02:25PM   15      A.   No, sir.  I believe I just asked him if he was okay.
              16      Q.   Did he tell you -- and he said he was, didn't he?
              17      A.   That's correct, sir.
              18      Q.   Did he tell you he wanted you to arrest his brother?
              19      A.   No, sir.
    02:25PM   20      Q.   Did he tell you he wanted to press charges for being
              21   pushed?
              22      A.   No, sir.
              23      Q.   And that's the only information you had, that there
              24   was a push -- correct? -- regarding contact between the two?
    02:25PM   25      A.   Yes, sir.
```

```
 1              Why don't you separate it out, please?
 2              MR. GALIPO:  Sure.
 3        Q.    (BY MR. GALIPO:)  You said you formed the impression
 4   he was under the influence; is that right?
 5        A.    Yes, sir.
 6        Q.    Did you ask him any questions about that?
 7        A.    No, sir.
 8        Q.    You said earlier that you considered that he might
 9   be having a mental health crisis.  Do you recall that?
10        A.    It was possible, yes.
11        Q.    Did you ask him any questions about that?
12        A.    No, sir.
13        Q.    Counsel asked you some questions about guns.  I
14   think you said you didn't know until after this was all done
15   that there was no gun in the home.  Is that what you said?
16        A.    Yes, sir.
17        Q.    But let's be clear now.  You never saw any gun on
18   Anthony and you didn't shoot him because you thought there was
19   a possible gun in the house, did you?
20        A.    No, sir.
21        Q.    In your mind, does the fact that there was mention
22   of a possible gun in the house justify the shooting?
23        A.    No, sir.
24        Q.    In your mind, do you think it's relevant to the
25   shooting?
```

02:28PM (line 5)
02:28PM (line 10)
02:29PM (line 15)
02:29PM (line 20)
02:29PM (line 25)

**UNITED STATES DISTRICT COURT**

```
 1      A.   I don't recall talking about the incident with
 2 anybody, sir.
 3      Q.   Do you recall all the officers being in the same
 4 conference room when you got back to the station?
 5      A.   I don't recall if they put us all back together in
 6 the same room.
 7      Q.   Do you recall being in the -- in a conference room
 8 with some of them?
 9      A.   To my recollection, sir, I would have to say I don't
10 recall who was in that room specifically.
11      Q.   You were asked to draw the line where he went to
12 from the front door to the dirt area.  Do you recall that?
13      A.   Yes, sir.
14      Q.   And then you made a circle; right?
15      A.   Yes, sir.
16      Q.   And he basically came back the same way he went on
17 that same approximate line, didn't he?
18      A.   Yes, sir.
19      Q.   Because to go to the dirt area, he had to cross by
20 the front of the Charger; correct?
21      A.   That's correct, sir.
22      Q.   And to come back towards the front door of the
23 house, he had to cross the front of the Charger; correct?
24      A.   That's correct, sir.
25      Q.   And when he ran back to the front of the house, to
```

**UNITED STATES DISTRICT COURT**

|    |    |    |
|----|----|----|
| 1  |    | the front of that Charger, he was not at that point running |
| 2  |    | directly at any officer. Would you agree? |
| 3  | A. | Yes, sir. |
| 4  | Q. | Do you think it would have been appropriate to shoot |
| 5  |    | him as he's running towards the front of the Charger? |
| 6  | A. | No, sir. |
| 7  | Q. | In fact, according to you, he was walking with a |
| 8  |    | purpose, not running; correct? |
| 9  | A. | Yes, sir. |
| 10 | Q. | And then you were shown pictures of the blood by the |
| 11 |    | red car. Remember that? |
| 12 | A. | Yes, sir. |
| 13 | Q. | And counsel asked you, well, is that where he was |
| 14 |    | when you shot him or is that where he ended up falling to the |
| 15 |    | ground? And you said that's where he fell to the ground. |
| 16 |    | Remember that? |
| 17 | A. | Yes, sir. |
| 18 | Q. | And you recall this morning when you testified and |
| 19 |    | explained that, after he was shot, even after the second shot, |
| 20 |    | he took a step and then, after he was shot, he took two steps |
| 21 |    | forward and fell forward? Do you recall that testimony? |
| 22 | A. | Yes, sir. |
| 23 | Q. | So obviously, if he took two steps forward and then |
| 24 |    | fell forward and left the blood, he obviously wasn't where the |
| 25 |    | blood was when he was shot, he was farther back. Would you |

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
|          | 1  | agree?                                                                   |
|          | 2  | A.   Can you repeat that, sir?                                           |
|          | 3  | Q.   I'll try.                                                           |
|          | 4  | Obviously, if the blood is where we see it and                           |
| 02:38PM  | 5  | that's where he ended up on the ground and after the last shot,          |
|          | 6  | he took a couple of steps forward and then fell forward, where           |
|          | 7  | we see the blood would not be where he was at the time of the            |
|          | 8  | shots.  We would have to back up the body and back up a couple           |
|          | 9  | of steps to see where he was at the time of the last shot;               |
| 02:39PM  | 10 | true?                                                                    |
|          | 11 | A.   Depending how long your steps were, sir.                            |
|          | 12 | Q.   Well, according to you, after he cleared the car,                   |
|          | 13 | you think he went 2 feet before you shot him; right?                     |
|          | 14 | A.   Yes, sir.                                                           |
| 02:39PM  | 15 | Q.   And you said it might have been just one step.                      |
|          | 16 | Remember that?                                                           |
|          | 17 | A.   Yes, sir.                                                           |
|          | 18 | Q.   Let me ask you this.  Do you think it would have                    |
|          | 19 | been appropriate to shoot him as he's walking along the front            |
| 02:39PM  | 20 | of the car with his right side to you?                                   |
|          | 21 | A.   No, sir.                                                            |
|          | 22 | Q.   And isn't that when Deputy Cervantes fired her bean                 |
|          | 23 | bag at him?                                                              |
|          | 24 | A.   I believe it was somewhere in that vicinity.                        |
| 02:39PM  | 25 | Q.   Somewhere in that vicinity; right?                                  |

**UNITED STATES DISTRICT COURT**

|   |   |   |
|---|---|---|
| 1 | Q. | In between the less-lethal shot and your shots? |
| 2 | A. | I don't believe at that time I said get on the |
| 3 | ground at that point. | |

02:49PM

4  Q.  Isn't it true, sir, that what you hear on the audio
5  is Deputy Cervantes saying "less lethal," you hear her
6  less-lethal round, and almost at the same time you hear your
7  shots?
8  A.  Yes, sir.
9         MR. GALIPO:  Thank you.  We can take our break,
10 Your Honor.
11        THE COURT:  Are you done with the witness, or you're
12 just ready -- or are you just --
13        MR. GALIPO:  I might just have a few -- I'm almost
14 done.
15        THE COURT:  Okay.
16        MR. GALIPO:  Actually, I think this is a good time
17 to finish.  So I will conclude.
18        THE COURT:  Okay.  So then when we return, it will
19 be defendant's opportunity to reexamine.
20        We'll go ahead and take our break, ladies and
21 gentlemen of the jury.
22        I'll remind you, please do not discuss the case,
23 form any opinions, begin any type of deliberations, do any type
24 of research.  And we'll come back here at just about -- just
25 3:05.  Okay?

**UNITED STATES DISTRICT COURT**

|         |    |                                                                  |
|---------|----|------------------------------------------------------------------|
|         | 1  | THE COURT:  Yes.                                                 |
|         | 2  | MR. WESIERSKI:  And there is an objection,                       |
|         | 3  | Your Honor, just for the record.  I think I said that, just to   |
|         | 4  | be clear.                                                        |
| 02:53PM | 5  | MR. GALIPO:  Okay.  Thank you.                                   |
|         | 6  | THE COURT:  Okay.  We'll be back at 3:05.                        |
|         | 7  | THE COURTROOM DEPUTY:  Court stands in recess.                   |
|         | 8  | (Break taken.)                                                   |
|         | 9  | (In the presence of the jury:)                                   |
| 03:10PM | 10 | THE COURT:  Thank you.  You can be seated.                       |
|         | 11 | MR. GALIPO:  Your Honor, I -- I just had a few                   |
|         | 12 | follow-up.  I've consulted with counsel.  He's not going to      |
|         | 13 | have an objection.  I spoke too soon without looking at my       |
|         | 14 | notes carefully.                                                 |
| 03:10PM | 15 | THE COURT:  Okay.  Go ahead.                                     |
|         | 16 | Q.   (BY MR. GALIPO:)  Okay.  There's been some mention,         |
|         | 17 | Deputy, about charging.  But just to be clear, you would agree   |
|         | 18 | that, just prior to your shots, your indication is that          |
|         | 19 | Mr. Nuñez was walking; correct?                                  |
| 03:11PM | 20 | A.   Walking towards me, yes.                                    |
|         | 21 | Q.   And you're saying, after he cleared the front of the        |
|         | 22 | Dodge, he moved a couple of feet in your direction before your   |
|         | 23 | first shot?                                                      |
|         | 24 | A.   Yes, sir.                                                   |
| 03:11PM | 25 | Q.   ==And how much time passed, would you estimate,==           |

**UNITED STATES DISTRICT COURT**

```
                1   between this motion you saw him make with the chain towards the
                2   vehicle and your first shot?
                3        A.   Approximately five seconds.
                4        Q.   So the last time you saw him make any motion with
03:12PM         5   the chain before your shot was approximately five seconds?
                6        A.   Yes, sir.
                7        Q.   And would you agree that everything that happened,
                8   everything you knew about the case, including all that was said
                9   when he was inside the house and him running to the dirt area,
03:12PM        10   saying things and swinging this chain above his head, that,
               11   prior to him coming in between the vehicles, it would have been
               12   inappropriate to shoot him?
               13        A.   Yes, sir.
               14        Q.   And lastly, you were asked by counsel, you know, if
03:12PM        15   you could have backed up or -- or repositioned.  And I think
               16   you said something about you didn't know what was around you or
               17   you might have fallen down or something to that effect.  Do you
               18   recall that?
               19        A.   Yes, sir.
03:12PM        20        Q.   And you told us earlier -- today, I think -- that
               21   you're -- you're agile now and you were very agile then, given
               22   your background and you being a shortstop at some point;
               23   correct?
               24        A.   Yes, sir.
03:13PM        25        Q.   In fact, you were a shortstop in college also,
```

```
          1   weren't you?
          2        A.   Yes, sir.
          3        Q.   And that was one year of college; is that right?
          4        A.   Yes, sir.
03:13PM   5        Q.   We have Exhibit 1, page 52, which just is a scene
          6   photo.
          7             MR. WESIERSKI:  No objection.
          8             MR. GALIPO:  We would move to admit, Your Honor.
          9             THE COURT:  Okay.  Page 52 is admitted.
03:13PM  10             (Exhibit No. 1-52 for identification
         11             and received into evidence.)
         12        Q.   (BY MR. GALIPO:)  Do you see the cars?
         13        A.   Yes, sir.
         14        Q.   How close were you to the red car when you fired
03:13PM  15   your shots?
         16        A.   I was pretty much in the -- if it makes sense, in
         17   the shadow of where the gray vehicle is at.  That's how far
         18   away.
         19        Q.   So you think you were within 2 feet of the red car?
03:14PM  20        A.   I'd say maybe a foot, sir.  1 to 2 feet, yes, sir.
         21        Q.   1 to 2 feet from the red car.
         22             And you already told us that you were a foot or two
         23   behind the gray car, as far as in line -- a foot or two behind
         24   the rear bumper area?
03:14PM  25        A.   Yes, sir.
```

**UNITED STATES DISTRICT COURT**

```
03:15PM   1       Q.    So by moving to your right, laterally, you could
          2   have moved behind the red car.  Is that fair?
          3       A.    Yes, sir.
          4       Q.    And that would have given you more distance and some
          5   cover?
          6       A.    Yes, sir.
          7             MR. GALIPO:  Thank you.  That's all I have.
          8             (Redirect Examination of Michael Martinez
          9              concluded at 3:15 PM.)
         10                        *  *  *  *
         11             (Proceedings continued.)
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )


      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


      DATED THIS 8TH DAY OF JUNE, 2025.


      /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER