# Exhibit 3

```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

 3          HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE

 4

 5   ROSA NUÑEZ, et al.,                )
                                        )
 6                     Plaintiffs,      )
                                        )
 7        v.                            )    Case No.
                                        )  ED CV 22-1934 SSS (SPx)
 8   COUNTY OF SAN BERNARDINO, et al.,  )
                                        )
 9                     Defendants.      )
     _____)
10

11        REPORTER'S PARTIAL TRANSCRIPT OF TRIAL PROCEEDINGS
              DIRECT EXAMINATION OF SABRINA CERVANTES
12                   TUESDAY, APRIL 22, 2025
                            3:21 PM
13                   RIVERSIDE, CALIFORNIA
```

———————————————————————————————————————————

MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA  90012
(213) 894-2305

```
              1         A.    Correct.
              2         Q.    But this is the first time you saw him come out at
              3   the end?
              4         A.    Yes, sir.
03:37PM       5         Q.    And do you know, when you were behind the gray
              6   car -- I think it's a Charger where some of your other partners
              7   were at at that point?
              8         A.    Yes, sir.
              9         Q.    Where were they?
03:37PM      10         A.    Deputy Martinez was to my right.  Deputy Deberg was
             11   to my left.  And Deputy Campos was on the side of Deberg.
             12         Q.    Okay.  So there would be one officer to your right
             13   and two to your left?
             14         A.    Yes, sir.
03:38PM      15         Q.    And you were somewhere behind the Dodge Charger?
             16         A.    Yes, sir.
             17         Q.    Now, at some point you see Anthony go to a dirt
             18   area.  Is Exhibit -- I'm not sure this is in yet, Exhibit 1,
             19   page 6.
03:38PM      20               MR. WESIERSKI:  I don't think it is, but I have no
             21   objection.
             22               THE COURT:  It's not admitted.  No objection.  That
             23   will be admitted.
             24                    (Exhibit No. 1-6 for identification
03:38PM      25                     and received into evidence.)
```

**UNITED STATES DISTRICT COURT**

03:38PM

1  MR. GALIPO:  Thank you, Your Honor.
2  Q.  (BY MR. GALIPO:)  We're going to get this up.  And
3  let me know if it shows a portion of this dirt area that you're
4  referring to.
5  A.  Okay.
6  Q.  Can you see that on your screen?
7  A.  Yes, sir.
8  Q.  And can you see a portion of the dirt area that you
9  were referring to?

03:39PM

10  A.  Yes, sir.
11  Q.  And Anthony went somewhere in that dirt area that we
12  see in this exhibit?
13  A.  Yes, sir.
14  Q.  And when -- how long was he in the front of the

03:39PM

15  house, approximately, before he went to the dirt area?
16  A.  I don't recall, sir.
17  Q.  Do you have any estimate?
18  A.  Maybe about a minute.
19  Q.  Okay.  And while he was in front of the house before

03:39PM

20  he went to the dirt area, did you see him charging towards
21  anyone at that time?
22  A.  No, sir.
23  Q.  Okay.  And then when he went to the dirt area, was
24  he some distance away from the officers?

03:39PM

25  A.  Yes, sir.

**UNITED STATES DISTRICT COURT**

|   |   |   |
|---|---|---|
| | 1 | Q.   So if they don't penetrate or only one penetrates, |
| | 2 | then you don't get the desired effect? |
| | 3 | A.   Yes, sir. |
| | 4 | Q.   So was it your impression just from watching Anthony |
| 03:44PM | 5 | that one or both of the probes missed? |
| | 6 | A.   Yes, sir. |
| | 7 | Q.   And then, after your malfunction and the |
| | 8 | 40 millimeter rounds and the Taser, did you see Anthony at some |
| | 9 | point start walking back towards the -- towards the house? |
| 03:44PM | 10 | A.   Yes, sir. |
| | 11 | Q.   And do you recall -- and I know we're looking at |
| | 12 | your statement.  Do you recall in your statement indicating |
| | 13 | that, after the 40 millimeters and the Taser, that you observed |
| | 14 | Anthony walking back towards the front doors of the house? |
| 03:45PM | 15 | A.   Yes, sir. |
| | 16 | Q.   And when he was walking back towards the front doors |
| | 17 | of the house, where were the officers positioned relative to |
| | 18 | the cars? |
| | 19 | A.   Deputy Martinez and I were positioned towards -- you |
| 03:45PM | 20 | want to go back to the other picture? |
| | 21 | Q.   Sure. |
| | 22 | A.   Get a better view. |
| | 23 | Q.   I've got so many photos in front of me, it's getting |
| | 24 | confusing.  But we have -- |
| 03:46PM | 25 | MR. GALIPO:  Is Exhibit 1, page 52 in, Your Honor? |

**UNITED STATES DISTRICT COURT**

```
1            THE COURT:  Yes.
2            MR. GALIPO:  Okay.  I think we can show that one, if
3    possible.
4            That's more of a close-up.  Is that -- yes.
5       Q.   (BY MR. GALIPO:)  Okay.  Can you see that on your
6    screen?
7       A.   Yes, sir.
8       Q.   Okay.  So just so that we're all clear, this would
9    be when Anthony is walking back towards the front doors of the
10   house, after the 40 millimeter rounds and after the attempt at
11   Tasing him.  Are you kind of with me time-wise?
12      A.   Yes, sir.
13      Q.   And you, at that point, it sounds like had just
14   cleared the malfunction?
15      A.   Yes, sir.
16      Q.   So would it be correct to say that up to that point
17   in time, you had not been able to actually fire any bean bag
18   rounds?
19      A.   Yes, sir.
20      Q.   And so -- okay.  You were telling us where you were
21   positioned when Anthony was walking back to the front doors.
22      A.   So I was positioned, um, between the Charger and the
23   red Honda Civic towards the end -- towards the back, so the
24   back rear tires.  But I was in between both cars, if that makes
25   sense.
```

**UNITED STATES DISTRICT COURT**

```
03:47PM   1    Q.   Okay.  And so you were towards the back of the cars
          2    but kind of standing in that space in between them?
          3    A.   Yes, sir.
          4    Q.   And then where was Deputy Martinez in relation to
03:47PM   5    you?
          6    A.   I believe he was on my right side.
          7    Q.   Okay.  And I think you've indicated somewhere maybe
          8    in a statement or deposition he was slightly behind you?
          9    A.   Yeah.  Like, to my right but kind of behind.
03:47PM  10    Q.   So he would have been more -- a little bit more
         11    behind the red car?
         12    A.   Um, sure.  Yeah.
         13    Q.   Does that sound correct, if you were standing in the
         14    space in between and he was to your right and a little behind
03:48PM  15    you?
         16    A.   Yes.
         17    Q.   Okay.  And then how about the other two officers?
         18    Where were they positioned?
         19    A.   I'm not too sure, sir.
03:48PM  20    Q.   Somewhere to your left, you believe?
         21    A.   To my left or behind, yeah.  I'm not too sure.
         22    Q.   Okay.  So when Anthony got to the front of the
         23    vehicle, did he pause or stand there for some period of time?
         24    A.   Yes, sir.
03:48PM  25    Q.   And this is after he walked back towards the front
```

**UNITED STATES DISTRICT COURT**

```
                1   doors and got towards the front of the vehicle?
                2       A.   He -- he was standing between the two -- we were
                3   basically looking at each other, straight at each other.  He
                4   was standing in the middle as, like, I was standing in the
03:49PM         5   middle.  But he was in the front of the vehicles; I was in the
                6   back, if that makes sense.
                7       Q.   Okay.  So there was at least the length of the
                8   vehicles in between you?
                9       A.   Yes, sir.
03:49PM        10       Q.   And when -- how long was he standing in that
               11   position before you fired your bean bag shotgun at him?
               12       A.   I don't recall, sir.
               13       Q.   Okay.  And -- but he was more or less stationary at
               14   that time for some period of time?
03:49PM        15       A.   Yes, sir.
               16       Q.   And then you yelled out "less lethal" again; is that
               17   right?
               18       A.   Yes, sir.
               19       Q.   Because now you had cleared your malfunction and you
03:49PM        20   thought, well, let me try the less lethal and see what happens?
               21       A.   Yes, sir.
               22       Q.   And when you yelled out "less lethal,"
               23   Officer Martinez would have still been near you to your right
               24   maybe and slightly behind you?
03:50PM        25       A.   I don't recall.  I didn't look back at all, sir.
```

```
03:50PM
```

1   Q.   So he was -- he was a little out of your view,
2   Officer Martinez, because he was slightly behind you?
3   A.   Yes, sir.
4   Q.   And so when you fired your -- first you said "less
5   lethal," and then you would have fired your bean bag round
6   sometime after that; correct?
7   A.   Yes, sir.
8   Q.   And you also gave a deposition in this case;
9   correct?
10  A.   Yes, sir.
11  Q.   And in addition to reviewing your statement, have
12  you had an opportunity to review your deposition before coming
13  to court today?
14  A.   Yes, sir.
15  Q.   Okay.  So when you fired your less lethal round,
16  Anthony was at the front of the vehicles, from your
17  perspective, kind of standing in the area between the two cars;
18  is that right?
19  A.   Yes, sir.
20  Q.   And according to you, up to the time you fired your
21  less lethal round, he had not started advancing towards you
22  yet; is that correct?
23  A.   Yes, sir.
24  Q.   In fact, I think you were even asked in your
25  statement, had he started advancing towards you at all before

**UNITED STATES DISTRICT COURT**

03:51PM

1  you fired your bean bag round and you said words to the effect,
2  no, he advanced after I fired the bean bag round.
3          Do you remember that?
4     A.   Yes.
5     Q.   So I think you've already told us this.  But when
6  you fired your bean bag round, Anthony was in the front of the
7  car and you were in the back of the car; is that right?
8     A.   Meaning I was -- we were both between the cars.  He
9  was in the front and I was in the back.  So we were literally

03:52PM

10 looking at each other, staring at each other in the middle
11 between the cars.  But he was more towards the front and I was
12 towards the back.
13    Q.   Okay.  And -- and is it correct to say that Anthony
14 had not started advancing towards you yet at the time you fired

03:53PM

15 your bean bag round?  Is that a correct statement?
16    A.   Correct.
17    Q.   And your impression was that your bean bag round
18 struck him; is that correct?
19    A.   Yes, sir.

03:53PM

20    Q.   It looked like it hit him somewhere in the upper
21 body area?
22    A.   Yes, sir.
23    Q.   And I think you've already said this.  But at the
24 time of your deployment of the bean bag round, you have Anthony

03:53PM

25 in front of the vehicle by the hood but slightly in that space?

**UNITED STATES DISTRICT COURT**

```
 1        A.    Yes, sir.
 2        Q.    Now, after you fired your bean bag round, did you
 3   hear some lethal shots -- or strike that.
 4              Did you hear other shots?
 5        A.    Um, not right away.  Um, when I fired the less
 6   lethal bean bag, that is when Mr. Nuñez got upset and started
 7   running towards me and my partner.
 8        Q.    I see.
 9        A.    And then that's when the shots went off.
10        Q.    Okay.  So how much time would you estimate there was
11   between your bean bag round with the shotgun and the time the
12   shots started -- the other shots?
13        A.    It could have been seconds because, after I shot
14   Mr. Nuñez with the bean bags, he started charging at myself and
15   Deputy Martinez.
16        Q.    Okay.  What I would like is an estimate of how many
17   seconds.  You can give a range if you want, whatever you're
18   comfortable with.
19        A.    It could be five seconds, could be ten -- between
20   five and ten.
21        Q.    Five and ten seconds.
22              So you're saying there was approximately five or ten
23   seconds between the time you fired your bean bag round and then
24   Anthony was charging, as you say, and then the -- the other
25   shots?
```

**UNITED STATES DISTRICT COURT**

```
                1    A.    Yes.
                2    Q.    And the other shots that you heard, how many did you
                3  hear?
                4    A.    About two.
03:55PM         5    Q.    Two.
                6          And did you know at the time whether those were
                7  lethal shots or the 40 millimeter?
                8    A.    I did not, sir.
                9    Q.    When did you learn they were -- you thought they
03:56PM        10  were the 40 millimeter at least initially; right?
               11    A.    Yes, sir.
               12    Q.    When did you learn they were lethal shots?
               13    A.    Um, when I -- I don't remember which deputy it was,
               14  but they aired out "shots fired, shots fired."  So then that's
03:56PM        15  how I knew that it was not the 40.
               16    Q.    Okay.  And that's something that deputies
               17  communicate if they're -- there is an officer-involved
               18  shooting, they communicate "shots fired" so all the other
               19  officers and people at dispatch know?
03:56PM        20    A.    Yes.
               21    Q.    So when you heard the communication "shots fired,
               22  shots fired," it clicked in your mind that those weren't less
               23  lethal shots, those were lethal shots; is that correct?
               24    A.    Yes, sir.
03:56PM        25    Q.    Now, did you have any less lethal rounds left in
```

**UNITED STATES DISTRICT COURT**

|  |  |  |
|---|---|---|
| | 1 | was going to be used before the shots were fired? |
| | 2 | A.   I don't recall. |
| | 3 | Q.   And when Anthony did finally fall to the ground |
| | 4 | after standing for a second or two after the shots, would you |
| 03:59PM | 5 | agree that he fell forward with his head more pointed towards |
| | 6 | the street? |
| | 7 | A.   Yes, sir. |
| | 8 | Q.   And at some point did you observe Deputy Campos |
| | 9 | attempting to render aid, medical aid after the shooting? |
| 03:59PM | 10 | A.   Yes, sir. |
| | 11 | Q.   And you saw -- you, at least from your observations, |
| | 12 | had the impression that he -- Anthony had at least two shots, |
| | 13 | one to the right rib cage and one to the arm? |
| | 14 | A.   Yes, sir. |
| 03:59PM | 15 | Q.   Have you ever -- in preparation for the testimony, |
| | 16 | have you ever listened to the audio that captures the actual |
| | 17 | shots? |
| | 18 | A.   Uh, not recently, no, sir. |
| | 19 | Q.   You would agree that, certainly by the time of the |
| 04:00PM | 20 | third shot, you noticed that the chain Anthony was holding was |
| | 21 | down.  Would that be a fair statement? |
| | 22 | MR. WESIERSKI:  Objection.  Vague. |
| | 23 | Q.   (BY MR. GALIPO:)  Meaning it went -- it was in his |
| | 24 | hand, but it went in a lower position down, after he was shot, |
| 04:00PM | 25 | the first time or two. |

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES  )
                       )
STATE OF CALIFORNIA    )

      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

      DATED THIS 25TH DAY OF MAY, 2025.

      /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER