1  Christopher P. Wesierski [Bar No. 086736]
     *cwesierski@wzllp.com*
2  Abe G. Salen [Bar No. 182366]
     *asalen@wzllp.com*
3  WESIERSKI & ZUREK LLP
   29 Orchard Road
4  Lake Forest, California 92630
   Telephone: (949) 975-1000
5  Facsimile: (949) 756-0517

6
   Attorneys for Defendants,
7  COUNTY OF SAN BERNARDINO,
   CITY OF HESPERIA, MICHAEL
8  MARTINEZ, SABRINA CERVANTES
   and JEREMY DEBERG
9

10            UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  ROSA NUNEZ, individually and as          Case No. 5:22-cv-1934-SSS(SPx)
    successor-in-interest to Decedent,
14  Anthony Nunez; ANTHONY NUNEZ,            *Before the Hon. Judge Sunshine S.*
    JR., individually and as successor-in-   *Sykes*
15  interest to Decedent, Anthony Nunez;
    and, ANDREW NUNEZ, individually,         **OPPOSITION TO PLAINTIFFS'**
16                                           **MOTION FOR NEW TRIAL**
                     Plaintiffs,             **PURSUANT TO F.R.C.P. 59;**
17                                           **MEMORANDUM OF POINTS AND**
             vs.                             **AUTHORITIES; DECLARATION**
18                                           **OF ABE G. SALEN, ESQ.**
    COUNTY OF SAN BERNARDINO;
19  CITY OF HESPERIA; MICHAEL                Date:        7/11/2025
    MARTINEZ; SABRINA                        Time:        2:00 p.m.
20  CERVANTES; JEREMY DEBERG;                Courtroom: 2
    JONATHAN CAMPOS; and DOES 5
21  through 15, inclusive,

22
                     Defendants.
23

24       **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO**

25  **THE COURT:**

26       Defendants, COUNTY OF SAN BERNADINO and MICHAEL MARTINEZ

27  ("Defendants"), hereby submit their Opposition to the Motion for New Trial of

28  Plaintiffs, ROSA NUNEZ, ANTHONY NUNEZ JR, and ANDREW NUNEZ.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................... 1

II.     LEGAL AUTHORITY ..................................................................... 1

III.    ANALYSIS ..................................................................................... 3

        A.      The Clear Weight Of The Evidence Supports The Jury's
                Unanimous Verdict In Favor Of Defendant Dep. Martinez. .................. 3

                1.      Party Witnesses ........................................................... 4

                2.      Plaintiff's interpretation of testimony to meet their
                        contentions is improper and redundant to their procedural
                        conduct during trial. .................................................... 5

        B.      Plaintiffs' Attack on Sgt. LaFever's Testimony is Misguided and
                Speculative. ........................................................................ 13

        C.      Plaintiffs Waived Their Claim That Defense Counsel Used
                Evidence Not Admitted During Closing. ................................... 15

IV.     CONCLUSION ............................................................................ 17

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4
*AK v. Durham School Services, LP*,
5
    969 F.3d 625 (6th Cir. 2020) ................................................................2

6
*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
7
    69 F.3d 337 (9th Cir. 1995) ...............................................................15

8
*Computer Sys Eng'g, Inc. v. Oantel Corp.*,
    740 F.2d 59 (1st Cir. 1984)................................................................15
9

10
*ICTSI Oregon v. Intern Longshore*,
    442 F.Supp.3d 1329 (USDC Oregon 2020) ........................................2

11
*Kehr v. Smith Barney, Harris Upham & Co.*,
12
    736 F.2d 1283 (9th Cir. 1984) ...........................................................15

13
*Landes Const. v. Royal Bank of Canada*,
14
    833 F.2d 1365 (9th Cir. 1987) .........................................................2, 3

15
*Lucent Technologies, Inc. v Microsoft Corp.*,
16
    837 F.Supp.2d 1107 (USDC SD Cal. 2011).........................................3

17
*Malhoit v. s. Cal. Retail Clerks Union*,
18
    735 F2d 1133 (9th Cir. 1984) .............................................................3

19
*Maxwell v. Cty of San Diego*,
20
    714 F.App'x 641 (9th Cir. 2017)........................................................15

21
*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ..............................................................2
22

23
*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ...........................................................2, 3

24
*Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*,
25
    948 F.2d 613 (5th Cir. 1988) .............................................................15

26
*Passantino v. Johnson & Johnson Consumer Prods*,
27
    212 F.3d 493 (9th Cir. 2000) ..............................................................2

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4922-5750-2797.2 SBD-00015

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT
TO F.R.C.P. 59

*Roy v. Volkswagen of Am. Inc.*,
    896 F.2d 1174 (9th Cir. 1990) ................................................................. 3

*SEC v. Jasper*,
    678 F.3d 1116 (9th Cir. 2012) ............................................................... 15

*Shimko v. Guenther*,
    505 F.3d 987 (9th Cir. 2007) ................................................................. 1

*Shinseki v. Sanders*,
    556 U.S. 396 (2009) ............................................................................... 2

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ................................................................. 3

*Tennant v. Peoria & Pekin Union Ry*,
    321 U.S. 29 (1944) ................................................................................. 3

**Rules**

Fed. R. Civ. P. 59(a)(1)(A) ............................................................................ 1

L.R. 7-3 ......................................................................................................... 2

L.R. 59-1.2 .................................................................................................... 2

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  ## I.    INTRODUCTION

3      On May 1, 2025, an eight-person jury unanimously found in favor of

4  Defendant, MICHAEL MARTINEZ ("Dep. Martinez"), and against Plaintiffs,

5  ROSA NUNEZ ("Ms. Nunez"), ANTHONY NUNEZ JR. ("Anthony Jr."), and

6  ANDREW NUNEZ ("Andrew") (collectively, the "Plaintiffs"). [Docket No. (Doc.

7  #) 185.]  On May 12, 2025, the Court entered judgment, accordingly. [Doc. #193.]

8      Prior to deliberating, the jury was instructed on the law by the Court with jury

9  instructions that were previously agreed upon by both sides' respective counsel.

10  Those instructions detailed the requisite elements required to be proven by Plaintiffs

11  for the jury to adjudicate either that Plaintiffs did or did not sufficiently prove those

12  elements. [Doc. #175.]

13      Plaintiffs now contend that the jury was, somehow, misled by defense counsel

14  into finding against Plaintiffs; that the jury failed to carefully review all of the

15  evidence that, in Plaintiffs' opinion, clearly showed that the use of lethal force by

16  Dep. Martinez against Decedent, Anthony Nunez Sr. ("Decedent"), was

17  unreasonable and excessive, and that, as a result, Plaintiffs were denied a fair trial.

18      As discussed below, Plaintiffs' contentions are both without merit and

19  outlandishly so.  Plaintiffs' motion seeking a new trial should be denied.

20  ## II.    LEGAL AUTHORITY

21      Fed. R. Civ. P. ("FRCP") 59 provides that "[t]he court may, on motion, grant

22  a new trial . . . for any reason for which a new trial has heretofore been granted in an

23  action at law in federal court." FRCP 59(a)(1)(A). "FRCP Rule 59 does not specify

24  the grounds on which a motion for a new trial may be granted, but allows new trials

25  to be granted for historically recognized grounds." *Shimko v. Guenther*, 505 F.3d

26  987, 993 (9th Cir. 2007).

27      Local Rule ("L.R.") 59-1 provides specific grounds for which a motion for

28  new trial may be brought in the Central District.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1

L.R. 59-1.2  <u>Specification of Ground – Insufficiency of Evidence</u>. If the ground for the motion is the insufficiency of the evidence, the motion shall specify with particularity the respects in which the evidence is claimed to be insufficient. [Plaintiffs' motion is premised on this Ground.

L.R. 7-3  <u>Conference of Counsel Prior to Filing of Motions</u>. In all cases … counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.

Case authority has subsequently identified certain guidelines for courts to follow. A "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007), quoting *Passantino v. Johnson & Johnson Consumer Prods*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  In determining the clear weight of the evidence, "the district court has the 'duty … to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence. *Id.,* quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). See also *ICTSI Oregon v. Intern Longshore*, 442 F.Supp.3d 1329, 1340 (USDC Oregon 2020).

At the same time, a new trial should be granted only if the Court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Const. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-1372 (9th Cir. 1987).

In a civil case, "the party that 'seeks to have a judgment set aside because of an erroneous ruling, carry the burden of showing that prejudice resulted.'" *AK v. Durham School Services, LP*, 969 F.3d 625, 629 (6th Cir. 2020), citing *Shinseki v.*

2

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

*Sanders*, 556 U.S. 396, 409, 411 (2009). See also *Malhoit v. s. Cal. Retail Clerks Union*, 735 F2d 1133 (9th Cir. 1984).

When a party claims that a verdict is against the clear weight of the evidence, the Court should give full respect to the jury's findings and only grant a new trial if it "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Constr. Co.*, 833 F.2d, at 1371-1372.  Indeed, [w]hile the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am. Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990); see also *Lucent Technologies, Inc. v. Microsoft Corp*, 837 F.Supp.2d 1107, 1126 (USDC SD Cal. 2011).  "A district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

## III.    ANALYSIS

### A.    The Clear Weight Of The Evidence Supports The Jury's Unanimous Verdict In Favor Of Defendant Dep. Martinez.

To support Plaintiffs' contention that the clear weight of the evidence did not support the jury's verdict, "a district court must reweigh the evidence but can only "set aside the verdict of the jury, even though supported by substantial evidence, where, in [the judge's] conscientious opinion, the verdict is contrary to the clear weight of the evidence, or . . . to prevent . . . a miscarriage of justice." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). The burden is on Plaintiff to establish same. *Malhoit*, 735 F.2d, at 1133.  While the court may weigh the evidence and the credibility of witnesses, "[courts] are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Landes Constr. Co.*, 833 F.2d, at 1372, citing *Tennant v. Peoria & Pekin Union Ry*, 321 U.S. 29, 35 (1944).

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT
TO F.R.C.P. 59

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    As they attempted during trial, Plaintiffs' contentions in their motion seeking

2    a new trial continue Plaintiffs' efforts to unreasonably twist the facts from what the

3    admitted evidence showed during trial. In particular, Plaintiffs' proffered affidavits –

4    trial testimony and physical evidence – actually confirm that the clear weight of the

5    evidence presented at trial supported the jury's unanimous verdict because Plaintiffs

6    could not meet their burden of proof as to any of their claims.

7        As discussed below, Plaintiffs' contentions are wholly without merit, fail to

8    take into consideration the actual evidence presented, and otherwise, substantially

9    misuse the process by making unsubstantiated inferences to support their position.

10   In particular, Plaintiffs now contend that defense counsel elicited false testimony

11   from Sergeant LaFever with specific reference to his turning on or off his belt

12   recorder, as an excuse to substantiate why his belt recorder appeared to not record

13   sounds at the time of Dep. Martinez's use of force (and, otherwise, to validate Sgt.

14   LaFever's presence at the time that lethal force was used. [Doc #197, Motion Notice,

15   2:14-15, Motion, 1:22-23, 1:28 – 2:2.]   Plaintiffs also suggest that defense counsel

16   committed misconduct that requires a new trial due to his discussion of evidence

17   that was not admitted into evidence at trial. [Doc. #197, 2:7-15.] As will be

18   discussed below, this is a grave miscalculation by Plaintiffs' counsel, and, indeed, is

19   without merit and lacks foundation.

20        1.    Party Witnesses.

21        Initially, Plaintiffs repeatedly suggest in their motion  that the defense *only*

22   called two witnesses: Sgt LaFever and Mr. Edward Flosi ("Mr. Flosi"). [Doc. #197,

23   2:12 (Motion Notice), 2:4.]  Plaintiffs' position is factually and procedurally untrue.

24        (a)    Joint Witness List.

25        The parties submitted a joint witness list that identified the following joint

26   witnesses who testified during Plaintiffs' case-in-chief for both sides: Defendant

27   Dep. Martinez, Deputy ("Dep.") Sabrina Cervantes ("Cervantes"), Dep. Jeremy

28   Deberg ("Deberg"), Deputy Jonathan Campos ("Campos"), each Plaintiff, Dr. Scott

4

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59

Luzi, MD ("Dr. Luzi"), and Carlos Ruben ("Mr. Ruben"). [Doc. #143.]

(b)    Defendants' Case.

In this case, and in a procedural effort to avoid unnecessary call-backs of witnesses, the defense examined its identified witnesses during plaintiffs' case-in-chief.  Specifically, defendants examined Dep. Martinez, Dep. Cervantes, Dep. Deberg, Dep. Campos, each Plaintiff, Dr. Luzi, and Mr. Ruben, each examination proceeding during Plaintiffs' case-in-chief.  Each of these witnesses was listed as a defense witness and, thus, was examined once, rather than having to be called back a second time during the defense case-in-chief later in the trial. [Doc. #174, 4-7.]

Regardless, of course, at whatever point the defense introduced evidence – whether during "cross-examination" during Plaintiffs' case-in-chief or examination during its own case-in-chief, the jury had the duty and right to analyze that evidence in arriving at its unanimous verdict. But to suggest that Defendants only called two witnesses to support their position is ludicrous.

2.    Plaintiff's interpretation of testimony to meet their contentions is improper and redundant to their procedural conduct during trial.

Plaintiffs contend that the "clear weight" of evidence clearly shows that the jury improperly adjudicated the case in favor of defendants.  And yet, the jury's primary responsibility is to evaluate the evidence presented, determine which witnesses are more credible than others, and to deliberate amongst themselves to determine whether Plaintiffs are entitled to judgment.

In this case, Plaintiffs stretch the testimony of the witnesses to justify their position, both in the underlying trial and, importantly, throughout this motion. While Plaintiffs rely on multiple "supporting" affidavits, their evidence actually reaffirms the jury's unanimous defense verdict, and otherwise, fails to sufficiently provide this Court with causation to order a new trial.

/ / /

/ / /

4922-5750-2797.2 SBD-00015

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

(a)    Positioning of Deputies

Plaintiffs contend that Dep. Martinez was at the rear of the red Honda Civic, approximately 20' from Decedent, at the time he used lethal force in shooting Decedent, and thus was too far from Decedent to reasonably believe his life was in immediate danger. [Doc. #197 6:13-18, citing to Moving Affidavit ("MA") Exhibit ("Ex") #1, 55:3-15, 57:2-58:4, 66:3-67:7, 67:25-68:6; MA Ex #3, 24:20-26:9, 26:22-27:3; MA Ex #4, 9:6-13; MA Ex #8, 6:13-7:2; MA Ex #14, 34:3-8, 37:10-13.]

But, Dep. Martinez (MA Ex. #1 – Testimony) did not identify where anyone actually was positioned at the time Decedent was traveling towards the front door. He testified that he and Dep. Cervantes were "behind the vehicles." [MA Ex #1, 55:12-14.]  He also testified that Deputies Deberg  and Campos were "somewhere to his left." [MA Ex. #1, 55:15-17.]

Dep. Martinez later clarified that, at the time Decedent was moving back in front of the vehicles, he "knew that [the other deputies] were to [his] left. Specifically, [he] believe[d] [Dep.] Cervantes was directly to [his] left. As far as the positioning of the other deputies, …" he was unaware of their positioning. [MA Ex. #1, 57:22-24.]  He testified that he and Dep. Cervantes, who was on his left, were close in proximity to each other. [MA Ex. #1, 58:1-2.]

Dep. Cervantes testified that, as Decedent was moving back towards the residence, she was positioned "*between* the Charger and the red Honda Civic towards the end – towards the back, so the back rear tires. But [she] *was in between both cars*, if that makes sense." [MA Ex. #3, 24:20-25.] Dep. Martinez was to the right of her and a bit behind her. [MA Ex. #3, 25:9.]  Critically, at the time she shot her less-lethal beanbag, she did not know where Dep. Martinez was. [MA Ex. #3, 26:22-25.]

> "Q: And when you yelled out "less lethal", Officer Martinez
> would have still been near you to your right maybe and slightly
> behind you?

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

A: *I don't recall*. I didn't look back at all, sir." [Id.]

In fact, the best evidence of Dep. Martinez's and Dep. Cervantes' positioning was their testimony coupled with photographic evidence taken by the CHP helicopter minutes after the shooting that depicted the vehicles' location at the time of the shooting. This clearly played a major part for the jury in determining where the parties were at the time leading up to and at the time when Dep. Martinez shot Decedent. [MA Ex. #21/Trial Ex. 341C.]

(b)    Positioning of Decedent

Plaintiffs contend that Decedent was in front of the gray Charger at the time he was shot, and facing north, and thus, not an imminent threat to either Dep. Martinez or Dep. Cervantes. Thus, subsequent witness testimony that Decedent was either moving between the vehicles or otherwise, walking towards deputies Cervantes and Martinez as Dep. Martinez fired his lethal rounds at Decedent, contradicted both *audio* evidence (Dep. Martinez's belt recorder) as well as bullet trajectory pursuant to testimony by Dr. Scott Luzi, MD ("Dr. Luzi") [MA Ex. 15, 14:20 – 24:19].  As such, Plaintiffs contend that the jury should have discounted that portion of testimony that placed Decedent moving between the vehicles towards the deputies. [Motion, 9:14-16.]

Further, Plaintiffs contend that, because Dep. Cervantes and Dep. Martinez each fired their weapons "almost simultaneously", that this somehow means that Dep. Martinez could not have reasonably believed that either he or Dep. Cervantez were in immediate life-threatening danger at that moment. [Motion, 9:14 – 11:13.]

Once again, Plaintiffs' theories belie the clear evidence elicited through testimony and through physical evidence that, at the time of the shots, Decedent had placed Dep. Martinez and/or Dep. Cervantes in immediate harm.

Dep. Martinez testified that, just prior to firing his weapon, Decedent was at the front bumper of the gray Charger, and from his perception, "almost in between both vehicles…" [MA Ex. 1, 62:1-4.]  Indeed, Plaintiffs' counsel attempted to clarify

7

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

Dep. Martinez's positioning of Decedent but was corrected by Dep. Martinez who stuck to his previous testimony.

> "Q: So just to make sure I have your chronology correct, he's in front of this gray Charger, more on the passenger side, when Cervantes fires her less-lethal round. I have that correct?
>
> "A: Sir, *I don't know* if I would say if he was clear of the vehicle or more so to the passenger side. …" [MA Ex. 1, 81:18-23.]
>
> "Q: Well, that's okay. Somewhere in the front closer to the passenger side but not necessarily clear of the vehicle yet. Is that fair?
>
> "A: That's what I was trying to say, sir. I don't know if he was completely clear of the vehicle when she shot or if he was still a little bit in front of the vehicle.
>
> "Q: Okay. That's fine. But *somewhere* in the area in front of the car. A: Yes, sir." [MA Ex. #1, 81:24 – 82:7.]

This testimony is similar to Dep. Cervantes, who provided much more detail as to her perception of where Decedent was positioned. She testified that Decedent was standing between the two vehicles, not in front of the gray Charger – as Plaintiffs' counsel repeatedly attempted to goad her into conceding.

> "Q: So I think you've already told us this. But when you fired your bean bag round, Anthony was in the front of the car and you were in the back of the car; is that right?
>
> A: Meaning I was – we were both *between* the cars. He was in the front and I was in the back. So we were literally looking at each other, staring at each other *in the middle between* the cars. But he was more towards the front and I was towards the back." [MA Ex. #3, 26:2-6.]

Dep. Cervantes also testified that, after she shot Decedent with her bean bag

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

8

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59

1   round, her perception from her location was that Decedent "started charging at [her]

2   and Deputy Martinez." [MA Ex. #3, 29:14.]

3       Dep. Campos testified that, at the time of Dep. Martinez's first shot, Decedent

4   was "located in the area of the front bumper of the [] Charger." [MA Ex. #7, 15:22-

5   23.]

6       The deputies had conflicting testimony regarding approximate timing of when

7   the lethal shots were discharged, and Plaintiffs jumped on this inconsistency to

8   suggest that the deputies' testimony was contrived.  However, the jury rightly looked

9   at the totality of all the evidence in reaching their unanimous verdict in Defendants'

10  favor.

11      Dep. Martinez, whose perception is most critical, testified that, at the time of

12  his first shot, Decedent had stepped between the vehicles and moved "with a

13  purpose" towards him. [MA Ex. #1, 82:10-12.] Dep. Martinez testified that, after the

14  first shot, Decedent continued moving towards him. [MA Ex. #1, 82:13-15.] Dep.

15  Martinez had viewed Decedent's conduct over the prior 90 minutes, of refusing

16  commands to drop the chain or get down on the ground – shouted at Decedent by

17  deputies as he made his way from the dirt area back towards the house – and

18  otherwise whipping the chain around in an offensive manner. Testimony from

19  multiple deputies –  Dep. Deberg, Dep. Campos, Dep. Cervantes, and Dep. Martinez

20  – as well as listening to Dep. Martinez's audio recording all confirmed Dep.

21  Martinez's perception that Decedent refused commands, was belligerent, and acted

22  in a threatening manner as he moved quickly back towards the house with the chain

23  raised in a threatening manner. [MA Ex. #17, TEx. #4A.]

24      One of the more critical pieces of evidence to substantiate the jury's

25  unanimous defense verdict in favor of defendants, is a video still-shot taken by the

26  CHP helicopter circling the scene of the incident shortly after Decedent had been

27  shot and was still receiving medical aid at the scene. In fact, from the still-shot, it is

28  readily apparent that Decedent's body was centrally located between the vehicles at

9

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT
TO F.R.C.P. 59

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  the location where his body fell to the ground after being shot. [MA Ex. #21 / Trial

2  Exhibit ("TEx.") #341C.]

3      Plaintiffs identify testimony from Dep. Campos in which he testified that, at

4  the time Decedent was shot, Decedent was walking in front of the gray Charger

5  facing North. [MA Ex. #7, 15:20 – 16:13.]  Plaintiffs further contend that Dr. Luzi,

6  the medical examiner, testified that the trajectory of the bullets – right to left, and

7  beginning in the side/back on the right side of Decedent – clearly proves their point

8  – that he was "perpendicular" to where Dep. Martinez was at the time of the shots.

9  [MA Ex. #15, 24:14-19.]

10     Contrary to their argument, however, there exists substantial evidence that

11 proved otherwise. When reviewing both Dep. Martinez's audio recording (MA Ex.

12 #17, TEx. #4A) and listening to the shots fired, and the CHP video still-shot [MA

13 Ex. #21, TEx. #341C] showing the location of the two vehicles and the location

14 where Decedent ended up, it more rationally supports the testimony of Dep.

15 Cervantes and Dep. Martinez, that Decedent had cleared the front of the gray

16 Charger and/or otherwise had begun moving between the vehicles towards their

17 location when he was shot. [MA Ex. #17, MA Ex. #21, TEx. #341C.]

18     Further, Dr. Luzi's testimony, in response to Plaintiff counsel's repeated

19 hypotheticals and leading questions, suggested one scenario as to Decedent's

20 positioning at the time he was hit with lethal rounds. [MA Ex. #15, 21:1 – 23:3,

21 24:23 – 27:17.] Dr. Luzi testified that the trajectories showed a "component of

22 moving from right to left," and that, based on same, Plaintiff counsel's hypothetical

23 was plausible. However, Dr. Luzi was also admonished by the court, and thus, could

24 not testify as to the order of the shots. [MA Ex. #15, 26:10-13.]

25     Dr. Luzi, who obviously was not present at the time, could only testify based

26 upon the medical evidence as to how Decedent was shot. What if Decedent was shot

27 first in the abdomen, turned his body, and then was shot to the right side of his body

28 as he charged Dep. Cervantes and Dep. Martinez?  Indeed, as the evidence showed,

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

10

1  Dep. Cervantes' bean bag shot hit Decedent in the upper right torso – not the side of

2  his body, but the front, upper right torso. [MA Ex. #9, 12-13.] In fact, Dr. Luzi

3  testified that, while Plaintiff counsel's hypotheticals were "possible. It's also – there

4  are other possibilities as well." [MA Ex. #15, 27:1-4.]

5      Further, if, as Plaintiffs repeatedly insinuate, Decedent was walking north,

6  with his body perpendicular to Dep. Martinez at the time shot, then how did

7  Decedent fall sideways and end up several feet in between the vehicles? It defies

8  common sense.

9      Plaintiffs utilize the testimony of Deputy Deberg to further suggest where

10  Decedent was at the time he was shot.  However, Dep. Deberg testified that, at the

11  time the bean bag was deployed, he was not looking in that direction. [MA Ex. #5,

12  25:17-19.]  Dep. Deberg testified that the bean bag deployment and the lethal shots

13  were not "simultaneous," but "a little bit longer than nearly simultaneous." [MA Ex.

14  #5, 26:23 – 27:1.]  He later testified that it was difficult to distinguish the difference.

15  [MA Ex. #5 27:11-17.]

16      Again, Dep. Deberg testified – in response to Plaintiff counsel's question –

17  where Decedent was at the time of the shots, Dep. Deberg responded: "He was

18  *around* the front of the gray vehicle." [MA Ex. #6, 8:16.]

19      Plaintiffs' counsel later elicited Dep. Deberg's opinion that, upon listening to

20  the audio recording of the incident (Dep. Martinez's audio), that the bean bag

21  deployment and lethal gunshots appeared to occur "at literally the same time."  [MA

22  Ex. #6, 13:12-15.]  Yet, Dep. Deberg's opinion after the incident carries the same

23  weight as the jury in listening to the audio and trying to determine whether Dep.

24  Martinez's discharge at that moment was not unreasonable.

25      It is clear from a review of the foregoing testimony and evidence – Dep.

26  Martinez's audio recording [MA Ex. #17, TEx. #4A.] and the CHP video still-shot

27  [MA Ex. #21/TEx. #341C] – that the jury's unanimous verdict was extremely

28  plausible and based upon the totality of all evidence reviewed.

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

11

1    In fact, while Plaintiffs argue that, because Dep. Cervantes' less-lethal bean

2  bag deployment and Dep. Martinez's lethal shots were "almost simultaneous", Dep.

3  Martinez failed to act reasonably to allow an opportunity for the less-lethal round to

4  affect Decedent, this evidence actually further supports the position that both Dep.

5  Cervantes and Dep. Martinez perceived an immediate threat of imminent serious

6  harm at approximately the same time.  Dep. Martinez is under no duty to wait to see

7  if a less-lethal option had a desired effect, prior to shooting if he perceived an

8  immediate threat. Indeed, from his perception of events in the preceding minutes of

9  the altercation, less-lethal options did not work.

10    The jury apparently reviewed all of the evidence – which was substantial –

11  because they deliberated carefully before reaching their unanimous verdict. How

12  long the jury takes is irrelevant.

13    How much weight was given to each deputy's testimony? The key is that the

14  jury deliberated with all of the evidence presented and admitted, not just what

15  Plaintiffs kept pushing as the "likely" positioning of both the deputies as well as

16  Decedent.  The jury had the right and duty to review all evidence presented [Doc.

17  #175, Instruction #2:5]; indeed, Jury Instruction #21 directs the jurors to consider 13

18  separate circumstances known to Dep. Martinez as to whether he used excessive

19  force against Decedent.  Instruction #35 (Duty to Deliberate) specifically guides the

20  jury when deliberations become difficult. Difficulty often rests with interpretation of

21  testimony or admitted exhibits. In the present case, Plaintiffs blindly contend that

22  the jury was equally split and, clearly misinterpreted the clear weight of evidence in

23  Plaintiffs' favor.

24    Yet, the jury clearly deliberated as required, and came to its unanimous

25  decision that Dep. Martinez's use of lethal force was justified at the time it was used.

26  / / /

27  / / /

28  / / /

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

12

## B.    Plaintiffs' Attack on Sgt. LaFever's Testimony is Misguided and Speculative.

Initially, Plaintiffs make a concerted leap to suggest that Sgt. LaFever's testimony regarding his presence near Dep. Martinez at the time of the Decedent's being shot was false. [Motion, 12:27, 14:6-7, 14:19-22, 15:3-7.]  Plaintiffs suggest that the defense orchestrated Sgt. LaFever's testimony – knowing it was false – to provide an additional eyewitness to the events immediately preceding and at the time of Decedent's being shot. [Motion, 14:19-22, 14:fn 10, 15:3-7.]

First, Plaintiffs' accusation is extremely serious. It is an ethical violation for counsel to knowingly allow false testimony while the witness is under oath (or at any other time).  Plaintiffs' accusation of defense counsel's impropriety was also noticeably absent from Plaintiff counsel's meet and confer efforts, as required under L.R. 7-3. [Salen Dec, ¶ 4.]

Next, Plaintiffs already made this *identical* argument during the trial.  Both in cross-examination and during closing argument, Plaintiffs repeatedly attacked the credibility of Sgt. LaFever's testimony that he was at the scene at the time of the shooting.  [MA Ex. #9, 97:4, 109:21, MA Ex. #18, TEx. #333-A, 00:38:00-39:23.]

However, the audio, on its own, is inconclusive as to what bangs were heard – and if the audible shots were the 40-40 rounds, as testified to by Sgt. LaFever [MA Ex. 9, 61:1-3], or whether they were the lethal gunfire from Dep. Martinez which, on Dep. Martinez's audio recording, the latter of which clearly identify three gunshots (rather than the two heard on Sgt LaFever's recording device) [MA Ex. #17, TEx. #4A].

Moreover, Sgt. LaFever testified both on direct and on cross-examination that he wore a belt audio recorder and had his that day. [MA Ex. #9, 22:6-8] Sgt. LaFever later testified that he would, on occasion, pause his recording device "here and there", depending on the circumstance. [MA Ex. #9, 22:6-8, 92:13-18.]  Of particular note on cross-examination – *prior to* lunch, Sgt. LaFever testified that he

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

13

1   "may have paused it when [he] was back at the command post. So [he didn't ] know

2   that it was recording when [he] went back up to the instant location." [MA Ex. 9,

3   98:1-3.]  Later, on re-direct, Sgt. LaFever reiterated that he likely had turned off the

4   audio recorder at the command post, and upon returning to the scene, was uncertain

5   when he had reactivated the recorder, testifying, "It would depend, but possibly

6   not." [MA Ex. 9, 136:19-24.]  Sgt. LaFever clarified that someone listening to the

7   recording would not be able to tell when it was paused; rather, it would be

8   continuous, and pausing would not be apparent from simply listening to the

9   recording. [MA Ex. 9, 137:1-7.] Again, Plaintiffs suggest impropriety in this regard

10  – that Sgt. LaFever was instructed by defense counsel to lie under oath – an

11  outrageous unsubstantiated accusation. However, such testimony simply reiterated

12  and clarified Sgt. LaFever's prior testimony made on cross-examination earlier as to

13  his custom and practice where, on occasion, he might turn his recording off.  At the

14  command post, it would not be necessary to record events.

15      Critically, there is zero evidence that Sgt LaFever's testimony was untrue, let

16  alone intentionally contrived.  There is also no evidence that defense counsel, in any

17  way, elicited Sgt Fever to falsely state anything on the record.

18      In any event, Plaintiffs have failed to show that the jury was prejudiced in any

19  way by Sgt. LaFever's purported false testimony.  The jurors certainly were aware

20  prior to deliberation that Plaintiffs disputed the veracity of Sgt. LaFever's testimony.

21  [MA Ex. #9, 136:6-9.]  Plaintiffs' motion lacks support by a declaration of any of

22  the jurors that the false testimony was relied upon by the jurors in their deliberation

23  and unanimous verdict in favor of defendants.

24      Indeed, Sgt. LaFever's testimony was irrelevant to Defendants' contentions,

25  which were, instead, substantiated by multiple other witnesses, inclusive of deputies

26  Cervantes and Martinez.

27  / / /

28  / / /

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

C.    **Plaintiffs Waived Their Claim That Defense Counsel Used Evidence Not Admitted During Closing.**

"To receive a new trial because of attorney misconduct in the civil context, [the moving party] must meet a high standard: the moving party must demonstrate adverse counsel's misconduct … substantially interfered with the moving party's interest." *SEC v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012).  "Further, [t]o warrant reversal on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Id.* "Where misconduct permeates the proceeding, the jury is necessarily prejudiced." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995).

" '[W]hile constant objections are certainly not required, as they could antagonize the jury,' a party's failure to object is a factor that may be considered when evaluating a motion for new trial based on attorney misconduct." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984). "Other relevant factors include whether the asserted misconduct was ameliorated by curative instructions and whether the party seeking a new trial had an opportunity to rebut opposing counsel's allegedly improper statements." *Maxwell v. Cty of San Diego*, 714 F.App'x 641, 645 (9th Cir. 2017).

In this case, Plaintiffs allege that defense counsel referenced evidence that was not admitted during his closing argument. However, at no time during defense counsel's closing argument did Plaintiff ever raise an objection pertaining to same, or otherwise request a side-bar. [Salen Dec. ¶7.] Further, Plaintiffs' counsel had the opportunity to rebut any of defense counsel's references to evidence not admitted, but chose silence. [Salen Dec. ¶8.] Plaintiffs' urging that the improper argument by defense counsel prejudiced Plaintiffs is now barred. *Computer Sys Eng'g, Inc. v. Oantel Corp.*, 740 F.2d 59, 69 (1st Cir. 1984); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 948 F.2d 613, 619 (5th Cir. 1988).

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

15

1  Plaintiffs contend that defense counsel referenced Dep. Campos's position

2  near the time of the shooting as being back by a tree; Plaintiffs further contend that

3  defense counsel referenced that Decedent had both pushed and choked his brother,

4  Andrew, and finally, Plaintiffs contend that defense counsel referenced Decedent's

5  being under the influence of amphetamines at the time.

6  As mentioned, Plaintiffs failed to raise any objection at any time for any of

7  the alleged misconduct. On that basis alone, their tardy attempt to object to defense

8  counsel's use of unadmitted evidence is waived.

9  Second, the use of each of the evidentiary issues was harmless. Plaintiffs had

10  the opportunity to rebut the claims made during their closing argument, but did not.

11  Moreover, Plaintiffs' assertion that defense counsel stated that Decedent

12  choked his brother is irrelevant – based on Plaintiffs' own contention that the jury's

13  deliberation was primarily focused, not on what happened at any time prior to just

14  before Dep. Martinez fired the lethal shots, but the positioning of Dep. Martinez,

15  Dep. Cervantes, and the position of Decedent at the approximate time of the shots.

16  Dep. Martinez testified that he was unaware that Andrew Nunez had been

17  choked at any time prior to discharging his firearm.  Again, however, no objection

18  was made, and, of course, Plaintiffs were able to rebut this issue in rebuttal.

19  Next, Plaintiffs' assertion that defense counsel referenced the specific drug

20  that Decedent was under the influence of, again, was irrelevant to the reasonableness

21  of Dep. Martinez's use of lethal force at the time he did because it was unknown to

22  Dep. Martinez.   At the same time, Dep. Martinez was certainly aware that Decedent

23  may have been under the influence of drugs, had been up for days, and was acting

24  erratically.  His erratic behavior was thereafter visually observed by Dep. Martinez.

25  There was no evidence, one way or the other, as to how any particular drug would

26  impact Decedent's emotional state or physical response, and thus, this entire issue

27  was irrelevant to the jury's deliberations.

28  / / /

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

16

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT
TO F.R.C.P. 59

1    Finally, as previously stated, Plaintiffs' counsel had time in his rebuttal to
2  discuss defense counsel's use of non-admitted evidence, but chose not to.

3  **IV.    CONCLUSION**

4    Plaintiffs' motion for new trial is eerily similar to much of their case-in-chief
5  and argument in closing – Plaintiffs attempted through testimony of multiple
6  witnesses to show that Dep. Martinez should not have had a reasonable belief at the
7  time he discharged his lethal firearm that his life was in immediate danger or
8  imminent harm from Decedent's conduct.  However, each of their contentions was
9  previously made during the trial.  And, several of them rely upon interpretations of
10  evidence that had alternative interpretations – such as the location of Decedent just
11  prior to being shot (was he in front of the gray Charger or was he moving into the
12  space between the two vehicles?); such as the location of deputies Cervantes and
13  Martinez just prior to the use of lethal force.

14    Plaintiffs also contend that Sgt. LaFever's testimony was false. Yet, this
15  testimony was not a surprise to the jury – Plaintiffs repeatedly presented their
16  position that it was false, both while Sgt. LaFever was on the stand and later, during
17  their closing argument. Thus, how much weight was given to Sgt. LaFever's
18  testimony is limited to the jurors' decisions in weighing the evidence and credibility.
19  There lacks any declaration by jurors that they relied upon Sgt. LaFever's testimony
20  in making their decision in favor of defendant.

21    Finally, Plaintiffs failed to timely (or, at all) object to defense counsel's
22  referenced facts not in evidence during closing.  But, taking each evidentiary issue –
23  choking, drug, and Dep. Campos location – none was relevant to the jury's
24  deliberation in favor of Dep. Martinez about his perception of an immediate threat
25  of imminent death or serious injury from Decedent at the time he made the tactical
26  decision to use lethal force.

27  / / /
28  / / /

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

17

1    In effect, Plaintiffs' motion for new trial must be denied because the clear

2   weight of evidence submitted to the jury substantially justified their unanimous

3   verdict in favor of defendants.

4

5   DATED:  June 19, 2025                    WESIERSKI & ZUREK LLP

6

7

8                                    By:   _____

9                                          CHRISTOPHER P. WESIERSKI
                                           ABE G. SALEN
10                                         Attorneys for Defendants, COUNTY OF
                                           SAN BERNARDINO, CITY OF
11                                         HESPERIA, MICHAEL MARTINEZ,
                                           SABRINA CERVANTES and JEREMY
12                                         DEBERG

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

18

## <u>DECLARATION OF ABE G. SALEN</u>

I, Abe G. Salen, declare:

1.      I am an attorney at law licensed to practice before all the courts of the State of California and am Of Counsel to Wesierski & Zurek LLP, counsel of record for Defendants, County of San Bernadino, City of Hesperia, Michael Martinez, Sabrina Cervantes, & Jeremy Deberg.

2.      The following facts are within my own personal knowledge, except as to those matters stated to be on information and belief, which I believe to be true.  If called as a witness, I could and would competently testify to these facts.

3.      On May 27, 2025, Mr. Benjamin Levine, counsel for Plaintiffs, emailed me to request a call to meet and confer over various topics, including the following: (1) the verdict was against the clear weight of evidence; (2) the verdict was the result of false or perjurious testimony by Corey LaFever, whose false testimony was endorsed by counsel before the jury; (3) In closing argument, defense counsel improperly referenced prejudicial details that were never admitted; and (4) individually and cumulatively, the foregoing denied plaintiffs the right to a fair trial, such that allowing the verdict would be a miscarriage of justice.

4.      On May 30, 2025, Mr. Levine and I spoke by telephone and discussed Plaintiffs' contentions.  At no time during this call, or at any other time, until receipt of Plaintiffs' motion, was I (or anyone else in my firm to my knowledge) made aware that Plaintiffs contended defense counsel intentionally elicited false testimony from Sgt. LaFever.

5.      Neither I, nor anyone else at Wesierski & Zurek, LLP, to my knowledge, ever elicited, solicited, or otherwise requested that Sgt. LaFever – or any other witness in this case – testify untruthfully for any reason.

6.      Defendants' Opposing Affidavits referencing trial testimony and admitted evidence to support their opposition are reliant almost entirely upon Plaintiffs' Moving Affidavits, and specifically portions of Exhibits #1 (Dep. Michael

19

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Martinez testimony), #3 (Dep. Sabrina Cervantes testimony), #5 and #6 (Dep.

2  Jeremy Deberg testimony), #7 (Dep. Jonathan Campos testimony), #9 (Sgt. Corey

3  LaFever testimony), #15 (Dr. Scott Luzi, MD testimony), #17 (Dep. Martinez

4  audio/Trial Exhibit #4A), #18 (Sgt. LaFever audio), and #21 (Trial Exhibit #341C),

5  and thus, are attached hereto, only to identify the relevant portions cited.

6       7.     I attended each day of trial, between April 21, 2025, and May 1, 2025.

7  Closing arguments were conducted on Tuesday, April 29, 2025. At no time during

8  defendants' closing argument – provided by defense counsel Christopher P.

9  Wesierski – did any of Plaintiffs' counsel state an objection or, otherwise, seek a

10  side bar regarding any issue pertaining to defendants' closing.

11       8.     As Plaintiffs, their counsel had the opportunity to provide a final

12  rebuttal closing argument, and did so.  At no time during their closing rebuttal

13  argument did Plaintiffs' counsel ever identify any reference to inadmissible

14  evidence, or attempt to explain it away.

15       I declare under penalty of perjury under the laws of the State of California

16  that the foregoing is true and correct.

17       Executed on this 19th day of June, 2025, at Lake Forest, California.

18

19

20  _____

21  Abe G. Salen

22

23

24

25

26

27

28

**WESIERSKI & ZUREK LLP**
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4922-5750-2797.2 SBD-00015

OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59