MA EXHIBIT 1

```
1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

3         HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE

4

5   ROSA NUÑEZ, et al.,                )
                                       )
6                    Plaintiffs,       )
                                       )
7        v.                            )        Case No.
                                       )  ED CV 22-1934 SSS (SPx)
8   COUNTY OF SAN BERNARDINO, et al.,  )
                                       )
9                    Defendants.       )
    _____)

10

11        REPORTER'S PARTIAL TRANSCRIPT OF TRIAL PROCEEDINGS
              DIRECT EXAMINATION OF MICHAEL MARTINEZ
12                  TUESDAY, APRIL 22, 2025
                          9:11 AM
13                   RIVERSIDE, CALIFORNIA

14

15

16

17

18

19

20

21

22   _____

23   MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
          FEDERAL OFFICIAL COURT REPORTER
24        350 WEST 1ST STREET, ROOM 4455
          LOS ANGELES, CALIFORNIA  90012
25               (213) 894-2305
```

```
  1   direction back towards the front door?

  2        A.    Yes, sir.

  3        Q.    Now, when Anthony was walking back towards the front

  4   door, where were the officers, if you know?

  5        A.    I know Deputy Cervantes was to my left.  I didn't

  6   really know where everybody else transitioned to as he was

  7   walking back to the front door area of the residence.

  8        Q.    Well, at some point, you observed officers behind

  9   the vehicles, didn't you?

 10        A.    Yes.  But as far as positioning, I didn't know where

 11   everybody was at, sir.

 12        Q.    Well, you and Cervantes were behind the vehicles;

 13   true?

 14        A.    Yes, sir.

 15        Q.    And was it your impression that Deberg and Campos

 16   would -- were somewhere to your left?

 17        A.    That's correct, sir.

 18        MR. GALIPO:  May I have one moment, Your Honor?

 19        THE COURT:  Yes.

 20        MR. GALIPO:  I have to make sure to find the right

 21   photograph.

 22             (Pause in the proceedings.)

 23        MR. GALIPO:  Okay.  Can we show Exhibit 1, page 51,

 24   again, please?

 25        Q.    (BY MR. GALIPO:)  By the way, you have training on
```

```
           1          A.    Would you --

           2          Q.    When he was in the dirt area and these

           3    40 millimeters are striking him, where were you in relation to

           4    the Charger at that time?

10:26AM    5          A.    The left side of the rear bumper.

           6          Q.    Okay.  So towards the rear bumper of the car on the

           7    driver's side.  When you say the left side, you're meaning the

           8    driver's side?

           9          A.    Yes, sir.

10:27AM   10          Q.    So we could see the two, I guess, taillights of the

          11    car that look to be reddish in color.  You would have been near

          12    the one on the left in the back?

          13          A.    On that side, yes.

          14          Q.    Okay.  And then when he started walking in front of

10:27AM   15    the Charger, you observed him do that; correct?

          16          A.    Yes, sir.

          17          Q.    Did you kind of move to your right, kind of tracking

          18    him?

          19          A.    That's correct, sir.

10:27AM   20          Q.    And at that time, did you know -- did you have a

          21    sense of where any of the other officers were?

          22          A.    I knew they were all to my left.  Specifically, I

          23    believe Cervantes was directly to my left.  As far as the

          24    positioning of the other deputies, I do not.

10:28AM   25          Q.    Okay.  So when you say Cervantes was directly to
```

1    your left, you mean close to you but on your left side?

2    A.    Yes, sir.

3    Q.    And then obviously you would have been to her right?

4    A.    Correct, sir.

10:28AM    5    Q.    And by the way, somewhere in the sequence, after the

6    40 millimeters, did you see someone try to tase Anthony?

7    A.    Yes, sir.

8    Q.    Would that be Deputy Campos?

9    A.    Yes, sir.

10:28AM    10    Q.    Could you tell whether both of the prongs or darts

11    struck Anthony or not?

12    A.    No, sir.

13    Q.    You couldn't tell?

14    A.    No, sir.

10:28AM    15    Q.    At any time before Anthony got to the front of the

16    Dodge Charger, at any time before he got to the front, did you

17    see him try to attack any deputies?

18    A.    No, sir.

19    Q.    And at that point, you had been with him for about

10:29AM    20    an hour and a half?

21    A.    That's correct, sir.

22    Q.    We've been in session almost an hour and a half this

23    morning.  That's about the time you -- you were with him prior

24    to him getting to the front of the Dodge Charger; is that

10:29AM    25    right?

**UNITED STATES DISTRICT COURT**

1    Q.    When she fired her bean bag shotgun round, you are

2    telling us that Anthony was in front of this gray car by the

3    front bumper but more on the passenger side of the front?

4    A.    Yes.    Almost in between both vehicles, sir.

10:35AM  5    Q.    And at that -- up to that point in time, from

6    leaving the dirt area to the bean bag shotgun round, you

7    described Anthony as walking; correct?

8    A.    With a purpose, yes.

9    Q.    Well, I'm not sure about the purpose thing, but

10:35AM  10   he -- would you agree he was walking?

11   A.    Yes, sir.

12   MR. GALIPO:  If we could show Exhibit 1, page 51,

13   again, please.

14   Do you want me to go to a quarter of or what's best?

10:36AM  15   THE COURT:  If you're going to move on to a

16   different kind of subject, we can stop now.  If you want to --

17   if you want to finish with this photograph, we can as well.

18   Usually I'll take a break around 10:40.

19   MR. GALIPO:  Okay.  I can go to 10:40, if that's

10:36AM  20   okay.

21   THE COURT:  Now is fine as well.  So it's up to you.

22   MR. GALIPO:  Okay.  I don't mind asking a few more

23   questions, if that's okay.

24   THE COURT:  Okay.  Go ahead.

10:36AM  25   Q.    (BY MR. GALIPO:)  You told us when Anthony was in

```
  1          Q.     You see lines 9 and 12 where you reference, "I think
  2   after the third shot, he maybe took a couple of steps and then
  3   went to the ground"?
  4          A.     Yes, sir.
11:31AM  5          Q.     And these couple of steps you're talking about would
  6   have been steps going somewhat in between the cars?
  7          A.     Are you specifying to a direction, sir?
  8          Q.     Yeah.  The direction, I guess, would be east; right?
  9          A.     Yes, sir.
11:31AM 10          Q.     Yes.  You're saying --
 11                 MR. GALIPO:  If we could put up Exhibit 1-39.
 12                 I think that's already admitted, Your Honor.
 13   Exhibit 1, page 39?
 14                 THE COURT:  Yes.
11:31AM 15                 MR. GALIPO:  Okay.
 16          Q.     (BY MR. GALIPO:)  Can you see that on your screen?
 17          A.     Yes, sir.
 18          Q.     So just to make sure I have your chronology correct,
 19   he's in front of this gray Charger, more on the passenger side,
11:32AM 20   when Cervantes fires her less-lethal round.  I have that
 21   correct?
 22          A.     Sir, I don't know if I would say if he was clear of
 23   the vehicle or more so to the passenger side.  I --
 24          Q.     Well, that's okay.
11:32AM 25                 Somewhere in the front closer to the passenger side
```

1    but not necessarily clear of the vehicle yet.  Is that fair?

2         A.    That's what I was trying to say, sir.  I don't know

3    if he was completely clear of the vehicle when she shot or if

4    he was still a little bit in front of the vehicle.

11:32AM  5         Q.    Okay.  That's fine.  But somewhere in the area in

6    front of the car?

7         A.    Yes, sir.

8         Q.    Okay.  And then you fired your first shot.  And

9    you're saying after that, he -- he -- you're saying he turned

11:32AM  10   and moved a couple of feet towards you; correct?  Maybe took a

11   step.

12        A.    Yes, sir.

13        Q.    And then you fired a shot, and you're saying he

14   might have moved another foot or two?

11:33AM  15        A.    Yes, sir.

16        Q.    And then you fired a second shot and then a third

17   shot?

18        A.    Yes, sir.

19        Q.    And after your third shot, you're saying he took a

11:33AM  20   couple of more steps in between the cars after your third shot;

21   correct?

22        A.    Yes, sir.

23        Q.    And then you're saying, if I understand you

24   correctly, he fell forward?

11:33AM  25        A.    I don't recall if he had fell to his side, fell

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3   COUNTY OF LOS ANGELES  )
                           )
4   STATE OF CALIFORNIA    )

5

6          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10  IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11  REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12  THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17              DATED THIS 26TH DAY OF APRIL, 2025.

18

19

20              /S/ MYRA L. PONCE
                _____
21              MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                   FEDERAL OFFICIAL COURT REPORTER
22

23

24

25
```