# MA EXHIBIT 15

```
                   UNITED STATES DISTRICT COURT

         CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

         HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE



ROSA NUÑEZ, et al.,                  )
                                     )
              Plaintiffs,            )
                                     )
    v.                               )       Case No.
                                     )   ED CV 22-1934 SSS (SPx)
COUNTY OF SAN BERNARDINO, et al.,    )
                                     )
              Defendants.            )
_____)


         REPORTER'S PARTIAL TRANSCRIPT OF TRIAL PROCEEDINGS
             DIRECT EXAMINATION OF SCOTT LUZI, M.D.
                    THURSDAY, APRIL 24, 2025
                           11:35 AM
                     RIVERSIDE, CALIFORNIA










    _____

        MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
              FEDERAL OFFICIAL COURT REPORTER
               350 WEST 1ST STREET, ROOM 4455
               LOS ANGELES, CALIFORNIA  90012
                       (213) 894-2305
```

|  |  |
|---|---|
| | 1   the body and move down to -- upper right front of the body and |
| | 2   move down through wounds.  And then -- then we look at the, um, |
| | 3   posterior, the back of the body, and basically move down to the |
| | 4   lower right of the body. |
| 11:46AM | 5   So just because a particular wound was designated A |
| | 6   doesn't mean that it occurred actually before a wound that was |
| | 7   subsequently labeled as B. |
| | 8   Q.   And so there's an expression I've heard sometimes |
| | 9   that the body is in an anatomical position.  Is that sometimes |
| 11:47AM | 10  used in your profession? |
| | 11  A.   Yes.  That anatomical position is something that we |
| | 12  use for reference when we talk about the pathway of a wound, |
| | 13  going front to back, right to left, upward or downward. |
| | 14  So the anatomic position would be an individual |
| 11:47AM | 15  standing on their feet with their arms down at their sides and |
| | 16  their hands, their palms facing forward.  So that is the |
| | 17  general anatomic position. |
| | 18  When I refer in my report to the direction, it will |
| | 19  be in reference to that position. |
| 11:47AM | 20  Q.   So in general, starting with Gunshot Wound A in your |
| | 21  report, that would be the -- the one that was highest up on the |
| | 22  body or closest to the top of the head? |
| | 23  A.   Yes. |
| | 24  Q.   And then the next one, B, as we'll get to in a |
| 11:48AM | 25  moment, would be the next one going down from head to toe? |

**UNITED STATES DISTRICT COURT**

|  |  |
|---|---|
|  | 1    A.    Yes. |
|  | 2    Q.    All right.  Let's first talk about Gunshot Wound A. |
|  | 3          Can you please tell the jury, Doctor, where that |
|  | 4  gunshot wound was located on Mr. Nuñez's body? |
| 11:48AM | 5    A.    So that was on the back of his right arm.  So behind |
|  | 6  on the back part of his right arm. |
|  | 7    Q.    And that was an entrance wound? |
|  | 8    A.    Yes. |
|  | 9    Q.    And after entering the back of the right arm, where |
| 11:48AM | 10 did that bullet go? |
|  | 11   A.    So it went through the muscle of his arm.  It did |
|  | 12 not hit the bone in his arm, his humerus.  And it came out -- |
|  | 13 we call that part the axilla.  That's the scientific word for |
|  | 14 your armpit.  So it came out that part of his arm around his |
| 11:48AM | 15 armpit. |
|  | 16   Q.    So that bullet had an entry and exit in the right |
|  | 17 arm? |
|  | 18   A.    Yes. |
|  | 19   Q.    And with the body in an anatomical position, did |
| 11:49AM | 20 that bullet travel -- which direction? |
|  | 21   A.    So I'm going to refer to my notes, ma'am. |
|  | 22         THE COURT:  Go ahead.  Yes. |
|  | 23         THE WITNESS:  So it was directed back to front, |
|  | 24 right to left, and upward. |
| 11:49AM | 25   Q.    (BY MR. GALIPO:)  Okay.  And after exiting the right |

```
1    arm, where did that bullet go next?
2        A.    So that looked -- appears to have reentered the body
3    on the medial portion or the chest side of the armpit.
4        Q.    Okay.  So do I -- do I have it correct that it would
5    have entered the outside of the right arm, exited the inside of
6    the right arm, and then reentered the body in the chest?
7        A.    In general, yes.  It was from the back of the right
8    arm.  But, yes, it went to the inside of the right arm and then
9    entered through the chest.
10       Q.    And did -- the shot, I think you already indicated,
11   Doctor, had a right-to-left trajectory?
12       A.    Yes.
13       Q.    And once it entered the -- or reentered the chest,
14   where did the bullet go?  What did it go through?
15       A.    So it went through the -- the right lung, the root
16   of the aorta, and the pulmonary artery.  So those are the
17   largest vessels -- those are vessels coming out of the heart.
18   The aorta supplies blood to the body, whereas the pulmonary
19   artery supplies blood to the lungs so it can get oxygen.  So
20   you have two large arteries having been injured there.  And
21   then it went into the left side of the chest.
22       Q.    So that bullet also traveled right to left --
23       A.    Yes.
24       Q.    -- once it entered the chest?
25       A.    Yes.
```

Timestamps: 11:49AM (line 5), 11:50AM (lines 10, 15, 20, 25)

|        |                                                                                      |
|--------|--------------------------------------------------------------------------------------|
| 1      | you give me a hypothetical.                                                          |
| 2      | Q.   Of course.                                                                      |
| 3      | And is this something you've been asked and called                                   |
| 4      | upon to do in courts before?                                                         |
| 5      | A.   Yes.                                                                            |
| 6      | Q.   And something you have done on numerous occasions?                              |
| 7      | A.   Yes.                                                                            |
| 8      | Q.   Something you feel comfortable doing depending on                               |
| 9      | the facts and the hypothetical, if it's complete or not?                             |
| 10     | A.   Yes.                                                                            |
| 11     | Q.   Okay.  So I'm going to try my hypothetical again and                            |
| 12     | let me know if it makes sense.                                                       |
| 13     | The -- I'm just talking now about the gunshot wound                                  |
| 14     | to the right arm that entered, exited, and reentered the chest.                      |
| 15     | Are you with me?                                                                     |
| 16     | A.   Yes.                                                                            |
| 17     | Q.   First of all, to get the entry wound on the outside                             |
| 18     | of the right arm, would the outside of the right arm have to be                      |
| 19     | exposed to the muzzle of the gun and the bullet?                                     |
| 20     | A.   Yes.                                                                            |
| 21     | Q.   And then for it to travel through the arm in --                                 |
| 22     | right to left and enter the chest right to left going across                         |
| 23     | the body, is that, in your mind, consistent with the shooter                         |
| 24     | and the decedent being on the same ground plane and the shooter                      |
| 25     | and the decedent's right side being to the shooter at the time                       |

Timestamps: 11:53AM (line 5), 11:53AM (line 10), 11:54AM (line 15), 11:54AM (line 20), 11:54AM (line 25)

```
 1  that shot was sustained, explaining the right-to-left
 2  trajectory?
 3       A.   So as far as the -- being on the same ground, I
 4  don't know what -- are you -- did you say that they were the
 5  same size?
 6       Q.   Same ground plane.  In other words, they were
 7  both -- one wasn't up high and the other down low.  They were
 8  on the basic same ground plane.
 9       A.   Okay.  So, I mean, yes, that is consistent -- the
10  wound path I documented is consistent with that hypothetical
11  that you presented.
12       Q.   Okay.  Let me give you another hypothetical.  Let's
13  assume that the decedent was directly facing the shooter so the
14  decedent's chest was directly towards the shooter.  Are you
15  with me?
16       A.   Yes.
17       Q.   Assuming that hypothetical, would you expect to get
18  the right-to-left trajectory we have across the body, right to
19  left, as we see in Gunshot Wound A?
20       A.   No.
21       Q.   And I take it the reason that shot was fatal, in
22  part, is because it went through vital organs, as you've
23  described?
24            MR. WESIERSKI:  Objection.  Asked and answered.
25            MR. GALIPO:  I'll re-ask it in a different way.
```

```
 1                THE COURT:  Go ahead.
 2                MR. GALIPO:  I'll re-ask it.
 3       Q.     (BY MR. GALIPO:)  Have you fully explained why that
 4   shot was fatal, or are there other factors as well?
 5       A.     That is a full explanation of the injuries
 6   sustained.
 7       Q.     Okay.  Let's talk about Gunshot Wound B as indicated
 8   in your report.  Does that relate to the re-entry or something
 9   else?
10       A.     B is likely a reentry of Gunshot Wound A.
11       Q.     So you have already explained Gunshot Wound B in
12   your report that, in essence, in your opinion, more likely than
13   not, is the reentry in the chest from the shot that went in and
14   out of the arm?
15       A.     Yes.
16       Q.     Let's go to, please, then, to Gunshot Wound C.  Can
17   you tell the jury where that entered the body?
18       A.     That was on the -- we call it the lateral -- excuse
19   me -- lateral right torso.  So the side of his torso, side of
20   his -- around the chest.  It entered and injured the right
21   lung -- excuse me.  Make sure I'm looking at my notes right.
22   Yes, the right lung, went through the diaphragm to injure the
23   liver.  And it went through a lumbar vertebrae, and then it
24   went back into the left side of the diaphragm.  And that's
25   where we recovered a bullet from.
```

```
 1       Q.   And I think you've already done this.  But is it
 2  possible, Dr. Luzi, to point again to the -- even stand up, if
 3  the judge would permit, and point to where on your body that
 4  entry wound is?
 5            THE COURT:  Do you need to stand?
 6            THE WITNESS:  I'm short enough, I think I need to.
 7            THE COURT:  Go ahead.  You can stand up.
 8            THE WITNESS:  On the side -- lateral right torso,
 9  about here (indicating).
10       Q.   (BY MR. GALIPO:)  Okay.  Thank you for that.
11            And what was the trajectory of that bullet in the
12  body?
13       A.   Excuse me.  I'm looking at my notes.
14            Wound path was directed right to left.
15       Q.   And did it pass through the body essentially right
16  to left?
17       A.   Yes.
18       Q.   And so my hypothetical that I -- I gave you with the
19  right side of the decedent to the shooter at the time that shot
20  was sustained, would that also be consistent with Gunshot
21  Wound C because of the entry point on the right side and the
22  right-to-left trajectory across the body?
23       A.   Yes.
24       Q.   And then if I was to ask you the same hypo I did
25  before is that Gunshot Wound C consistent with the decedent
```

```
                1    facing towards -- directly towards the shooter, what would your
                2    answer be?
                3         A.   No.
                4         Q.   Was that wound fatal or potentially fatal, in your
11:59AM         5    opinion?
                6         A.   Potentially fatal.  Again, it hit the right lung,
                7    which was hit in the other wound as well, and hit the liver,
                8    which was a very vascular organ, meaning that it -- it contains
                9    a lot of blood.  So there's potential -- excuse me -- for
11:59AM        10    losing a lot of blood from the liver.
               11             I didn't see that there was injury -- excuse me --
               12    that there was blood in his abdomen like I did see the blood in
               13    the chest.  So it appears that he did not bleed much from his
               14    liver.
11:59AM        15         Q.   So most of the bleeding was associated with the shot
               16    that you believe went through the right arm and into the right
               17    chest?
               18         A.   Yes.
               19         Q.   And then is there a Gunshot Wound D in your report?
12:00PM        20         A.   Yes.
               21         Q.   And where -- what part of the body was that to?
               22         A.   So this was on the lower right abdomen.  And this
               23    really just hit soft tissues and didn't hit any vital
               24    structures.
12:00PM        25         Q.   Okay.  And what was the general -- where did that
```

```
 1  bullet go through the body?  I hear you're saying it's mostly
 2  soft tissue?
 3      A.    Yes.  So it hit the abdominal wall, appears to have
 4  traced through the abdominal wall.  And we recovered a bullet
 5  from the soft tissues, the muscles, the subcutaneous tissues
 6  around the left side of his hip.
 7      Q.    And what was the trajectory of that bullet in the
 8  body?
 9      A.    So that was front to back, right to left, and
10  downward.
11      Q.    Okay.  Would that shot, the Gunshot Wound D, Doctor,
12  be consistent with the decedent facing towards the shooter at
13  the time of that shot?
14      A.    It's not as perfect as -- I'm -- "perfect" is not
15  the right word to use.  But it's not as classic as those other
16  two wounds we've been talking where the -- the decedent was
17  roughly perpendicular to the muzzle.  There was -- at some
18  angle, he may have had some -- been in front of the decedent to
19  some degree.
20      Q.    Okay.  So let me give you a -- a hypothetical
21  involving three shots.  And you let me know if this is
22  consistent with the medical evidence from autopsy.
23            For the first two shots in my hypothetical, the
24  decedent's right side is to the shooter.  In other words, his
25  body, as I think you just used the word, is perpendicular to
```

Timestamps: 12:00PM (line 5), 12:00PM (line 10), 12:01PM (line 15), 12:01PM (line 20), 12:01PM (line 25)

**UNITED STATES DISTRICT COURT**

```
 1   the shooter.
 2       A.   Yes.
 3       Q.   Are you with me so far in the hypothetical?
 4       A.   Yes.  I want to emphasize, in general, I --
 5   perfectly perpendicular, I can't say, but in general, yes.
 6       Q.   I'm not saying perfectly but in general.  Is that
 7   what you understand?
 8       A.   Yes.
 9       Q.   And then after those two shots were sustained, in my
10   hypothetical, the decedent starts to turn somewhat in the
11   direction of the shooter.  Would that hyp- -- and sustained the
12   third shot to the stomach.  Are you with me in my hypothetical?
13       A.   Yes.
14       Q.   So the first two shots, one goes through the arm and
15   the chest, the other one hits the right side and goes across
16   the body right to left.  And then he turns towards the shooter.
17   And the third shot strikes him in the stomach.
18            Do you understand my hypothetical so far?
19       A.   Yes.
20            MR. WESIERSKI:  I'm sorry.
21            MR. GALIPO:  If I could just finish it, and then you
22   can object.
23            MR. WESIERSKI:  Sure.
24       Q.   (BY MR. GALIPO:)  And would that scenario, in those
25   three shots I just gave you in my hypothetical, be consistent
```

```
 1   with the entry points and trajectory of the bullets as you
 2   indicated in your autopsy report?
 3              MR. WESIERSKI:  Objection.  Misstates the evidence.
 4   No foundation as to the order of shots as the witness
 5   indicated.  Calls for speculation.  And an incomplete
 6   hypothetical.
 7              THE COURT:  Well, I'm going to overrule the
 8   objection to the extent that the answer doesn't pertain to any
 9   type of order.
10              So if you're able to answer it without getting into
11   some sort of testimony about order.
12              THE WITNESS:  Yes, ma'am.
13              Yes.
14       Q.    (BY MR. GALIPO:)  And why would my hypothetical at
15   least be consistent with the first two shots hitting him on the
16   right side when he's generally perpendicular to the shooter
17   with his right side to the shooter and the last shot hitting
18   him in the stomach as he's starting to turn in the direction of
19   the shooter?
20              MR. WESIERSKI:  Objection.  I'm sorry.
21       Q.    (BY MR. GALIPO:)  Why is that consistent?
22              MR. WESIERSKI:  Objection.  Misstates the evidence.
23   Incomplete hypothetical.  No foundation based on what the
24   witness said.
25              THE COURT:  Okay.  Overruled.
```

```
                    You can answer.
                    THE WITNESS:  So, yes, with the hypothetical you're
   presenting, it's possible.  It's also -- there are other
   possibilities as well.
       Q.   (BY MR. GALIPO:)  Right.
                    But what I'm asking you is why is my hypothetical
   consistent with the medical evidence?  Is it because of the
   right-to-left trajectory of the first two shots and the
   slightly different trajectory for the abdomen shot or is it
   something else?
                    MR. WESIERSKI:  Objection.  Leading.
                    THE COURT:  Sustained.
       Q.   (BY MR. GALIPO:)  Why is it consistent, Doctor?  Why
   is the trajectory evidence consistent with my hypothetical I
   gave?
       A.   All three of those wounds have some component of a
   right-to-left trajectory.
       Q.   Right.  But the trajectory of the first two is --
   it's almost perpendicular, as you describe; correct?
                    MR. WESIERSKI:  Objection.  Leading.
                    THE COURT:  Sustained.
       Q.   (BY MR. GALIPO:)  Is the trajectory of the first two
   somewhat different than the third one?
       A.   Yes.
       Q.   How so?
```

| | |
|---|---|
| 1 | **CERTIFICATE OF OFFICIAL REPORTER** |
| 2 | |
| 3 | COUNTY OF LOS ANGELES   ) |
| | ) |
| 4 | STATE OF CALIFORNIA     ) |
| 5 | |
| 6 | I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT |
| 7 | REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE |
| 8 | CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT |
| 9 | TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING |
| 10 | IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY |
| 11 | REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT |
| 12 | THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE |
| 13 | REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES. |
| 14 | |
| 15 | |
| 16 | |
| 17 | DATED THIS 25TH DAY OF MAY, 2025. |
| 18 | |
| 19 | |
| 20 | /S/ MYRA L. PONCE |
| 21 | MYRA L. PONCE, CSR NO. 11544, CRR, RDR |
| | FEDERAL OFFICIAL COURT REPORTER |
| 22 | |
| 23 | |
| 24 | |
| 25 | |