**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

LUIS A. CARRILLO (SBN 70398)
MICHAEL S. CARRILLO (SBN 258878)
DOMINIQUE L. BOUBION (SBN 336915)
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, California 91030
Tel: (626) 799-9375/ Fax: (626) 799-9380

Attorneys for Plaintiffs
ROSA NUÑEZ, ANTHONY NUÑEZ, JR., and ANDREW NUÑEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA NUÑEZ, individually; ANTHONY NUÑEZ, JR., individually and as successor-in-interest to Decedent, Anthony Nuñez; and ANDREW NUÑEZ, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; CITY OF HESPERIA; MICHAEL MARTINEZ; SABRINA CERVANTES; JEREMY DEBERG; JONATHAN CAMPOS; and DOES 5 through 15, inclusive,<br><br>Defendants. | Case No. 5:22-cv-01934-SSS-SP<br><br>*Hon. Sunshine S. Sykes*<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59**<br><br>[*Declaration of Benjamin S. Levine and exhibits thereto filed concurrently herewith*]<br><br>Date: July 11, 2025<br>Time: 2:00 p.m.<br>Crtrm: 2 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants do not effectively rebut the arguments in Plaintiffs' motion: The clear weight of the evidence showed Defendant Martinez fired when Anthony was 20 feet away, not facing or moving toward him or swinging the chain, and without attempting to give a warning or reposition using available space and cover. Sergeant LaFever plainly testified falsely regarding key details, denying Plaintiffs a fair trial. Plaintiffs were further unfairly prejudiced by Defendants' introduction of extraneous details during closing, including evidence the Court had excluded, even without contemporaneous objection. The Court should order a new trial.

## II. DEFENDANTS FAIL TO REBUT THE SHOWING THAT THE VERDICT IS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE

In opposition, Defendants downplay the weight of evidence showing that when Martinez shot, Anthony posed no immediate threat of death or serious injury because of his distance, he was not facing or approaching deputies, and was not swinging the chain. (Mot. at 5-10.) Yet, many points Plaintiffs made are left unaddressed:

- The instructions required a Plaintiffs' verdict if the evidence showed Anthony lacked the present ability, opportunity, or apparent intent to immediately cause death or serious injury—a threat of future injury would not suffice. (Mot. at 4-5, 8-9.)

- Before less-lethal weapons were fired, Anthony never approached deputies or came on the attack. (Mot. at 5.) Coupled with his pained shouts upon being struck and his statement to the deputies, "Jesus, get away!," this indicated he lacked the apparent intent to immediately kill or seriously injure anyone. (Mot. at 10.)

- All deputies testified that, when Deputy Cervantes fired her beanbag round, Anthony was in front of the grey Charger. (Mot. at 6.)[1]

---

[1] Defendants do address this point as to Cervantes's testimony, suggesting she disputed this

- Martinez testified he was 20 feet away from Anthony when he opened fire, that Anthony was not swinging the chain immediately before or during his shots, and that the usable portion of the chain was only six feet. (Mot. at 7-9.)

- Anthony necessarily would have had to swing the chain to strike anyone with it. As Martinez testified, because his gun was drawn and pointed, he could have shot Anthony much faster than Anthony could have approached and swung. (Mot. at 7-8.)

- The one disinterested eyewitness, Luz Ramos, testified that she observed the encounter just until the shots were fired, and she rebutted the deputies' claims that Anthony had swung the chain overhead and charged Martinez. (Mot. at 10.)

- Martinez admitted he could have repositioned before shooting by moving back or around either vehicle, gaining distance and cover, but did not. (Mot. at 10.) This contravened his training, and it was required under key instructions. (Mot. at 5, 10.)

- Martinez failed to issue any verbal warning before shooting, even though it was feasible to do so under these circumstances. (Mot. at 1, 11.)

Defendants' failure to respond to these points constitutes a concession to each. *See Vestis LLC v. Caramel Sales, Ltd.*, No. CV 18-2257-DOC-KES, 2020 WL 1230577, at *2 (C.D. Cal. Feb. 19, 2020) ("a failure to address an argument in opposition briefing constitutes concession of that argument"; collecting cases); *Jackson-Jones v. Epoch Everlasting Play*, 748 F.Supp.3d 823, 832-33 (C.D. Cal. 2024); *Melanie F. v. O'Malley*, 2024 WL 3643090, at *6 (N.D. Cal. Aug. 1, 2024).

Although Defendants argue Martinez did not identify where anyone was when he fired, they acknowledge he testified he and Cervantes were "behind the vehicles." (Opp. at 6.) Deputy Campos also testified that Martinez and Cervantes "were at the trunk area of the vehicles" when Martinez fired, and that when Cervantes fired her beanbag, Anthony was directly opposite the Charger from her. (Ex. 8, 6:13-7:2.)

---

characterization in testifying Anthony had moved past the front of the Charger's bumper. However, she clearly testified that Anthony was standing, stationary, "in the front of the vehicles," and that "there was at least the length of the vehicles in between" them. (Ex. 3 at 7:22-8:15.)

Although Defendants rely on Cervantes's claim that she was between the rears of the vehicles when she fired her beanbag in arguing Martinez's use of deadly force was reasonable, she was not credible. Most significantly, she testified approximately 5-10 seconds passed after she fired her beanbag, before Martinez shot. (Ex. 3, 29:10-30:1; Ex. 23, 9:14-17.) However, the objective evidence showed the beanbag and gunshots were so close they were nearly simultaneous, a point that went undisputed at trial. (Mot. at 6.) This was the critical period, and bore on issues central to the case, making Cervantes's overestimation of the gap in time by a factor of ten highly significant to her credibility. She also testified she fired just one beanbag and that, although she had tried to fire another earlier, her shotgun malfunctioned and did not go off at that time. (Ex. 22, 20:9-21:13.) Yet she admitted that this was contrary to her deposition testimony, wherein she testified she successfully fired *two* beanbags, and that the first struck Anthony in the chest. (Ex. 23, 9:18-12:5.) Her inability to testify consistently about key details, including her own use of force, significantly undercuts her credibility regarding other key details from the same period. The Court should consider this in assessing the clear weight of the evidence. *See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014).

In addressing Anthony's positioning, Defendants acknowledge that Martinez testified that, when he first fired, Anthony was in front of the grey Charger—either directly in front of the passenger-side portion, or in front of the gap between it and the red car. (Opp. at 8.) His claim that Anthony was charging toward him between the vehicles while he fired is contradicted by Deputies Campos and Deberg, who testified that Anthony was in front of the Charger or in front of the cars, respectively. (Ex. 5, 35:21-36:4; Ex. 6, 8:13-21; Ex. 7, 15:20-17:20; Ex. 8, 6:5-7:2, 7:9-14.) Plaintiffs' motion already challenged Martinez's credibility (*see* Mot. at 6-7), which is further doubtful given that he was the only individual defendant at trial and thus had the greatest incentive to skew his testimony in his own favor. *Cf. Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014) (en banc) (explaining that because in

"[d]eadly force cases … the officer defendant is often the only surviving eyewitness," courts "must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify").

Although Defendants rely on Cervantes's testimony that Anthony was between the fronts portions of the vehicles when she fired, her inconsistent and erroneous testimony greatly undermines her credibility, particularly regarding this critical period, as explained.[2] Defendants also cite Campos's testimony that Anthony was "in the area of the front bumper" of the Charger when Martinez fired; however, Campos explained that Anthony was in front of the Charger, facing north, when Cervantes fired from opposite the Charger, and that Anthony was in essentially the same position—still facing north, not toward Martinez or others, and not between the cars—when Martinez opened fire. (Ex. 8, 6:5-15, 6:19-7:14.)

Defendants also rely on helicopter footage from at least several minutes later to argue Anthony was proceeding between the cars when Martinez fired, suggesting the video captured Anthony's resting position upon falling. But the trial evidence—including the video—showed that, by the time the video was taken, deputies had already handcuffed Anthony, necessarily manipulating his body, such that the video is an unreliable indicator of his immediate resting position upon falling. (Ex. 28, 00:03-00:11.) In any event, the position Anthony landed in, as shown by the objective blood evidence, is consistent with Anthony being in front of the Charger for the first shots, then turning and taking a couple of steps forward as he fell during the third shot, as Campos testified, given Anthony stood at 5'11". (*See* Ex. 19 & 20 (showing blood on ground approximately 5 feet into gap from front of Charger); Mot. at 8.)

Although Defendants also reference Dr. Luzi's testimony in attempting to align the physical evidence with their version of events presented at trial, it does little to

---

[2] Cervantes also testified that Anthony paused before she shot, rather than moving continuously. (Ex. 3, 25:22-24, 26:10-15.)

support their position, as explained. (Mot. at 8 & n.7.) And contrary to Defendants' claim that Cervantes's beanbag struck Anthony "in the upper right torso," Dr. Luzi's testimony—that he identified five "ballistic injuries," four of which were crescent-shaped and the fifth, on Anthony's right shoulder, had a different shape—actually makes clear that it struck Anthony in the right shoulder (Ex. 24, 43:20-46:2), consistent with his right side being exposed to Cervantes when she fired.

Although Defendants dispute whether Martinez should have evaluated the effectiveness of Cervantes's beanbag before firing because, they argue, none of the other less-lethal was effective, this ignores Anthony's audible responses, crying out in pain and shouting, "Jesus, get away!" (Mot. at 10.) It was also inconsistent with Martinez's training; as Plaintiffs' expert explained, deputies are trained to assess the effectiveness of less-lethal weapons before using further force. (Ex. 25, 82:19-83:5.)

Under the instructions, a showing that a reasonable deputy would have seen Anthony lacked the present ability, opportunity, or apparent intent to immediately cause death or serious injury—any of the three—required a Plaintiffs' verdict. The clear weight of the evidence showed none were present, warranting a new trial.

### III.   DEFENDANTS FAIL TO REBUT THE FALSITY OF SERGEANT LAFEVER'S TESTIMONY OR ITS SIGNIFICANCE

Although Plaintiffs' motion clearly illustrates the multiple areas of Sergeant LaFever's testimony that were false (Mot. at 11-16), Defendants continue to deny this falsity even now. (Opp. at 14 (contending "there is zero evidence that Sgt LaFever's testimony was untrue").) In the face of his testimony's patent falsity, this should give the Court serious pause. (*See* Mot. at 16-17.)

In opposition, Defendants suggest LaFever testified that the shots audible on his belt recording were the 40mm rounds. (Opp. at 13.) But LaFever never so testified[3]; rather, he described the gunshot sounds as "clicking or pops." (Ex. 26,

---

[3] Defendants' citation does not indicate LaFever believed these sounds were the 40mm rounds.

132:1-18.) The only suggestion at trial that the sounds were the 40mm rounds was by Defendants' counsel, in closing. (Ex. 16, 22:11-18.) But, as Plaintiffs explained, that is impossible due to the difference in the spacing of the 40mm rounds as compared with the gunshots (Mot. at 15 n.11); comparing Martinez's and LaFever's audio clearly shows the spacing of the shots on LaFever's audio matches Martinez's gunshots. Although Defendants argue that the sounds on LaFever's audio could not have been the gunshots because only two are heard, this simply underscores the fact that LaFever was far away and engaged in a conversation throughout the shots, such that one of the three shots cannot be heard over his voice. (See Mot. at 13 & n.9.) It also does nothing to support the claim that the sounds were the 40mm rounds, *four* of which were fired, over approximately ten seconds. (Ex. 17, 00:29-41.)

As Plaintiffs noted, a detail clearly showing the falsity of LaFever's testimony is that he is heard talking during *and after* the shots. (Mot. at 13). Defendants' response, other than that these shots were actually the 40mm rounds, is that LaFever paused his recorder at some point between the 40mm rounds and the shots. (Opp. at 13-14.) But they fail to explain why the same 52-second gap between the shots and LaFever's "tourniquet" reference exists on both LaFever's and Martinez's audio. (*See* Mot. at 12-13 & n.9.) Defendants also fail to address LaFever's direct examination testimony that, to the best of his knowledge, he never paused his recording, which was running continuously. (Mot. at 14.) It defies reason that LaFever would have heard the 40mm rounds, *then* paused his recorder before heading to the house, and only un-paused it after the gunshots, as Defendants' argument would require. (Mot. at 15 n.11.) And Defendants also fail to address Plaintiffs' point that no other deputy testified LaFever was present during the shooting. (Mot. at 13.)

Defendants also dispute counsel's role in LaFever's false testimony.[4] Giving

---

[4] Defendants' contention that defense counsel's support of LaFever's false testimony was

the benefit of any doubt, even if counsel was initially unaware of the inconsistency between LaFever's claimed version of events and his belt recording during LaFever's direct examination the morning of April 28, it was made apparent during a sidebar and the subsequent lunch break, which provided the opportunity to closely review LaFever's audio. (Ex. 26, 109:21-114:17, 120:5-125:17, 127:6-12, 127:21-25.) But instead of correcting LaFever's testimony, during redirect, counsel elicited additional testimony presenting LaFever as honest and suggesting he had paused his recording, and reiterated these positions the next day in closing. (Mot. at 14-15; Ex. 27, 5:2-15.) This muddied the water as to LaFever's perjury before the jury and, coupled with LaFever's false testimony given from a position of authority (*see* Mot. at 15-16), "prevented [Plaintiffs] from fully and fairly presenting the case" despite their best efforts. *Landeros v. Schafer*, 2024 WL 1693356, at *1 (9th Cir. Apr. 19, 2024) (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000); *cf. Hardwick v. County of Orange*, 884 F.3d 1112, 1119-20 (9th Cir. 2017); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc).

Plaintiffs are not required to show that a different outcome would have resulted absent LaFever's false testimony, as Defendants suggest. (Opp. at 14); *see Landeros*, 2024 WL 1693356, at *1 (9th Cir. Apr. 19, 2024) (movant "need not establish that the result in the case would be altered") (quoting *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990)). Even so, the prejudice is apparent given the closeness of the case, given that his testimony bore directly on the central issue—whether Anthony posed an immediate threat of death or serious injury when Martinez fired—and was the most favorable for Defendants on that issue of any witness, and

---

absent from counsel's meet-and-confer efforts is incorrect. This particular issue was first raised by email even before counsel spoke. [Levine Decl. ¶ 2.] Plaintiffs' counsel's recollection is it was also addressed during the meet-and-confer call. [Levine Decl. ¶ 3.] In any event, it was fairly encompassed within the larger issue of falsities in LaFever's testimony, for which Defendants do not challenge the adequacy of the meet-and-confer. And it was necessarily defense counsel who elicited all testimony LaFever offered during his direct and redirect examination.

given that his testimony carried added authority as a sheriff's sergeant. (Mot. at 12, 15-16.) Given that he was presented as a key defense witness, it can hardly be said that his "testimony was irrelevant to Defendants' contentions." (Opp. at 14.)[5] For these reasons, and because Plaintiffs could not fully and fairly meet his shifting false testimony and new explanations that arose throughout his testimony, they were denied a fair trial, a new one should be granted. (*See* Mot. at 14, 16-17.)

## IV. DEFENDANTS FAIL TO REBUT THE PREJUDICE OF REFERENCES TO DETAILS NOT IN EVIDENCE

As explained in Plaintiffs' motion, under these unique circumstances, there is clear evidence that counsel's comment regarding Campos's location influenced the jury. (Mot. at 17-19.) Focusing on witnesses' ability to accurately testify regarding the shooting's circumstances, Counsel specifically contrasted Campos, whom counsel cast as unreliable based on him purportedly being "off in the shade by the tree" during the shooting, with Martinez and Cervantes, whom counsel suggested were reliable. These comments obviously bore directly on whether Anthony posed an immediate threat of death or serious injury, contrary to Defendants' assertion that Campos's location—and thus his ability to accurately perceive Anthony's position and conduct—was not "relevant to the jury's deliberation." (Opp. at 17.) Significantly, it was the positioning of the three deputies counsel referenced that the jury inquired about in its note; Deberg and LaFever, whom counsel did not mention in this portion of closing, were likewise not mentioned in the note. [Dkt. 183.]

Plaintiffs did not waive their opportunity to challenge the insertion of prejudicial details not in evidence, which had already been excluded by the Court, by not contemporaneously objecting. *Cf. Palmerin v. City of Riverside*, 792 F.2d 1409,

---

[5] Although Defendants suggest Plaintiffs were required to support their motion with a juror declaration showing the juror relied on LaFever's false testimony (Opp. at 14), such a declaration would be inadmissible. Fed. R. Evid. 606(b)(1); *see, e.g.*, *U.S. v. Leung*, 796 F.3d 1032, 1036-37 (9th Cir. 2015); *U.S. v. Weiner*, 578 F.2d 757, 764 (9th Cir. 1978).

1413 (9th Cir. 1986) ("[W]here the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, and the trial court's ruling [thereon] was explicit and definitive, no further action is required to preserve … the issue of admissibility of that evidence.") If violations of evidentiary rules or other impermissible statements during closing arguments are sufficiently important, the lack of contemporaneous objection is no bar to a new trial. *See Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (citing *Igo v. Coachmen Indus., Inc.*, 938 F.2d 650, 659 (6th Cir. 1991)); *Ray v. Allergan, Inc.*, 863 F.Supp.2d 552, 566 (E.D. Va. 2012) (citing *Werner v. The Upjohn Company, Inc.*, 628 F.2d 848, 854 (4th Cir. 1980)). And where objecting would "only have emphasized the impermissible point and have antagonized the jury," contemporaneous objection is not required. *Werner*, 628 F.2d at 854. These supplement the general practice by experienced counsel not to object during closing arguments.

As explained in Plaintiffs' motion and above, Campos's location was a serious issue bearing directly on liability. And although Anthony's alleged choking of his brother and "amphetamine[s]" should not have been considered at all, they impermissibly prejudiced Plaintiffs, which was a reason the Court excluded them. (*See* Mot. at 19-20.)[6] Defendants themselves concede Martinez "testified that he was unaware that Andrew Nu[ñ]ez had been choked at any time prior to discharging his firearm" and that "the specific drug that Decedent was under the influence of … was unknown to Dep. Martinez," and argue these details were irrelevant (Opp. at 16), which only proves Plaintiffs' point. Despite having no relevance to any issue properly before the jury, these details were put forward and prejudiced Plaintiffs by suggesting Anthony was a violent drug abuser, when such evidence was excluded.

It was inappropriate to discuss not only evidence that was not admitted at trial,

---

[6] Although Defendants argue that "attorney misconduct" must "permeate" the trial to justify a new one (Opp. at 15), the closing comments are not the only basis for Plaintiffs' motion in which counsel played a role. (*See* Mot. at 14-16; *supra* Section III.)

but also evidence the Court had excluded. In a close case, this created an undue risk that the jury considered irrelevant prejudicial factors in deliberating. All of these issues—Campos's location in particular, given its direct bearing on liability—were sufficiently important to excuse the lack of contemporaneous objection, particularly where doing so would have only focused the jury further on these issues. *Werner*, 628 F.2d at 854; *Ray*, 863 F.Supp.2d at 566. This is particularly so for Campos's location; although Defendants suggest Plaintiffs' counsel should have addressed this in rebuttal, there was no contrary admitted evidence with which to rebut it. Given all of these details' prejudicial nature, the bell could not have been unrung even with an admonishment or curative instruction. *See Stars & Bars, LLC v. Travelers Cas. Ins. Co. of Am.*, No. SACV 16-01397-CJC (SSx), 2020 WL 4342250, at *4 (C.D. Cal. May 28, 2020) (citing *U.S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)); *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010).

## V. DEFENDANTS DO NOT ADDRESS CUMULATIVE IMPACT

In their motion, Plaintiffs argued that although each of the issues addressed therein and above warrant a new trial individually, a new trial is certainly justified based on their cumulative effect. (Mot. at 21-22.) Defendants do not address this argument. (Opp.); *see, e.g.*, *Jackson-Jones*, 748 F.Supp.3d at 832-33.

## VI. CONCLUSION

For the foregoing reasons and as explained in Plaintiffs' Motion, Plaintiffs respectfully request that the Court order a new trial.

DATED: June 25, 2025        LAW OFFICES OF DALE K. GALIPO

By  */s/ Benjamin S. Levine*
    Dale K. Galipo
    Benjamin S. Levine
    Attorneys for Plaintiffs

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.2)**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **3,394** words, which complies with the word limit of L.R. 11-6.1. It is also 10 pages, which complies with the page limit set forth in the Court's standing order.

DATED: June 25, 2025

LAW OFFICES OF DALE K. GALIPO

By /s/ *Benjamin S. Levine*
Dale K. Galipo
Benjamin S. Levine
Attorneys for Plaintiffs