Exhibit 26

```
                    UNITED STATES DISTRICT COURT

          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

          HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE



ROSA NUÑEZ, et al.,                  )
                                     )
                Plaintiffs,          )
                                     )
    v.                               )      Case No.
                                     )  ED CV 22-1934 SSS (SPx)
COUNTY OF SAN BERNARDINO, et al.,    )
                                     )
                Defendants.          )
_____)


          REPORTER'S PARTIAL TRANSCRIPT OF TRIAL PROCEEDINGS
                          MORNING SESSION
                       MONDAY, APRIL 28, 2025
                             8:41 AM
                       RIVERSIDE, CALIFORNIA
```

_____

**MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA  90012
(213) 894-2305

UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| | 1   A.   And I think I heard me call Mike's name earlier on. |
| | 2   Sorry, I didn't -- |
| | 3   Q.   That's okay.  I'm going to keep playing.  You tell |
| | 4   me if you hear anything else. |
| 11:32AM | 5   A.   Okay.  Uh-huh. |
| | 6             (Audiotape played, not reported.) |
| | 7   THE WITNESS:  I asked for fire -- I'm trying to |
| | 8   distinguish voices.  Obviously, there's a lot of different |
| | 9   voices going on there.  But I believe I asked for fire in the |
| 11:33AM | 10  distance and then gloves possibly. |
| | 11            MR. GALIPO:  Okay.  Please continue. |
| | 12            (Audiotape played, not reported.) |
| | 13            THE WITNESS:  Offering the tourniquet there. |
| | 14  Q.   (BY MR. GALIPO:)  All right.  Thank you. |
| 11:33AM | 15            (Audiotape played, not reported.) |
| | 16            THE WITNESS:  That's me.  That's me. |
| | 17  Q.   (BY MR. GALIPO:)  Okay.  Did you hear yourself say |
| | 18  anything else during that time frame? |
| | 19  A.   Yes.  Letting dispatch know that the subject was not |
| 11:34AM | 20  responsive and asking for fire to -- to get in. |
| | 21  ==Q.   Okay.  Now, I next want to play a clip from your== |
| | 22  ==belt recorder.  And I think your belt recording is 333.== |
| | 23  ==        MR. GALIPO:  So we made a -- we just want to play a== |
| | 24  ==short clip that we'd like to mark, Your Honor, as 333-A, if== |
| 11:34AM | 25  ==that's okay with the Court.== |

|   |   |
|---|---|
| 1 | (Exhibit No. 333-A for identification.) |
| 2 | MR. WESIERSKI: I don't -- I don't have a transcript for this or know -- what portion is this going to be? |
| 4 | MR. GALIPO: This is -- |
| 5 | THE COURT: Why don't you all discuss -- |
| 6 | MR. GALIPO: May I confer with counsel for a moment? |
| 7 | THE COURT: Yes. |
| 8 | (Off-the-record discussion between counsel.) |
| 9 | MR. WESIERSKI: Can we approach, Your Honor? |
| 10 | THE COURT: Yes. Go ahead. |
| 11 | (At sidebar:) |
| 12 | MR. WESIERSKI: This is Chris Wesierski. |
| 13 | I think if he does this, I have no problem with it, but I think it opens the door to me playing the transcript for his discussions with Andrew Nuñez, one. |
| 16 | Two, on a separate topic, Your Honor, I'm becoming concerned -- and I was wondering if we can take an hour for lunch rather than an hour and a half because my expert has to go teach this -- tonight, and he has to make it there by -- I think 5:00 o'clock. And so we're going to be cutting it a little tight if we start at 1:30. That has nothing to do with Mr. Galipo's offer. |
| 23 | MR. GALIPO: So the latter point, I have no problem if Your Honor wants to take an hour for lunch. I think it's unlikely we'll get to closings until tomorrow morning. |

|  |  |
|---|---|
| | 1   THE COURT: Yeah. |
| | 2   MR. GALIPO: On the other point, regarding this |
| 3 | piece, this isn't regarding any conversations. The purpose |
| 4 | that we're playing this, we believe it captures the shots in |
| 11:36AM 5 | the background. And I think this questions whether or not the |
| 6 | sergeant was even present as he described at the red car when |
| 7 | the shots occurred. |
| | 8   THE COURT: But on the portion you're playing, |
| 9 | there's no conversation? There's no -- |
| 11:37AM 10 | MR. GALIPO: There is -- just before -- we believe |
| 11 | our -- the two shots you hear, he's talking with someone for |
| 12 | five seconds. You really can't make out what he's saying. I |
| 13 | assume it was another lieutenant or someone at the command |
| 14 | post. But it's nothing to do with -- I can't even make out |
| 11:37AM 15 | what they're saying, quite frankly, and it's nothing to do with |
| 16 | the conversation with Andrew at all. |
| | 17   So the whole purpose that I'm playing this, it |
| 18 | raises a question as to whether he was at the red car with his |
| 19 | belt recorder on as he claims because it doesn't appear to |
| 11:37AM 20 | capture the shooting at all. |
| | 21   MR. WESIERSKI: Well -- excuse me. Chris Wesierski. |
| | 22   I think he said that he turned his belt recorder off |
| 23 | when he was at the command post and doesn't know if he turned |
| 24 | it back on. That's what I recall. |
| 11:37AM 25 | So I don't know that it shows what Mr. Galipo says |

```
                1    that it shows.  And I think it's speculative.  And I think it
                2    opens the door if he does play it.
                3              THE COURT:  Well, I don't -- as long as what
                4    you're -- what you're telling me is all that's on it, is
11:38AM         5    there's some sort of inaudible conversation.  And then there's
                6    some period of time, I'm assuming, where you hear something.
                7              MR. GALIPO:  Almost immediately.  The -- the comment
                8    is something like, Yeah, I think the gun's in the -- was in the
                9    back of the house, something like that, like he's talking to
11:38AM        10    another lieutenant or someone from SED, I don't know.  And then
               11    we hear what we believe to be a couple of pops.  And then he
               12    approaches, and then we hear his voice eventually on his belt
               13    recorder about the tourniquet.
               14              MR. WESIERSKI:  Well, there is a -- a transcript of
11:38AM        15    his statements.  So maybe if they can point me to a page in the
               16    transcript, that would help me.
               17              MR. GALIPO:  No.  This is not his statement --
               18              MR. WESIERSKI:  I'm sorry.
               19              MR. GALIPO:  -- this is his belt recorder.
11:38AM        20              MR. WESIERSKI:  I think there is a transcript of his
               21    belt recorder.  Excuse me.  You're right.
               22              MR. LEVINE:  We have one.  It's a rough one that we
               23    created.
               24              MR. GALIPO:  It's not something that's an exhibit.
11:38AM        25    It's very short.  I think it's 45 to 60 seconds.
```

```
 1              MR. WESIERSKI:  It seems like it's -- if you can't
 2   even make out what he's saying, it seems like it's kind of
 3   irrelevant so --
 4              MR. GALIPO:  Well, it's not irrelevant --
 5              THE COURT:  Well, let me decide that.
 6              I think it's relevant.  I'm just concerned with
 7   counsel having not heard it so that he's able to make an
 8   appropriate objection.  So --
 9              MR. GALIPO:  Okay.
10              THE COURT:  I think if you don't have a transcript,
11   I think at the very least he should hear it so that he's able
12   to articulate any other objection that he may have to it.
13              MR. GALIPO:  Is it possible that we can have the
14   jury just step out for a moment?  We can play it for him right
15   now.  Because I'm -- I'm going to be done with my questioning
16   in a little bit.
17              THE COURT:  Are you going to be done -- it's like 20
18   till noon.
19              MR. GALIPO:  I'm going to finish before noon.
20              THE COURT:  Okay.  How much before noon?
21              MR. GALIPO:  Maybe like 10 minutes -- I can do it
22   within -- I was planning on just going another 10 minutes, to
23   be honest with you.
24              THE COURT:  Okay.
25              MR. WESIERSKI:  And I have a little bit of redirect,
```

```
 1   not long.  At this point, 10 to 15.
 2              THE COURT:  Okay.  So we can have -- I don't know
 3   if --
 4              MR. GALIPO:  Or if you want, I can do everything
 5   else and then do that right after lunch, if you want to.
 6              THE COURT:  I think that's probably better.
 7              MR. GALIPO:  Okay.  I'll do that.  I'll do that.
 8   I'll get back to it.
 9              THE COURT:  Okay.
10              MR. GALIPO:  Thanks.
11              MR. WESIERSKI:  Your Honor, should I start my cross,
12   then, without that portion of it?
13              MR. GALIPO:  No, I'm just going to keep going.  I'm
14   going till lunch.
15              THE COURT:  And if he ends early, we'll just end
16   early for lunch and I'll tell the jury we're only taking an
17   hour.
18              MR. GALIPO:  That's fine.
19              MR. WESIERSKI:  Okay.
20                  (In the presence of the jury:)
21       Q.   (BY MR. GALIPO:)  With respect to your belt
22   recording that you listened to about -- in the last week, do
23   you hear a portion of it, when you listened to it, when you're
24   talking about the tourniquet?
25       A.   I don't recall.
```

```
                1  case, form any opinions, begin any type of deliberations, do
                2  any type of research.  And we'll see you back here at 1:00.
                3  Okay?  Thank you.
                4              THE COURTROOM DEPUTY:  All rise for the jury.
11:49AM         5              (Out of the presence of the jury:)
                6              THE COURT:  Okay.  Thank you.  You can step down.
                7              And then why don't we just have you step out into
                8  the hallway.  Thank you.
                9              THE WITNESS:  Okay.
11:50AM        10              THE COURT:  So if you want to queue up that portion,
               11  then we can do that.
               12              MR. GALIPO:  Sure.  Thank you, Your Honor.
               13              THE COURT:  Okay.  And this is Exhibit 333-A?
               14              MR. GALIPO:  Yes, Your Honor.
11:50AM        15              THE COURT:  Okay.
               16              MR. GALIPO:  It's very -- well, I'll let you listen
               17  to it, Your Honor.
               18              (Audiotape played, not reported.)
               19              MR. GALIPO:  Do you want -- so we can play it again.
11:52AM        20  But the point that we're offering this for, Your Honor -- it's
               21  difficult to hear.  But we believe in the beginning, when he's
               22  talking to someone about a gun in the back, you hear two pops.
               23  It's -- it's in the distance.  We believe those are the shots.
               24              And then he approaches.  And then we don't hear, for
11:52AM        25  example, the bean bag round or the -- her saying "less lethal"
```

or the commands given immediately after the shooting. But he then approaches, and we then can hear him saying things and other people saying things.

But we believe that's evidence to support that he was not at the red car with his gun pointed at him as he described right there because his -- if he was, we believe his audio, just like the other audios, would have picked all of that up very close and very clearly. And it doesn't.

So we believe that's evidence to suggest he wasn't at the car, as he's testified to, when the shooting occurred.

THE COURT: And how long are you -- where you stopped it just now, is that where you intend to stop it?

MR. GALIPO: I could stop it there because the point afterwards, it just lines up with the other recording they've already heard.

THE COURT: Okay. Okay. Go ahead.

MR. WESIERSKI: Could I have where this was on that tape, on -- and I presume this is Sergeant LaFever's audio?

MR. GALIPO: Sure.

MR. WESIERSKI: So what specific start time and end time?

MR. GALIPO: Yes, we can. One second, please.

MR. LEVINE: One moment. I'll pull that up.

THE COURT: While he does that, are there any objections?

```
 1              MR. WESIERSKI:  Well, I don't know that -- well,
 2   first of all, I presume this is Sergeant LaFever's tape.  I
 3   haven't listened to this specific section in a while.
 4              Presuming that lays -- the foundation is laid, I
 5   don't know that that shows that he wasn't at the scene because
 6   I think he testified on direct that he did turn it off and on,
 7   and then counsel had him say he didn't.  I guess I'll clarify
 8   that when I ask him again about it.
 9              So I'm not sure that that impeaches him the way
10   counsel wants to impeach him.  So I'm not sure it's a correct
11   impeachment.  And there's no foundation that that audio would
12   have picked up the other warnings that were given by
13   Deputy Cervantes, which he said --
14              THE COURT:  Well, I don't -- I don't know if it's
15   necessarily being brought in as impeachment.  But -- so I am
16   still waiting for what the objection would be because
17   everything you're kind of telling me is something that the jury
18   can disregard or it's --
19              MR. WESIERSKI:  I understand.
20              THE COURT:  It has nothing to do with an objection.
21              MR. WESIERSKI:  Well, it's hearsay.  He's not a
22   party.
23              THE COURT:  Okay.  Would you like to be heard on --
24   so the objection is hearsay?
25              MR. WESIERSKI:  Yes, Your Honor.
```

1                THE COURT:  Okay.
2                MR. WESIERSKI:  And no foundation, but I presume
3    they'll lay the foundation.
4                THE COURT:  Uh-huh.  Okay.  Go ahead.
5                MR. GALIPO:  Well, hearsay applies to words that are
6    spoken that are being offered for their truth.  We're offering
7    this to show there's evidence to support he was not present at
8    the red car when the shooting occurred.
9                And I realize that maybe there are arguments that
10   could be made on both sides.  But if he was there, you would
11   expect to hear the -- Cervantes saying "less lethal," the shots
12   much closer and louder.  And immediately after the shots on
13   Martinez's belt recorder, there is very loud commands, "Don't
14   move, stop moving."  You don't hear any of that on his
15   recording.
16               Now, he is coming from the command post and gets
17   there, and then it picks up what's going on in his voice as
18   soon as he gets there.  That's why I asked him, You didn't turn
19   it on and off while you were working there, did you?
20               He said no.
21               And we also believe -- and it starts, by the way, at
22   38 minutes in on Exhibit 333.  And I'll have Mr. Levine make
23   sure that they have the appropriate part.  And it goes to
24   39:23.  So it's about a minute 23.
25               And we also believe in the beginning you hear --

**UNITED STATES DISTRICT COURT**

```
 1  it's faint because he's a couple of hundred yards away.  You
 2  hear the pops, actually can hear them.  And that's going up to
 3  the jury to decide, obviously, that support that he was at the
 4  command post or close to it when the shots happened.  And all
 5  of his testimony about seeing and hearing everything by the red
 6  car is contradicted, we believe, by this exhibit.
 7            MR. WESIERSKI:  One other thing, Your Honor.  We
 8  never got this as an exhibit.  It was never exchanged.  We were
 9  not ready for it.  And I know the Court excluded my portion I
10  wanted to play of his discussions with Andrew Nuñez, and I
11  understand the reasons why the Court gave for that.  But --
12            MR. GALIPO:  Well, this is your exhibit.
13            MR. WESIERSKI:  Excuse me.  That's another one of my
14  objections.
15            MR. GALIPO:  Sorry.
16            THE COURT:  Okay. Well, I -- I -- it's on the
17  exhibit list, so it doesn't seem as if it was unknown to
18  counsel.  So that would be my concern, if it was something that
19  plaintiff just brought and it was -- it wasn't on the exhibit
20  list at all, no one really knew about it.  But I think it's
21  been known by virtue of being on the exhibit list, even listed
22  as a defense exhibit.
23            So as far as whether it's -- it's hearsay or not, I
24  think the -- the use of it -- at least at this point in time,
25  he has testified that he wasn't there, he turned it off.  So I
```

11:59AM
1  suppose this could be utilized as some sort of impeachment, at
2  least for him to listen to it and see if it, in fact -- to
3  discuss exactly why there's no sound on it.  And he could come
4  back and say, well, that's when I turn it off, that's when I
5  turned it back on, whatever he may say to it.
6          As far as you know, the voices on there.  I don't
7  see anything about the voices -- although correct, it is -- the
8  voices themselves would technically be hearsay.
9          But would you like to be heard on the voices?  I
11:59AM
10 think the voices aren't being offered for the truth of what
11 they're saying in the voices, other than to relay some sort of
12 indication about what period in time it was at the time his
13 recorder was hearing something.
14          MR. GALIPO:  Correct.  We're not offering that for
11:59AM
15 the truth of the matter of what's being said at all.
16          THE COURT:  Okay.  So at this point in time, I will
17 allow that portion to be shown -- or -- or played to the jury.
18          MR. WESIERSKI:  And I'm going to take one more stab
19 at my portion of the tape that I wanted to play.
12:00PM
20          Again, not offered for the truth of the matter, just
21 offered to show the background that the sergeant had as well as
22 the other deputies in addition to what they had been told by
23 dispatch.  Specifically in that case with Andrew Nuñez, that
24 his brother had not just pushed him but choked him as well.
12:00PM
25          THE COURT:  And I think -- as far as that, it

|  |  |
|---|---|
| | radio dispatch that that was communicated, then they can show us that clip. |
| | And if one of those are there, then they're there and I would say, okay, he was told that and that's fair game. But I don't believe that evidence exists. |
| 12:02PM | THE COURT: Okay. I think we're -- we can come back, then, at 1:00 o'clock, and then we'll continue with the witness. You'll have your portion of redirect, and then we'll move on to the expert. Correct? |
| 12:02PM | MR. WESIERSKI: He was going to start, I guess, with the audio then and then I'll go to redirect. |
| | THE COURT: Yes. |
| | MR. WESIERSKI: Okay. Understood, Your Honor. |
| | THE COURT: And you think we'll finish, then? We'll finish today with the expert; correct? |
| 12:02PM | MR. WESIERSKI: I sure hope so. I'll do my best. |
| | THE COURT: Well, either way, we know you all don't have to prepare for any type of closing today. Okay? |
| | MR. GALIPO: All right. Thank you, Your Honor. |
| 12:03PM | THE COURT: Okay. Thank you. |
| | THE COURTROOM DEPUTY: Court stands in recess. |
| | (Lunch recess taken.) |
| | (In the presence of the jury:) |
| | THE COURT: Good afternoon, everyone. You can be seated. |
| 01:09PM | |

**UNITED STATES DISTRICT COURT**

```
01:16PM   1         MR. GALIPO:  Okay.  And can we go back a little bit,
          2  Mr. Levine, and stop it where they say "gun" and see what time
          3  we are.
          4         (Audiotape played, not reported.)
01:16PM   5    Q.   (BY MR. GALIPO:)  Okay.  So we stopped at 19 seconds
          6  from the beginning, which would -- in those previous three to
          7  five seconds, it would be the same -- it would be 53 seconds
          8  before the tourniquet.  Just before or at the time that you
          9  hear the reference to gun, do you hear in the background what
01:16PM  10  sounds like two pops?
         11    A.   No.
         12    Q.   Okay.  We're going to play it one more time, and I
         13  want you to listen carefully.
         14         (Audiotape played, not reported.)
01:17PM  15    Q.   (BY MR. GALIPO:)  Did you hear what sounded like two
         16  pops, sir?
         17    A.   I hear some clicking or pops, I guess, depends on
         18  how you defer.  But I do hear two distinct sounds.
         19    Q.   And would you agree, just given the timing, we just
01:17PM  20  looked at Exhibit 4-A where the shots happened approximately
         21  53 seconds before the reference to tourniquet.  And then on the
         22  exhibit from your belt recording, 333-A, about 53 or so seconds
         23  before the reference to tourniquet, we hear the two pops.
         24  Would you agree?
01:17PM  25    A.   Yes.  You can hear those.
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

      DATED THIS 13TH DAY OF MAY, 2025.

      /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER